1  **MARGO A. RAISON, COUNTY COUNSEL**
2  **By: Andrew C. Thomson, Chief Deputy (SBN 149057)**
   **Kathleen Rivera, Deputy (SBN 211606)**
3  **Phillip T. Jenkins, Deputy (SBN 309523)**
   **Kern County Administrative Center**
4  **1115 Truxtun Avenue, Fourth Floor**
   **Bakersfield, CA 93301**
5  **Telephone 661-868-3800**
6
   **Attorneys for Defendants County of Kern,**
7  **Donny Youngblood and Joshua Nicholson**
8
                    **UNITED STATES DISTRICT COURT**
9
                    **EASTERN DISTRICT OF CALIFORNIA**
10
   **APOTHIO, LLC,**                          ) **Case No.: 1:20-CV-00522-NONE-JLT**
11                                             )
                          **Plaintiff,**       ) **NOTICE OF MOTION AND MOTION TO**
12                                             ) **STRIKE PORTIONS OF PLAINTIFF'S**
                                               ) **COMPLAINT BY DEFENDANTS**
13  **v.**                                     ) **COUNTY OF KERN, KERN COUNTY**
                                               ) **SHERIFF'S OFFICE, KERN COUNTY**
14  **KERN COUNTY; KERN COUNTY**               ) **SHERIFF DONNY YOUNGBLOOD AND**
    **SHERIFF'S OFFICE; CALIFORNIA**           ) **SEARGENT JOSHUA NICHOLSON;**
15  **DEPARTMENT OF FISH AND**                 ) **EXHIBIT A [LIST OF MATERIALS TO**
    **WILDLIFE; DONNY YOUNGBLOOD;**            ) **BE STRIKEN]**
16  **JOSHUA NICHOLSON; CHARLTON H.**          )
    **BONHAM; JOHN DOES #1 THROUGH**           ) **Fed.R.Civ.P. 12(f) [Filed Concurrently with**
17  **#10, UNKNOWN AGENTS OF THE**             ) **Request for Judicial Notice; Motion to**
    **KERN COUNTY SHERIFF'S OFFICE;**          ) **Dismiss and Motion for More Definite**
18  **JOHN DOES #11 THROUGH #20,**             ) **Statement]**
    **UNKNOWN AGENTS OF THE**                  )
19  **CALIFORNIA FISH AND WILDLIFE**           )
    **DEPARTMENT,**                            ) **Compliant Filed: 04/10/2020**
20                                             )
                          **Defendants.**      ) **Date:   July 15, 2020**
21                                             ) **Time:  8:30 a.m.**
                                               ) **Ctrm:  4, 2500 Tulare Street, Fresno**
22                                             )
                                               ) **Judge: NONE**
23  _____          )
24
25
26  **TO PLAINTIFF AND ITS ATTORNEYS OF RECORD;**
27         **COME NOW** Defendants County of Kern, on behalf of itself and its integral agency
28  the Kern County Sheriff's Office (hereafter jointly "County"), Kern County Sheriff Donny

                                               1
_____

Youngblood (hereinafter "Youngblood") and Sergeant Joshua Nicholson (hereinafter "Nicholson") (hereinafter collectively "County Defendants") and provide notice that on July 15, 2020, at 8:30 a.m., or as soon thereafter as the matter may be heard in the above-entitled court located at 2500 Tulare Street, Fresno, CA, County Defendants will hear County Defendants' Motion to Strike (hereinafter the "Motion") portions of the Complaint of plaintiff Apothio LLC (hereinafter "Apothio" and/or "Plaintiff").

The language/material which County Defendants seek to strike is scandalous, misleading, redundant, immaterial, impertinent, unduly prejudicial, and/or not relevant, and is therefore proper and appropriate language and material to be stricken from the Complaint. A complete list of the materials to be stricken is attached to the Motion as Exhibit "A."

The motion will be based upon Federal Rules of Civil Procedure, Rules 8 and 12(f), this Notice of Motion and Motion, the Memorandum of Points and Authorities and Exhibits, the Request for Judicial Notice and supporting declaration and exhibits, all papers and filings in this matter, all Reply Memorandums of Points and Authorities and upon such oral argument as may be presented at the hearing.


Dated: June 12, 2020                          MARGO A. RAISON, COUNTY COUNSEL


                                              By:    /s/ Andrew C. Thomson
                                                  Andrew C. Thomson, Chief Deputy
                                                  Kathleen Rivera, Deputy
                                                  Phillip T. Jenkins, Deputy
                                                  Attorneys for Defendants County
                                                  of Kern, Donny Youngblood and
                                                  Joshua Nicholson

1

TABLE OF CONTENTS

2  MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

3   I.      BACKGROUND ............................................................................ 1

4   II.     PORTIONS TO BE STRICKEN FROM THE COMPLAINT ...................................... 1

5
    III.    INAPPROPRIATE PLEADING IS SUBJECT TO A MOTION TO STRIKE ............. 2
6

7   IV.     ASSERTIONS THE SUBJECT CROP WAS "HEMP" ARE PROPER TO BE
            STRICKEN ................................................................................ 6
8

9   V.      PROPER TO STRIKE IRRELEVANT, PREJUDICIAL, INCORRECT
            "STATISTICAL INFORMATION" .................................................... 8
10

11  VI.     FAILURE TO RETURN THE WARRANT ALLEGATIONS PROPERLY
            STRICKEN ................................................................................ 13
12

13  VII.    REFERENCE TO "PERMITS" ALLOWING HEMP ARE PROPERLY
            STRICKEN ................................................................................ 15
14

    VIII.   CONCLUSION ........................................................................... 18

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

**Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,* 301 F.R.D. 487 (C.D. Cal. 2014) .............................................................................................................3

*Barcher v. New York University School of Law,* 993 F.Supp. 177 (S.D. NY 1998) ...................3

*Barrett v. City of Allentown*, 152 F.R.D. 50 (E.D. Pa. 1993) ........................................5

*Best Foods, Inc. v General Mills, Inc.,* 3 F.R.D. 459 (D. Del. 1944) ..............................2

*Bureerong v. Uvawas*, 922 F.Supp. 1450 (C.D. Cal.1996) ..............................................5

*California Dept. of Toxic Substances Control v. Alco Pacific, Inc.* 217 F.Supp.2d 1028 (C.D. Cal. 2002)................................................................................................3

*California v. United States*, 512 F. Supp. 36 (N.D. Cal. 1981) .....................................5

*EEOC v. Ford Motor Co.*, 529 F.Supp. 643 (D. Col. 1982)..............................................15

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir.1993)...........................................3, 4

*Fuchs Sugars & Syrups, Inc. v. Amstar Corp.* 402 F.Supp. 636 (S.D. NY 1975).........................4

*Gas Consumers Association v. Philadelphia Gas Works Co.*, 12 F.R.D. 125 (D.Pa. 1951) .........2

*Gilbert v. Eli Lilly Co., Inc.*, 56 F.R.D. 116 (D.P.R.1972) .......................................3

*Harrison v. Perea*, 168 U.S. 311 (1897)............................................................3

*Houston Casualty Co. v. Crum & Forster Insurance Company* 2016 WL 4494444 (E.D. Cal., Aug. 25, 2016) ....................................................................................4

*In re Facebook PPC Advertising Litigation,* 709 F.Supp.2d 762 (N.D. Cal. 2010)....................4

*LeDuc v. Kentucky Central Life Insurance Co.* 814 F.Supp. 820 (N.D. Cal. 1992) ...................4

*Lema v. Comfort Inn*, Merced, No. 2012 WL 2200770 (E.D. Cal. June 14, 2012)...................3, 4

*Lema v. Courtyard Marriott Merced*, No. 2012 WL 2201189 (E.D. Cal. June 14, 2012)....3, 4, 5

*Lobaton v. City of San Diego* (2015 WL 7864186 (S.D. Cal. Dec. 2, 2015) ...........................4

*Moreno v. USG Corp.*, 2007 WL 951301 (S.D. Cal. Mar. 19, 2007)......................................4

*Nguyen v. CTS Electronics Manufacturing Solutions Inc.* 301 F.R.D. 337 (N.D. Cal. 2014) ......3

*Oaks v. City of Fairhope,* Ala. 515 F.Supp. 1004 (S.D. Ala. 1981)..................................15

ii

*People v. Head*, 30 Cal.App.4th 954 (First Dist. 1994)...................................................14

*People v. Kirk*, 99 Cal.App.3d 89 (2d. Dist. 1979)........................................................14

*Sliger v. Prospect Mortgage, LLC*, 789 F.Supp.2d 1212 (E.D. Cal. 2011)...........................2, 3

*Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128 (N.D. Cal. 2010) ........................6

*Tucker v. American International Group, Inc.,* 936 F.Supp.2d 1 (D. CT 2013) ..........................3

**Other Authorities**

2018 Farm Bill .................................................................................................6

5C Fed. Prac. & Proc. Civ. § 1382 ...........................................................................4

**Federal Statutes**

21 U.S.C. § 802 ...............................................................................................7

7 U.S.C. § 1639o ..............................................................................................7

7 U.S.C. § 5940(a) ............................................................................................6

Controlled Substances Act................................................................................6, 7

**Federal Rules**

Fed. R. Civ. P. 8(a) ..........................................................................................8

Fed. R. Civ. P. 12(f)........................................................................................2, 3

**California Statutes**

Cal. Bus. & Prof. Code § 26001(f) .........................................................................6

Cal. Penal Code §1537 .....................................................................................14

Cal. Health & Safety Code § 11018.5 ......................................................................6

**COUNTY DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT**

**1:20-CV-0052-NONE-JLT**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.       BACKGROUND

Plaintiff Apothio LLC (hereinafter "Apothio" and/or "Plaintiffs") filed a Complaint on or about April 4, 2020 in the United States District Court in and for the Eastern District of California.  The Complaint alleges that Defendants County of Kern, on behalf of itself and its integral agency the Kern County Sheriff's Office (hereafter jointly "County"), Kern County Sheriff Donny Youngblood (hereinafter "Youngblood") and Sergeant Joshua Nicholson (hereinafter "Nicholson") (hereinafter collectively "County Defendants") are responsible for Plaintiff's damages by County Defendants alleged violations of 42 U.S.C. § 1983 through: violations of the Fourth, Fifth, and Fourteenth Amendments to the United Sates Constitution; California Constitution Article I, §§ 7 and 13;   California Civil Code §52.1; and various Common Law Tort Claims.

## II.       PORTIONS TO BE STRICKEN FROM THE COMPLAINT

County Defendants move to strike the following paragraphs, or portions thereof, of Apothio's Complaint - 1, 4, 5, 7, 11, 12, 54, 58, 60, 62, 65, 70, 72, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 86, 87, 89, 93, 94, 99, 119, Sec. B Heading, 140, 149, 150, 152, 155, 156, 157, 158, 159, 160, 166, 172, 179, 185, 191, 197, 203, 211, 219, 220, 222, 237, 242, 245, 247, 248, 249, 250, 252, 255 and 256F. These paragraphs contain statements, allegations and assertions which are scandalous, false, misleading, redundant, immaterial, impertinent, unduly prejudicial and not relevant or germane to the underlying factual issues in the Complaint. A complete list is attached as Exhibit A.

If not stricken, these statements will seriously prejudice County Defendants. These statements will: inflame the public thereby prejudicing the jury pool and seriously interfering with County Defendants' ability to seat an impartial, unbiased jury; interfere with County Defendants' right to a fair trial on the merits of the case; and, absent striking the referenced material, County Defendants will be substantially and materially prejudiced in defending the case, especially in conducting full and reasonable discovery given the discovery limits on written discovery and the number and time limits on depositions set forth in the Federal Rules

of Civil Procedure (FRCP). At this stage of the case, the language sought to be stricken serves no meaningful purpose and is scandalous, misleading, redundant, immaterial, impertinent, unduly prejudicial, and not relevant, and thus would be properly stricken from the Complaint.

County Defendants anticipate that this language will likely be cited by Apothio in press releases, mass media disseminations and in numerous other manners in a manner consistent with their past behavior in this and other matters, which will prejudice County Defendants prior to a jury trial on the merits of the case.

### III.   INAPPROPRIATE PLEADING IS SUBJECT TO A MOTION TO STRIKE

While "it is the present policy of the trial courts of the United States not to root up cockle in the perilous time of sprouting, but rather to leave its elimination to the harvest season when, without loss or harm, it may be discarded and the good grain preserved as the substance of judgment." (*Gas Consumers Association v. Philadelphia Gas Works Co.*, 12 F.R.D. 125, 127 (D.Pa. 1951)). This rule has been interpreted in such a way that any pleading not germane to the issues should be stricken on motion by the adverse party.  (*Best Foods, Inc. v General Mills, Inc.*, 3 F.R.D. 459, 460 (D. Del. 1944) mod. on other grounds 59 F.Supp 201 (D. Del. 1945)).

Federal Rules of Civil Procedure Rule 12(f) (hereinafter "FRCP Rule 12(f)") permits a defendant to move the Court for an order striking certain matters in the complaint. Rule 12(f) provides:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> . . . .
> (2) on motion made by a party either before responding to the pleading . . . .

Under FRCP Rule 12(f), a Motion to Strike has been deemed appropriate if it "will make trial less complicated or eliminate serious risks of prejudice to the moving party or confusion of the issues." (*Sliger v. Prospect Mortgage*, *LLC*, 789 F.Supp.2d 1212, 1216 (E.D. Cal. 2011)).

Under FRCP Rule 12(f), "Redundant" has been defined as including allegations that are wholly foreign to the issues involved or the needless repetition of allegations. (*Sliger v.*

*Prospect Mortgage, LLC, supra,* 789 F.Supp.2d at p. 1216; *Nguyen v. CTS Electronics Manufacturing Solutions Inc.* 301 F.R.D. 337, 342 (N.D. Cal. 2014)).

Superfluous historical allegations are a proper subject of a motion to strike. (*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), rev'd on other grounds, 510 U.S. 517, (1994). *Lema v. Courtyard Marriott Merced*, No. 2012 WL 2201189, at *4 (E.D. Cal. June 14, 2012); *Lema v. Comfort Inn*, Merced, No. 2012 WL 2200770, at *3 (E.D. Cal. June 14, 2012).

Under FRCP Rule 12(f), "Impertinent" has been defined to include allegations that are not responsive or relevant to issues involved in the action and that could not be admitted as evidence in the action. (*Fantasy, Inc. v. Fogerty*, *supra*, 984 F2d at 1527 (9th Cir.1993); *Barcher v. New York University School of Law,* 993 F.Supp. 177, 181 (S.D. NY 1998); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,* 301 F.R.D. 487, 490 (C.D. Cal. 2014)). In *Harrison v. Perea*, 168 U.S. 311, 318-319 (1897), the court determined that matter that was impertinent if it "consists of any allegation not responsive nor relevant to the issues involved in the action."

Under FRCP Rule 12(f), "Immaterial" means the matter has no bearing on the controversy before the court. (*Fantasy, Inc. v. Fogerty*, *supra,* 984 F2d 1524 at p. 1527; *Tucker v. American International Group, Inc.,* 936 F.Supp.2d 1, 15-16. (D. CT 2013)).

"'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.... 'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." (*Fantasy, Inc. v. Fogerty*, *supra,* 984 F.2d 1524 at p. 1527. . . . "Redundant" allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action. (*Gilbert v. Eli Lilly Co., Inc.*, 56 F.R.D. 116, 121, n. 4 (D.P.R.1972))." (*California Dept. of Toxic Substances Control v. Alco Pacific, Inc*. 217 F.Supp.2d 1028, 1032. (C.D. Cal. 2002)).

"Redundant allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action." *Cal. Dep't of Toxic Substances Control v. Alco Pacific, Inc.,* 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (internal quotation marks and citations omitted). Immaterial matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)."

**COUNTY DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT**

**1:20-CV-0052-NONE-JLT**

1    *Houston Casualty Co. v. Crum & Forster Insurance Company* 2016 WL

2    4494444, at *3 (E.D. Cal., Aug. 25, 2016).

3         In *Lobaton v. City of San Diego* (2015 WL 7864186, at *2 (S.D. Cal. Dec. 2, 2015)),

4    the Court discussed the bases for Motions to Strike portions of complaints, as follows:

5         Redundant matter consists of allegations that constitute a needless repetition of
other averments in the pleading. *Moreno v. USG Corp.*, No. CIV 06-CV-

6    2196BPCL, 2007 WL 951301, at *1 (S.D. Cal. Mar. 19, 2007) (quoting 5C Fed.
Prac. & Proc. Civ. § 1382) (internal quotation marks omitted). "'Immaterial'

7    matter is that which has no essential or important relationship to the claim for
relief or the defenses being pleaded." *Fogerty*, 984 F.2d at 1527 (quoting 5C

8    Fed. Prac. & Proc. Civ. § 1382). "'[I]mpertinent' matter consists of statements

9    that do not pertain, and are not necessary, to the issues in question." *Id*. (quoting
5C Fed. Prac. & Proc. Civ. § 1382). "Scandalous matter is that which improperly

10   casts a derogatory light on someone, most typically on a party to the action."
*Moreno*, 2007 WL 951301, at *1 (quoting 5C Fed. Prac. & Proc. Civ. § 1382).

11   "It is not enough that the matter offends the sensibilities of the objecting party if

12   the challenged allegations describe acts or events that are relevant to the action."
5C Fed. Prac. & Proc. Civ. § 1382).   (citing cases)." *Lobaton v. City of San*

13   *Diego, supra* at *2.

14

15        The USDC Eastern District of California has addressed the same issues in *Lema v.*

16   *Courtyard Marriott Merced, supra,* 2012 WL 2201189, at *4 and in *Lema v. Comfort Inn*,

17   *Merced, supra,* 2012 WL 2200770, at *3. In *Lema v. Courtyard Marriott Merced,* Defendants

18   moved to strike portions of the complaint which were alleged to be "immaterial, impertinent,

19   prejudicial, and superfluous." (*Lema v. Courtyard Marriott Merced, supra*, at 3). While the

20   *Lema* Court denied the Motion to Strike as "litigation tactics ... presented solely for improper

21   purposes ...", in the subject case there are no such issues since County Defendants have filed

22   no request for any delay.  County Defendants bring this Motion for the sole purpose of striking

23   immaterial, impertinent, prejudicial, and superfluous material in order to avoid prejudice.

24        The courts have also determined that background material which is unduly prejudicial

25   to defendants may be properly stricken. (*Fuchs Sugars & Syrups, Inc. v. Amstar Corp.* 402

26   F.Supp. 636, 637-638 (S.D. NY 1975); *LeDuc v. Kentucky Central Life Insurance Co.* 814

27   F.Supp. 820, 830 (N.D. Cal. 1992); *In re Facebook PPC Advertising Litigation,* 709 F.Supp.2d

28   762, 773 (N.D. Cal. 2010)).

**COUNTY DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT**

**1:20-CV-0052-NONE-JLT**

"Inflammatory language includes language that is inflammatory and highly prejudicial. (*Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479 (C.D. Cal.1996)). For example, even when certain defendants had recently pled guilty to slavery charges, the court found the term "slave sweatshops" to be "immaterial, scandalous, and highly prejudicial" since referring to the defendants' subjecting workers to involuntary servitude could have been alleged using a less inflammatory term." (*Id.)* (*Lema v. Courtyard Marriott Merced*, *supra,* 2012 WL 2201189, at *5).

"Since "prejudicial" is not among the categories generally contemplated in courts' analysis of motions to strike, the Court construes County Defendants' contention as asserting that the cited materials are scandalous." (*Lema v. Courtyard Marriott Merced*, *supra,* 2012 WL 2201189, at *5).  Likewise in this case, since the cited statistics are redundant, immaterial, impertinent, unduly prejudicial, and not relevant, the verbiage is scandalous.

A motion to strike should be granted where inclusion of the matter would prejudice the defendants, such as where they would be required to conduct discovery on issues that could not form a basis for liability. (*Barrett v. City of Allentown*, 152 F.R.D. 50, 53 (E.D. Pa. 1993)).

A motion to strike should be granted if it will make a trial less complicated, or it will streamline the matter.  (*California v. United States*, 512 F. Supp. 36, 38 (N.D. Cal. 1981)).

In this matter, the language from Complaint paragraphs identified above are redundant, immaterial, false and misleading, impertinent, unduly prejudicial and inflammatory, and not otherwise relevant to the underlying facts and allegations in this case.  Allowing the continued inclusion of such material will severely prejudice County Defendants in their trial preparation, increase the time and difficulty of trial, increase discovery time and issues, possibly inflame the public, interfere with County Defendants' ability to have a fair trial on the merits, and interfere with County Defendants' ability to seat an impartial and unbiased jury.

At this stage of the case, this language serves no meaningful purpose.  However, based upon prior behavior, County Defendants anticipate that Apothio will likely cite these portions of the Complaint in press releases, mass media disseminations, and news conferences in a manner which will seek to contaminate the jury pool, prejudice the public against County

5

Defendants prior to a jury hearing the case, interfere with County Defendants' discovery, and impede the County Defendants' right to a fair trial.

The language is redundant, immaterial, impertinent, unduly prejudicial, and not relevant, and is thus would be properly stricken from the Complaint.

## IV.   ASSERTIONS THE SUBJECT CROP WAS "HEMP" ARE PROPER TO BE STRICKEN

The "hemp" language which is requested to be stricken has been disseminated to the media in an attempt to incorrectly allege that the crop which is the subject of this litigation was "hemp." The Court should strike all portions of the Complaint which allege that Plaintiff's crop was "hemp" (paragraphs 7, 11, 60, 89, 99, 119, Section B Heading, 140, 166, 172, 179, 185, 191, 197, 203, 211, 219, 220, 222, 237, 242, 245, 247, 248, 249, 250, 252, 255,  and 256F) since such assertions are false based on statutory determinations. (*See Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1145 (N.D. Cal. 2010)) ("A trial judge has the authority to strike pleadings that are 'false and sham'").

In the matter of hemp versus marijuana the Complaint states, as follows:

"Hemp refers to the "plant Cannabis sativa L. and any part of such plant, whether growing or not, **with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis**." 7 U.S.C. § 5940(a). It is expressly excluded from the Controlled Substances Act. See id.; § 12619, Agricultural Improvement Act of 2018, Public Law No. 115-334, 132 Stat 4490 ("2018 Farm Bill")." (Complaint, pg. 2, fn. 1.) (Emphasis added.)

The Complaint continues on to acknowledge that the statutory definition of hemp is an active ingredient concentration of .3 or THC or less.

Hemp and marijuana are variants of the same plant, Cannabis Sativa L, but hemp contains no more than 0.3%  tetrahydrocannabinol (THC) in the dried flowering tops, the seeds, the resin extracted from the plant, or in any compound produced therefrom. Cal. Health & Safety Code §11018.5. In other words, if a Cannabis Sativa L plant contains less than a 0.3% THC, it is hemp. Further, the California Business and Professions Code expressly states that "'cannabis' does not mean 'industrial hemp' as defined by Section 11018.5 of the Health and Safety Code." Cal. Business and Professions Code § 26001(f)." (Complaint, pg. 8, llns. 5 to 12.)

6

The Complaint additionally acknowledges that the California Statutory limit of .3 or less to be considered "hemp" is consistent with the Federal Controlled Substances Act.

That approach is consistent with federal law. The Controlled Substances Act states that the "term 'marijuana' does not include . . . hemp, as defined in section 1639o of title 7." 21 U.S.C. § 802. That statute further provides that the "term 'hemp' means the plant Cannabis sativa L. and any part of that plant . . . with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o." (Complaint, pg. 8, llns. 13 to 18 .)

The Complaint acknowledges the .3 limit by claiming that when Apothio's "plants" exceed the .3 limit, Apothio has "destroyed" the "plants."

61. Consistent with its goal of researching and commercializing hemp (not illegal marijuana), Apothio routinely tests its **plants** for THC content. And all of its hemp varietals have been independently tested via laboratory-grade chromatographs and certified to contain below 0.3% THC when measured in the mature, dried flower of the plants.

62. On the occasion when Apothio **plants** have demonstrated high THC levels at maturity, Apothio has destroyed them. But even **plants** that must be destroyed can have research value, especially if they contain high levels of other non-psychoactive cannabinoids, such as CBD and CBN. Even when a high-THC parent **plant** is destroyed, the seeds it produces can be used to perform additional research, with the goal of cultivating offspring plants that bear a familial resemblance in some ways (high CBD and CBN levels) but not in others (low THC levels). (Complaint, pg. 16, llns. 9 to 20.) (Empasis added.)

The Complaint also acknowledges that during the subject 2019 planting season, Apothio provided updates of those "plants" which tested greater than .03% THC.

Throughout 2019, including while the 500 acres of **plants** were growing, Apothio remained in contact with the County to inform the County about its continued work. On May 5, 2019, for example, Jones sent research updates to the Agricultural Commissioner, updating him on the results of Apothio's genetic testing and research. During 2019, Apothio provided updates on testing that included test results of **plants** currently above 0.3% THC. (Complaint, pg. 24, ln. 19, to pg. 25, ln. 1.) (Emphasis added.)

Accordingly, Defendants seek to strike the following language from the SAC as false, immaterial, and impertinent:

| Page/Line | Para | Material to be Stricken | | Page/Line | Para | Material to be Stricken |
|---|---|---|---|---|---|---|
| 3/14 | 7 | "hemp" | | 47/8 | 191 | "hemp" |

COUNTY DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT

1:20-CV-0052-NONE-JLT

| 4/11 | 11 | "legal hemp" | | 48/23 | 197 | "hemp" |
|---|---|---|---|---|---|---|
| 4/15 | 11 | "legal hemp" | | 50/13 | 203 | "hemp" |
| 15/20 | 60 | "hemp" | | 51/21 | 211 | "hemp" |
| 24/2 | 89 | "hemp" | | 52/15 | 219 | "hemp" |
| 27/1 | 99 | "hemp" | | 52/18 | 220 | "hemp" |
| 31/17 | 119 | "hemp" | | 53/3 | 222 | "hemp" |
| 32/9 | Sec B | "Hemp" | | 54/24 | 237 | "hemp" |
| 36/2 | 140 | "hemp" | | 55/9 | 242 | "hemp" |
| 41/18 | 166 | "hemp" | | 55/15 | 245 | "hemp" |
| 41/21 | 166 | "hemp" | | 55/23 | 247 | "hemp" |
| 43/7 | 172 | "hemp" | | 56/4 | 248 | "hemp" |
| 44/10 | 179 | "hemp" | | 56/10 | 249 | "hemp" |
| 44/11 | 179 | "hemp" | | 56/17 | 250 | "hemp" |
| 45/17 | 185 | "hemp" | | 57/1 | 252 | "hemp" |
| 45/20 | 185 | "hemp" | | 57/13 | 255 | "hemp" |
| 47/5 | 191 | "hemp" | | 58/2 | 256F | "hemp" |

Defendants do not move to strike the word "hemp" in all instances, just those specifically related to the 2019 Apothio plant/crop since the other references pertain to general hemp laws and cultivation.

## V.   PROPER TO STRIKE IRRELEVANT, PREJUDICIAL, INCORRECT "STATISTICAL INFORMATION"

FRCP Rule 8(a) does not provide for inclusion of unrelated "statistical information" which is irrelevant, redundant, immaterial, impertinent, irrelevant, ambiguous and prejudicial to incorporated in the Complaint.   It is thus appropriate to strike such materials from the Complaint.   Such inappropriate "statistical information" includes: material alleging information related to prior Apothio crops or other crops in general; material alleging former contacts with politicians; materials related to medicinal benefit and historical medical contacts; and unreliable cited material from The Guardian and other news media. These include Complaint references to The Guardian newspaper articles reportedly published in mid-2015[1] which are alleged to report previous Kern County statistics related to excessive force cases.

---

[1]  The Complaint alleges that the subject incident occurred in late 2019, and the information in the Guardian articles was compiled in 2014 and early 2015, and does not include information for the last four and a half years to five years before the incident.  The "statistics" are therefore misleading, not relevant and overly prejudicial to Defendants.

The "statistics" do not separate out the incorrect information from the correct information and mislead the reader and prejudice County Defendants. It is important to note that in the cases referenced in the Guardian articles, Kern County and its employees have never been found by a Judge or Jury of having violated any persons U.S.C. Section 1983 civil rights.

The cited materials are incorrect, misleading and irrelevant statistics, are not relevant or applicable in this matter, are prejudicial and do not belong in the Complaint. Such incorrect, misleading, irrelevant and prejudicial information should be stricken, as follows:

| Page/Line | Para | Material to be Stricken |
|---|---|---|
| 2/2 | 1 | "one (sic) largest wholesale" |
| 2/3 | 1 | "the history of" |
| 2/19 to 3/2 | 4 | "Having lost a daughter to an unusual medical condition, when Jones received a call from a mother seeking help for her son who was suffering from Dravet syndrome, Jones turned full-time to helping patients, especially children, through advancing his lifetime work in clinical, natural, and aquaponics research." |
| 3/3-7 | 5 | "Apothio's leading seed variety—the "Noah Strain'—is now named for that boy, Noah, who was unable to leave his bed due to the intensity and frequency of his seizures. After one month of using Apothio's CBD oil, Noah was able to visit Disney World. The plants derived from the Noah Strain have continued to help improve the lives of Noah and patients all over the world. " |
| 4/21 | 12 | "reckless and haphazard" |
| 14/18 to 21 | 54 | "For example, recent research has shown that if epileptic patients are given the combination of the non-psychoactive cannabinoids, fats, waxes, and terpenes contained in the hemp plant, they experience superior seizure prevention effects than do patients who are given only isolated CBD.2<br>*[footnote] 2  See Pamplona FA, da Silva LR, & Coan AC, Potential Clinical Benefits of CBDRich Cannabis Extracts Over Purified CBD in Treatment-Resistant Epilepsy:"* |
| 15/11 to 16 | 58 | "It is named for one of Apothio's first patients, a 13-year-old boy named Noah who suffers from Dravet syndrome. Noah was unable to leave his bed, much less his home, due to the intensity and frequency of his seizures. After one month of using Apothio's CBD oil, Noah was able to visit Disney World. That success inspired Apothio to name the strain after him, and the plants derived from it have continued to help improve the lives of Noah and many other patients." |
| 16/14 to 15 | 62 | "On the occasion when Apothio plants have demonstrated high THC levels at maturity, Apothio has destroyed them." |
| 17/13 to 19 | 65 | "For example, in September 2015, Apothio entered into an agreement with the RAND Corporation, which operates a degree-granting |

9

---

| Page/Line | Para | Material to be Stricken |
|---|---|---|
| | | educational program for masters and doctoral students. Under the terms of that agreement, Apothio agreed to provide RAND with "microeconomic data on the cost of cultivating and processing domestic hemp products" as well as data "relating to consumption (dosages, delivery routes, etc), benefits, and side effects from high-CBD hemp product usage for pediatric epilepsy." |
| 18/20 to 19/4 | 70 | "Apothio and the College also planned to develop additional 'public private research affiliations' that would conduct research into 'agronomy, block chain and artificial intelligence related to the standardization of natural plant medicines, clean water, water conservation, renewable and sustainable energy production, as well as the collection of empirical data regarding . . . Anxiety, Autism, Diabetes, Epilepsy, Chronic Pain Patients, Insomnia, Neurodegenerative diseases and the many other diseases related to chronic inflammatory patterns.' And Apothio and the College agreed to share any revenues generated by these various research partnerships." |
| 19/22 to 22/9 | 75-84 | "**D.** Apothio Regularly Met with Kern County Officials to Discuss Its Plans<br>**75**. Since it began operating in Kern County in 2018, Apothio has maintained close contact with Kern County officials, apprising them time and again of its research and development activities as well as its plans to commercialize its hemp.<br>**76**. In the fall of 2018, Apothio contracted with a local grower, Stenderup Farms, to plant and organically manage 141 acres of hemp using seeds created and owned by Apothio. Before planting any hemp in Kern County, Plaintiff met with and briefed the Agricultural Commissioner of Kern County, Glenn Fankhauser.   77. Plaintiff presented written evidence about Apothio's EARI status to the Commissioner, and clearly stated its intention to research, develop, and commercialize hemp in accordance with the laws of California and the United States.<br>**78**. On October 12, 2018, the Kern County Agriculture Commissioner's office issued 2018 Map-Permit Number 1500007, Stenderup AG Partners, Map Number 1288, which identified the location where Apothio was permitted to plant and cultivate its hemp field: [Map photo]<br>**79**. Around this same time and before planting any hemp in Kern County, Apothio also met with and briefed other government officials, including Defendant Nicholson, the official in charge of drugs and narcotics in the Kern County Sheriff's Office; two Chief Deputies in the Sheriff's office; and the Kern County Planning Director, Lorelei Oviatt. Apothio also met with other local officials, including the city managers, city attorney, and mayor of California City, California.<br>**80**. During each of these meetings, Apothio reiterated its EARI status. Apothio provided chromatograph test results and plans for extraction |

| Page/Line | Para | Material to be Stricken |
|---|---|---|
| | | and commercialization, including copies of its commercial contracts. At no point during any of those meetings did any county official disagree, contradict, or question Apothio's status as an EARI. |
| | | **81**. The purpose of growing these hemp plants was to conduct further research on the genetics, chemical makeup, and possible economic potential of the hemp plants themselves, and to provide the plants to a joint-venture (which was subsequently abandoned when the partner was unable to perform) whose purpose was to extract legal cannabinoids from the hemp plants. |
| | | **82**. At the time this crop was being grown, Apothio conducted contemporaneous chemical testing of the plants. These tests confirmed that the plants would have THC levels of less than 0.3% at maturity, and this indeed turned out to be the case when the plants were finally harvested. Apothio shared its internal testing binders with Kern County Agricultural Commissioner Glenn Fankhauser, which showed that Apothio's plants were overwhelmingly testing below 0.3% THC, and that Apothio was carefully tracking the few exceptions testing above that threshold so they could be destroyed if they were not compliant with the 0.3% limit at the time of harvest. |
| | | **83**. At the end of 2018, Apothio met with Captain Mike Nicholas of the Kern County Fire Department to review plans for an ethanol extraction system that would be used to extract and commercialize Apothio's hemp crops. |
| | | **84**. In January 2019, at the conclusion of this 2018 planting, the Secretary of the California Department of Food and Agriculture, Karen Ross, sent an email to<br>Stenderup Farms. This email specifically acknowledged that Apothio and Stenderup had been conducting a "research project on hemp." Secretary Ross further stated that she was "intrigued" by the hemp research that Apothio and Stenderup had been conducting, and that she had mentioned this research to one of her friends, a former member of the California legislature. And Secretary Ross offered to introduce Apothio and Stenderup to "several state, national and international clients who are involved in hemp" in the hopes of creating "future business opportunities" related to hemp commercialization." |
| 25/2 to 16 | 93 | "**93**. News coverage also publicized that Apothio was growing hemp in Kern County. For example, a local news article published on June 3, 2019 described that Apothio was growing industrial hemp, and explained the crop was legal hemp, not Marijuana.4<br>*[footnote] 4  John Cox, Relax. That's not actually weed growing near Arvin,      BAKERSFIELD.COM   (June   3,    2019), https://www.bakersfield.com/news       /business/relax-that-s-not-actuallyweed-growing-near-arvin/article_6d613616-83cb-11e9-abfe-f797aa445111.html.*" |
| 25/17 to | 94 | "**94**. The article described Apothio as having "partnered with a local |

| Page/Line | Para | Material to be Stricken |
|---|---|---|
| 21 | | college to conduct research while also contracting with local farmers to grow the product for processing in Bakersfield," and that it "expected to harvest 512 acres of hemp" that would have a "yield of 330,694 pounds of CBD and 33,694 pounds of microcannabinoids." |
| 38/14 to 40/8 | 155-160 | "**IV**. The KCSO's Disregard Of Its Legal Obligations and Apothio's Rights Is Emblematic Of A Broader Pattern And Practice Of Abuses<br><br>**155**. In 2015, the prominent Guardian newspaper published a five-part series detailing repeated abuses by the Kern County Sheriff's Office.6 The report showcased the KCSO's repeated disregard of civil and constitutional rights.<br><br>*[footnote] 6  Jon Swaine & Oliver Laughland, The County: the story of America's deadliest police, THE GUARDIAN (Dec. 1, 2015), https://www.theguardian.com/us-news/2015/dec/01/thecounty-kern-county-deadliest-police-killings.*<br><br>**156**. For example, in 2015, Kern County had the largest number of people killed by police per capita in the entire country. The report also indicated that KCSO deputies "have been caught rewarding colleagues for aggressive use of batons with a 'baby seal' prize for the best clubbing" and have adorned their patrol cars with decals declaring "we'll kick your ass."7<br><br>*[footnote] 7  Jon Swaine & Oliver Laughland, The County:where deputies dole out rough justice, THE GUARDIAN (Dec. 4, 2015), https://www.theguardian      .com/us-news/2015/dec/04/thecounty-kern-county-california-deputies-tactics.*<br><br>**157**. The Guardian also reported that the Kern County Sheriff's Office takes steps to cover-up its misconduct. When deputies are accused of wrongdoing and caught<br>on camera, they will confiscate the devices containing the incriminating video from the witness and intimidate the witness into silence.8 Similarly, the office systematically underreports arrest-related deaths to federal and state authorities, exploiting the Sheriff's role as coroner to manipulate statistics regarding causes of death.9<br><br>*[footnote] 8  Id.*<br>*[footnote] 9  Id.*<br><br>**158**. Rather than reflecting the isolated misconduct of a few bad apples, the Kern County Sheriff's Office's disregard of civil and constitutional rights starts from the top: A recently-released video of Sheriff Youngblood shows him arguing that it is cheaper for the KCSO to kill a suspect or inmate "because if we cripple them we get to take care of them for life."10<br><br>*[footnote] 10  Kern County Sheriff caught on tape saying it costs less to kill suspects, ABC7NEWS (April 13, 2018), https://abc7news.com/3337751/.*<br><br>**159**. It is therefore no surprise that the Guardian investigation's findings |

---

**COUNTY DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT**

1:20-CV-0052-NONE-JLT

| Page/Line | Para | Material to be Stricken |
|---|---|---|
| | | lent "weight to claims from critics that police in Kern County are effectively policed only by themselves."11 One attorney who practices in Kern County stated on the record that Kern County law enforcement "will work to prevent you from getting any information whatsoever."12 Indeed, there is evidence that the KCSO has repeatedly withheld evidence not only from defendants, but also from the district attorney's office and the courts.13 |
| | | *[footnote] 11 Jon Swaine & Oliver Laughland, The County: partners in crime, THE GUARDIAN (Dec. 10, 2015), https://www.theguardian.com/us-news/2015/dec/10/kern-countycalifornia-police-killings-misconduct-district-attorney.* |
| | | *[footnote] 12 Id.* |
| | | *[footnote] 13 Jason Kotowski, Judge informs jury of more evidence KCSO failed to disclose in the Leslie Chance case, KGET.COM (Jan. 10, 2020), https://www.kget.com/news/crimewatch/judge-informs-jury-of-more-evidence-kcso-failed-to-disclose-in-the-leslie-chancecase/; Adam Herbets, Attorneys: KCSO Sergeant Suppressed Evidence For Years, BAKERSFIELDNOW.COM (July 27, 2016), https://bakersfieldnow.com/news/local/attorneys-say-this-kcso-sergeant-concealedevidence-for-years.* |
| | | **160.** In response to the Guardian reporting, the ACLU conducted its own investigation, which confirmed that the KCSO had engaged in "a practice of filing intimidating or retaliatory criminal charges against individuals" and that "[d]eficient oversight and accountability structures have allowed law enforcement misconduct to go unchecked."14 |
| | | *[footnote] 14 ACLU, PATTERNS & PRACTICES OF POLICE EXCESSIVE FORCE IN KERN COUNTY (Nov. 2017), https://www.aclusocal.org/sites/default/files/patterns_practices_police_ excessive_force_k ern_county_aclu-ca_paper.pdf.* |

## VI.   FAILURE TO RETURN THE WARRANT ALLEGATIONS PROPERLY STRICKEN

Plaintiff alleges that the Kern County Sheriff's Office (hereinafter "KCSO") failed to return the search warrant to court after its execution as required by the California Penal Code. (See Complaint heading, p. 37, l. 5 and Complaint, ¶ ¶149, 150). The Complaint then concedes that KCSO did return the warrant materials to the Superior Court (Id., ¶ 152), but then alleges that the search warrant return materials are required to be publicly available under California law, but that the KCSO refuses to provide such warrant materials. (Id., ¶ 152). It is impossible

COUNTY DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT

1:20-CV-0052-NONE-JLT

1  for the County Defendants to discern which argument Plaintiff is making regarding the search

2  warrant based upon the contradictory language.

3         Under California law it is immaterial to any claimed violation of rights as to whether the

4  warrant was returned in a timely manner. A "return" of warrant is simply an inventory of what

5  was seized, signed under penalty of perjury by the officer. (Cal. Penal Code §1537).  The

6  purpose of the 10 day rule is to ensure that the showing of probable cause will still exist at the

7  time the warrant is executed. (See for example *People v. Kirk*, 99 Cal.App.3d 89 (2d. Dist.

8  1979) (Violations of the return requirements, which are ministerial in nature and directed to

9  events arising after the invasion of privacy to which the Fourth Amendment pertains, have so

10  far not been held error of Fourth Amendment dimension.); *People v. Head*, 30 Cal.App.4th 954,

11  957-958 (First Dist. 1994)(police officer took just over a year to file a return of warrant after it

12  was executed); *People v. Kirk, supra*, 99 Cal.App.3d at 92-94(return filed 55 days late, no

13  suppression of evidence required).

14         Thus, that KCSO took longer than 10 days to return the warrant is immaterial. These

15  contradictory allegations are immaterial, will confuse the issues and create discovery issues, and

16  will serve to confuse a jury and related trial matters. For those reasons, County Defendants

17  respectfully request this court strike all references to KCSO's alleged delay returning the search

18  warrant, as found in paragraphs: 149, 150, 152, 166, 172, 185, 191, 197 and 203 as follows:

| Page/Line | Para | Materials to be Stricken |
|---|---|---|
| 37/15 to 17 | 149 | The KCSO Defendants have failed to timely file the search warrant return required by California Penal Code § 1534 or the affidavit required by California Health and Safety Code § 11479. |
| 37/18 to 22 | 150 | After numerous communications with Kern County Superior Court staff, on February 24, 2020, Apothio's counsel notified the Kern County Sheriff's Office of its failure to return the required warrant. Counsel was informed that the Kern County Sheriff's Office required a court order to provide the warrant return, affidavit, and any other warrant materials. |
| 38/3 to 8 | 152 | After those filings, Apothio's counsel learned that the Kern County Sheriff's Office had returned certain warrant materials to the Kern County Superior Court shortly after Apothio's counsel had inquired about those materials from the KCSO. But even though the entirety of the warrant materials are now required to be publicly available under California law, the Kern County Sheriff's Office refuses to provide such warrant materials to Apothio. |

14

| 41/22 | 166 | and (5) failing to return the warrant materials in a timely manner. |
| 43/ 7 to 8 | 172 | and (6) failing to return the warrant materials in a timely manner. |
| 45/21 to 22 | 185 | and (5) failing to return the warrant materials in a timely manner. |
| 47/9 to 10 | 191 | and (5) failing to return the warrant materials in a timely manner. |
| 48/23 to 44/1 | 197 | and (6) failing to return the warrant materials in a timely manner. |
| 50/13 to 14 | 203 | and (6) failing to return the warrant materials in a timely |

## VII.   REFERENCE TO "PERMITS" ALLOWING HEMP ARE PROPERLY STRICKEN

Allegations which are "so unrelated to plaintiffs' claims as to be unworthy of any consideration as a defense" should be striken. (*EEOC v. Ford Motor Co.*, 529 F.Supp. 643, 644 (D. Col. 1982)). Immateriality under this rule has been defined as "any matter having no value in developing the issues of a case." (*Oaks v. City of Fairhope,* Ala. 515 F.Supp. 1004, 1032 (S.D. Ala. 1981)).

The Complaint references "permits," issued by Kern County, which are purported to allow Apothio to cultivate hemp.  These "permit" references fit the definition of immateriality since the references to a "permit" to grow hemp is misleading, factually inaccurate, unrelated to Apothio's claims, and have no value to developing triable issues.

Paragraph 78 alleges that the Agriculture Commissioner's office issued **2018** Map-Permit Number 1500007, Stenderup AG Partners, Map Number 1288, and claims this "identified the location where Apothio was permitted to plant and cultivate its hemp field." (Complaint, ¶ 78). The 2018 crop is immaterial to this suit.

Paragraph 86 alleges "…the Kern County Agricultural Commissioner issued several different map permits, which identify the precise locations of the fields where Apothio's hemp would be planted." (Id., ¶ 86).

Paragraph 87 alleges that "a Kern County map permit was issued for each of the farmers with whom Apothio contracted to grow the hemp plants. In each of these permits, the County acknowledged and certified that Apothio was growing hemp." Plaintiff then list the

15

1  permit numbers: 1500007, 1502966, 1500027, 1500624, 1505528, 1502277. (Id., ¶ 87).
2  Apothio also references "permits" to cultivate hemp at paragraphs 72, 74, 78, 86 and 87.

3        Apothio has failed to indicate that the identified permits are for the 2018 year crop and
4  that these "permits" are not permits to allow the growing of hemp but are actually "Restricted
5  Materials Permits." These permits consist of a map, which the Plaintiff included in the
6  complaint at paragraphs 78 and 86. However, Apothio has not included the second part of
7  these permits, which is documentation properly identifying these "permits" as "Restricted
8  Materials Permits," not as a Permit to cultivate hemp.

9        This Court is requested to take judicial notice of the six "Restricted Materials Permits"
10  which corresponds to the six (6) permit numbers listed at paragraph 87 of the complaint since
11  the identified permits are public records. (See Request for Judicial Notice filed concurrently
12  and Exhibit thereto). Attached to the Request for Judicial Notice is a Declaration from Glen
13  Frankhauser, the Kern County Agricultural Commissioner. Frankhauser states that one of his
14  job duties is the local administration and enforcement of the Department of Pesticide
15  Regulation's restricted materials use requirements. He states the purposes of Restricted
16  Materials Permit are for the grower to be able to use and report the usage of any pesticide on a
17  crop and to record the location of the proposed use of pesticide. Frankhauser also that all of the
18  Restricted Materials Permits listed by Plaintiff at paragraph 87 of the complaint were issued by
19  employees of his department. (See Declaration of Glen Frankhauser, Ex. 1 to Request for
20  Judicial Notice).

21        County Defendants move that the following be stricken from the Complaint:

| Page/Line | Para | Material to be Stricken |
|---|---|---|
| 19/10 to 12 | 72 | "Within a month of California's legalization of hemp production, Kern County was already issuing permits to various farmers and companies in order to allow them to grow hemp." |
| 19/19 to 21 | 74 | "By permitting a large number of hemp producers to plant within county limits, Kern County hoped to discourage and crowd out marijuana producers." |
| 20/9 to 20 | 78 | "On October 12, 2018, the Kern County Agriculture Commissioner's office issued 2018 Map-Permit Number 1500007, Stenderup AG |

16

| | | |
|---|---|---|
| | | Partners, Map Number 1288, which identified the location where Apothio was permitted to plant and cultivate its hemp field:" [And one (1) inserted map.] |
| 22/15 to 19 | 86 | "In response, the Kern County Agricultural Commissioner issued several additional map permits, which identified the precise locations of the fields where Apothio's hemp would be planted. These map permits were "generated by the Kern County Agricultural Commissioner/Sealer" between the fall of 2018 and the spring of 2019." |
| 23/ 1 to 20 | 87 | "87. Specifically, a Kern County map permit was issued for each of the farmers with whom Apothio contracted to grow the hemp plants. In each of these permits, the County acknowledged and certified that Apothio was growing hemp. The permits (which are reproduced below) include "Permit Number 1500007," issued for the hemp growing on Stenderup AG Partners' farm; "Permit Number 1502996," issued for the hemp growing on Mike Cauzza Farms' farm; "Permit Number 1500027," issued for the hemp growing on Lehr Brothers, Inc.'s farm; "Permit Number 1500624," issued for hemp growing on Vanborg Farms' farm; "Permit Number 1505528," issued for hemp growing on Petrissans Dairy's farm; and "Permit Number 1502277," issued for hemp growing on H&H Farms' farm." [And eight (8) inserted maps] |

///

///

///

///

///

///

///

///

///

///

///

///

///

///

17

**COUNTY DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT**

**1:20-CV-0052-NONE-JLT**

## VIII.   <u>CONCLUSION</u>

As discussed above, the language and materials requested to be stricken serve no meaningful purpose. In the absence of striking the forgoing, it is anticipated that these materials will be cited by Apothio in press releases and conferences and/or used in other manners which will seek to confuse the issues, interfere with discovery, contaminate the jury pool and prejudice the public against County Defendants prior to a jury hearing the case. The language/material is scandalous, misleading, redundant, immaterial, impertinent, unduly prejudicial, and not relevant, and is thus would be properly stricken from the Complaint.

For the aforementioned reasons, County Defendants respectfully request the Court grant the entire Motion to Strike.


Dated:  June 12, 2020                    MARGO A. RAISON, COUNTY COUNSEL


                                        By:   __/s/ Andrew C. Thomson_____
                                            Andrew C. Thomson, Chief Deputy
                                            Kathleen Rivera, Deputy
                                            Phillip T. Jenkins, Deputy
                                            Attorneys for Defendants County
                                            of Kern, Donny Youngblood and
                                            Joshua Nicholson

24X4413.doc

**COUNTY DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT**
**1:20-CV-0052-NONE-JLT**