1    XAVIER BECERRA, State Bar No. 118517
     Attorney General of California
2    BRUCE D. MCGAGIN, State Bar No. 170146
     STACEY L. ROBERTS, State Bar No. 237998
3    Supervising Deputy Attorney's General
     ETHAN A. TURNER, State Bar No. 294891
4    KELLY T. SMITH, State Bar No. 196821
     Deputy Attorney's General
5       Telephone: (916) 210-6465
        Fax:  (916) 322-8288
6       E-mail:  Kelly.Smith@doj.ca.gov
        1300 I Street, Suite 125
7       P.O. Box 944255
        Sacramento, CA 94244-2550
8    *Attorneys for Defendants State of California, by and*
     *through California Department of Fish and Wildlife,*
9    *and Charlton H. Bonham, Director*

10

11                  IN THE UNITED STATES DISTRICT COURT

12               FOR THE EASTERN DISTRICT OF CALIFORNIA

13                            CIVIL DIVISION

14

15   | APOTHIO, LLC,                              | Case No. 1:20-cv-00522-NONE-JLT |

16                                    Plaintiff,     **MEMORANDUM OF POINTS AND
                                                     AUTHORITIES IN SUPPORT OF
17            v.                                     MOTION TO DISMISS THE
                                                     COMPLAINT**
18   **KERN COUNTY; KERN COUNTY
     SHERIFF'S OFFICE; CALIFORNIA**                 [Fed. R. Civ. P. 12(b)(6), 12(f)]
19   **DEPARTMENT OF FISH AND
     WILDLIFE; DONNY YOUNGBLOOD;**                  Date:      July 15, 2020
20   **JOSHUA NICHOLSON; CHARLTON H.**              Time:      8:30 a.m.
     **BONHAM; JOHN DOES #1 THROUGH**               Dept:      Courtroom 4
21   **#10, UNKNOWN AGENTS OF THE KERN**            Judge:     NONE
     **COUNTY SHERIFF'S OFFICE; JOHN**
22   **DOES #11 THROUGH #20, UNKNOWN**              Action Filed:  April 10, 2020
     **AGENTS OF THE CALIFORNIA FISH**
23   **AND WILDLIFE DEPARTMENT,**

24                                  Defendants.

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

Introduction ........................................................................................................... 1

4

The Complaint ........................................................................................................ 1

5

I.     The Complaint's Fourth Amendment, Taking and Due Process Theories ............. 2

II.    The Complaint's Claim of Apothio's Special Research Status .............................. 2

6

III.   The Liabilities Alleged Against Individual Defendants, the State and the
County ........................................................................................................... 3

7

Marijuana and Hemp Law Overview ...................................................................... 3

8

Argument ............................................................................................................... 4

9

I.     There Is No Property Right in Contraband ............................................. 6

10

II.    Lacking a Protected Interest, Apothio's Due Process Claims Fail ....................... 7

III.   The Warrant Was Valid .......................................................................... 7

11

A.    The Warrant, Although Valid, Was Not Needed to Destroy the
Contraband ............................................................................................. 8

12

B.    Destruction of the Contraband Was Legal ................................................. 9

13

C.    Open Fields Searches of This "Heavily Regulated" Cannabis
Industries Are Permitted ......................................................................... 9

14

IV.   Apothio's "Research" Status Is Immaterial to Probable Cause ............................ 10

15

A.    Apothio Is Not an Established State Agricultural Research
Institution .............................................................................................. 11

16

B.    Federal Hemp Law Preempts any State Research Loophole .................... 12

17

V.    Causal Connections with Defendants' Actions Are Lacking ............................... 13

VI.   Improper Matter in the Complaint Should Be Stricken ....................................... 14

18

Conclusion ............................................................................................................. 15

19

20

21

22

23

24

25

26

27

28

i

1

**TABLE OF AUTHORITIES**

2

**Page**

3    CASES

4    *Advanced Bldg. & Fabrication, Inc. v. California Highway Patrol*
5        781 F.App'x 608 (9th Cir. 2019) ...........................................................10

6    *Ashcroft v. Iqbal*
        556 U.S. 662 (2009) ................................................................................5
7
     *Caltex Plastics, Inc. v. Lockheed Martin Corp.*
8        824 F.3d 1156 (9th Cir. 2016).................................................................5

9    *Citizens Against Corruption v. County of Kern*
        2019 WL 1979921 (E.D. Cal. May 3, 2019)...........................................6
10
     *District of Columbia v. Wesby*
11       138 S. Ct. 577 (2018) ..............................................................................5

12   *Doe v. County of Kern*
13       2017 WL 5291687 (E.D. Cal. Nov. 13, 2017) ......................................13

14   *EEOC v. Ford Motor Co.*
        529 F.Supp. 643 (D. Col. 1982)............................................................14
15
     *Ewing v. City of Stockton*
16       588 F.3d 1218 (9th Cir. 2009)...............................................................10

17   *Guatay Christian Fellowship v. County of San Diego*
18       670 F.3d 957 (9th Cir. 2011)..................................................................7

19   *Hester v. United States*
        265 U.S. 57 (1924)...................................................................................9
20
     *Illinois v. Gates*
21       462 U.S. 213 (1983)................................................................................8

22   *In re Century Aluminum Co. Security Litigation*
23       729 F.3d 1104 (9th Cir. 2013).................................................................8

24   *Kaley v. United States*
        571 U.S. 320 (2014)................................................................................8
25
     *Kennerly v. Montgomery Cty. Bd. of Comm'rs*
26       257 F. Supp. 2d 1037 (S.D. Ohio 2003) ................................................6

27   *Lull v. County of Placer*
28       2018 WL 4335572 (E.D. Cal. September 11, 2018)...............................6

ii

## TABLE OF AUTHORITIES
### (continued)

Page

*Messerschmidt v. Millender*
   565 U.S. 535 (2012)..................................................................................8

*Monell v. Department of Social Services*
   436 U.S. 658 (1978)...........................................................................13, 14

*New York v. Burger*
   482 U.S. 691 (1987)...............................................................................10

*Oaks v. City of Fairhope, Ala.*
   515 F.Supp. 1004 (S.D. Ala. 1981)........................................................14

*Oliver v. United States*
   466 U.S. 170 (1984)................................................................................9

*Olvera v. County of Sacramento*
   932 F.Supp.2d 1123 (E.D. Cal. 2013)....................................................10

*Rizzo v. Goode*
   423 U.S. 362 (1976)..............................................................................13

*Scalia v County of Kern*
   308 F.Supp.3d 1064 (E.D. Cal. 2018).....................................................13

*Schmidt v. County of Nevada*
   2011 WL 2967786 (E.D. Cal. July 19, 2011) .......................................6, 7

*Seismic Reservoir 2020, Inc. v. Paulsson*
   785 F.3d 330 (9th Cir. 2015)....................................................................5

*Torres v. County of Calaveras*
   2018 WL 1763245 (E.D. Cal. Apr. 12, 2018)..........................................6

*United States v. Leon*
   468 U.S. 897 (1984)................................................................................8

iii

**TABLE OF AUTHORITIES**
(continued)

Page

STATUTES

7 United States Code
§ 1639o(1) ..........................................................................................................4
§ 1639p(a)(1) ......................................................................................................4
§ 1639p(a)(3)(A) .................................................................................................4
§ 1639p(e)(2)(A)(3) ............................................................................................4
§ 5490(b)(1) ......................................................................................................13
§ 5940 ..........................................................................................................12, 13
§ 5940(a)(1) ......................................................................................................12
§ 5940(a)(1)(iii) .................................................................................................13
§ 5940(a)(2) ....................................................................................................3, 5
§ 5940(b) .........................................................................................................1, 2

21 United States Code
§ 801 ...................................................................................................................5
§§ 801-904 ....................................................................................................5, 10
§ 802(16) ........................................................................................................1, 3
§ 804(16) ............................................................................................................4
§ 812 Schedule 1 (c)(10) ...................................................................................4
§ 812 Schedule 1 (17) ........................................................................................4
§ 822 ...................................................................................................................4

42 United States Code
§ 1983 .........................................................................................................passim

California Business and Professions Code
§§ 26000-26250 ............................................................................................1, 10
§ 26053 ...............................................................................................................5

California Civil Code
§ 52.1 ..................................................................................................................2

California Food and Agricultural Code
§ 81000 .............................................................................................................11
§ 81000(a)(4) ....................................................................................................11
§§ 81000 et seq. .................................................................................................2
§ 81006(f)(9) .....................................................................................................11
§ 81015 ...............................................................................................................4

# TABLE OF AUTHORITIES
### (continued)

**Page**

California Health and Safety Code
§ 11000...................................................................................................10
§ 11018...................................................................................................10
§ 11018.5...........................................................................................4, 5, 10
§ 11358.....................................................................................................4
§ 11362.1..................................................................................................5
§ 11362.2..................................................................................................5
§ 11479.....................................................................................................1

**COURT RULES**

Federal Rules of Civil Procedure
12(b)(6)...............................................................................................1, 5, 6
12(f)........................................................................................................14

**OTHER AUTHORITIES**

S.B. 153 Sec. 2 Reg. Sess. 2018-2019 ..................................................................11

v

**INTRODUCTION**

There is no legally protected interest in contraband. Under both federal and state law, a *cannabis sativa L.* plant with a tetrahydrocannabinol (THC) concentration above 0.3 percent is a controlled substance (marijuana).[1] Plaintiff Apothio LLC (Apothio) admits it was growing marijuana with more than 0.3 percent THC. Complaint, paras. 62, 82 and 92 ("During 2019, Apothio provided updates on testing that included test results of plants currently above 0.3% THC."). However, Apothio claims it is exempt from rules prohibiting possession of *cannabis sativa L.* plants with greater than 0.3 percent THC because it is a research institution. Complaint, para. 8. Apothio's claims are unfounded because it is a commercial enterprise and the federal definition of industrial hemp research preempts any state definition. 7 U.S.C. § 5940(b). Furthermore, a valid warrant was issued to seize Apothio's crop based on probable cause that it was contraband because the *cannabis sativa L.* plants were marijuana as they contained 0.3 percent or more THC. Complaint, Exh. A.

Apothio's search and seizure claims also fail because California law does not require a warrant to destroy illegal marijuana. Cal. Health & Safety Code § 11479. Moreover, any search-and-seizure constitutional violation is lacking because the crops were subject to the "open fields" doctrine, which provides, that intrusion upon open fields is not an unreasonable search proscribed by the Fourth Amendment. Apothio's claims regarding violations of state and federal civil rights law, including unconstitutional search and seizure, the taking of its property, and due process violations are; therefore, uniformly unfounded. Thus, defendants California Department of Fish and Wildlife and Charlton H. Bonham, Director of the Department of Fish and Wildlife (State Defendants) move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6).

**THE COMPLAINT**

Apothio describes itself as an "emerging vertically-integrated player" in "every segment of the hemp-based market." Complaint, para. 48. Apothio also asserts that it conducts proprietary

---

[1] The Medicinal and Adult-Use Cannabis Regulation and Safety Act changed the term marijuana to cannabis in all California statutes. Cal. Bus. & Prof. Code §§ 26000-26250. However, Federal law refers to "marihuana." 21 U.S.C. § 802(16). All references to *cannabis sativa L.* plants with greater than 0.3 percent THC in this brief will use marijuana.

1

1   research in the field. Complaint, paras. 50-51. Its alleged activities include previous internship

2   agreements with two local community colleges and the RAND Corporation, and a more recent

3   plan for a hemp "research hub" with Cerro Coso Community College. Complaint, paras. 65-70.

4          In February, 2019, Apothio contracted with Kern County growers to plant 500 acres of

5   *cannabis sativa L.* plants for hemp-related harvest. Complaint, paras. 85, 88. The plants were

6   grown for commercial purposes. Complaint, para. 91.

7   **I.   THE COMPLAINT'S FOURTH AMENDMENT, TAKING AND DUE PROCESS THEORIES**

8          Apothio alleges that, on October 25, 2019, state and county law enforcement agents entered

9   farm fields in Kern County and ordered the contract growers to destroy Apothio's *cannabis sativa*

10  *L.* plants. Complaint, paras. 99, 105, 108. The search was conducted with a search warrant, which

11  Apothio asserts was defective because of an incorrect description of Apothio's founder, Trent

12  Jones, and the acreage grown. Complaint, paras. 102-105. The warrant was also defective,

13  Apothio alleges, because it ignored Apothio's status as a research entity under California law, and

14  its many notices of that claim to Kern County officials. Complaint, para. 107.

15         Based on the warrant's alleged defect, Apothio brings its first and second causes of action

16  under 42 U.S.C. § 1983 as a Fourth Amendment search-and-seizure violation, and as a Fourteenth

17  Amendment violation of due process. Complaint, paras. 166, 172. The third cause of action

18  alleges the crop eradication and "the decision of the Defendants to prohibit Plaintiff's hemp

19  Production" was a Fifth Amendment "taking" brought as a 42 U.S.C. § 1983 action. Complaint,

20  paras. 179-180. The same search-and-seizure and due process theories are essentially repeated as

21  state civil rights violations under California's "Bane Act" (Cal. Civ. Code § 52.1), in the fourth,

22  fifth, sixth and seventh causes of action. Complaint, paras. 185, 191, 197, 203.

23  **II.   THE COMPLAINT'S CLAIM OF APOTHIO'S SPECIAL RESEARCH STATUS**

24         Apothio's complaint asserts that the warrant contained in its Exhibit A was obtained

25  through "judicial deception." Complaint, para. 166. Apothio insists it has an exemption from state

26  and federal cannabis and hemp control under its status as an "Established Agricultural Research

27  Institution" (EARI) "under both federal and state law," citing "7 U.S.C. § 5940(b) and Cal. Food

28  & Agric. Code §§ 81000 et seq." Complaint, para. 3. Apothio alleges, "Apothio's own research

2

1    efforts are independently sufficient to qualify it as an EARI under California law." Complaint,

2    para. 64 (emphasis added). Based upon Apothio's "independently sufficient" research status, it

3    alleges, "Apothio is expressly permitted to grow and possess plants that contain more than 0.3%

4    THC and is also exempt from certain testing requirements applicable to other hemp growers."

5    Complaint, para. 8.

6         The complaint prays for $1 billion of lost commercial profits because Apothio "would have

7    commercialized the approximately 17 million plants in the 500 acres that Defendants destroyed."

8    Complaint, paras. 236-237.

9    **III.   THE LIABILITIES ALLEGED AGAINST INDIVIDUAL DEFENDANTS, THE STATE AND
        THE COUNTY**

10

11        The complaint also alleges the vicarious liability of the California Department of Fish and

12   Wildlife and Kern County, for the civil rights actions, as well as state tort causes of action for

13   conversion, trespass to chattels and negligence of their employees in the alleged acts. Complaint,

14   paras. 211, 220, 229. All causes of action in the complaint are alleged against "All Defendants."

15   Rather than assert a separate liability for each public entity, the complaint scatters charges of

16   vicarious liability. E.g., Complaint, paras. 198-199, 203-205.

17        While paragraph 205 is asserted against both state and county defendants, it appears to

18   allege only the Kern County Sheriff's Office is liable directly for "official policy and/or custom

19   of deliberate indifference to violations of constitutional violations by KCSO officers." Complaint,

20   para. 174. There is no specific policy or custom whatsoever alleged against State Defendants.

21   None of the causes of action allege any specific action by State Defendants, or name any

22   individual employees of the California Department of Fish and Wildlife.

23                          **MARIJUANA AND HEMP LAW OVERVIEW**

24        The *cannabis sativa L.* plant can be either industrial hemp or "marihuana" as those terms

25   are defined in applicable federal law. 21 U.S.C § 802(16). The key distinction between the two

26   designations is the concentration of THC found in the plant. A *cannabis sativa L.* plant with a

27   THC concentration of 0.3 percent or lower is "industrial hemp" that can be legally possessed or

28   grown in certain circumstances. 7 U.S.C. § 5940(a)(2). If the THC levels in a cannabis plant are

3

1    above 0.3 percent it is marijuana, a Schedule I controlled substance which cannot be legally

2    possessed, propagated, or produced under federal law except by manufacturers registered with the

3    Drug Enforcement Agency (DEA). 21 U.S.C. § 822. Apothio does not allege that they are a

4    manufacturer registered with the DEA. Federal law prohibits, even for research purposes, the

5    cultivation or possession of *cannabis sativa L.* plants that exceed 0.3 percent THC. 7 U.S.C. §

6    1639o(1) (THC concentration); 21 U.S.C. §§ 804(16), 812, Schedule 1 (c)(10) and (17).

7         California's passage in 2016 of Proposition 64 authorized the cultivation of hemp as an

8    agricultural product and for academic research, but California hemp law remained preempted by

9    federal statutes. As approved by California voters, Proposition 64 continued to limit industrial

10    hemp to no more than 0.3 percent THC "contained in the dried flowering tops, whether growing

11    or not." Cal. Health & Safety Code § 11018.5. Except when grown by licensed or registered

12    growers, cultivation of marijuana continues to be illegal under state law. Cal. Health & Safety

13    Code § 11358.

14         Federal law provides an exemption for states seeking "primary authority" over hemp

15    growing. The state is required to submit a plan that "monitors and regulates" hemp production. 7

16    U.S.C. § 1639p(a)(1). The federal statute does not preempt any state hemp law that "is more

17    stringent than this subchapter." 7 U.S.C. § 1639p(a)(3)(A). Hemp production with greater than

18    0.3 percent THC continues to be a federal violation, even with the state plan. 7 U.S.C. §

19    1639p(e)(2)(A)(3). California submitted its "State Plan" on May 1, 2020, pursuant to applicable

20    state law. Cal. Food & Agric. Code § 81015.

21                       **ARGUMENT**

22         Lacking a constitutionally protected right, the complaint's first, second and third causes of

23    action, for the alleged Fourth Amendment, Fourteenth Amendment and Fifth Amendment

24    violations, respectively, must be dismissed for failure to state a cause of action. The California

25    Bane Act claims under the fourth, fifth, sixth and seventh causes of action rely on the same

26    allegations as the first through third causes of action, and suffer the same lack of a protected right.

27    Thus, Apothio's failure to allege a legal right in its contraband crops defeats the federal civil

28    rights claims as well as its state tort claims for conversion, trespass to chattels and negligence.

1  Dismissal is proper when the complaint either fails to allege a "cognizable legal theory" or

2  fails to allege sufficient facts "to support a cognizable legal theory." Fed. R. Civ. P. 12(b)(6);

3  *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016); *Seismic*

4  *Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015). Apothio's complaint is based

5  upon its improper legal interpretations of the law. The court is "not bound to accept as true a legal

6  conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

7  Apothio ignores that there is no federal protected interest in contraband, such as marijuana.

8  21 U.S.C. §§ 801-904. Further, there are limitations on the amount of marijuana that a person can

9  possess or cultivate in California under California law. Cal. Health & Safety Code §§ 11362.1,

10  11362.2. A person must obtain a state license to engage in commercial activity related to

11  marijuana. Cal. Bus. & Prof. Code § 26053. In this case, Apothio does not allege in its complaint

12  that it has a state license permitting the commercial cultivation of marijuana in compliance with

13  California law, nor does it have such a license. Further, Apothio admits to cultivating and

14  possessing a far greater amount of marijuana than allowed under Cal. Health & Safety Code §§

15  11362.1 and 11362.2. Complaint, paras. 85, 88, 91-92. Plaintiff admits testing showed its plants

16  contained a THC concentration greater than 0.3 percent. Complaint, paras. 62, 82, 92. Thus, the

17  plants in question were not "industrial hemp" under either federal or state law. 7 U.S.C. §

18  5940(a)(2); Cal. Health & Safety Code § 11018.5. Accordingly, the crops were contraband and

19  could not be possessed under any circumstance. Apothio's legal conclusion that it is immune

20  from the laws applicable to possessing and growing marijuana because it is a "research" entity is

21  wrong. Nor is it material to the warrant because "probable cause does not require officers to rule

22  out a suspect's innocent explanation for suspicious facts." *District of Columbia v. Wesby*, 138 S.

23  Ct. 577, 588 (2018).

24  As discussed below, law enforcement had a good faith reason to believe, based on testing

25  and other information, that Apothio's *cannabis sativa L.* plants were marijuana because they

26  contained over 0.3 percent THC. The defendants appropriately destroyed the contraband as

27  required and authorized by law. Cal. Health & Safety Code § 11479; 21 U.S.C. § 801.

28  / / /

5

1  I.   **THERE IS NO PROPERTY RIGHT IN CONTRABAND**

2       The Eastern District of California has repeatedly granted motions to dismiss under Fed. R.

3  Civ. P. 12(b)(6) based upon findings that no person can have a legally protected interest in

4  contraband per se. *Lull v. County of Placer*, 2018 WL 4335572, at *3 (E.D. Cal. September 11,

5  2018); *Schmidt v. County of Nevada*, 2011 WL 2967786, at *5 (E.D. Cal. July 19, 2011). Under

6  "federal law, marijuana is contraband per se, which means no person can have a cognizable legal

7  interest in it." *Id.* Thus, "courts in this district have dismissed 'marijuana as property' cases

8  brought under the Fourteenth Amendment." *Torres v. County of Calaveras*, 2018 WL 1763245, at

9  *2 (E.D. Cal. Apr. 12, 2018). "The same principle holds true for any governmental taking of

10 personal property under the Fifth Amendment." *Id.*

11      The Eastern District of California recently dealt with "the murky interface of California

12 state law permitting the cultivation and sale of marijuana in some circumstances and the United

13 States federal law banning all such activities." *Citizens Against Corruption v. County of Kern*,

14 2019 WL 1979921, at *3 (E.D. Cal. May 3, 2019). In *Citizens Against Corruption*, the court

15 recognized the "insurmountable hurdle that federal law does not recognize any protectable liberty

16 or property interest in the cultivation, ownership, or sale of marijuana." *Id.* Thus, "plaintiff cannot

17 recover damages as a result of the confiscation or destruction of marijuana because he had no

18 cognizable property interest in the marijuana." *Schmidt*, 2011 WL 2967786, at *6.

19      The complaint attempts to plead around the contraband status of the Apothio *cannabis*

20 *sativa L.* plants by asserting legal conclusions as facts. "Only factual allegations must be accepted

21 as true in ruling on a Rule 12(c) motion. Legal conclusions, artfully crafted as factual allegations,

22 are irrelevant." *Kennerly v. Montgomery Cty. Bd. of Comm'rs*, 257 F. Supp. 2d 1037, 1044 (S.D.

23 Ohio 2003). The complaint admits that law enforcement tested the plants. Complaint, para. 123.

24 Apothio criticizes at great length the method of testing. Complaint, paras. 124-139. Yet, it cites to

25 no studies of its own showing its plants' THC levels were below 0.3 percent. Instead, Apothio

26 argues that it had no limit on how much THC its plants could have, and its self-proclaimed status

27 as a "research institution" entitles it to possess unregulated cannabis plants. Further, Apothio

28 contends it was under no obligation to test those plants. Complaint, para. 107. Nevertheless, law

6

1    enforcement's testing found Apothio *cannabis sativa L.* plants were contraband, and acted

2    accordingly.

3    **II.    LACKING A PROTECTED INTEREST, APOTHIO'S DUE PROCESS CLAIMS FAIL**

4         As noted above, neither state nor federal law allows Apothio to claim a protected interest in

5    marijuana. Without a protected interest, the complaint's due process claims in its second, sixth

6    and seventh causes of action do not state a claim.

7         "To obtain relief on § 1983 claims based upon procedural due process, the plaintiff must

8    establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a

9    deprivation of the interest by the government; [and] (3) lack of process.' " *Guatay Christian*

10   *Fellowship v. County of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011). As indicated above,

11   federal and state law recognize *cannabis sativa L.* plants with 0.3 percent THC are marijuana.

12   Apothio cultivated and possessed a significantly larger amount of marijuana than a person is

13   allowed under state law. Apothio did not have a state license to engage in commercial activity.

14   Apothio's crops were, thus, illegal contraband. Therefore, Apothio has no protected property

15   interest in its marijuana and cannot state a claim under California's Bane Act. *Schmidt*, 2011 WL

16   2967786, at *6.

17        As with the complaint's allegations of a Fourth Amendment search and seizure violation,

18   the due process claims contingent upon those violations also fail to state a cause of action.

19   **III.   THE WARRANT WAS VALID**

20        The lynchpin of Apothio's civil rights claim is the alleged lack of probable cause to support

21   the warrant. Under the heading of "Illegal and Irrational" testing, Apothio alleges that because it

22   "frequently communicated with Defendants about its harvest, plans, and adherence to California's

23   hemp laws, Defendants knew, or reasonably should have known, that there was no probable

24   cause." Complaint, para. 122. Apothio alleges the search warrant did not have the right

25   information "regarding Apothio's communications with the Defendants and Apothio's status as

26   an EARI." Complaint, para. 166.

27        This allegation ignores the actual basis for eradication of the plants: they were contraband.

28   "When faced with two possible explanations, only one of which can be true and only one of

7

1    which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their

2    favored explanation but are also consistent with the alternative explanation." *In re Century*

3    *Aluminum Co. Security Litigation*, 729 F.3d 1104, 1108 (9th Cir. 2013). Here, the illegal THC

4    level provides the essential good cause for the warrant rendering Apothio's research status

5    immaterial.

6    **A.    The Warrant, Although Valid, Was Not Needed to Destroy the Contraband**

7    Defendants' good faith belief in the probable cause for the warrant is presumed. *United*

8    *States v. Leon*, 468 U.S. 897, 920-924 (1984). Thus, the warrant here is presumed valid. A party

9    challenging a search will lose if either: (1) the warrant issued was supported by probable cause; or

10   (2) it was not, but the officers executing it reasonably believed that it was. *Id.* Probable cause "is

11   not a high bar" *Kaley v. United States*, 571 U.S. 320, 338 (2014). It "requires only a probability or

12   substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*,

13   462 U.S. 213, 232 (1983). To state a 42 U.S.C. § 1983 claim for a Fourth Amendment violation

14   for lack of probable cause, the complaint must allege the warrant falls within the "narrow

15   exception" that it would be "entirely unreasonable" for an officer to believe that there was

16   probable cause. *Messerschmidt v. Millender*, 565 U.S. 535, 549 (2012).

17   Apothio admits it has never seen the statement of probable cause. Complaint, para. 153.

18   The complaint alleges the search was conducted pursuant to Cal. Health & Safety Code § 11479.

19   Complaint, para. 108. However, Apothio provides no facts to support its claims that there was no

20   probable cause for the warrant. Rather, Apothio alleges that defendants knew or should have

21   known that Apothio was an "EARI" and, therefore, Apothio was exempt from any restrictions

22   that might apply to any other hemp or marijuana grower. Complaint, para. 166. On its face,

23   Apothio's presumption is not material to the issuance of the warrant because the warrant is

24   presumed to be issued based upon probable cause for the seizure of the plants.

25   Thus, Apothio jumps to the narrow exception that an officer could not reasonably believe

26   the warrant to be valid. Apothio, therefore, must show it was entirely unreasonable for an officer

27   to believe there was probable cause. Apothio attempts to do so by claiming that it is a "research"

28   institution. Yet, Apothio provides no facts supporting any claim that its plants did not exceed 0.3

8

1  percent THC, or legal basis that the excessive THC level was excused because Apothio was

2  involved in the development of industrial hemp, or evidence that it was unreasonable for the

3  defendants to believe that the crop exceeded that legal limit. The warrant is, therefore, presumed

4  to have sufficient probable cause. Thus, the complaint's causes of action based upon the warrant's

5  insufficiency should be dismissed.

6       **B.   Destruction of the Contraband Was Legal**

7       Apothio complains its plants were destroyed too quickly. Complaint, paras. 116, 118.

8  Apothio does not allege this as a basis for its causes of action. See, e.g. Complaint, para. 166. In

9  any event, the fault Apothio finds is again contrary to law. Cal. Health & Safety Code § 11479,

10  allows "a suspected controlled substance," including marijuana, "may be destroyed without a

11  court order by the chief of the law enforcement agency or a designated subordinate." Apothio's

12  contraband plants were promptly destroyed with the cooperation of the contract growers.

13  Therefore, no 42 U.S.C. § 1983 or Bane Act violation can plausibly be alleged since the

14  defendants destroyed contraband in accordance with the law.

15       **C.   Open Fields Searches of This "Heavily Regulated" Cannabis Industries Are**
16           **Permitted**

17       The "open fields doctrine" provides that a search of an open field, such as those here, is not

18  a violation of the Fourth Amendment Law enforcement officers inspected fields owned by the

19  private farmers named and described in the warrant. Complaint, Exh. A. The fields were not

20  owned by Apothio. Rather, Apothio contracted with the owners to grow the marijuana.

21  Complaint, para. 85. The pictures in the complaint leave no question that the fields here are "open

22  fields," with no buildings nearby. Complaint at 30-31.

23       A grower of *cannabis sativa L.* plants on hundreds of open acres, regardless of "hemp"

24  signage, can expect no privacy protection under the Fourth Amendment. The "government's

25  intrusion upon the open fields is not one of those 'unreasonable searches' proscribed by the text

26  of the Fourth Amendment." *Oliver v. United States*, 466 U.S. 170, 177 (1984); *Hester v. United*

27  *States*, 265 U.S. 57, 59 (1924) ("the special protection accorded by the Fourth Amendment to the

28  people in their 'persons, houses, papers and effects,' is not extended to the open fields.").

9

1    An expectation by Apothio of privacy is further eroded because it is part of a "closely

2  regulated" industry. *New York v. Burger*, 482 U.S. 691, 702 (1987). Marijuana, even where it may

3  be legal, is closely regulated under the "Medicinal and Adult-Use Cannabis Regulation and

4  Safety Act" (Cal. Bus. & Prof. Code §§ 26000-26250), the "California Uniform Controlled

5  Substances Act" (Cal. Health & Safety Code §§ 11000, 11018, 11018.5), and the Federal

6  "Controlled Substances Act" (21 U.S.C. §§ 801-904). Because the plants are closely regulated,

7  subject to regular reporting and inspection, and are located in open fields, Apothio cannot argue

8  there was any reasonable expectation of privacy, and even "warrantless inspection of commercial

9  premises may well be reasonable within the meaning of the Fourth Amendment" to further the

10 regulatory scheme. *Burger*, 482 U.S. at 702.

11    In this instance, law enforcement inspected the fields, found violations of applicable law,

12 and the plants were destroyed. These actions are not a constitutional violation, but were a proper

13 enforcement of the law for the protection of public safety. Thus, Apothio's alleged constitutional

14 violations again fail because no protected constitutional interest in marijuana exists.

15 **IV.   APOTHIO'S "RESEARCH" STATUS IS IMMATERIAL TO PROBABLE CAUSE**

16    The complaint alleges there were mistakes in the statement of probable cause, particularly

17 an alleged failure to recognize Apothio's EARI status. The complaint alleges, "As an EARI,

18 Apothio is expressly permitted to grow and possess plants that contain more than 0.3% THC."

19 Complaint, para. 8. Apothio has no plausible basis for a conclusion that the warrant was based or

20 not based upon whether or not Apothio was a research institution.

21    Apothio must make "a substantial showing of deception" in order for the court to

22 "determine the materiality of the allegedly false statements or omissions." *Ewing v. City of*

23 *Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009). Apothio must also demonstrate "the magistrate

24 would not have issued the warrant with false information redacted, or omitted information

25 restored." *Olvera v. County of Sacramento*, 932 F.Supp.2d 1123, 1152 (E.D. Cal. 2013). Further,

26 Apothio must also establish the mistakes were material to the warrant issued. *Advanced Bldg. &*

27 *Fabrication, Inc. v. California Highway Patrol*, 781 F.App'x 608, 610 (9th Cir. 2019).

28 */ / /*

1    Apothio cannot meet any of these standards. Apothio cannot establish it is an EARI. If

2    Apothio was an EARI it would not have been permitted to grow industrial hemp for a commercial

3    profit under California law. Cal. Food & Agric. Code § 81000. Therefore, Apothio was either not

4    growing for profit and did not sustain its claimed losses or it was committing a crime and there

5    was probable cause to issue the warrant. In any case, federal statutes on legitimate industrial

6    hemp research preempt state statutes defining EARIs. Therefore, Apothio's EARI status is

7    irrelevant because no federally protected right was implicated in the destruction of the cannabis

8    plants in question.

9    **A.    Apothio Is Not an Established State Agricultural Research Institution**

10    Under Cal. Food & Agric. Code § 81000(a)(4)[2], the term "Established agricultural research

11    institution" means an institution that is either of the following:

12    (A) A public or private institution or organization that maintains land or facilities for
      agricultural research, including colleges, universities, agricultural research centers,
13    and conservation research centers.

14    (B) An institution of higher education, as defined in Section 101 of the federal Higher
      Education Act of 1965 (20 U.S.C. Sec. 1001), that grows, cultivates, or manufactures
15    industrial hemp for purposes of research conducted under an agricultural pilot
      program or other agricultural or academic research.
16

17    Apothio's complaint clearly states that it falls under neither of these categories. It is not a

18    college or education institution. It is not growing cannabis "for agricultural research." As

19    thoroughly laid out in the complaint, Apothio's purpose is commercial. Complaint, paras. 38-47.

20    Apothio's purpose is the "commercialization of its hemp." Complaint, para. 247. "But for

21    Defendants' misconduct, Plaintiff would have commercialized" the plants. Complaint, para. 237.

22    Apothio claims it is exempt from the 0.3 percent THC limit based upon Cal. Food & Agric. Code

23    § 81006(f)(9):

24    Established agricultural research institutions shall be permitted to cultivate or possess
      industrial hemp with a laboratory test report that indicates a percentage content of
25    THC that is greater than three-tenths of 1 percent if that cultivation or possession
      contributes to the development of types of industrial hemp that will comply with the
26    three-tenths of 1 percent THC limit established in this division.

27    [2] Incorrectly cited as Cal. Health & Safety Code in the complaint at paragraphs 34 and 49.
      In October 2019, the same language cited here under Cal. Food & Agric. Code § 81000(a)(4) was
28    previously at Cal. Food & Agric. Code § 81000(c). S. B. 153 Sec. 2 Reg. Sess. 2018-2019.

11

1    Apothio is not an "EARI," and therefore cannot claim shelter from this clause. Complaint,

2    para. 35. Apothio claims its crops are worth $1 billion. Moreover, Apothio admits it intends to

3    manufacture and sell cannabis derivatives to consumers not for the "development of types of

4    industrial hemp that will comply with the three- tenths of 1 percent THC limit." Complaint, paras.

5    1, 5, 12, 35, 236. These allegations, when taken as true, clearly do not support Apothio's claims it

6    is an EARI or any similar kind of research institution.

7    **B.    Federal Hemp Law Preempts any State Research Loophole**

8    Even if Apothio meets the state definition of an established agricultural research institution,

9    it is preempted by 7 U.S.C § 5940(a)(1), emphases added, which provides:

10   The term "agricultural pilot program" means a pilot program to study the growth,
     cultivation, or marketing of industrial hemp (A) in States that permit the growth or
11   cultivation of industrial hemp under the laws of the State; and (B) in a manner that--

12   (i) ensures that only institutions of higher education and State departments of
     agriculture are used to grow or cultivate industrial hemp;
13

14   (ii) requires that sites used for growing or cultivating industrial hemp in a State be
     certified by, and registered with, the State department of agriculture; and

15   (iii) authorizes State departments of agriculture to promulgate regulations to carry out
     the pilot program in the States in accordance with the purposes of this section.
16

17   California never promulgated regulations for any pilot programs, and California has only

18   recently presented a State Plan to the United States Department of Agriculture (USDA) that

19   would require registration of EARIs. The State Plan is not yet approved. Apothio presents no

20   facts, nor can it, showing it meets any of the requirements of 7 U.S.C § 5940. Apothio is neither

21   an institution of higher learning nor a state department of agriculture.

22   Finally, Apothio claims it has "map permits" permitting the growth of the plants.

23   Complaint, paras. 78, 86, 87. Apothio alleges that it "filed registration materials with Kern

24   County" and that "in response, the Kern County Agricultural Commissioner issued several

25   additional map permits." Complaint, para 86. Apothio represents that these map permits were

26   "issued for the hemp growing." Complaint, para 87. However, these documents are "restricted

27   material" permits, used for state pesticide regulation and applied to all farmers of any crop. State

28   Defendants' Request for Judicial Notice, Exhibit A.

1  Apothio presents no facts, nor can it, showing it meets any of the requirements of 7 U.S.C §

2  5940, because Apothio is neither an institution of higher education nor a state department of

3  agriculture. Further, the 500 acres destroyed were not "certified" as research locations because

4  California has never promulgated regulations "to carry out pilot programs." 7 U.S.C §

5  5940(a)(1)(iii). Under federal law, applicable at the time of the eradication, legitimate industrial

6  hemp can only be cultivated for "agricultural or academic research" 7 U.S.C. § 5490(b)(1).

7  **V.   CAUSAL CONNECTIONS WITH DEFENDANTS' ACTIONS ARE LACKING**

8  To allege a civil rights violation under 42 U.S.C. § 1983, a plaintiff cannot throw a blanket

9  accusation over multiple defendants. The plaintiff must allege an actual connection or link

10  between the actions of the named defendants and the alleged deprivations. *Monell v. Department*

11  *of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). Moreover, "[t]he

12  normal presumption in litigation is that parties must use their real names." *Doe v. County of Kern*,

13  2017 WL 5291687, at *3 (E.D. Cal. Nov. 13, 2017) (quoting *Doe v. Kamehameha Schools*, 596

14  F.3d 1036, 1042 (9th Cir. 2010)).

15  Apothio fails to meet these pleading standards. Instead, the complaint throws all the

16  defendants into one basket claiming they "intentionally authorized or directed the individual

17  Defendants to undertake the actions that violated Apothio's rights." Complaint, para. 167. In

18  examining the complaint, it is not possible to discern which defendants allegedly did what. For

19  example, Apothio fails to identify any links between the alleged constitutional violations and any

20  specific actions of California Department of Fish and Wildlife's Director Charlton H. Bonham.

21  Apothio lumps all the defendants together in its allegations. This defect precludes defendants

22  from asserting immunities that may vary between them. For example, State Defendants may be

23  immune under the Eleventh Amendment or the qualified immunity. Hence, the specific acts of the

24  individuals and entities named must be factually alleged. *Scalia v County of Kern*, 308 F.Supp.3d

25  1064, 1072 (E.D. Cal. 2018) (The complaint must specify which defendants are responsible for

26  each constitutional violation and the factual basis.). Apothio's failure to specify these allegations

27  prejudices the rights of the various defendants to the differing immunities and other defenses each

28  party may have.

13

1    Nor can Apothio avoid this deficiency by utilizing "doe" defendants because it does not

2    specify who did what to result in Apothio's alleged constitutional violations. For example,

3    Apothio identifies "doe" defendants "who participated, either directly or indirectly, in the

4    preparation and/or execution of the search warrant and/or the destruction of Apothio's property."

5    Complaint, para. 22. This generalized allegation does not provide the necessary specificity

6    required by *Monell*. Thus, these claims should be dismissed.

7    **VI.    IMPROPER MATTER IN THE COMPLAINT SHOULD BE STRICKEN**

8    Under Fed. R. Civ. P. 12(f), the court may strike "any redundant, immaterial, impertinent,

9    or scandalous matter." Allegations which are "[S]o unrelated to plaintiffs' claims as to be

10   unworthy of any consideration as a defense" should be stricken. *EEOC v. Ford Motor Co.*, 529

11   F.Supp. 643, 644 (D. Col. 1982). Immateriality under this rule has been defined as "any matter

12   having no value in developing the issues of a case." *Oaks v. City of Fairhope, Ala.*, 515 F.Supp.

13   1004, 1032 (S.D. Ala. 1981). Apothio's complaint contains numerous paragraphs of immaterial

14   matters.

15   For example, the complaint explains the healing powers of CBD. Complaint, paras. 4-5, 39-

16   42, 46-47, 54, 58-60, 63, 74, 84. Those allegations are immaterial to the issues associated with the

17   various constitutional violations. At best, they show Apothio's commercial objectives for the

18   illegal crops that were appropriately destroyed. Additionally, the complaint's lengthy presentation

19   in paragraphs 55-61 of a 2015 newspaper article consists of an impertinent and scandalous matter,

20   and is immaterial to the core issues of the case, that the plants were contraband and the warrant

21   was valid.

22   The complaint also references several "map permits" that Apothio claims authorizes it to

23   cultivate hemp. Complaint, paras. 72, 74, 78, 86. These permits do not provide any such

24   permission and, therefore, are both immaterial and misleading. Rather, the documents address the

25   application of pesticides by the farmers with whom Apothio contracted. State Defendants'

26   Request for Judicial Notice, Exh. A. Based upon these mischaracterizations of the map permits,

27   the references should be struck because they are immaterial.

28   / / /

14

1    Apothio alleges that the Kern County Agriculture Commissioner's office issued six permits,

2   2018 Map-Permit Numbers 1500007, 1502966, 1500027, 1500624, 1505528, and 1502277,

3   identifying each field Apothio's hemp would be planted. Complaint, para. 86. Apothio further

4   claims by issuing the permits, "the County acknowledged and certified that Apothio was growing

5   hemp." Complaint, para. 87. A review of the complete permit reveals their true nature—they are

6   not "map permits," but restricted materials permits which are used to identify and report the use

7   of listed pesticides in specified locations. Permits must identify crops being grown at locations

8   where pesticides will be used because certain pesticides are incompatible with certain crops.

9   Apothio misconstrues the nature of these permits by implying that they somehow represent some

10   form of authorization by Kern County for growing marijuana. They do no such thing. Therefore,

11   these documents are immaterial to the claims Apothio has raised. The documents and the related

12   allegations in paragraphs 72, 74, 78, and 86-87 should be struck.

## CONCLUSION

14    No protected property interest was implicated when the farmers with whom Apothio had

15   contracted were ordered to destroy the illegal marijuana cultivated on their lands, nor when the

16   marijuana was destroyed on the property. Therefore, the court is respectfully requested to dismiss

17   the complaint against State Defendants.

18   Dated:  June 12, 2020                          Respectfully Submitted,

19                                                   XAVIER BECERRA
                                                     Attorney General of California
20                                                   BRUCE D. MCGAGIN
                                                     STACEY L. ROBERTS
21                                                   Supervising Deputy Attorney's General
                                                     ETHAN A. TURNER
22

23
                                                        */s/ Kelly Smith*
24                                                   KELLY T. SMITH
                                                     Deputy Attorney's General
25                                                   *Attorneys for Defendant State of California,*
                                                     *by and through California Department of*
26                                                   *Fish and Wildlife and Charlton H. Bonham,*
                                                     *Director*
27   SA2020300599
     34152545.docx
28

                                          15