1   Katherine Eskovitz (SBN 255105)         Sean Eskovitz (SBN 241877)
    ROCHE CYRULNIK FREEDMAN LLP            ESKOVITZ LAW
2   1158 26th Street, No. 175              1217 Wilshire Boulevard,
    Santa Monica, CA 90403                 No. 3683
3   keskovitz@rcfllp.com                   Santa Monica, CA 90402
                                           seane@eskovitz.com
4   Kyle Roche
    Joseph M. Delich                       BRANT W. BISHOP, P.C.
5   Richard R. Cipolla                     2000 Pennsylvania Avenue, NW
    ROCHE CYRULNIK FREEDMAN LLP            Suite 7000
6   99 Park Avenue, 19th Floor             Washington, DC 20006
    New York, NY 10016                     brant@bishop.us
7   kyle@rcfllp.com
    jdelich@rcfllp.com
8   rcipolla@rcfllp.com

9    *Counsel for Plaintiff Apothio LLC*

10                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF CALIFORNIA

11   APOTHIO, LLC,                         No. 1:20-CV-00522-NONE-JLT

12              Plaintiff,

13         v.                              **JOINT OPPOSITION TO
                                           KERN DEFENDANTS'**[1]
14   KERN COUNTY; KERN COUNTY              **(1) MOTION TO DISMISS
     SHERIFF'S OFFICE; CALIFORNIA          AND (2) MOTION FOR MORE
15   DEPARTMENT OF FISH AND WILDLIFE;      DEFINITE STATEMENT
     DONNY YOUNGBLOOD; JOSHUA              FILED BY DEFENDANTS
16   NICHOLSON; CHARLTON H. BONHAM;        KERN COUNTY, KERN
     JOHN DOES #1 THROUGH #10,             COUNTY SHERIFF'S
17   UNKNOWN AGENTS OF THE KERN            OFFICE, DONNY
     COUNTY SHERIFF'S OFFICE; JOHN         YOUNGBLOOD, AND
18   DOES #11 THROUGH #20, UNKNOWN         JOSHUA NICHOLSON**
     AGENTS OF THE CALIFORNIA FISH
19   AND WILDLIFE DEPARTMENT,

20              Defendants.

21

22   _____

23   [1] The "Kern Defendants" include Kern County, Kern County Sheriff's Office, Donny Youngblood,
     Joshua Nicholson, and John Does #1-10 Agents of the Kern County Sheriff's Office. The "F&W
     Defendants" include Department of Fish and Wildlife, Charlton Bonham, and John Does #11-20 Agents
     of the Department of Fish and Wildlife.

1

# TABLE OF CONTENTS

2

TABLE OF AUTHORITIES ........................................................................................ iv

3

INTRODUCTION ................................................................................................... 1

4

FACTUAL BACKGROUND .................................................................................... 2

5

ARGUMENT ......................................................................................................... 4

6

I.  THE MOTION TO DISMISS MUST BE DENIED BECAUSE IT FAILS
    TO ACCEPT APOTHIO'S ALLEGATIONS AS TRUE AND INSTEAD
7   MOVES TO STRIKE FACTS THAT PRECLUDE DISMISSAL. ........................... 4

8   A.  Defendants ignore the legal standard for a motion to dismiss ................................. 4

9   B.  Defendants' claim that the destroyed crops were "contraband" depends on
        improper and unsupported factual assertions ............................................. 4

10

11  II.  THE MOTION TO DISMISS FAILS BECAUSE IT MISCHARACTERIZES
         FEDERAL AND STATE LAW .................................................................... 6

12  A.  The 2018 Farm Bill legalized hemp under federal law by removing it from
        Schedule I of the Controlled Substances Act. .......................................... 7

13

14  B.  California law currently governs hemp production and did so in October 2019 ...... 8

    C.  Apothio's allegations establish its eligibility to cultivate hemp under the
15      California and federal research exemptions ........................................... 10

16  D.  The motion should be denied because Defendants are equitably estopped
        from arguing that State and Federal law precluded Apothio from
17      growing hemp ............................................................................... 12

18  E.  Hemp that exceeds 0.3% THC is not contraband per se ........................................ 14

19  III. THE MOTION TO DISMISS FAILS BECAUSE APOTHIO'S FACTUAL
         ALLEGATIONS ARE MORE THAN SUFFICIENT TO STATE FOURTH
         AMENDMENT CLAIMS ......................................................................... 16

20

21  A.  Apothio's allegations that Defendant Nicholson omitted material facts state
        a judicial deception claim ............................................................... 16

22      1.  Apothio faces a low burden for pleading material omissions ...................... 16

23      2.  The well-pleaded omissions in the probable cause affidavit are material ....... 18

3.  California Health & Safety Code § 11479 does not permit the seizure of private property without probable cause .......................................................21

IV. THE MOTION TO DISMISS FAILS BECAUSE APOTHIO'S FACTUAL ALLEGATIONS ARE MORE THAN SUFFICIENT TO PLEAD MONELL CLAIMS AGAINST THE KCSO AND THE COUNTY ......................................... 21

A.  Apothio allegations are more than sufficient to allege a failure to train theory......22

B.  Apothio's Allegations are More than Sufficient to Establish a Ratification Theory ...........................................................................................................23

V.  THE MOTION TO DISMISS FAILS BECAUSE APOTHIO'S ALLEGATIONS ARE MORE THAN SUFFICIENT TO ESTABLISH A CLAIM AGAINST SHERIFF YOUNGBLOOD ........................................................................... 23

VI. THE MOTION TO DISMISS FAILS BECAUSE APOTHIO'S ALLEGATIONS ARE MORE THAN SUFFICIENT TO ESTABLISH BANE ACT CLAIMS ......... 23

VII. DEFENDANTS DO NOT NEED A MORE DEFINITE STATEMENT ............... 24

CONCLUSION.......................................................................................................... 25

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Alameda Cty. Deputy Sheriff's Assn. v. Alameda Cty. Employees' Ret. Assn.*,
  19 Cal. App. 5th 61 (2018), *as modified* (Feb. 5, 2018) ........................................................ 12

4

5

*Allen v. Kumagai*,
  356 F. App'x 8 (9th Cir. 2009) ........................................................................................ 14, 20

6

*Armstrong v. Asselin*,
  734 F.3d 984 (9th Cir. 2013) ................................................................................................... 18

7

8

*Bay Area Rapid Transit Dist. v. Superior Court*,
  38 Cal.App.4th 141 (1995) ....................................................................................................... 23

9

*Bilbo v. Cty. of Alameda*,
  No. 17-CV-00932, 2017 WL 4024649 (Sept. 13, 2017) ......................................................... 19

10

*Bond v. United States*,
  572 U.S. 844 (2014) ..................................................................................................................... 9

11

12

*Bravo v. City of Santa Maria*,
  639 F. App'x 412 (9th Cir. 2016) ............................................................................................. 23

13

*Bravo v. City of Santa Maria*,
  665 F.3d 1076 (9th Cir. 2011) .................................................................................................. 16

14

15

*Brown v. Alexander*,
  No. 13-CV-01451, 2013 WL 6578774 (N.D. Cal. Dec. 13, 2013) ..................................... 17, 19

16

*C.Y. Wholesale, Inc. v. Holcomb*,
  No. 19 Civ. 02659, 2019 WL 7497135 (S.D. Ind. Sept. 13, 2019) ............................................ 8

17

18

*Cty. Inmate Tel. Serv. Cases*,
  48 Cal.App.5th 354 (2020) ........................................................................................................ 24

19

*DeSoto v. Yellow Freight Sys., Inc.*,
  957 F.2d 655 (9th Cir. 1992) ..................................................................................................... 26

20

21

*Donahoe v. Arpaio*,
  869 F. Supp. 2d 1020 (D. Ariz. 2012*), aff'd sub nom. Stapley v. Pestalozzi*,
  733 F.3d 804 (9th Cir. 2013) ..................................................................................................... 18

22

*Estate of Alejandro Sanchez v. Cty. of Stanislaus*,
  No. 18-CV-00977, 2019 WL 1745868 (E.D. Cal. Apr. 18, 2019) ........................................... 19

23

*Ewing v. City of Stockton*,
  588 F.3d 1218 (9th Cir. 2009) ................................................................. 18

*Finkelstein v. San Mateo Cty. Dist. Attorney's Office*,
  No. 18-CV-09, 2019 WL 1048244 (N.D. Cal. Mar. 5, 2019) ................................. 22

*Frudden v. Pilling*,
  877 F.3d 821 (9th Cir. 2017) ................................................................. 18

*Galbraith v. Cty. of Santa Clara*,
  307 F.3d 1119 (9th Cir. 2002) ............................................................... 17

*Gonzales v. City of Peoria*,
  722 F.2d 468 (9th Cir. 1983) ................................................................. 20

*Gravelet-Blondin v. Shelton*,
  728 F.3d 1086 (9th Cir. 2013) ........................................................... 21, 23

*Harte v. Bd. of Commissioners of Cty. of Johnson, Kansas*,
  864 F.3d 1154 (10th Cir. 2017) .............................................................. 22

*Hemp Indus. Ass'n. v. Drug Enf't Admin.*,
  357 F.3d 1012 (9th Cir. 2004) ............................................................... 16

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ............................................................... 20

*In re Joshua H.*,
  13, Cal.App.4th 1734 (1993) ................................................................. 23

*Innovative Nutraceuticals, LLC v. United States*,
  No. 18-cv-1400, 2019 WL 3017672 (C.D. Cal. Mar. 28, 2019) ............................ 6, 16

*Johnson v. Shasta Cty.*,
  83 F. Supp. 3d 918 (E.D. Cal. 2015) ......................................................... 17

*Klein v. City of Beverly Hills*,
  865 F.3d 1276 (9th Cir. 2017) ............................................................... 17

*Knapps v. City of Oakland*,
  647 F. Supp. 2d 1129 (N.D. Cal. 2009) ....................................................... 21

*Larez v. City of L.A.*,
  946 F.2d 630 (9th Cir. 1991) ................................................................. 23

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) .................................................................. 4

*Magluta v. Samples,*
  256 F.3d 1282 (11th Cir. 2001) ................................................................ 25

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
  519 F.3d 1025 (9th Cir. 2008) .................................................................. 4

*Merritt v. Cty. of Los Angeles,*
  875 F.2d 765 (9th Cir. 1989) .................................................................... 21

*Messerschmidt v. Millender,*
  565 U.S. 535 (2012) ................................................................................. 18

*Nunes v. Cty. of Stanislaus,*
  No. 17-CV-633, 2017 WL 3670926 (E.D. Cal. Aug. 25, 2017) ............. 24

*O'Neal v. Johnson,*
  No. 14-CV-2374, 2017 WL 416128 (E.D. Cal. Jan. 31, 2017) ............... 20

*Olson v. Champaign Cty.,*
  784 F.3d 1093 (7th Cir. 2015) .................................................................. 17

*Olvera v. Cty. of Sacramento,*
  932 F. Supp. 2d 1123 (E.D. Cal. 2013) ................................................... 18

*One 1958 Plymouth Sedan v. Com. of Pa.,*
  380 U.S. 693 (1965) ................................................................................. 14

*People v. Hobbs,*
  7 Cal. 4th 948 (1994) ............................................................................... 17

*People v. Jackson,*
  No. G041185, 2011 WL 902029 (Cal. Ct. App. Mar. 16, 2011) ............. 21

*Reese v. Cty. of Sacramento,*
  888 F.3d 1030 (9th Cir. 2018) .................................................................. 24

*Rubie's LLC v. First Am. Title Co.,*
  No. 1:18-CV-01052 DAD, 2018 WL 6419674 (E.D. Cal. Dec. 6, 2018) ................. 1

*Sanchez v. Hartley,*
  810 F.3d 750 (10th Cir. 2016) .................................................................. 17

*Sandoval v. Cty. of Sonoma,*
  912 F.3d 509 (9th Cir. 2018), *cert. denied* 140 S. Ct. 142 (2019) ........... 24

*Schafer v. City of Los Angeles,*
  237 Cal.App.4th 1250 (2015) ................................................................... 12

*Shin v. Time Squared Glob.*, LLC,
No. 15-CV-00943, 2015 WL 13284952 (C.D. Cal. Aug. 26, 2015) ................................... 25

*United States v. $186,416.00 in U.S. Currency*,
590 F.3d 942 (9th Cir. 2010) ................................................................................... 20

*United States v. Harrell*,
530 F.3d 1051 (9th Cir. 2008) ................................................................................ 14

*United States v. Henderson*,
243 F.3d 1168 (9th Cir. 2001) ................................................................................ 15

*United States v. Ramirez*,
523 U.S. 62 (1998) ................................................................................................ 24

*United States v. Talley*,
No. 19 Crim. 605, 2020 WL 3275735 (N.D. Cal. June 16, 2020) .......................... 19

*Wesley v. Campbell*,
779 F.3d 421 (6th Cir. 2015) ................................................................................ 17

**Statutes**

20 U.S.C. § 1001 ......................................................................................................... 10

Agriculture Act of 2014 (2014 Farm Bill) Pub. L. No. 113-79,
128 Stat. 649 (2014). .............................................................................................. 8

Agriculture Improvement Act of 2018 (2018 Farm Bill) Pub. L. No. 115-334,
132 Stat. 4490 (2018) .............................................................................................. 9

Cal. Food & Agric. Code § 81000 ............................................................................. 10

Cal. Food & Agric. Code § 81003 ............................................................................. 10

Cal. Food & Agric. Code § 81006 ....................................................................... 15, 20

**Treatises**

USDA, *Establishment of a Domestic Hemp Production Program*,
84 Fed. Reg. 58522-01 (Oct. 31, 2019) ............................................................. 8, 15

DEA, *Controls To Enhance the Cultivation of Marihuana for Research in the U.S.*,
85 Fed. Reg. 16292-01 (Mar. 23, 2020) ................................................................ 8

*Equitable Estoppel*, CALIFORNIA PRACTICE GUIDE: ADMINISTRATIVE LAW .............................. 12

*Statement of Principles on Industrial Hemp*, USDA, DOJ, DOJ, HHS, & FDA,
81 Fed. Reg. 53395 (Aug. 12, 2016) ...................................................................... 11

1

## INTRODUCTION[2]

2   Despite the Kern Defendants' thirty-four misguided attempts to strike the word "hemp"

3   from Apothio's Complaint, they cannot change the fact that the Kern County Sheriff's Office

4   ("KCSO") unlawfully destroyed hundreds of acres of Apothio's legal hemp crops. Apothio has

5   alleged in detail that with the assistance of the California Department of Fish and Wildlife

6   ("CDFW")—but conspicuously *without* any involvement of any federal drug enforcement

7   authority—the KCSO ignored federal and state law by treating Apothio's legal hemp as a

8   controlled substance. The Kern Defendants' main response is to claim, based on a grievous

9   distortion of the Complaint, that Apothio alleges "marijuana" was destroyed. This

10  mischaracterization and mis-citing of the allegations of the Complaint is no basis for a motion to

11  dismiss, for which the Court accepts as true Apothio's allegations that it cultivated legal hemp and

12  destroyed any hemp plants exceeding 0.3% THC on a dry weight basis. *See* ECF No. 1 ("Compl.")

13  ¶¶ 35, 62, 82, 108. Defendants repeatedly and improperly rely for their motion on alternative facts

14  beyond the well-pleaded Complaint.

15  Compounding this egregious misrepresentation of the actual facts alleged, the Kern

16  Defendants' advance an unfounded legal position that the entire California hemp industry, and

17  most of the U.S. hemp industry, is illegal. *See, e.g.*, ECF No. 18 ("MTD") at 7. That is, they afford

18  no significance to California's 2016 Proposition 64, which unambiguously authorizes hemp

19  cultivation, or to the 2018 Federal Farm Bill, which immediately legalized hemp by excluding it

20  _____

21  [2] For the Court's convenience, Apothio proposed to file a joint opposition brief, of no more than 35 pages, that would address all of the motions to dismiss that Defendants filed in this case. Because

22  Defendants would not agree and insisted on separate opposition briefs, Apothio has filed two separate briefs with some overlapping content. In addition, Apothio notes that Defendants failed to satisfy their obligation to meet and confer on the grounds presented in their motions, *see* Standing Order, Dkt. No. 2-

23  2 at 2, which could have addressed many of the baseless substantive and technical issues they raise. *See Rubie's LLC v. First Am. Title Co.*, No. 18-CV-01052, 2018 WL 6419674, at *2 (E.D. Cal. Dec. 6, 2018).

from the Controlled Substances Act. The Kern Defendants even go so far as to try to pass off a recent *petition for certiorari* in a marijuana case as a *controlling decision by the United States Supreme Court* for an entire two-page discussion in which they mistakenly argue that the federal Controlled Substances Act prevents the enforcement of Apothio's property rights. MTD at 3–4. Ignoring twenty-five years of law, the Kern Defendants also misstate the elements of a Bane Act claim, ignoring binding circuit precedent demonstrating that Apothio's allegations of KCSO's intentional and reckless violation of Apothio's constitutional rights are more than sufficient to state those claims.

Because their motion depends on these gross distortions of the operative allegations and controlling law, and others discussed further below,[3] the Kern Defendants' motion to dismiss should be denied in its entirety.

## FACTUAL BACKGROUND

Apothio cultivates hemp as an "established agricultural research institution" (EARI). Compl. ¶ 2. Both itself and in conjunction with institutes of higher learning, with whom Apothio has research agreements, Apothio studies potential uses of the cannabinoids in hemp to treat serious medical conditions, including epilepsy. *Id.* ¶¶ 2, 3.

Since the 2016 passage of Proposition 64 in California, which encourages hemp cultivation and research, and the 2018 Farm Bill, which legalized hemp by removing it as a federal controlled substance, hemp production has become widespread in California and many other states. *Id.* ¶¶ 32, 33, 34, p.2 n.1. Given its legal status and commercial benefits, California agencies and towns, including Kern County, encourage and permit businesses like Apothio to grow hemp. *Id.* ¶¶ 74, 84.

---

[3] The Kern Defendants' egregious misstatements of fact and law underscore the irony in their baseless sanctions threat. *See* MTD, at 7 n.2.

Apothio was always transparent about its business and regularly communicated about its hemp cultivation with relevant government authorities. *See, e.g.*, *id.* ¶¶ 79, 80, 86, 95, 98. Even though as an EARI Apothio was permitted to possess hemp that tested above 0.3% THC, and was not required to provide test results,[4] Apothio shared its test results with the County, and destroyed any hemp that tested above 0.3% THC dry weight, a rare occurrence. *Id.* ¶¶ 35, 62, 82, 86, 92, 108.[5] As the Complaint states, "Apothio routinely tests its plants for THC content . . . all of its hemp varietals have been independently tested . . . and certified to contain below 0.3% THC when measured in the mature, dried flower of the plants." *Id.* ¶ 61.

On October 24, 2019, Defendant Nicholson of the KCSO sought a search warrant, wrongly claiming that Apothio was illegally cultivating marijuana, a misdemeanor offense in California. *Id.* ¶ 10. Although the KCSO has thus far stonewalled Apothio's repeated efforts to obtain access in California state court to any probable cause affidavit that was submitted in support of the search warrant, Apothio alleges that the affidavit intentionally omitted material information, including (1) Apothio's legal status as a hemp grower and EARI, (2) Apothio's constant communication and transparency with the County, and (3) the County's approval and lack of any concern expressed to Apothio in meetings and written communications. *Id.* ¶ 107.

On October 25, 2019, Defendant Nicholson appeared with several officers from the KCSO and the CDFW in tactical gear, and they jointly proceeded to bulldoze *all* of Apothio's hemp crops—including two fields that Nicholson admitted to have only legal hemp—ignoring legally mandated testing procedures and their own negative test results. *Id.* ¶¶ 11, 113. Defendants destroyed 500 acres of Apothio's crops, causing enormous financial damage to the company at a

---

[4] "Hot" hemp denotes hemp that tests above 0.3% THC dry weight. Compl. ¶ 97.

[5] Younger undried hemp plants may contain relatively high levels of THC, but by the time the plants mature and are ready for harvest, that THC has often been converted to other chemicals. Compl. ¶ 43.

1  critical time in the hemp industry. *Id.* ¶¶ 1, 236, 247–51. To date, nobody has been arrested or

2  charged in connection with the matter.

3      Through its lawsuit, Apothio seeks to vindicate its constitutional and civil rights.

**ARGUMENT**

4

5  **I.  THE MOTION TO DISMISS MUST BE DENIED BECAUSE IT FAILS TO ACCEPT APOTHIO'S ALLEGATIONS AS TRUE AND INSTEAD MOVES TO STRIKE FACTS THAT PRECLUDE DISMISSAL.**

6

7      A.  Defendants ignore the legal standard for a motion to dismiss

8      On a motion to dismiss, the Court must "accept factual allegations in the complaint as true

9  and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St.*

10 *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Defendants cannot obtain

11 dismissal by contradicting, disputing, or moving to strike factual allegations because "factual

12 challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations

13 under Rule 12(b)(6)." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

14     B.  Defendants' claim that the destroyed crops were "contraband" depends on improper and unsupported factual assertions

15     Rather than accepting Apothio's allegations that the destroyed crops were hemp, the Kern

16 Defendants improperly recharacterize them as marijuana, and therefore "contraband," in order to

17 argue that Apothio has no federally protected interest in its property. MTD at 1, 3–5. But

18 Defendants cannot distort, ignore, and rewrite Apothio's complaint to suit their motion. Because

19 this contraband argument is the only asserted basis to dismiss the Fourth Amendment excessive

20 destruction, due process, takings, and state tort claims, Defendants' motion must be denied as to

21 claims One, Two, Three, Eight, Nine, and Ten.

22     Apothio's Complaint repeatedly alleges that the destroyed crops were legal hemp, as

23 defined in the 2018 Farm Bill. For example, Apothio's allegations include: "all of its hemp

1  varietals" had been "independently tested via laboratory-grade chromatographs and certified to

2  contain below 0.3% THC when measured in the mature, dried flower of the plants," Compl. ¶ 61;

3  "when Apothio plants have demonstrated high THC levels at maturity, Apothio has destroyed

4  them," *id.* ¶ 62; and, Defendant Nicholson admitted to destroying two fields containing no plants

5  above 0.3% THC, *id.* ¶ 113.[6]

6       The Kern Defendants resort to distorting Apothio's allegations in order to assert that the

7  crops were contraband. Specifically, Defendants claim that Apothio alleges "it was growing hemp

8  with a THC higher than 0.3%." MTD at 3 (citing Compl. ¶¶ 8, 35, 92, 108). But paragraphs 8, 35,

9  and 108 of the Complaint merely allege that California law *permitted* Apothio, as an EARI, to

10  possess plants in excess of 0.3%, not that the plants Defendants destroyed exceeded the THC level.

11  Paragraph 92 alleges that Apothio "remained in contact with the County to inform the County

12  about its continued work," throughout 2019, and "Apothio provided updates on testing that

13  included test results of plants currently above 0.3% THC." This sole allegation merely indicates

14  that when Apothio provided updates, it would include any results of plants that tested above 0.3%

15  THC, but there is not a single factual allegation in the fifty-eight page Complaint that any plants

16  testing above 0.3% THC remained at the time of destruction in late October 2019. To the contrary,

17  the Complaint alleges Apothio routinely destroyed hot hemp, *id.* ¶¶ 62, 82, and expressly

18  challenges the propriety and reliability of any testing—none of which has been disclosed—that

19  could have found Apothio's plants to have exceeded 0.3% THC at the time they were destroyed, *id.*

20  ¶¶ 123, 124.

21

22  _____
[6] The Complaint also explains by way of background that in 2018, Apothio's "contemporaneous chemical testing" of the crops "confirmed that the plants would have THC levels of less than 0.3% at maturity, and this indeed turned out to be the case," as "Apothio was carefully tracking the few exceptions testing above that threshold so they could be destroyed if they were not compliant with the 0.3% limit at the time of harvest." *Id.* ¶ 82.

Taken as a whole and in the light most favorable to Apothio, the Complaint clearly alleges Apothio was cultivating hemp and had destroyed any mature plants with above 0.3% THC dry weight, while Defendants destroyed 500 acres of hemp—not marijuana.

Defendants cannot wish away these allegations by moving to strike all references to Apothio's legal hemp in order to argue the Complaint fails to allege the destroyed property was hemp, not marijuana. "Taking the factual allegations in the Complaint as true," Defendants have "not demonstrated that the goods seized by [law enforcement] were in fact contraband." *Innovative Nutraceuticals, LLC v. United States*, No. 18-cv-1400, 2019 WL 3017672, at *3 (C.D. Cal. Mar. 28, 2019). Defendants' attempt to strike 34 well-pleaded allegations about Apothio's legal hemp cultivation only underscores the futility of their motion to dismiss.

## II.   THE MOTION TO DISMISS FAILS BECAUSE IT MISCHARACTERIZES FEDERAL AND STATE LAW

Even though the Complaint clearly pleads that Apothio cultivated legal hemp, not marijuana, Defendants wrongly suggest that Apothio's cultivation of hemp is not protected by federal law because "it was not possible to cultivate industrial hemp for any purpose, research or otherwise, in conformity with the 2018 Farm Bill." MTD at 6–7; *see also id.* at 5. This astounding and misguided argument challenging the legality of the entire hemp industry in California and throughout the country fails because, as explained below in Section II, Part A, it fundamentally misconstrues the 2018 Farm Bill—which immediately and broadly legalized hemp cultivation under federal law—and cynically ignores California statutes unambiguously authorizing hemp cultivation.

Defendants contend that because the USDA and California had not yet promulgated new rules for hemp cultivation pursuant to the 2018 Farm Bill, somehow California's existing legal and regulatory regime became illegal, and all the agricultural property developed in reliance thereon

1  was not property at all, but contraband. But as explained below in Part II, Section B, this is wrong.

2  In this interim period, until the USDA promulgates its own final rules or approves a new California

3  hemp plan, hemp regulation reverts to the current state regime, under which Apothio is legally

4  growing hemp as a California EARI. In any event, Defendants concede that federal law allows for

5  the cultivation of industrial hemp for research purposes under federal law (pursuant to 7 U.S.C.

6  Sec. 5940), which Apothio also satisfies for the reasons explained below in Part II, Section C.

7      Defendants did not always advocate such problematic positions. Indeed, for many months

8  before their abrupt and inexplicable about-face, Defendants supported California's lawful hemp

9  industry and acknowledged that California's EARI exemptions applied to Apothio. Therefore, they

10  should be equitably estopped from arguing contrary legal positions in this litigation.

11      Not content merely to delegitimize California's hemp industry, Defendants attempt to

12  criminalize it as well. Defendants advocate an unfounded legal position that contradicts the express

13  intent of both Congress and the California legislature. Their legal theory leads to the sweeping

14  conclusion that regardless of whether any individual or entity intends to cultivate legal hemp, the

15  entire industrial hemp industry, including any educational institutions conducting hemp research,

16  faces criminal liability (and suffers the destruction of its entire crop) any time a single flower in a

17  single plant fluctuates above 0.3% THC, a not uncommon circumstance in the course of legal hemp

18  cultivation. *See, e.g.,* Compl. ¶ 43. But they ignore all federal and state hemp laws, regulations, and

19  guidance to reach this contorted conclusion, as explained in Part II, Section E.

20      A.  The 2018 Farm Bill legalized hemp under federal law by removing it from
           Schedule I of the Controlled Substances Act.

21      The 2014 U.S. Farm Bill opened the door to hemp production in the U.S. by allowing a

22  federal research exemption to the Controlled Substances Act to permit hemp cultivation. *See*

23  *generally* Agriculture Act of 2014 (2014 Farm Bill) Pub. L. No. 113-79, § 7606(b), 128 Stat. 649,

1    912 (2014). Congress went further with the 2018 Farm Bill by immediately "remov[ing] hemp

2    from the list of controlled substances, *decontrolling hemp production* in all U.S. States, and in

3    territories of Indian Tribes, *unless prohibited by State or Tribal Law*." USDA, *Establishment of a*

4    *Domestic Hemp Production Program*, 84 Fed. Reg. 58522-01 (Oct. 31, 2019) (emphasis added);

5    DEA, *Controls To Enhance the Cultivation of Marihuana for Research in the U.S.*, 85 Fed. Reg.

6    16292-01 (Mar. 23, 2020) ("[A]nything that falls within the foregoing definition of hemp is no

7    longer a controlled substance, and the CSA's requirements no longer apply to such substances.").

8    The "plain language of the 2018 Farm Bill, as well as statements from its legislative sponsors,

9    reflect[ed] Congress's intent to de-stigmatize and legalize all low-THC hemp, including its

10   derivatives and extracts, and to treat hemp as a regulated agricultural commodity in the United

11   States." *C.Y. Wholesale, Inc. v. Holcomb*, No. 19 Civ. 02659, 2019 WL 7497135, *4 (S.D. Ind.

12   Sept. 13, 2019); *In re Royalty Props., LLC*, 604 B.R. 742, 744 (Bankr. N.D. Ill. 2019) ("The 2018

13   Farm Bill in effect legalized hemp and its derivative products."); DEA, *Controls To Enhance the*

14   *Cultivation of Marihuana for Research in the U.S.*, 85 Fed. Reg. 16292-01 (Mar. 23, 2020) ("The

15   [2018 Farm Bill] amended the CSA definition of marihuana to exclude hemp.").[7]

16                    B.   California law currently governs hemp production and did so in October 2019

17              Congress may regulate hemp production under its Commerce Clause authority, and the

18   2018 Farm Bill established a roadmap for the USDA to exercise a regulatory role—either by

19   approving plans submitted by states that wish to retain primary authority for regulating hemp, or by

20   itself administering a federal regulatory plan promulgated through the rulemaking process. If a state

21

22   ───────────────
     [7] The 2018 Farm Bill "eliminate[d] the uncertain legal status at the Federal level of hemp production"
     and cleared the way for the USDA "to provide hemp producers with crop insurance programs, potentially
     reducing risk to producers and providing easier access to capital." *See* USDA, *Establishment of a*
23   *Domestic Hemp Production Program*, 84 Fed. Reg. 58522-01 (Oct. 31, 2019) (establishing interim rules
     for states to submit USDA-approved plans).

1    fails to submit its own plan within a year after the USDA publishes a final rule containing its

2    federal regulatory plan, that state will default into the USDA's federal plan. *See* Agriculture

3    Improvement Act of 2018 (2018 Farm Bill) Pub. L. No. 115-334, § 7605(b), 132 Stat. 4490, 4829

4    (2018). But until the USDA publishes its final rule[8] or a new state plan is approved by the USDA,

5    growers like Apothio may cultivate hemp under existing law, without any concern about violating

6    the Controlled Substances Act. *See Bond v. United States*, 572 U.S. 844, 854 (2014) ("the National

7    Government possesses only limited powers; the States and the people retain the remainder").

8           Indeed, to this day, the California Department of Food and Agriculture recognizes in its

9    written public guidance that, as a result of the 2018 Farm Bill, "hemp is no longer federally

10   regulated as a controlled substance" and that the growth of industrial hemp is "legal in California,"

11   pursuant to California Food and Agricultural Code Section 81000, by "registered growers, hemp

12   breeders, and *established agricultural research institutions*." *California Industrial Hemp Program:*

13   *Frequently Asked Questions*, CAL. DEP'T FOOD & AG. (accessed July 13, 2020) (emphasis added),

14   https://www.cdfa.ca.gov/plant/industrialhemp/faq.html. Other than preserving (against any possible

15   USDA regulation) protections for hemp growers that were established by the 2014 Farm Bill

16   through the one-year anniversary of the USDA's new plan,[9] Congress did not provide for any

17   federal role during this interim period, thereby vesting states with such regulatory power.

18          The 2018 Farm Bill removed hemp from the CSA's list of controlled substances (with

19   immediate effect—not only once new state plans were submitted and approved), established a path

20   for federal regulation of hemp production *only* once the USDA steps in, and continued to safeguard

21

22   _____

      [8] USDA promulgated an interim final rule on October 31, 2019, but that rule was not in effect until after
23   Apothio's crop was destroyed.

      [9] "Effective on the date that is 1 year after the date on which the Secretary establishes a plan . . . the
      Agricultural Act of 2014 (7 U.S.C. § 5940) is repealed." 2018 Farm Bill, 132 Stat. at 4829.

(against USDA regulation) the cultivation of hemp for research under the 2014 Farm Bill for one year after the USDA's final plan is approved. In sum, by removing hemp from the Controlled Substances Act, hemp immediately became legal to cultivate, and Apothio complied with all the relevant California laws to cultivate hemp at that point.

C. Apothio's allegations establish its eligibility to cultivate hemp under the California and federal research exemptions

While California law provides for a registration process and imposes other requirements on hemp growers generally, throughout 2019 it exempted EARIs from nearly all such requirements. Cal. Food & Agric. Code § 81003(a) (2019).[10] The Kern Defendants concede the Complaint adequately alleges facts qualifying Apothio as an EARI under California law. *See* MTD at 5 ("The issue of whether Plaintiff was an 'established agricultural research institute' as that is authorized under California state law with any protections state law might provide is not a topic for this motion to dismiss, as that is a factual question which will be addressed in a motion for summary judgment."). The Complaint alleges, for example, that Apothio has "research agreements with multiple institutes of higher learning," Compl. ¶ 2, including a 2015 agreement with Pardee Rand Graduate School[11] to provide "microeconomic data on the cost of cultivating and processing domestic hemp product," *id.* ¶ 65, and 2018 and 2019 agreements with Cerro Coso Community

---

[10] California law defines an EARI as "any institution that is either: (1) A public or private institution or organization that maintains land or facilities for agricultural research, including colleges, universities, agricultural research centers, and conservation research centers; or (2) An institution of higher education (as defined in . . . 20 U.S.C. § 1001) that grows, cultivates or manufactures industrial hemp for purposes of research conducted under an agricultural pilot program or other agricultural or academic research." Cal. Food & Agric. Code § 81000(a)(4)(A), (a)(4)(B) (previously codified at § 81000(c) in October 2019).

[11] Pardee Rand is an "institution of higher education" as defined by federal law. *See* 20 U.S.C. § 1001; 34 C.F.R. § 600.4(a)(4)(i); *Pardee Rand Graduate School*, DEP'T OF ED. DATABASE OF ACCREDITED POSTSECONDARY INSTITUTIONS AND PROGRAMS (last visited July 9, 2020), https://ope.ed.gov/dapip/#/institution-profile/106023.

1  College, *id.* ¶¶ 66, 68.[12]

2       The Kern Defendants also expressly concede that under the federal research exemption,

3  "Apothio would be able to grow and harvest hemp under federal law," but they assert without any

4  analysis or legal authority, and without any recognition of the authorities cited below, that Apothio

5  does not qualify under that exemption because it is not an institute of higher education or a State

6  department of agriculture. MTD at 7. But they misconstrue the exemption: Even though Apothio is

7  not itself an institution of higher education, its agreements with such institutions, including Cerro

8  Coso and Pardee Rand, qualify it under the federal exemption because it has consistently been

9  interpreted to include parties with whom institutions of higher education and state departments of

10  agriculture have contractual relationships for hemp cultivation and research, like Apothio. *See,*

11  *Statement of Principles on Industrial Hemp*, USDA, DOJ, DOJ, HHS, & FDA, 81 Fed. Reg. 53395

12  (Aug. 12, 2016) ("persons employed by or under a production contract or lease with [an institution

13  of higher education or a department of agriculture] to conduct such research, may grow or cultivate

14  industrial hemp" pursuant to the federal research exemption); *see also*, *e.g.*, Hrg. Tr., *Kentucky*

15  *Dep't of Ag. v. DEA (KDA)*, 3:14-cv-00372, ECF No. [20], at 3:17–22, at 5:12–6:4[13] (June 18,

16  2014). Indeed, few institutions could meaningfully cultivate or research hemp without the ability to

---

[12] The 2018 agreement was a "research and internship agreement" in which Apothio would offer its sites for vocational training. Compl. ¶¶ 66–67. The 2019 agreement created "the first National Industrial Hemp Research, Development, and Commercialization Center." *Id.* ¶ 69.

[13]   "**THE COURT**: So then as a general rule, that these growers that Jonathan and Dick represent, if they are growing pursuant to a proper memorandum of understanding, and the KDA or Kentucky wouldn't be able to get the seeds unless they had made an application and it had been approved, so then if they are operating under the memorandum, then they are operating within the law. Is that the way it works?

**MR. SCHECTER [for the DEA]:** This is Ben. Generally speaking, that's correct….So I think that's the implicit recognition and the explicit representation in the May 22nd letter, which is as long as we are all following the Farm Bill and conducting research to grow and cultivate industrial hemp and these MOUs are in place and they are adhering to their own state law, I think we are in good shape."

contract with outside parties. *See, e.g.*, Br., *Kentucky Dep't of Ag. v. DEA*, 3:14-cv-00372, ECF No. [17-1], at 1516 (W.D. Ky. June 12, 2014).[14]

Apothio thus has offered well-pleaded allegations qualifying it under both state and federal research exemptions to cultivate hemp.

D. The motion should be denied because Defendants are equitably estopped from arguing that State and Federal law precluded Apothio from growing hemp

Not only are Defendants wrong in claiming "it was not possible to cultivate industrial hemp for any purpose, research or otherwise, in conformity with the 2018 Farm Bill when the warrant in this case was executed," MTD at 7, but that claim is contradicted by numerous statements made by Defendants and government officials, including public statements and statements made specifically to Apothio, which Apothio relied on in planting crops in Kern County. *See, e.g.*, Compl. ¶¶ 72–80, 83–84, 86–87, 97.

"The essence of an estoppel is that the party to be estopped has by false language or conduct 'led another to do that which he [or she] would not otherwise have done and as a result thereof that he [or she] has suffered injury.'" *Schafer v. City of Los Angeles*, 237 Cal.App.4th 1250, 1261–64 (2015). "Many cases have estopped the government because it misrepresented the law." *Equitable Estoppel*, CALIFORNIA PRACTICE GUIDE: ADMINISTRATIVE LAW Ch. 10-D (citing cases). The "fact that the advice may have been given in good faith does not preclude the application of estoppel" or "excuse inaccurate information negligently given." *Alameda Cty. Deputy Sheriff's Assn. v. Alameda Cty. Employees' Ret. Assn.*, 19 Cal.App.5th 61, 129 (2018), *as modified* (Feb. 5, 2018).

---

[14]   "KDA obviously does not have the capability to use any of its own small office staff to plant hemp seeds and cultivate test plots. Thus, *forbidding KDA from contracting with private farmers to carry out the agricultural pilot programs would effectively preclude KDA from cultivating or growing industrial hemp for the pilot programs. As to the colleges and universities, while they may have limited capability to use their own employees to actually cultivate test plots, it is, as the Court noted during the May 21 hearing in this case, normal and expected that colleges and universities contract with private individuals and firms to carry out research projects*." (Emphasis added).

In September 2019, Kern County Agriculture Commissioner Glen Fankhauser stated publicly that "he has very limited authority to regulate" EARIs and "can't even make them test their crop's THC level."[15] And in February 2020, Fankhauser told the Kern County Board of Supervisors that "[u]nder current state law research institutions are not required to obtain a permit to grow industrial hemp under research" and that "there was no limit on the size."[16]

These statements, and many others,[17] are consistent with Apothio's understanding of and reliance on the county's and state's approval of their EARI status, based on numerous meetings and communications with county and state officials. *See., e.g.*, Compl. ¶ 72 ("Within a month of California's legalization of hemp production, Kern County was already issuing permits to various farmers and companies in order to allow them to grow hemp"), ¶ 78, 86–87 (alleging that the Kern County Agricultural Commissioner issued permits for hemp cultivation in response to registration materials Apothio filed with Kern County for the hemp fields), ¶ 90 (alleging that Apothio met with Lorelai Oviatt, Kern County Director of Planning and Natural Resources, and Oviatt informed Apothio that "no meeting was necessary and there was no license needed for processing hemp"), ¶ 97 (alleging Agricultural Commissioner Fankhauser's acknowledgment on September 30, 2019 that Apothio was an EARI and that the previous permits he had issued to Apothio were "'under the research exemption'").

---

[15] Sam Morgan, *Supervisors to Consider Tightening Research Requirements for Hemp Producers*, The Bakersfield Californian (Feb. 10, 2020) https://www.bakersfield.com/news/supervisors-to-consider-tightening-research-requirements-for-hemp-producers/article_b41fef6c-4c74-11ea-af30-8fcccfaceadf.html.

[16] Kern County Television, *Kern County Board of Supervisors 2:00 p.m. meeting for Tuesday*, *February 11, 2020*, YouTube, at 10:55 (Feb. 11, 2020), https://www.youtube.com/watch?v=LFnyNquLePU.

[17] The KCSO's own press release announcing the execution of the Search Warrant acknowledged the existence of the research exemption and EARIs' right to possess hemp above 0.3% THC, stating "[t]he research exemption allows for cultivators to grow and possess hemp/cannabis that is over 0.3% THC content, 'if that cultivation or possession contributes to the development of types of industrial hemp that will comply with the three-tenths of 1 percent THC limit established in this division.'"

1    Apothio's well-pleaded allegations are thus more than sufficient to demonstrate that

2    Defendants should be equitably estopped from advancing contrary positions in this litigation to

3    attempt to defend the KCSO's abuse of power.

4        E.   Hemp that exceeds 0.3% THC is not contraband per se

5    Defendants appear to argue for the criminalization of any hemp cultivation that results, even

6    temporarily, in a single flower of a single plant fluctuating above 0.3% THC. MTD at 4. For the

7    reasons explained above, that argument is not only incapable of carrying their burden on this

8    motion,[18] *see* Part II, Section A, but also demonstrably wrong as a matter of law. To the contrary,

9    because hemp that may fluctuate above the 0.3% THC level does not qualify as contraband per se,

10   Apothio would have a property interest even in such hemp.

11   Because the per se contraband label extinguishes a protectable property interest, it only

12   applies to the narrow set of items for which "no legal purpose" exists; its possession "constitutes a

13   crime." *See, e.g.*, *United States v. Harrell*, 530 F.3d 1051, 1057 (9th Cir. 2008). With the enactment

14   of the 2018 Farm Bill's amendment to the Controlled Substances Act, hemp crops that contain

15   some plants with a THC in excess of 0.3% are now like many goods that can be legal or illegal

16   depending on the circumstances, and are thus not eligible for per se treatment. *Cf. One 1958*

17   *Plymouth Sedan v. Com. of Pa.*, 380 U.S. 693, 699 (1965) (whether a car is contraband depends on

18   whether it is stolen). Holding otherwise would subject hemp farmers that do not intend to grow

19   marijuana to criminal sanctions, against the typical rule that that criminal law punishes only

20

21   [18] Defendants' claim that Apothio has no "property interest" in alleged "hot hemp" has no bearing on
     Apothio's Fourth Amendment claims. *See Allen v. Kumagai*, 356 F. App'x 8, 9 (9th Cir. 2009)
22   (overturning dismissal of Section 1983 claim because defendants lacked probable cause where state law
     authorized use of medical marijuana despite federal prohibition).
23

1 intentional acts. *United States v. Henderson*, 243 F.3d 1168, 1173 (9th Cir. 2001) ("intentional

2 violation" is required to impose "criminal liability" for unlawful act that might happen

3 "innocently"); *see also* 7 U.S.C. § 1639p (expressly recognizing that no criminal liability for

4 negligent growth of hot hemp can be imposed under any new state or federal plans under the 2018

5 Farm Bill).

6         Possession of hot hemp, at least temporarily, is a legitimate—and, indeed, virtually

7 inevitable—aspect of legal hemp cultivation. That is because the levels of THC in hemp plants can

8 fluctuate throughout its lifecycle: "For example, younger undried hemp plants may contain

9 relatively high levels of THC, but by the time the plants mature and are ready to be harvested, that

10 THC has often been converted to other chemicals." *Compl*. ¶ 43. Apothio "has focused on

11 developing varietals of hemp that, when mature and dry, contain little or no detectable THC." *Id.* ¶

12 52.

13         Indeed, because it is practically impossible to grow hemp without occasional fluctuations

14 above the 0.3% THC level for some individual plants, the USDA recognized, in drafting its new

15 plan, that with the legalization of hemp it is not even *negligent* for hemp producers to exceed the

16 "acceptable hemp THC level," which could exceed 0.3% THC to account for "the uncertainty in

17 the test results," so long as they "use reasonable efforts to grow hemp and the plant does not have a

18 THC concentration of more than 0.5% on a dry weight basis." *See* USDA, *Establishment of a

19 Domestic Hemp Production Program*, 84 Fed. Reg. 58522-01 (Oct. 31, 2019); *see also* Cal. Food

20 & Agric. Code § 81006(e)(9) (absolving hemp growers that produce hemp between 0.3% and 1.0%

21 THC on a dry weight basis from criminal liability). Subjecting growers to criminal liability (and

22 the potential destruction of their entire crops, including even millions of plants that do not exceed

23 0.3% THC dry weight) for that possession would destroy the commercial hemp industry and all

research into hemp strains that *do not* exceed the THC threshold: no hemp farmer would experiment with new hemp strains, or *any* hemp strains for that matter, because they obviously cannot guarantee, in advance, all THC values during the entire lifecycle of a plant.

Finally, there is no conceivable basis for labeling as contraband Apothio's mature stalks and other portions of its plants that have been excluded from the definition of marijuana (regardless of THC content) since even before the 2018 Farm Bill. *Hemp Indus. Ass'n. v. Drug Enf't Admin.*, 357 F.3d 1012, 1014 (9th Cir. 2004); *Innovative Nutraceuticals*, 2019 WL 3017672, at *3–4 ("Those portions of the cannabis plant which are not included in the definition of marijuana are not regulated under the CSA and are not contraband."). Apothio's hemp plants averaged between 15 to 18 feet at mature height. Compl. ¶ 52.[19] The stalks that Defendants destroyed were expected to produce millions of pounds of fiber, and are expressly excluded from the definition of marijuana. *See id.* ¶ 242.

### III.   THE MOTION TO DISMISS FAILS BECAUSE APOTHIO'S FACTUAL ALLEGATIONS ARE MORE THAN SUFFICIENT TO STATE FOURTH AMENDMENT CLAIMS

#### A.   Apothio's allegations that Defendant Nicholson omitted material facts state a judicial deception claim

##### 1.   *Apothio faces a low burden for pleading material omissions*

To succeed on a judicial deception claim, a plaintiff must ultimately show that (1) "the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause" and (2) "that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011).

---

[19] Visual plant differences between hemp and marijuana generally include plant height (hemp is often encouraged to grow tall, whereas marijuana is selected to grow short and tightly clustered). "Defining Hemp: A fact Sheet," March 2019, Congressional Research Service, https://crsreports.congress.gov R44742.

1  Defendants' motion contests only the first prong. *See* MTD at 8.

2  The Ninth Circuit has held that judicial deception claims are *not* subject to the higher Rule

3  9(b) pleading standard. *Galbraith v. Cty. of Santa Clara,* 307 F.3d 1119, 1125 (9th Cir. 2002). A

4  plaintiff can state a judicial deception claim even through allegations are made "on information and

5  belief." *Johnson v. Shasta Cty.*, 83 F. Supp. 3d 918, 926 (E.D. Cal. 2015). Likewise, a plaintiff

6  "need not attach" the probable cause affidavit to plead a judicial deception claim "at this stage."

7  *Brown v. Alexander*, No. 13-CV-01451, 2013 WL 6578774, at *8 (N.D. Cal. Dec. 13, 2013).[20]

8  Courts are especially mindful of not imposing insurmountable obstacles on plaintiffs when

9  search warrant materials are sealed and unattainable despite diligent pursuit, as is the case here, and

10  will lower pleading standards accordingly. *See Klein v. City of Beverly Hills*, 865 F.3d 1276, 1279–

11  80 (9th Cir. 2017) (when plaintiff "diligently pursue[s] the facts underlying [the] judicial deception

12  claim;" "repeatedly [seeks] access to the warrant and the supporting affidavit;" and "petition[s] the

13  . . . Superior Court to unseal the warrant and affidavit," it "is hard to imagine what more [a

14  plaintiff] could [do] to pursue the factual basis for [a] judicial deception claim"). In the analogous

15  context of a criminal proceeding, where a defendant has challenged the truth of an affidavit

16  submitted in support of a search warrant that has been sealed, California courts relieve the

17  defendant from the burden of making the required preliminary showing to pursue the challenge. *See*

18  *People v. Hobbs,* 7 Cal. 4th 948, 971–72 (1994).

19  Here, through various state court motions, discovery requests, and public records requests,

20  Apothio has been diligently pursuing the search warrant materials, including the probable cause

---

21  [20] Several other circuits have confirmed a lower pleading standard for judicial deception claims. *See, e.g.*,
22  *Olson v. Champaign Cty.*, 784 F.3d 1093, 1100 (7th Cir. 2015) ("It is unreasonable to require plaintiffs to plead the specific statements with more particularity when they have no knowledge of specific
23  falsehoods and can learn of them only through discovery"); *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (applying summary judgment standard on motion to dismiss would be "plainly inappropriate in light of *Iqbal* and *Twombly*"); *Sanchez v. Hartley*, 810 F.3d 750, 756 (10th Cir. 2016) (same).

affidavit, but the government refuses to provide a single page, over eight months after the execution of the warrant. *See* Compl. ¶ 146–54; Decl. of K. Eskovitz in Opp. to Defs.' Motions to Dismiss.[21] Defendants have even suggested in state court that federal discovery in this case should provide an appropriate vehicle for Apothio to obtain access to the search warrant materials: "[W]hile discovery has not yet commenced, Apothio provides no reason as to why it has not or cannot avail itself of the Federal Rules of Procedure to obtain any documents to assert its constitutional and civil rights." *See In Re Application of Apothio LLC to Authenticate, Release, and/or Unseal Search Warrant Materials*, Case No. FP004533A (June 9, 2020) (internal quotation marks omitted).[22]

In any event, under any pleading standard, Apothio's well-pleaded allegations are more than sufficient to satisfy its judicial deception claim.

### 2. *The well-pleaded omissions in the probable cause affidavit are material*

As noted above, the Kern Defendants challenge only the materiality of the omissions identified in the Complaint, arguing that Apothio "fails to allege" "how" these omissions are material. MTD at 8 (citing *Olvera v. Cty. of Sacramento*, 932 F. Supp. 2d 1123, 1152 (E.D. Cal. 2013) (motion for *summary judgment*)). Of course, elucidating "how" an omission is material is more appropriate for briefing than pleadings. *See, e.g.*, *Bilbo v. Cty. of Alameda*, No. 17-CV-00932,

---

[21] The Court thus cannot assess the facial validity of the search warrant (which is riddled with errors, including the wrong physical description and social security number for Trent Jones, *see* Compl. ¶¶ 103–05), for purposes of qualified immunity because there is no probable cause affidavit attached to it. *See, e.g.*, *Armstrong v. Asselin*, 734 F.3d 984, 993 (9th Cir. 2013). Without providing the probable cause affidavit, Defendants fail to meet their burden on the affirmative defense of qualified immunity. *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017) ("Qualified immunity is an affirmative defense that the government has the burden of pleading and proving."). Indeed, Defendant's cited case, *Messerschmidt v. Millender*, 565 U.S. 535,549 (2012), is a summary judgment case. In addition, qualified immunity is inapplicable to judicial deception claims. *Ewing v. City of Stockton*, 588 F.3d 1218, 1228 (9th Cir. 2009).

[22] Moreover, because this claim concerns materials and information uniquely in their possession and they will still be subject to discovery on Apothio's related claims, the Kern Defendants cannot claim prejudice from the application of a lower standard. *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1068 (D. Ariz. 2012*), aff'd sub nom*. *Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013).

2017 WL 4024649, at *5 (Sept. 13, 2017) (material omission is a "question of law"). Defendants' conclusory argument fails even to attempt to show how probable cause would remain but-for the material omissions identified in the Complaint. Defendants make "what is effectively a passing reference to [this argument] in their briefs," failing to satisfy "Defendants' burden at the motion to dismiss juncture." *Estate of Alejandro Sanchez v. Cty. of Stanislaus*, No. 18-CV-00977, 2019 WL 1745868, at *9 (E.D. Cal. Apr. 18, 2019) (internal quotation marks omitted) (Drozd., J.).

Apothio's Complaint alleges that Defendant Nicholson intentionally omitted from any probable cause affidavit the following material facts: (i) Apothio's status as an EARI under California law; (ii) applicable legal exemptions for EARIs from testing and THC thresholds; and (iii) Apothio's repeated communications with multiple Defendants about its hemp cultivation and legal compliance, including map permits issued by the Kern County Agriculture Commissioner's office "which identified the location where Apothio was permitted to plant and cultivate its hemp field." Compl. ¶¶ 76, 77, 78, 107. Defendants do not—and cannot—show that these omissions are immaterial, *see* MTD at 8, and pleading the omission of an applicable legal exemption is indisputably sufficient to state a judicial deception claim. *Brown*, 2013 WL 6578774, at *8 (the probable cause "consideration would necessarily have involved whether a legal exception applied").

Indeed, courts have routinely found omissions like these material, including in the context of assessing probable cause to search a target who meets an exemption under California's marijuana laws.[23] *See, e.g.*, *United States v. $186,416.00 in U.S. Currency*, 590 F.3d 942, 952 (9th

---

[23] Only state law is relevant to the existence of probable cause in this case. *United States v. $186,416.00 in U.S. Currency*, 590 F.3d 942, 948 (9th Cir. 2010) ("Nothing . . . supports the proposition that the LAPD thought it was pursuing a violation of federal law."); *United States v. Talley*, No. 19 Crim. 605, 2020 WL 3275735, at *3–4 (N.D. Cal. June 16, 2020) ("[P]ost-hoc explanations that federal law supported probable cause are insufficient. . . . ."). In fact, Defendants would not have been able to seek a

1   Cir. 2010).[24] The omitted evidence in *$186,416.00 in U.S. Currency*, which involved the LAPD's

2   unlawful search of a medical marijuana dispensary, is instructive. Officers were "repeatedly told"

3   by the dispensary in that case that its business complied with California law and never objected to

4   the dispensary's conduct. Officers also received corroborating informational materials from the

5   "polite and cooperative" target, including "relevant statutes and associated literature." The Ninth

6   Circuit concluded that "[b]y omitting these facts," the officers "misled a state judge into perceiving

7   [the business's] conduct as criminal when, in fact, it was probably legal under California law." *Id.*

8           California's hemp regime creates exemptions that decriminalize hot hemp even apart from

9   the permissive rules applicable to EARIs described above. *See* Cal. Food & Agric. Code

10  § 81006(e)(9) (absolving hemp growers that produce hemp between 0.3% and 1.0% THC on a dry

11  weight basis from criminal liability). Because Defendant Nicholson was "aware of extensive

12  evidence to suggest that [Apothio] *may* have been operating in compliance with *California law*," it

13  was material to omit "any reference to this evidence when applying to a state magistrate for a

14  search warrant under state law." *$186,416.00 in U.S. Currency*, 590 F.3d at 952 (emphases added)

15  ("[T]he LAPD simply ignored copious evidence of [defendant's] compliance with state law and

16  failed to inform the state court judge of it"). The cases cited above, including *$186,416.00 in U.S.*

17  *Currency, Allen, O'Neal, and Demoura*, all recognize that such statutory exemptions are material to

18

19  ───────────────

20  search warrant for any violation of federal law because California Penal Code Section 1524 does not
    authorize it. *See Gonzales v. City of Peoria*, 722 F.2d 468, 475 (9th Cir. 1983) (examining "whether state
    law grant[ed] Peoria police the affirmative authority to make arrests under" certain federal immigration

21  statutes and concluding it did not), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199
    F.3d 1037 (9th Cir. 1999) (en banc).

22  [24] *See also Allen*, 356 F. App'x at 9 ("[T]he officers' knowledge of his medical authorization [for
    marijuana use] may be relevant to whether they had probable cause to believe he had committed a

23  crime."); *O'Neal v. Johnson*, No. 14-CV-2374, 2017 WL 416128, at *8–9 (E.D. Cal. Jan. 31, 2017)
    ("[A] finding of probable cause to arrest plaintiff must account for the fact that plaintiff was a qualified
    medical marijuana patient." (collecting cases)).

a probable cause showing.

> 3. *California Health & Safety Code § 11479 does not permit the seizure of private property without probable cause*

Finally, Defendants try to excuse their constitutional violation by suggesting that they could seize and destroy Apothio's legal hemp under California Health & Safety Code § 11479. MTD at 8. But that statute does not permit the seizure of private property without probable cause; indeed, it expressly states that it applies "after seizure." Section 11479 exists to govern the preservation and destruction of evidence following a legal seizure, *see People v. Jackson*, No. G041185, 2011 WL 902029, at *13 (Cal. Ct. App. Mar. 16, 2011), but it does not allow the government to circumvent Fourth Amendment rights by seizing property without probable cause. In addition, Defendants ignore entirely Apothio's well-pleaded allegations that they failed to comply with the statute's requirements. Compl. ¶¶ 110, 149.

## IV. THE MOTION TO DISMISS FAILS BECAUSE APOTHIO'S FACTUAL ALLEGATIONS ARE MORE THAN SUFFICIENT TO PLEAD *MONELL* CLAIMS AGAINST THE KCSO AND THE COUNTY[25]

Apothio asserts Section 1983 claims under two theories. The first is that KCSO and Kern County had a deliberately indifferent and deficient training program that resulted in constitutional violations. *See Merritt v. Cty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989). The second is that a final decision maker "ratified" the constitutional violations of a subordinate. *See, e.g.*, *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013). Apothio expressly alleges both theories, despite Defendants' incorrect assertion that Apothio has only made "bare bones allegations" that simply "recit[e] the elements of a *Monell* cause of action." MTD at 12. Once again, Defendants fail

---

[25] Defendants attempt to raise *Monell* as a defense on the Fourth and Sixth Causes of Action. MTD at 11. But *Monell* is not a defense; it is a way to impose supervisory liability. State law already provides for vicarious liability for the Bane Act. *See, e.g.*, *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1169 (N.D. Cal. 2009). Defendants cite no case law explaining why *Monell* is relevant to the Bane Act claims.

to engage with the substance of the Complaint.

    A.  <u>Apothio allegations are more than sufficient to allege a failure to train theory.</u>

Apothio's Complaint details the procedural and technical failures of Defendants' testing. Compl. ¶¶ 124–32, 135–39. For example, under California law, hemp crop testing, where applicable, must be performed by laboratory grade equipment. (*Id.* ¶ 124 (citing Cal. Food & Agriculture Code § 81006)). But the manufacturer of the testing equipment Defendants used admits it is not laboratory grade. *Id.* ¶ 130. Defendants also failed to follow other protocols when using that equipment or testing crops, such as calibrating the machine correctly; photographing samples; testing only mature, dried plants; and testing the right number and parts of the plant. *Id.* ¶¶ 131–35.

These allegations state a claim under a failure to train theory. Allegations of Defendants' failure to use drug testing equipment correctly, pursuant to the manufacturer's own specifications, and in accordance with state law, is sufficient to support a failure to train claim. *See Harte v. Bd. of Commissioners of Cty. of Johnson, Kansas*, 864 F.3d 1154, 1167 (10th Cir. 2017) (permitting *Monell* claim for Sheriff's "decision to authorize the use of inconclusive field tests with a high false positive rate, and without the laboratory confirmation expressly required by the manufacturer's label, as the sole basis for probable cause. . . . [because] implicit in the statutory scheme is a requirement that the use be in accord with the label, and the label here required confirmation by laboratory analysis"). Moreover, courts have upheld failure to train theories based on officials' failure to train officers on specific technologies relevant to an investigation. *See Finkelstein v. San Mateo Cty. Dist. Attorney's Office*, No. 18-CV-09, 2019 WL 1048244, at *16 (N.D. Cal. Mar. 5, 2019). Here, Apothio has gone further: it also alleges that Defendants disregarded negative or inconclusive test results, Compl. ¶¶ 113, 132, which is the type of ad hoc approach appropriate training is meant to prevent. Moreover, Defendants' failure to train must also be understood within the context of the KCSO's general disregard for civil and constitutional rights, as detailed in

1    Apothio's allegations. *Id.* ¶¶ 155–61.

2            B.   Apothio's Allegations are More than Sufficient to Establish a Ratification Theory

3            Beyond a failure to train, municipalities can also be found liable when a final decisionmaker

4    ratifies unconstitutional conduct. *See Gravelet-Blondin*, 728 F.3d at 1097. Apothio has alleged that

5    the search warrant purported to permit the destruction of the crops pursuant to California Health &

6    Safety Code § 11479, which requires approval from the "chief of the law enforcement agency"—

7    the position held by Defendant Youngblood. Compl. ¶¶ 10, 107, 108, p.29 n.5. The language of the

8    statute itself provides the necessary link to find plausible Apothio's allegations that Sheriff

9    Youngblood himself approved the decision to destroy Apothio's hemp crop.

10   **V.   THE MOTION TO DISMISS FAILS BECAUSE APOTHIO'S ALLEGATIONS
     ARE MORE THAN SUFFICIENT TO ESTABLISH A CLAIM AGAINST**

11   **SHERIFF YOUNGBLOOD**

12           Because Apothio has adequately alleged failure to train and ratification theories against the

13   County and the KCSO, and Sheriff Youngblood is the official in charge of training officers and

14   ratifying the destruction of marijuana, Apothio has adequately alleged a claim against Youngblood

15   in his individual capacity. "Common theories of supervisorial liability include failure to train,

16   supervise, or control one's subordinates or ratification of the constitutional deprivation." *Bravo v.*

17   *City of Santa Maria*, 639 F. App'x 412, 414 (9th Cir. 2016) (citations omitted); *see also Larez v.*

18   *City of L.A.*, 946 F.2d 630, 645–48 (9th Cir. 1991).

19   **VI.  THE MOTION TO DISMISS FAILS BECAUSE APOTHIO'S ALLEGATIONS
     ARE MORE THAN SUFFICIENT TO ESTABLISH BANE ACT CLAIMS**

20           Ignoring twenty-five years of law, Defendants misstate the elements of a Bane Act claim,

21   ignoring binding circuit precedent to argue that Apothio was required to allege "intimidation or

22   threats." *See* MTD at 10 (citing *In re Joshua H.*, 13, Cal.App.4th 1734, 1748, n. 9 (1993) & *Bay*

23   *Area Rapid Transit Dist. v. Superior Court,* 38 Cal.App.4th 141, 144 (1995)). Two recent Ninth

1  Circuit cases make clear that an officer's willful or reckless violation of constitutional rights

2  satisfies the "threat, intimidation, or coercion" element, so long as the officer had "specific intent"

3  to violate constitutional rights. *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 519 (9th Cir. 2018), *cert.*

4  *denied* 140 S. Ct. 142 (2019); *see also Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1041–43 (9th

5  Cir. 2018). Specific intent requires affirmative answers to these questions: "First, is the right at

6  issue clearly delineated and plainly applicable under the circumstances of the case, and second, did

7  the defendant commit the act in question with the particular purpose of depriving the citizen victim

8  of his enjoyment of the interests protected by that right?" *Sandoval*, 912 F.3d at 520 (internal

9  quotation marks omitted). A state court applied this standard within weeks of Defendants' filing.

10  *See Cty. Inmate Tel. Serv. Cases*, 48 Cal.App.5th 354, 371 (2020).[26] Having addressed that the

11  Complaint's allegations are more than sufficient to establish that there is a protectable interest in

12  Apothio's hemp crops and that the Kern Defendants violated Apothio's Fourth Amendment rights,

13  there are no remaining arguments to dismiss claims Four, Five, Six, or Seven.

14  **VII.  DEFENDANTS DO NOT NEED A MORE DEFINITE STATEMENT**

15  Defendants fall short of the high standard for a successful motion for a more definite

16  statement. "Such motions are not favored by the courts since pleadings in federal courts are only

17  required to fairly notify the opposing party of the nature of the claim." *Nunes v. Cty. of Stanislaus*,

18  No. 17-CV-633, 2017 WL 3670926, at \*7 (E.D. Cal. Aug. 25, 2017) (internal quotation marks

19  omitted) (Drozd, J.) To warrant a more definite statement, a complaint must be so deficient that

20

21  [26] While Defendants did not contest it and cannot do so now, Apothio meets these two elements of specific intent. First, Apothio's interests in property and right not to be subjected to excessive destruction

22  is plainly established. *See, e.g.*, *United States v. Ramirez*, 523 U.S. 62, 71 (1998). Second, Apothio has adequately alleged that (1) Defendant Nicholson intentionally or recklessly omitted material facts to

23  obtain a search warrant; and (2) Nicholson made derogatory comments about the regulatory scheme during the search and revealed his intention to destroy all crops – including those that Defendants' own tests revealed to be legal hemp. Compl. ¶¶ 112, 113.

1    "the [D]efendant[s] cannot frame a responsive pleading." *Id.* (internal quotation marks omitted).

2        Apothio's claims stem from a simple set of circumstances with few actors and a few

3    discrete events. As to the Kern Defendants, based on all of the information now available to

4    Apothio, the Complaint alleges who made material omissions for the warrant (Nicholson –

5    Complaint ¶ 107), who physically destroyed the hemp crops (Nicholson and KCSO John Does, *id.*

6    ¶ 115), who ratified the warrant and destruction (Youngblood, *id.* ¶ 107), and who failed to train

7    the officers (Kern County and KCSO, *id.* ¶ 133). Those acts give rise to the violations described in

8    each cause of action, and naming "All Defendants" is appropriate for the causes of action given

9    their involvement in each violation.

10       Defendants' criticisms stem from their narrow focus on the causes of action in the

11   Complaint, but they overlook the preceding detailed allegations that are incorporated by reference.

12   For example, Defendants argue that the use of "All Defendants" in the causes of action means that

13   "each defendant is alleged to have done everything," MTD at 14, ignoring that the earlier

14   allegations detail the Defendants' conduct. Defendants' citations are inapposite since they involve

15   far more egregious examples of group pleading.[27]

16                              **CONCLUSION**

17       Defendants' motion to dismiss should be denied in its entirety. Should the Court be

18   inclined to grant any part of Defendants' Motion, Apothio requests leave to amend to cure any

19   _____

20   [27] For example, the plaintiff in *Magluta v. Samples*, 256 F.3d 1282, 1282 (11th Cir. 2001), asserted
     claims against "all defendants" based on conditions of confinement at "three different federal facilities"
     in different cities "though geographic and temporal realities make plain that all of the defendants could

21   not have participated in every act complained of." *Id.* at 1284. Here, in contrast, the acts creating liability
     involve the application for, and execution of, a single search warrant on October 24 and 25, 2019. And,

22   in *Shin v. Time Squared Glob., LLC*, No. 15-CV-00943, 2015 WL 13284952, at *3 (C.D. Cal. Aug. 26,
     2015), plaintiffs, alleging fraud claims subject to heightened pleading standards, defined a single term,
     "Defendants," throughout the Complaint "without identifying what the particular defendants specifically

23   did wrong." Here, Apothio has described who sought the warrant, who executed it, and who ratified
     those actions in a detailed complaint of nearly sixty pages.

1   deficiencies in accordance with the Federal Rules and the Ninth Circuit's liberal policy on

2   amendments. *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

Dated: July 13, 2020

/s/ Katherine Eskovitz
ROCHE CYRULNIK
 FREEDMAN LLP
Katherine Eskovitz
1158 26th Street, No. 175
Santa Monica, CA 90403
keskovitz@rcfllp.com
(646) 791-6883

Kyle W. Roche (*pro hac vice*)
Joseph M. Delich (*pro hac vice*)
Richard R. Cipolla (*pro hac vice*)
99 Park Avenue, 19th Floor
New York, NY 10016
kyle@rcfllp.com
jdelich@rcfllp.com
rcipolla@rcfllp.com

/s/ Sean Eskovitz
ESKOVITZ LAW
Sean Eskovitz
1217 Wilshire Boulevard, No. 3683
Santa Monica, CA 90402
seane@eskovitz.com

/s/ Brant W. Bishop, P.C.
BRANT W. BISHOP, P.C. (*pro hac vice*)
2000 Pennsylvania Avenue, NW
Suite 7000
Washington, DC 20006
brant@bishop.us

*Counsel for Apothio LLC*