1  XAVIER BECERRA, State Bar No. 118517
   Attorney General of California
2  BRUCE D. MCGAGIN, State Bar No. 170146
   Supervising Deputy Attorney General
3  STACEY L. ROBERTS, State Bar No. 237998
   Supervising Deputy Attorney General
4  ETHAN A. TURNER, State Bar No. 294891
   KELLY T. SMITH, State Bar No. 196821
5  Deputy Attorneys General
     1300 I Street, Suite 125
6    P.O. Box 944255
     Sacramento, CA 94244-2550
7    Telephone: (916) 210-6465
     Fax: (916) 322-8288
8    E-mail:  Kelly.Smith@doj.ca.gov
   *Attorneys for Defendants, Department of Fish and*
9  *Wildlife and Director Charlton H. Bonham*

10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE EASTERN DISTRICT OF CALIFORNIA

13                        CIVIL DIVISION

14

| | |
|---|---|
| 15 **APOTHIO, LLC,** <br> Plaintiff, | Case No. 1:20-cv-00522-NONE-JLT |
| 16 v. | |
| 17 **KERN COUNTY; KERN COUNTY** <br> **SHERIFF'S OFFICE; CALIFORNIA** | **STATE DEFENDANTS' REPLY BRIEF** <br> **IN SUPPORT OF MOTION TO DISMISS** |
| 18 **DEPARTMENT OF FISH AND** <br> **WILDLIFE; DONNY YOUNGBLOOD;** | **THE COMPLAINT** |
| 19 **JOSHUA NICHOLSON; CHARLTON H.** <br> **BONHAM; JOHN DOES #1 THROUGH** | Date:        August 10, 2020 <br> Time:        8:30 a.m. |
| 20 **#10, UNKNOWN AGENTS OF THE KERN** <br> **COUNTY SHERIFF'S OFFICE; JOHN** | Dept:        Courtroom 4 <br> Judge:       NONE |
| 21 **DOES #11 THROUGH #20, UNKNOWN** <br> **AGENTS OF THE CALIFORNIA FISH** | |
| 22 **AND WILDLIFE DEPARTMENT,** | Action Filed:  April 10, 2020 |
| 23 Defendants. | |

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................ 1

Argument ................................................................................................................ 1

    I.      Apothio's Growing of Hemp and Marijuana for Sale Without a License Is Illegal.................................................................................................................. 3

    II.    Apothio Misstates the California Hemp Laws It Violated..................................... 4

    III.   Regardless of THC Level, Apothio's Plants Were Illegal Contraband ................ 7

    IV.   Probable Cause Is Established by the Warrant, Not Apothio's Complaint............ 9

          A.     Apothio's Alleged "Research" Status Does Not Create Judicial Deception ................................................................................................ 9

          B.     Apothio's Immaterial, "Bare Allegations" of Judicial Deception Are Insufficient to Challenge Probable Cause in the Warrant.................. 10

          C.     Apothio Concedes the Search Was Legal and the Destruction Was Legal.................................................................................................... 11

    V.     Apothio Fails to Specify Individual *Monell* Liabilities ......................................... 12

    VI.   State Defendants Have Complied with the Standing Order................................... 14

Conclusion ............................................................................................................. 14

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allen v. Kumagai*
  356 Fed.Appx. 8 (9th Cir. 2009).................................................................................11

*Barrios v. County of Tulare*
  2014 WL 2174746 (E.D. Cal. May 23, 2014)..............................................................8

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007).....................................................................................................2

*Belridge Farms v. Agric. Labor Relations Board*
  21 Cal.3d 551 (1978) ...................................................................................................5

*Finkelstein v. Jangla*
  2020 WL 3411272 (9th Cir. June 22, 2020) ..............................................................13

*Innovative Nutraceuticals, LLC v. United States*
  2019 WL 3017672 (C.D. Cal. Mar. 28, 2019) .............................................................8

*Lytle v. Carl*
  382 F.3d 978 (9th Cir. 2004)......................................................................................13

*McFall v. County of San Joaquin*
  2018 WL 5619960 (E.D. Cal. Oct. 30, 2018) .......................................................10, 11

*Monell v. Department of Social Services*
  436 U.S. 658 (1978) (*Monell*).........................................................................11, 12, 13

*Moss v. U.S. Secret Service*
  572 F.3d 962 (9th Cir. 2009).....................................................................................13

*O'Neal v. Johnson*
  2017 WL 416128 (E.D. Cal. Jan. 31, 2017)...............................................................11

*One 1958 Plymouth Sedan v. Com. of Pa.*
  380 U.S. 693 (1965) .....................................................................................................8

*People v. Jackson*
  2011 WL 902029 (Cal. Ct. App. Mar. 16, 2011) .......................................................12

*People v. Kelly*
  47 Cal.4th 1008 (2010) ...............................................................................................10

*Scalia v. County of Kern*
  308 F.Supp.3d 1064, 1072 (E.D. Cal. 2018)..............................................................12

ii

**<u>TABLE OF AUTHORITIES</u>**
(continued)

**Page**

*United States v. $186,416.00 in U.S. Currency*
  590 F.3d 942 (9th Cir. 2010) ................................................................................10

**STATUTES**

7 United States Code
  § 1639o(1) ..............................................................................................................1
  §§ 1639o-1639r ......................................................................................................4
  §§ 1639p-1639q .....................................................................................................4
  § 1639r ...................................................................................................................4
  § 5490 ..............................................................................................................3, 5, 6
  § 5490(b) ...............................................................................................................6

20 United States Code
  § 1001 ....................................................................................................................5

21 United States Code
  § 802(15) ...............................................................................................................7
  § 802(16) ...............................................................................................................1
  § 802(16)(B) ......................................................................................................1, 4
  § 804(16) ...............................................................................................................1
  § 812 Schedule 1 (c)(10) .......................................................................................1
  § 812 Schedule 1 (c)(17) .......................................................................................1
  § 822 ......................................................................................................................7

42 United States Code
  § 1983 ..............................................................................................................11, 13

California Business and Professions Code
  §§ 26000-26250 ....................................................................................................1
  § 26001(an) ...........................................................................................................2
  § 26053 .................................................................................................................2

California Code of Regulations Title 3, § 4900 et seq. (adopted April 25, 2019) .........................3

California Food and Agricultural Code
  § 81000(a)(4)(A) ...................................................................................................6
  § 81000(a)(4)(B) ...................................................................................................6
  § 81000(b) .............................................................................................................6
  § 81006 ...............................................................................................................12
  § 81006(e)(1) ......................................................................................................12
  § 81010 .................................................................................................................5

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

California Health and Safety Code
 § 11018 .................................................................................................................1
 § 11022 .................................................................................................................2
 § 11054(d)(13) ......................................................................................................1
 § 11358(c) .........................................................................................................2, 9
 § 11359 .................................................................................................................2
 § 11362.1 ..............................................................................................................2
 § 11362.2 ..............................................................................................................2
 § 11479 ................................................................................................11, 12, 13

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment ..............................................................................................11, 12

**OTHER AUTHORITIES**

13 California Legal Opinions of the Attorney General 1102 (2014) ...............................5

7 Code of Federal Regulations
 § 990 et seq ...........................................................................................................3
 § 990.3 ..................................................................................................................4

21 Code of Federal Regulations
 § 1300.18 ..............................................................................................................8
 § 1301.01 ..............................................................................................................8

81 Federal Register
 43395 ....................................................................................................................7
 53395 ....................................................................................................................7

Agricultural Act of 2014, Public Law No. 113-79 (February 7, 2014) ...........................4

Agriculture Improvement Act of 2018, Public Law No. 115-334 (December 20, 2018) ...............4

Senate Bill 153 § 3 ......................................................................................................6

Senate Bill 398
 § 8(a) ....................................................................................................................5
 § 8(b) ....................................................................................................................5
 § 8(c) ....................................................................................................................5

Senate Bill 838 § 3 ......................................................................................................6

Senate Bill 1409 § 6 ....................................................................................................5

State Defendants' Reply Brief ISO Motion To Dismiss The Complaint (Case No. 1:20-cv-00522-NONE-JLT)

## INTRODUCTION[1]

Apothio, LLC (Apothio), in its opposition to the motion to dismiss presented by defendants California Department of Fish and Wildlife and Director Charlton H. Bonham (State Defendants), reiterates inaccurate legal conclusions that it is an "established agricultural research institution" (EARI) and Apothio's self-proclaimed status should have made it impossible for law enforcement to suspect Apothio of, and ultimately discover that it was engaging in, criminal activity. Apothio again expresses its mistaken belief that industrial hemp crop testing standards found in California's Food and Agricultural Code apply to law enforcement criminal investigations, assumes that testing results formed the basis of defendants' probable cause, and infers that failure to comply with these standards amounts to negligence. Based upon these incorrect assumptions and illogical leaps, Apothio concludes that, but for negligence and deceit, no warrant could have issued. Further, Apothio argues that federal law covering the cultivation of *cannabis sativa L.* simply does not apply to it. As shown below, Apothio's theory of its case is built on a foundation of legal error and conjecture, and the opposition brief does nothing to cure those defects. Additionally, contrary to plaintiff's allegation, the State Defendants *did* engage in appropriate meet and confer efforts with Apothio, but Apothio insisted it had sufficiently stated all causes of action. For all of these reasons, the complaint should be dismissed against all State Defendants.

## ARGUMENT

Apothio's arguments incorrectly state the law and rely on legal conclusions and speculation to support its opposition to the State Defendants' motion to dismiss. Under both federal and state law, a *cannabis sativa L.* plant with a delta-9 tetrahydrocannabinol (THC) concentration above 0.3 percent is a controlled substance.[2] 7 U.S.C. § 1639o(1); 21 U.S.C. §§ 804(16), 812, Schedule 1 (c)(10) and (17); Cal. Health & Safety Code §§ 11018, 11054(d)(13); 21 U.S.C. § 802(16)(B).

---

[1] In response to plaintiff's statements about the California Attorney General's role in this matter, the State Defendants are represented by the California Attorney General's Office, and legal analysis in the motion to dismiss and in this reply brief are made on behalf of the State Defendants and do not represent a formal opinion of the California Attorney General. Opposition at p. 1:1-15.

[2] The Medicinal and Adult-Use Cannabis Regulation and Safety Act changed the term marijuana to cannabis in all California statutes. Cal. Bus. & Prof. Code §§ 26000-26250. However, Federal law refers to ""marihuana." 21 U.S.C. § 802(16). All references to *cannabis sativa L.* plants with greater than 0.3 percent THC in this brief will use marijuana.

1

1   Pursuant to California law, any person, including a limited liability company or any other legal

2   entity such as Apothio, "who plants, cultivates, harvests, dries, or processes more than six living

3   cannabis plants" or possesses marijuana for sale without a state license is committing a crime.

4   Cal. Health & Safety Code §§ 11022, 11358(c), 11359. A person can only lawfully possess or

5   cultivate minimal amounts of marijuana for personal use in California under California law. Cal.

6   Health & Safety Code §§ 11362.1, 11362.2. In fact, a California license is required for a person to

7   engage in any commercial activity involving marijuana. Cal. Bus. & Prof. Code §§ 26001(an), 26053.

8   Here, Apothio had a large commercial operation involving 500 acres of marijuana plants, but did

9   not have a state license to cultivate marijuana for commercial purposes. Complaint at paras. 1, 7,

10  11. Apothio certainly was not an "industrial hemp" grower. Instead, Apothio claims its purported

11  research activity puts it above the law, despite also admitting that it grows the plants for

12  commercial purposes and declaring an anticipated market value of approximately $1 billion for its

13  crop. Complaint at paras. 1, 3, 7, 9, 11, 14, 49, 51, 61, 69, 75, 77, 80, 83, 84, 90, 95, 234, 237,

14  247, 250. Undoubtedly, Apothio engaged in criminal conduct not subject to protection under state

15  or federal law.

16          It is not disputed that the warrant resulting in the destruction of the *cannabis sativa L.*

17  plants was sought and executed because law enforcement officers believed unlicensed marijuana

18  cultivation was occurring. However, Apothio assumes (while acknowledging never having seen

19  statements of probable cause) that the defendants failed to apprise the judge that the plaintiff

20  might attempt to raise a defense by claiming that it was cultivating *cannabis sativa L.* for research

21  purposes. Plaintiff then concludes the purported omission resulted in a warrant issued as a

22  consequence of judicial deception. Courts "are not bound to accept as true a legal conclusion

23  couched in a factual allegation [and] the pleading must contain something more . . . than a

24  statement of facts that merely creates a suspicion of a legally cognizable right of action." *Bell Atl.*

25  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Here, Apothio alleges,

26  what it tells us it cannot know: that defendants' probable cause was based upon testing results,

27  that these supposed results came from improper testing, and that theory of a conceivable legal

28  defense was withheld from the judge who issued the warrant. These are assumptions because

2

1   allegations supporting the warrant that were provided to the issuing judge remain under seal.

2   Thus, plaintiff's subsequent legal conclusions, that plaintiff had a defense by virtue of its self-

3   proclaimed EARI status and any testing failed to comply with applicable standards, are

4   demonstrably erroneous.

## I.   APOTHIO'S GROWING OF HEMP AND MARIJUANA FOR SALE WITHOUT A LICENSE IS ILLEGAL

7       State Defendants' motion to dismiss should be granted because Apothio's cultivation

8   activities, regardless of whether Apothio's crop qualifies as hemp or marijuana or both, were not

9   legal under federal law. Apothio's self-declared "research" status is not a license to grow

10  cannabis; neither does it exempt a for-profit enterprise from the regulation and oversight with

11  which good faith actors must comply. California began its commercial industrial hemp regulatory

12  program in early 2019. Cal. Code Regs. tit. 3, § 4900 et seq. (adopted April 25, 2019). The

13  federal licensure program for hemp production was not implemented until October 31, 2019. 7

14  C.F.R. § 990 et seq. Apothio contracted its planting in February, 2019. Complaint at para. 85.

15  Apothio's crops were self-abated on October 25, 2019. Complaint at para. 11. Thus, at all times

16  relevant, it was impossible for Apothio to comply with federal law as no hemp production

17  licenses were even available, and Apothio elected not to register with the California Department

18  of Food and Agriculture (CDFA) in compliance with state law. Accordingly, Apothio is not an

19  "industrial" grower of hemp. It does not and cannot establish that it is lawfully "registered" or

20  "licensed" as an industrial grower. Regardless of whether it is classified as "hemp" or

21  "marijuana," Apothio's cultivation of the *cannabis sativa L.* plant in California was illegal under

22  federal law. Nor does Apothio's legal analysis of the research exemption to the general federal

23  prohibition under 7 U.S.C. § 5490 hold up. In the end, Apothio's plants were contraband.

24      "Apothio's complaint repeatedly alleges that the destroyed crops were *legal* hemp, as

25  defined in the 2018 Farm Bill." Opposition at p. 5:1-2 (emphasis added). This is a legal

26  impossibility. As discussed in the State Defendants' motion to dismiss and explained in greater

27  detail below, all cultivation of *cannabis sativa L.* whether marijuana or hemp, in California, even

28  in circumstances where it is authorized by California law, was illegal under federal law.

3

1   Consequently, Apothio cannot allege facts rendering its cultivation of *cannabis sativa L.*,

2   regardless of its THC content, permissible under federal law.

3        Apothio misconstrues the law when it states that "in passing the 2018 Farm Bill, Congress

4   removed hemp from the Controlled Substances Act, thereby immediately removing any federal

5   prohibition against hemp cultivation." Opposition at p. 11:8-10. The 2018 Farm Bill did change

6   the definition of "marihuana" but did not "remove any federal prohibition against hemp

7   cultivation." 21 U.S.C. § 802(16)(B). Rather, the 2018 Farm Bill added "Subtitle G - Hemp

8   Production" to the Agricultural Marketing Act of 1946. 7 U.S.C. §§ 1639o-1639r. Under Subtitle

9   G, hemp can *only* be grown within states that have approved Industrial Hemp Plans or pursuant to

10   a hemp production license issued by United States Department of Agriculture (USDA) under 7

11   C.F.R. § 990.21. 7 U.S.C. §§ 1639p-1639q; 7 C.F.R. § 990.3. The 2018 Farm Bill required the

12   USDA to promulgate regulations regarding domestic hemp production. 7 U.S.C. § 1639r. The

13   USDA did not adopt regulations until October 31, 2019, *after* the search warrant was executed.

14   Complaint at paras. 10, 11. Since the regulations had not been adopted, there was no California

15   Industrial Hemp Plan to comply with and no way to apply for a USDA license. Therefore, it is a

16   legal impossibility for Apothio to have complied with the 2018 Farm Bill, and no reference to that

17   bill could possibly serve any function in supporting Apothio's complaint or provide any defense

18   to criminal liability.

19   **II.   APOTHIO MISSTATES THE CALIFORNIA HEMP LAWS IT VIOLATED**

20        Apothio's complaint and opposition are founded on a misunderstanding of both the effect

21   of the earlier 2014 Farm Bill's "research exemption," and the effect of California statutes and

22   regulations.[3] California's industrial hemp scheme began on September 27, 2013, when Governor

23   Brown signed the "Industrial Hemp Farming Act" (Hemp Act) which added Division 24 to the

24   California Food and Agricultural Code. The Hemp Act was written so that its provisions would

25   *only* become operative as the activities authorized therein became legal under federal law. 2013

26    

27   [3] Two different federal "Farm Bills" addressing hemp are involved here. The Agricultural Act of 2014, Pub. L. No. 113-79 (February 7, 2014), is commonly referred to as the "2014 Farm Bill." The Agriculture Improvement Act of 2018, Pub. L. No. 115-334 (December 20, 2018), is commonly referred to as the

28   "2018 Farm Bill."

4

1    Cal. Stat., Ch. 398 (S.B. 398), § 8(a). Upon authorization by federal law, the CDFA would

2    regulate commercial industrial hemp production and allow "established agricultural research

3    institutions" to cultivate hemp for research purposes. Under the Hemp Act, California's Attorney

4    General was required to issue an opinion explaining whether federal law imposed any limitations

5    that are inconsistent with the Hemp Act. *Id.* at § 8(b). The California Attorney General concluded

6    that federal law, at that time, continued to prohibit the cultivation of industrial hemp, except by

7    CDFA or institutions of higher education, as defined in 20 U.S.C. § 1001, for agricultural or

8    academic research. *Id.* at § 8(c). The opinion stated that all portions of the Hemp Act in conflict

9    with the referenced prohibitions remained inoperative. 13 Cal. Ops. Atty. Gen. 1102 (2014).

10        On November 8, 2016, with the passage of California Proposition 64, California legalized

11    adult-use of recreational marijuana and began the process of regulating hemp cultivation. Former

12    California Food and Agricultural Code section 81010, the statute governing the implementation

13    of California's Hemp Act, read, "This division shall not become operative unless authorized

14    under federal law." But California Proposition 64 changed this language to read, "This division

15    shall become operative on January 1, 2017." Cal. Food & Agric. Code § 81010. As a consequence

16    of this change, California's laws on hemp became operative irrespective of federal law.

17        Apothio argues that California's EARI definition "tracks the language of the federal

18    research exemption created by the 2014 Farm Bill." Opposition at p. 9:2-3. Apothio contends it

19    meets the EARI definition under California Food and Agricultural Code and cites *Belridge Farms*

20    *v. Agric. Labor Relations Board*, 21 Cal.3d 551, 557 (1978), arguing that the court should give

21    "like interpretation to 'state statutes which are patterned after (the) federal statutes.'" Opposition

22    at p. 10:1-2. Apothio is entirely mistaken that the EARI definition "tracks" what the plaintiff

23    refers to as the federal "research exemption" as codified in 7 U.S.C. §5490. The discord between

24    the federal research exemption and California's EARI statute has twice been recognized by the

25    California Legislature after the passage of California Proposition 64. First, on September 30,

26    2018, Governor Brown signed California Senate Bill 1409, which authorized the CDFA to carry

27    out, by regulation, an agricultural pilot program pursuant to the 2014 Farm Bill. 2018 Cal. Stat.,

28    Ch. 986 (S.B. 1409), § 6. Notwithstanding this legislative authority, CDFA did not promulgate

1  regulations to institute such a pilot program. Second, in an even more explicit recognition that the

2  EARI definition does not "track" the federal language, the California Legislature passed

3  California Senate Bill 153, which dealt directly with the definition of "established agricultural

4  research institution." 2019 Cal. Stat., Ch. 838 (S.B. 153), § 3. Expressly recognizing that

5  California's definition of an "EARI" cannot be reconciled with the 2014 Farm Bill's research

6  exception, a new definition was crafted which would only become effective upon approval of

7  California's Industrial Hemp Plan by the USDA.[4]

8       Clearly, California's EARI statute was not patterned after the federal statute. It could not

9  have been because the statute pre-dates the 2014 Farm Bill and is so expansive that it hardly

10  resembles the federal industrial hemp research provisions. Prior to California Proposition 64,

11  cultivation by EARIs could, hypothetically, only have been permissible under California law by

12  virtue of their compliance with 7 U.S.C. § 5490. After California Proposition 64's hemp

13  provision took effect on January 1, 2017, state law allowed cultivation of hemp pursuant to

14  Division 24 of the California Food and Agricultural Code irrespective of the requirements or

15  restrictions of federal law. Accordingly, whether or not Apothio was complying with state law

16  (which it was not) has no bearing whatsoever on whether or not it was complying with federal

17  law.

18       Moreover, Apothio attempts to mischaracterize its alleged relationships with local

19  community college districts to bring it into compliance with 7 U.S.C. § 5490(b). Apothio likens

20  its alleged relationship with Cerro Coso Community College to that of a contractor growing hemp

21  for the community college. Opposition at p. 9:5-14. Apothio does not claim to be growing hemp

22  for the colleges. It clearly alleges it is growing hemp to sell to third parties and alleges the hemp

23  had a market value believed to have been about $1 billion dollars. Complaint at paras. 12, 91,

24  246. As such, the situation in no way resembles that of "persons employed [by an institution of

25  higher education] under a production contract." Opposition at p. 9:7-8. Additionally, it should be

26  _____

[4] Cal. Food & Agric. Code § 81000(b). There are currently two types of "Established Agricultural
Research Institution" in the California Food and Agricultural Code. The first is the current definition relied
27  on by the plaintiffs and is incompatible with 7 U.S.C. § 5490. Cal. Food & Agric. Code § 81000(a)(4)(A).
The second will only become operative, if and when, the USDA approves California's State Industrial
28  Hemp Plan. Cal. Food & Agric. Code § 81000(a)(4)(B).

noted that plaintiff, in making this characterization and citing to The Statement of Principles on Industrial Hemp, 81 Fed. Reg. 43395, omits a portion of the authority that undermines any possibility that its activities are legal under federal law:

> Section 7606 of the Agricultural Act of 2014 legalized the growing of industrial hemp *for research purposes* in States where such growth and cultivation is legal under State law, notwithstanding existing federal statutes that would otherwise criminalize such conduct. The statutorily sanctioned conduct, however, was limited to growth and cultivation by an institution of higher education or State department of agriculture for purposes of agricultural or academic research *under the auspices of a State agricultural pilot program.*" 81 Fed. Reg. 53395 (emphasis added).

Apothio was growing crops it estimates as having a market value of $1 billion, and its incidental connection to a community college does not transform it into an "institution of higher education," change its profit motivation into a research purpose, or help it evade the fact that there is no "State agricultural pilot program" in California.

## III.   REGARDLESS OF THC LEVEL, APOTHIO'S PLANTS WERE ILLEGAL CONTRABAND

Apothio's case should be dismissed because its plants were illicit contraband. Apothio's opposition denies what the complaint admits, that the *cannabis sativa L.* it produced had THC percentages of 0.3 percent or less. Opposition at p. 5:2-6, 14-19. The plaintiff *did* acknowledge that its plants at various times tested higher than 0.3 percent THC, and claims it is authorized to possess and grow such plants by virtue of its status as an EARI. Complaint at paras. 8, 35, 62, 82, and 92.

However, even if Apothio only cultivated *cannabis sativa L.* that was below the 0.3 percent threshold for marijuana (notwithstanding its admissions to the contrary), such a claim would be irrelevant. Apothio's status as an EARI is a conclusion of law, not a fact that can be presumed true. Apothio misunderstands the law and State Defendants' arguments because federal law does not prohibit an institution of higher education from producing *cannabis sativa L.* with a THC concentration lower than 0.3 percent THC, if it is cultivating "for purposes of agricultural or academic research *under the auspices of a State* agricultural pilot program." 81 Fed. Reg. 53395. Additionally, federal law does not prohibit researchers from cultivating *cannabis sativa L.* with THC concentration higher than 0.3 percent, so long the institution was properly registered with the Drug Enforcement Administration. 21 U.S.C. § 822; see also 21 U.S.C. § 802(15); 21 C.F.R.

7

1    §§ 1300.18, 1301.01 ("manufacture" of controlled substances includes "production" and

2    "propagation"). Apothio states that it is exempt from registration requirements under state law by

3    virtue of its status as an EARI. Opposition at p. 7:17-18. Apothio also claims that its status as an

4    EARI allows it to engage in "commercial activity" without any registration requirement or

5    governmental oversight. Opposition at p. 10:8-12. This is inconsistent with federal law. Apothio's

6    *cannabis sativa L.* production activities were unquestionably illegal under federal and state law.

7         Also, plaintiff argues hemp exceeding ".3% THC is not contraband per se." Opposition at p.

8    13:4. But *Innovative Nutraceuticals, LLC v. United States*, 2019 WL 3017672 (C.D. Cal. Mar. 28,

9    2019), cited by Apothio on this point, is distinguishable. In that case, the seed and stalk materials

10   cultivated from industrial hemp grown in Spain were lawfully imported, and could not be

11   determined, as a matter of law, to be contraband. Apothio did not import hemp seeds and stalks.

12   Rather, Apothio unlawfully cultivated *cannabis sativa L.* in violation of federal law because it is

13   not an institution of higher education and unlawfully produced marijuana product for sale to third

14   parties for commercial, *not* research purposes.

15        Even if Apothio raises its purported status as an EARI against criminal charges brought

16   under state law that would not erase the probable cause that a crime was being committed when

17   the warrant was issued. Just because there might be a plausible legal theory under California law,

18   that the cultivation of *cannabis sativa L.* was legitimate, whether "industrial hemp" or

19   "marijuana," it would not mean that it was lawfully produced under federal law. *Barrios v.*

20   *County of Tulare*, 2014 WL 2174746, at *5 (E.D. Cal. May 23, 2014) ("Although California may

21   provide [plaintiff] with the right to possess medical marijuana, federal law does not. Because

22   marijuana is contraband under federal law, [plaintiff] had no property interest in the marijuana.").

23   Whether or not the destroyed crops were contraband depends on whether or not it was cultivated

24   in compliance with applicable law and for a lawful purpose. *See, e.g., One 1958 Plymouth Sedan*

25   *v. Com. of Pa.*, 380 U.S. 693, 699 (1965) (whether a car is contraband depends on whether it is

26   stolen). In this case, the crops that were destroyed were illegally produced and, therefore, Apothio

27   had no property interest in them.

28   ///

8

1   **IV.  PROBABLE CAUSE IS ESTABLISHED BY THE WARRANT, NOT APOTHIO'S COMPLAINT**

2       Apothio argues there could be no probable cause for the warrant due to "judicial deception"

3   because defendants knew of, consented to, and failed to present information about Apothio's

4   status as a research institution. Apothio alleges "that it was unreasonable for Defendants to

5   believe that there was probable cause to seize and destroy Apothio's crops." Opposition at p.

6   17:13-14. Apothio argues there was no probable cause because "there is not a single allegation in

7   the Complaint that THC levels were illegal at the time of the destruction." Opposition at p. 15:16-

8   18. Apothio seems to suggest that facts alleged in a civil complaint, after the fact, should

9   determine whether probable cause existed prior to the issuance of a search warrant. However,

10  Apothio's allegations undermine its argument because Apothio admits to growing hemp to sell

11  for $1 billion, it is not licensed to do so, and defendants investigated Apothio's activities and

12  lawfully obtained a search warrant.

13      **A.    Apothio's Alleged "Research" Status Does Not Create Judicial Deception**

14      Apothio's complaint presumes that THC test results were the basis for defendants' warrant

15  and the seizure of the contraband. Complaint at para. 10. It also states that it has not seen any

16  probable cause statement which can only be viewed as a tacit acknowledgment that Apothio's

17  presumption is mere conjecture. Plaintiff's Declaration of Katherine Eskovitz, Document 34-1.

18  Apothio cannot simply assert what it cannot know and claim a constitutional violation occurred.

19  The statement of probable cause is under seal as the criminal investigation continues. Apothio

20  uses the statement's unavailability to infer a cover-up of something and assumes that defendants

21  deliberately failed to inform the judge who issued the warrant of a possible "research" defense

22  that Apothio might raise against the suspected criminal activity. Complaint at paras. 166, 185,

23  191. A court must view the allegations in the complaint in the light most favorable to the plaintiff,

24  but that does not allow a plaintiff to assert as fact assumptions about a process that is still under

25  seal. In this case, it is clear that law enforcement believed Apothio was growing plants without a

26  license in violation of California Health and Safety Code section 11358(c), notwithstanding

27  Apothio's claim that it was an EARI and the issuing judge agreed that there was probable cause

28  for such a belief.

9

**B.    Apothio's Immaterial, "Bare Allegations" of Judicial Deception Are Insufficient to Challenge Probable Cause in the Warrant**

As discussed above, Apothio's "research" claim is immaterial to the warrant's probable cause. The plaintiff acknowledges that law enforcement officers were aware that Apothio held itself out as an EARI, yet officers still concluded that a crime was occurring. Apothio's entire complaint is based upon the conclusion (without having seen probable cause statements or any other information from the ongoing criminal investigation) that, but for negligence and deception, there could have been no probable cause to believe a crime was being committed. In an effort to buttress this precarious position, Apothio cites to several medical marijuana cases where law enforcement officers were aware of information that would undermine the officers' reasonable suspicion that a crime was being committed or failed to disclose exculpatory information when seeking a warrant. Opposition at p. 18:3-13. However, those cases are not analogous to the present situation.

Apothio's lead medical marijuana cite notes the distinction that "individuals not covered by California's medical marijuana laws still face prison time if convicted of, among other offenses, selling marijuana or possessing it for sale." *United States v. $186,416.00 in U.S. Currency*, 590 F.3d 942, 952 (9th Cir. 2010). In this case, Apothio was growing more than six cannabis plants (500 acres) without a license, with the intent to sell that crop, for its own profit based upon an estimated $1 billion market value. Cf. *People v. Kelly*, 47 Cal.4th 1008, 1013 (2010) ("So long as the authorities have probable cause to believe that possession or cultivation has occurred, law enforcement officers may arrest a person for either crime regardless of the arrestee's having a physician's recommendation or approval."). More on point is *McFall v. County of San Joaquin*, 2018 WL 5619960 (E.D. Cal. Oct. 30, 2018). In that case, plaintiff marijuana growers claimed the San Joaquin County "Right to Farm" ordinance was not disclosed to the warrant issuing court, amounting to judicial deception. Despite finding multiple other deceptions by the arresting officer, the *McFall* court dismissed the complaint. "Rather, the court finds plaintiffs' allegation a local ordinance granted them the right to grow marijuana on their property without government

10

1   interference is a legal conclusion that need not be accepted as true and which has not been

2   buttressed by sufficient factual allegations to state a claim." *Id.* at *4.

3        Reminiscent of Apothio's claims here, the *McFall* court noted: "If their bare allegations

4   were deemed sufficient, the Farmer's Right to Grow Act would presumably render most if not all

5   marijuana cultivation in San Joaquin County 'legal.'" *McFall*, 2018 WL 5619960, at *4. Apothio

6   acknowledges the difficulty of keeping THC below the legal limit. Yet Apothio would have this

7   court allow any cannabis grower to claim it is doing "research," providing not just legality, but a

8   shield from testing and other regulatory oversight of their activities. It is a small wonder that

9   Apothio is concerned about this litigation's impact on "the commercial hemp industry."

10   Opposition at p. 14:21-22. Apothio wants carte blanche to grow and produce *cannabis sativa L.*

11   regardless of its legal status. But its complaint and its arguments are, like those in *McFall*, "bare

12   allegations." Apothio has not seen the warrant, kept under seal during the ongoing criminal

13   investigation. But that does not allow Apothio to guess what probable cause was or was not stated

14   to support its "judicial deception" allegations.

15        Apothio's string of citations to medical marijuana cases also does not support its claim to a

16   "research institution" defense. Indeed, *Allen v. Kumagai*, 356 Fed.Appx. 8, 9 (9th Cir. 2009),

17   holds that plaintiff "cannot use § 1983 to vindicate his purported state-law right to use marijuana

18   for medical purposes." Neither can Apothio use its definition of the state EARI research to claim

19   federal constitutional protection under 42 U.S.C. § 1983. Consistent with *O'Neal v. Johnson*,

20   2017 WL 416128, at *12 (E.D. Cal. Jan. 31, 2017), where the court dismissed the policy or

21   custom claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (*Monell*)

22   because the only allegation was to "isolated or sporadic incidents," Apothio's claims should

23   likewise be dismissed.

24   **C.   Apothio Concedes the Search Was Legal and the Destruction Was Legal**

25        Neither the search of Apothio's fields nor the destruction of contraband were a Fourth

26   Amendment violation. Search of an open field is not a constitutional violation under the open

27   fields doctrine. Destruction of contraband found there is permitted by California Health and

28   Safety Code section 11479. However, Apothio argues that while a search may be authorized

11

1    under the open fields doctrine, it does not allow seizure. Apothio further argues that California

2    Health and Safety Code section 11479 authorizes destruction of seized contraband, but does not

3    allow an illegal search to result in the seizure of the contraband. Opposition at p. 19:21-20:10.

4    Apothio's illogical argument fails. The search of the open field where Apothio was growing

5    marijuana was not a Fourth Amendment violation. Apothio cites the unpublished decision, *People*

6    *v. Jackson* 2011 WL 902029 (Cal. Ct. App. Mar. 16, 2011), to support its position. However, that

7    opinion did find the destruction of the contraband found in an open field is permitted under the

8    "'rigorous and systematic procedure' designed to preserve evidence of a controlled substance"

9    under California Health and Safety Code section 11479. *Id.* at *13. By citing this unpublished

10   opinion, Apothio thereby concedes the search and subsequent destruction of the plants was legal.

11   **V.    APOTHIO FAILS TO SPECIFY INDIVIDUAL *MONELL* LIABILITIES**

12       State Defendants also move to dismiss because the complaint fails to allege the specific acts

13   of the individuals and entities named. *Scalia v. County of Kern*, 308 F.Supp.3d 1064, 1072 (E.D.

14   Cal. 2018) (The complaint must specify which defendants are responsible for each constitutional

15   violation and the factual basis.). Apothio presents a "failure to test" theory, whereby, argues

16   Apothio, "under California law, hemp crop testing, where applicable, must be performed by

17   laboratory grade equipment." Opposition at p. 22:9-16 (citing Cal. Food & Agric. Code § 81006).

18   That theory is the basis for Apothio's "failure to train" liability of Kern County and the State

19   Defendants. Apothio argues that since California Health and Safety Code section 11479 requires

20   approval by the chief enforcement officer, the director of California Department of Fish and

21   Wildlife must be imputed with individual liability. This theory is not specifically alleged in the

22   complaint, but even if it were, it fails as a matter of law.

23       Regardless, the "crop testing" required under California Food and Agricultural Code

24   section 81006 specifies testing methods required of registered industrial hemp cultivators. It has

25   no application to law enforcement whatsoever. California Food and Agricultural Code section

26   81006(e)(1) (emphasis added) states:

27          [A] *registrant that grows industrial hemp* under this section shall, before the
          harvest of each crop and as provided below, obtain a laboratory test report indicating

28

                                                12

1  the THC levels of a random sampling of the dried flowering tops of the industrial
2  hemp grown.

3      When law enforcement officers tested Apothio's crop for THC levels, they were not
4  conducting an inspection to ensure compliance with hemp regulations; they were conducting a
5  criminal investigation. No reference to California Food and Agricultural Code can be relevant to
6  the evidence standards that must be adhered to by peace officers enforcing criminal laws and
7  certainly do not represent a standard of care to allege negligence. There is no constitutional right
8  to prescribe testing methodology. Nor does Apothio's testing theory show that it "was 'entirely
9  unreasonable' for the Defendants to believe that probable cause existed," and therefore entitled to
10 qualified immunity. *Finkelstein v. Jangla*, 2020 WL 3411272 (9th Cir. June 22, 2020). Even if
11 Apothio's theory is accepted that law enforcement must be trained to perform crop tests, the
12 complaint fails to specifically allege the constitutional violations of the individual defendants.
13 Apothio's liability-by-inference under California Health and Safety Code section 11479 is not
14 factually supported in the complaint. Opposition at p. 23:7-14.

15     Apothio fails the requirement that "for a complaint to survive a motion to dismiss, the non-
16 conclusory 'factual content,' and reasonable inferences from that content, must be plausibly
17 suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962,
18 969 (9th Cir. 2009). "To prove *Monell* liability based on ratification, the plaintiff must show that
19 the final policymaker in question had "knowledge of the constitutional violation and actually
20 approve[d] of it. A mere failure to overrule a subordinate's actions, without more, is insufficient
21 to support a section 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). Apothio does
22 not allege that the State Defendants had personal knowledge of the Apothio search warrant.
23 Apothio makes the assertion only that defendant Charlton H. Bonham ratified the warrant as the
24 department's "chief of the law enforcement agency" under California Health and Safety Code
25 section 11479. Opposition at p. 23:12-14. This new allegation is not found in the complaint, nor
26 does Apothio's opposition cite to any supporting facts or law for it.
27 / / /
28 / / /

13

## VI.   STATE DEFENDANTS HAVE COMPLIED WITH THE STANDING ORDER

Apothio claims State Defendants did not comply with the court's standing order to meet-and-confer prior to filing its motion. Defendants did meet and confer. Declaration of Ethan A. Turner in Support of Motion to Dismiss at para. 5. On April 28, 2020, Deputy Attorneys General Ethan Turner and Kelly Smith joined opposing counsel Katherine Eskovitz and Sean Eskovitz on a conference call. *Id.* In the course of the conference call, Turner and Smith explained the fatal deficiencies in the complaint and asked Apothio's counsel if they wished to amend the complaint. *Id.* at 5. Opposing counsel was not amenable to a discussion of the merits of the case and the conversation turned to a stipulation to extend time for State Defendants' responsive pleading to align with that of Defendant Kern County. *Id.* at para. 6. Thus, while the State Defendants attempted to address Apothio's concerns, plaintiff was unwilling to recognize or address any of the deficiencies raised other than to claim the complaint was appropriately pled.

## CONCLUSION

Apothio's complaint is profoundly implausible. It is based on the meritless assertion that law enforcement officers are obliged to follow inapplicable administrative testing standards found in the California Food and Agricultural Code, and failure to do so amounts to negligence. Apothio's claim that it is a victim of legal deception is based upon the proposition that law enforcement officers have an obligation to apprise a judge of this legally dubious "research exemption" defense to criminal liability is not supported by either state or federal law. Further, Apothio is merely guessing about the basis of the warrant request and supposing that defendants failed to inform the judge of this specious defense and, on that basis, concluding that the warrant would not have issued had defendants done so. Further, Apothio relies on legal conclusions as facts which are legally impossible because it is not an EARI and its crop was contraband. Therefore, the complaint as to the State Defendants should be dismissed without leave to amend.

/ / /

/ / /

/ / /

/ / /

14

1 | Dated:  July 29, 2020

2 | Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
BRUCE D. MCGAGIN
Supervising Deputy Attorney General

   /s/ Kelly Smith

KELLY T. SMITH
Deputy Attorney General
*Attorneys for Defendants, Department of Fish and Wildlife and Director Charlton H. Bonham*

SA2020300599
34271652.docx

15

## CERTIFICATE OF SERVICE

Case Name:  **Apothio, LLC v. Kern County,**          No.     **1:20-cv-00522-NONE-JLT**
            **et al.**

I hereby certify that on July 29, 2020, I electronically filed the following documents with the
Clerk of the Court by using the CM/ECF system:

**STATE DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
THE COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be
accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States
of America the foregoing is true and correct and that this declaration was executed on July 29,
2020, at Sacramento, California.


             Ngoc T. Huynh                              /s/ Ngoc Huynh
                Declarant                                  Signature

SA2020300599
34276318.docx