1  MARGO A. RAISON, COUNTY COUNSEL
   By: Andrew C. Thomson, Chief Deputy (SBN 149057)
2  Kathleen Rivera, Deputy (SBN 211606)
   Phillip T. Jenkins, Deputy (SBN 309523)
3  Kern County Administrative Center
4  1115 Truxtun Avenue, Fourth Floor
   Bakersfield, CA 93301
5  Telephone 661-868-3800

6

7  **Attorneys for Defendants County of Kern, Donny Youngblood and Joshua Nicholson**

8

9              UNITED STATES DISTRICT COURT

10             EASTERN DISTRICT OF CALIFORNIA

11
   APOTHIO, LLC,                          ) Case No.: 1:20-cv-00522-NONE-JLT
12                                         )
                 Plaintiff,               ) DEFENDANT COUNTY'S REPLY TO
13 v.                                      ) APOTHIO LLC'S JOINT OPPOSITION
                                           ) TO KERN DEFENDANTS' (1)MOTION
14 KERN COUNTY; KERN COUNTY                ) TO DISMISS AND (2) MOTION FOR
15 SHERIFF'S OFFICE; CALIFORNIA            ) MORE DEFINITE STATEMENT FILED
   DEPARTMENT OF FISH AND                  ) BY DEFENDANTS KERN COUNTY,
16 WILDLIFE; DONNY YOUNGBLOOD;             ) KERN COUNTY SHERIFF'S OFFCIE,
   JOSHUA NICHOLSON; CHARLTON H.           ) DONNY YOUNGBLOOD, AND JOSHUA
17 BONHAM; JOHN DOES #1 THROUGH            ) NICHOLSON
   #10, UNKNOWN AGENTS OF THE              )
18 KERN COUNTY SHERIFF'S OFFICE;           )
19 JOHN DOES #11 THROUGH #20,              ) Date:  August 10, 2020
   UNKNOWN AGENTS OF THE                   ) Time:  8:30 a.m.
20 CALIFORNIA FISH AND WILDLIFE            ) Dept.: D-4
   DEPARTMENT                              ) Judge:  NONE
21                  Defendants.           )

22

23 **TO PLAINTIFF AND ATTORNEYS OF RECORD;**

24       **COME NOW** Defendants County of Kern, on behalf of itself and its integral agency the

25 Kern County Sheriff's Office (hereafter jointly "County"), Kern County Sheriff Donny

26 Youngblood (hereinafter "Youngblood") and Sergeant Joshua Nicholson (hereafter

27

28

                                         1

"Nicholson")(hereinafter collectively "County Defendants") and Reply to Plaintiff Apothio LLC's Opposition to Motion to Dismiss.[1]

## I.

## ARGUMENT

**A. Plaintiff's Opposition attempts to avoid the plain allegations in the Complaint regarding marijuana, as these allegations support dismissal of Plaintiff's constitutional claims.**

Plaintiff states in its Opposition that the County Defendants' Motion to Dismiss is "based on a grievous distortion" of the Complaint, and that the County mischaracterizes and mis-cites the allegations of the Complaint regarding marijuana.  (Opposition, p. 1, ll. 8-11).  Not surprisingly, Plaintiffs state the same thing in their Opposition to the Motion to Dismiss filed by the California Dept. of Fish and Wildlife Defendants.  (Opposition to Motion to Dismiss filed by California Dept. of Fish and Wildlife, et al., p. 2, ll. 1-3).  Plaintiff takes great pains to attempt to walk back the plain allegations of the Complaint regarding marijuana, because Plaintiff's own allegations support these motions to dismiss.  Plaintiff has admitted in the Complaint that it was cultivating marijuana, and both motions to dismiss correctly state that Plaintiff has no constitutionally protected interest in marijuana, or contraband, and therefore the Plaintiff's constitutional claims must be dismissed.

The Plaintiff's Complaint admits testing showed its plants contained a THC concentration greater than 0.3 percent.  (Complaint, ¶ ¶ 8, 35, 62, 82, 92).  Plaintiffs Complaint admits to cultivating and possessing a far greater amount of marijuana than allowed under Cal. Health & Safety Code §§ 11362.1 and 11362.2.  (Complaint, ¶ ¶ 85, 88, 91-92).  The theme throughout Plaintiff's Complaint is that it was nevertheless immune from the laws applicable to processing and growing marijuana because it was a "research" entity.

Now, in the face of motions to dismiss which correctly state the law, that the Plaintiff does not have a federally protected property right in marijuana, or contraband, Plaintiff seeks to avoid these admissions in the Complaint.  (Opposition, pp. 4, l. 15 – p. 6, l. 10).  However, the

---

[1]  Defendants may not address every argument in the Opposition due to space constraints, this is not a concession to any such arguments in the Opposition.

KERN COUNTY DEFENDANTS' S REPLY TO OPPOSITION TO MOTION TO DISMISS

admissions remain in the Complaint, and both Kern County and California Dept. of Fish and Wildlife Defendants correctly state in their motions to dismiss that there is no federally protected interest in contraband, such as marijuana.  (*See e.g. Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley,* 71 F.Supp. 3d 715, 719 (E.D. Mich 2017)(medical marijuana users may not seek protection under the Fair Housing Act); *Fourth Corner Credit Union v. Federal Reserve Bank of Kansas,* 861 F.3d 1052, 1054-55 (10th Cir. 2017)(courts will not facilitate or legitimize the marijuana industry in the business context); *River N. Properties, LLC v. City and Cty. Of Denver,* 2014 WL 7437048, at *1-3 (D. Colo. Dec. 30, 2014)("marijuana is contraband *per se* under federal law [and therefore] plaintiff lacked a cognizable property interest in its cultivation*); Barrios v. County of Tulare,* 2014 WL 2174746, at *4-5 (E.D. Cal. May 23, 2014)(due process claims dismissed where purported property interest in marijuana plants was not legitimate" property interest warranting federal protection); *Young v. Larimer County Sheriff's Office,* 356 P.3d 939, 943 (Colo. App. 2014)("[Notwithstanding the MMA, Young cannot seek relief under § 1983 for destruction of marijuana plants because that destruction did not impair a federal right."); *Schmidt v. County of Nevada* (2011 WL 2967786 at *5 (E.D Cal. March 30, 2011)(plaintiff cannot recover damages as a result of the confiscation or destruction of marijuana crops as there is no cognizable property interest in marijuana)).[2]

Therefore, Plaintiff's claims of violation of federal civil rights as stated in the first, second, third, fourth and sixth causes of action must be dismissed.  Similarly, because the same search and seizure and due process theories are essentially repeated as state civil rights violations under California's Bane Act in the fourth, fifth, sixth and seventh causes of action, these must be dismissed as well.

///

///

---

[2] Plaintiff states the County Defendants' Motion to Dismiss tries to "pass off a recent *petition for certiorari* in a marijuana case as a *controlling decision by the United States Supreme Court* for its entire two-page discussion in which they mistakenly argue that the federal Controlled Substances Act prevents the enforcement of Apothio's property rights." (Opposition, p 2, ll. 1-3).  On the contrary, Defendants cite *Helix TCS, Inc. v. Robert Kenney,* 2020 WL 2526910 at *9 (2020)(On Petition for Writ of Certiorari to the U.S. Court of Appeals for the Tenth Circuit) for the sole purpose of pointing out that *Helix* lists a string of cases showing how federal protections will not be granted to state-sanctioned marijuana activities. (Opposition, p. 3, l. 13- p. 4, l. 15).  The Opposition does not cite to a "controlling decision" of *Helix,* and for Plaintiffs to suggest otherwise is misleading to this court.

KERN COUNTY DEFENDANTS' S REPLY TO OPPOSITION TO MOTION TO DISMISS

**B.    Plaintiff's Opposition mistakenly relies on the 2018 Farm Bill to oppose the Motion to Dismiss.**

Even if it were true that Plaintiff only cultivated hemp (Cannabis sativa L. that was below the 0.3% threshold), despite the Complaint's admissions to the contrary as discussed above (which Defendants do not concede), Plaintiff is still incorrect in its assertion that this would render its operation legal under the 2018 Farm Bill.  Plaintiff's Opposition states that the 2018 Farm Bill legalized hemp under federal law by removing it from Schedule 1 of the Controlled Substances Act.  (Opposition, p. 7, ll. 20-21).  This is only partially correct in that the 2018 Farm Bill did remove hemp from the definition of marijuana.  However, this statement is misleading, in that as a result of the 2018 Farm Bill hemp can only be grown within states that have approved industrial Hemp Plans (7 U.S.C.A. § 1639(p)(l); 7 C.F.R. § 990.3) or pursuant to a hemp production license issued by the US Dept. of Agriculture (7 U.S.C.A § 1639(q) which the Complaint does not allege. The 2018 Farm Bill required the USDA to promulgate regulations for the implementation of domestic hemp production (7 U.S.C.A. § 1639(r)), but these regulations were not adopted until October 31, 2019, which was after the search warrant in this case was executed.  The Secretary of the California Department of Food and Agriculture was required to submit a proposed State plan by May 1, 2020.  (Cal. Food & Ag. Code § 81015).  Thus, at the time of this seizure, there was no California plan for Plaintiff to comply with, therefore it would have been impossible for Plaintiff to have been complying with the 2018 Farm Bill at the time of this seizure.

Despite this controlling law, Plaintiff makes the bold assertion:  "[b]ut until the USDA publishes its final rule or a new state plan is approved by the USDA, growers like Apothio may cultivate hemp under existing law, without any concern about violating the Controlled Substances Act."  (Opposition, p. 9, ll. 4-6).  Plaintiff's only cite for this proposition is *Bond v. United States,* 572 U.S. 844, 854 (2014).  However, a quick check of the *Bond* case shows it doesn't support this contention at all.  *Bond* concerned a woman (Bond) who sought revenge on her husband's mistress by spreading toxic chemicals on surfaces in the hope the mistress would develop an uncomfortable rash.  (*Id.* at 844).  Federal prosecutors charged Bond with, among other things, violation of 18 U.S.C. § 229(a)(1), which prohibited use of a toxic weapon to cause

4

death, temporary incapacitation or permanent harm, and which was a statute intended to implement an international treaty on chemical weapons. (*Id.*). The Supreme Court held that § 229 did not reach Bond's simple assault, (*Id.* at 866), based on the longstanding federalist principal that the federal government will not intrude on an area of traditional state authority, such as criminal law enforcement in this case. (*Id.*). Plaintiff's attempt to stretch the holding in *Bond* to somehow apply to this case such that Apothio was free to cultivate hemp "without any concern about the Controlled Substances Act" should be rejected.

Therefore, Plaintiff's arguments in the Opposition that the 2018 Farm Bill somehow made Plaintiff's hemp legal under federal law should be disregarded. As shown above, even if Plaintiff were growing hemp, and not marijuana, this was still not legal under federal law. Thus, Plaintiff's allegations of constitutional violations based on the seizure and destruction of such hemp should be dismissed.

Plaintiff's Opposition makes a number of misrepresentations which must be pointed out. The first is that Plaintiff states in its Opposition to the Motion to Dismiss filed by the California Dept. of Fish and Wildlife Defendants that "the Kern Defendants concede that Apothio's Complaint adequately alleges facts qualifying Apothio as an EARI under California law, *see* Kern MTD at 5…" (Opposition to Motion to Dismiss by Cal. Dept. Fish and Wildlife et al., p. 8, ll. 3-4). In reality, County's Opposition states: "[t]he issue of whether Plaintiff as an 'established agricultural research institute' as that is authorized under California state law with any protections state law might provide is not a topic for this motion to dismiss, as that is a factual question which will be addressed in a motion for summary judgment." (Opposition, p. 5, ll. 5-8). Plaintiff's blatant mischaracterizations of the pleadings should be disregarded by this court.

After making this misrepresentation about EARI under state law, Plaintiff goes on to make a similar misrepresentation regarding an alleged federal research exemption in its Opposition to the County's Motion to Dismiss. Plaintiff states: "Kern Defendants also expressly concede that under the federal research exemption, 'Apothio would be able to grow and harvest hemp under federal law.'…". (Opposition, p. 11, ll. 2-3). Plaintiff cites to page 7 of the County's Motion to Dismiss, but nowhere does the County make such a statement with regard to an alleged

1    federal EARI anywhere in the Motion.  Again, such blatant mischaracterizations of the pleadings

2    should be disregarded by this court.

3            On this subject of an alleged research exemption, Plaintiff includes a hearing transcript

4    from a 2014 case from the Western District of Kentucky, purportedly to support its argument

5    that because Plaintiff allegedly has "agreements" with institutions of higher education, it

6    qualifies for a federal exemption to cultivate hemp.  (Opposition, p. 11, ll. 6-10).  Plaintiff cites

7    to this portion of the transcript: "Mr. Schecter [for the DEA]: This is Ben.  Generally speaking,

8    that's correct…So I think that the implicit recognition and the explicit representation in the May

9    22nd letter, which is as long as we are all following the Farm Bill and conducting research to

10   grow and cultivate industrial hemp and those MOU's are in place and they are adhering to their

11   own state law, I think we are in good shape."  (Opposition, p. 11, fn. 13).  What Plaintiff leaves

12   out at the "…" is significant.  In reality, the transcript reads: "This is Ben.  Generally speaking,

13   that's correct.  In fact, there was the second application to import these Canadian seeds.  The

14   MOUs were submitted as part of that process, *and DEA approved the permit within about two*

15   *weeks*."  (*Kentucky Dept. of Ag. v. DEA (KDA)*, 3:14-cv-00372, ECF No. [20], at 5:19-23,

16   emphasis added).  Plaintiff failed to inform this court that the transcript cited bears no relationship

17   to this case because the Kentucky case clearly involved DEA approval for the cultivation of

18   industrial hemp, and Apothio never alleges it had a permit from the DEA to grow hemp.  For this

19   reason, this court should disregard this line of argument in the Opposition.

20         **C.      The Declaration of counsel in support of Plaintiff's arguments regarding the**
     **warrant should be disregarded.**

21         Counsel submits a Declaration which purports to detail counsel's efforts to obtain search

22   warrant materials from the Kern County Superior Court.  This lengthy narration of facts is

23   objectionable in that it contains multiple layers of hearsay.  For example, paragraph 3 of the

24   Declaration relates something that a court clerk said to Plaintiff's investigator who then told

25   counsel.  This pattern of multiple layers of hearsay is repeated in the Declaration.  For that reason

26   alone, it should be disregarded.

27         Moreover, the Declaration seeks to allege new facts.  The 9th Circuit has held that the

28   district court cannot consider new facts alleged in plaintiff's opposition papers to a 12(b)(6)

KERN COUNTY DEFENDANTS' S REPLY TO OPPOSITION TO MOTION TO DISMISS

1    motion. (*Schneider v. California Dept. of Corrections,* 151 F.3d 1194, 1197 (9th Cr. 1998)).  The

2    new facts, however, may be considered by the court in deciding whether to grant leave to amend

3    or to dismiss with or without prejudice. (*Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.,*

4    268 F3d. 1133, 1137 (9th Cir. 2001)).  But such new facts as contained in the Declaration of

5    counsel should not be considered by this court in determining the sufficiency of the allegations

6    in Plaintiff's Complaint to withstand County's Motion to Dismiss.

7           **D.     Plaintiff's Opposition fails to rebut the arguments made in the motion to**

8    **dismiss regarding the *Monell* claims.**

9           Plaintiff misstates the law on *Monell* in its Opposition, and perhaps that explains the

10   inability of the Complaint to state a claim for *Monell* liability.  Plaintiff claims: "…*Monell* is not

11   a defense; it is a way to impose supervisory liability." (Opposition, p. 21, fn. 25).  To the

12   contrary, supervisory liability in § 1983 actions is not at all the same as a *Monell* claim.  A

13   supervisor is only liable for the constitutional violations of subordinates if the supervisor

14   participated in or directed the violations, or knew of the violations and failed to prevent them.

15   (*See e.g. Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989)).  *Monell* liability on the other hand

16   occurs when a municipality, through its official policy, or custom, or failure to train actually

17   caused the underlying constitutional violation by a municipal employee (*City of St. Louis v.*

18   *Praprotnik,* 485 U.S. 112, 127 (1988); *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388-91

19   (1989)) or where the employee's unconstitutional conduct was ratified by a final policy maker

20   (*Trevino v. Gates*, 99 F.3d 911, 920-21 (9th Cir. 1996)).

21          Despite the fact that 5 paragraphs of the complaint seek to allege *Monell* liability against

22   Kern County based on "an official policy and/or custom of deliberate indifference to violations

23   of constitutional rights by KCSO officers" (Complaint, ¶¶ 167, 173, 181, 187, 199), now in its

24   Opposition Plaintiff states it is only alleging *Monell* liability on two theories:  training and

25   ratification. (Opposition, p. 21, ll. 14-17).

26          The *Monell* allegations at paragraphs 167, 173, 181, 187 and 199 of the Complaint merely

27   recite the elements of a cause of action, and as the Opposition points out, this fails to conform

28   with the pleading standards of *Ashcroft v. Iqbal,* 556 U.S. 662, 679-80 (2009) or *Starr v. Baca,*

     652 F.3d 1202, 1216 (9th Cir. 2011).  Plaintiff seeks to avoid this Motion to Dismiss by stating

that the Complaint contains numerous allegations supporting a KCSO's alleged failure to train regarding testing of hemp and marijuana. (Opposition, p. 22, ll. 2-23). However, on closer look, the only allegation that KCSO failed to train with regard to testing hemp crops is contained at paragraph 133. That one paragraph allegation is not enough to meet the pleading requirements for a failure to train cause of action. County Defendants are entitled to know from the allegations of the Complaint, not the arguments of counsel in the Opposition, as to what specific training deficiencies are alleged to have caused the alleged constitutional violation in this matter.

Plaintiff then makes the shaky claim that the allegations at paragraphs 155-61 of the Complaint, taken from a British newspaper regarding statistics on deaths of individuals in the custody of KCSO and allegations about Kern County criminal cases somehow states a claim for a failure of training which lead to the alleged constitutional violations in this case. (Opposition, p. 22, l. 23- p. 23, l. 1). Paragraphs 155-61 of the Complaint are irrelevant, and do not help Plaintiff satisfy the pleading requirements for a failure to train cause of action.

**E.    Plaintiff confuses *Monell* claims with claims against Sheriff Youngblood in his individual capacity.**

Plaintiff's Opposition states "[b]ecause Apothio has adequately alleged failure to train and ratification theories against the County and KCSO, and Sheriff Youngblood is the official in charge of training officers and ratifying the destruction of marijuana, Apothio has adequately alleged a claim against Youngblood in his individual capacity." (Opposition, p. 23, ll. 12-15). Plaintiff is confusing *Monell* liability with individual liability. By alleging failure to train and ratification, Plaintiff may be able to hold Kern County liable on a *Monell* cause of action, but that does not make Sheriff Youngblood individually liable. Plaintiff must plead facts showing Sheriff Youngblood's individual liability, and the Complaint fails to do this.

**F.    Plaintiff misstates the law regarding pleading requirements for a Bane Act cause of action.**

Defendants correctly stated in their Opposition that to state a Bane Act claim, a plaintiff must show 1) intentional interference or attempted interference with a state or federal constitutional or legal right and 2) the interference or attempted interference was by threats, intimidation or coercion. (*Allen v. City of Sacramento*, 234 Cal.App. 4th 41, 67 (2015), *as*

1      *modified on denial of reh'g* (Mar. 6, 2015); *See also Cornell v. City and County of San Francisco,*

2      17 Cal.App. 5th 766, 802 n. 31 (2017). Plaintiff states that Defendants ignore law which states

3      that an officer's willful or reckless violation of constitutional rights satisfies the threat,

4      intimidation or coercion element so long as the officer had specific intent to violate constitutional

5      rights. (Opposition, p. 24, ll. 1-3). Plaintiff's statement of the law is correct, but that applies to

6      cases where plaintiff is alleging Fourth Amendment unreasonable seizure of the person or

7      excessive force claims, which is clearly not the case here.

8          The courts have held that in Fourth Amendment unreasonable seizure of the person or

9      excessive force claims where intentional conduct is at issue, there is no need for plaintiff to allege

10     a showing of coercion, independent from the coercion inherent in the seizure or use of force.

11     (*Cornell v. City and County of San Francisco, supra,* 17 Cal.App. 5th 766, 802 n. 31 (2017). In

12     the present case, Plaintiff is alleging Fourth Amendment violations for allegedly entering the

13     subject hemp fields without a valid warrant and destroying such hemp. (Complaint, ¶ 166). This

14     is not a case where Plaintiff is alleging excessive force or Fourth Amendment seizures of the

15     person. (*See e.g. Cornell v. City and County of San Francisco, supra,* 17 Cal.App. 5th at 802 n.

16     31, and cases cited therein: *Lawrence v. City and County of San Francisco,* 2017 WL 2591863

17     at pp. *13-14 (N.D. Cal. June 15, 2017)(tight handcuffing, handcuffing to a bench); *Johnson v.*

18     *Shasta County,* 83 F.Supp.3d 918, 934 (E.D. Cal. 2015)(yanking arrestee up from the ground by

19     handcuffs, pointing gun and threatening to shoot); *Dillman v. Tuolumne County,* 2013 WL

20     1907379 at *1-2, 20-21(handcuffing in high, tight and painful manner, strip search).

21         Plaintiff's citation to *Sandoval v. Cty. of Sonoma,* 912 F.3d 509, 519 (9th Cir. 2018), *cert.*

22     *denied* 140 S. Ct. 142 (2019) is not applicable to this analysis, as in that case the court was

23     considering the district court's grant of summary judgment, and the court found that the

24     defendants lacked the requisite specific intent to violate plaintiff's Fourth Amendment rights, as

25     required to state a claim under the Bane Act. (*Id.* at 519-520). Likewise, *Reese v. Cty. of*

26     *Sacramento,* 888 F.3d 1030, 1041-43 (9th Cir. 2018) is not applicable as that case concerned a

27     shooting, which the court found showed the specific intent to violate the arrestee's rights, thus

28     negating the requirement of showing coercion. (*Id.* at 1043-44). Finally, Plaintiff's citation to

    *County Inmate Telephone Service Cases,* 48 Cal.App.5th 354 (2020), is not helpful to Plaintiff's

KERN COUNTY DEFENDANTS' S REPLY TO OPPOSITION TO MOTION TO DISMISS

1  position.  In that case Plaintiffs/inmates sued in protest of allegedly exorbitant commissions paid

2  by telecommunication companies to counties under contracts giving the companies exclusive

3  rights to provide phone service to inmates.  (*Id.* at 4).  The superior court sustained defendants'

4  demurrer. The court of appeals affirmed, finding plaintiffs had not made the requisite showing

5  of coercion for their Bane Act claims, stating:  "[t]he Legislature enacted section 52.1 to stem a

6  tide of hate crimes. [citation.]…[A]s long as interference or attempted interference with [legal

7  rights] is accompanied by threats, intimidation, or coercion, section 52.1 provides remedies for

8  that misconduct."  (*Id.* at 15, citing *Jones v. Kmart Corp.,* 17 Cal.4th 329, 338, (1998)).

9      A further basis for dismissal of the Bane Act claims is that a claim of violation of the

10  Bane Act is necessarily premised on violations of federal constitutional rights.  Thus, if this court

11  dismisses Plaintiff's federal constitutional claims, as discussed more fully in the Motion to

12  Dismiss and above, then it follows that the Bane Act claims must be dismissed as well.

## II.

### CONCLUSION

For the reasons stated in this Reply, as well as arguments more fully stated in Defendants'
Motion to Dismiss, Defendants respectfully request this court grant Defendants' Motion to
Dismiss.

Dated:  July 29, 2020                      MARGO A. RAISON, COUNTY COUNSEL

By:   /s/ Kathleen S. Rivera
    Andrew C. Thomson, Chief Deputy
    Kathleen Rivera, Deputy
    Phillip T. Jenkins, Deputy
    Attorneys for Defendants County
    of Kern, Donny Youngblood and
    Joshua Nicholson

2514126

KERN COUNTY DEFENDANTS' S REPLY TO OPPOSITION TO MOTION TO DISMISS