2020 WL 4504904
Only the Westlaw citation is currently available.
Court of Appeal, Sixth District, California.

GRANNY PURPS, INC., Plaintiff and Appellant,
v.
COUNTY OF SANTA CRUZ et al., Defendants and Respondents.

H045387
|
Filed 08/05/2020

Santa Cruz County Superior Court Superior Court Case No. 16-CV-01899, Hon. Paul P. Burdick (Santa Cruz County Super. Ct. No. 16CV01899)

**Attorneys and Law Firms**

Andrew F. Pierce, Pierce & Shearer LLP, Redwood City, for Plaintiff/Appellant GRANNY PURPS, INC.

Jordan Sheinbaum, Office of the Santa Cruz County, for Defendant/Respondent COUNTY OF SANTA CRUZCounsel

**Opinion**

Grover, J.

**\*1** Santa Cruz County law enforcement officers seized more than 2,000 marijuana plants from a medical marijuana dispensary for violating a local ordinance restricting cannabis cultivation. When the dispensary sued to recover the marijuana, the county asserted it had no obligation to return the plants since the dispensary violated the ordinance. The trial court agreed and sustained the county's demurrer without leave to amend. We will reverse the judgment. A government entity does not have to return seized property if the property itself is illegal. But the ordinance here ultimately regulates land use within the county; it does not (nor could it) render illegal a substance that is legal under state law. For that reason, the causes of action seeking return of property survive demurrer.

### I. BACKGROUND

We take the facts from the operative first amended complaint. Plaintiff Granny Purps, Inc. operates a medical marijuana dispensary in Santa Cruz County that grows and provides medical marijuana to its 20,000 members. It does so in compliance with state laws governing the production and distribution of marijuana for medical purposes.

The County of Santa Cruz restricts cannabis cultivation. A local ordinance prohibits any medical cannabis operation from cultivating more than 99 plants, while plaintiff's dispensary was growing thousands of marijuana plants. As a result, law enforcement officers from the county sheriff's office went to the dispensary in June 2015 and seized about 1,800 plants. The county also issued plaintiff a notice of ordinance violation. Several months later, law enforcement officers again went to the dispensary and took about 400 more marijuana plants.

Plaintiff sued the county and two sheriff's deputies in July 2016. The complaint asserted claims for monetary damages, alleging causes of action for conversion, trespass, and inverse condemnation. Plaintiff also sought an order requiring the county to return the seized cannabis plants, by way of a writ of mandate, injunctive relief, and a cause of action for specific recovery of property. Plaintiff also requested a judgment declaring that the county cannot lawfully seize cannabis plants from a dispensary operating in compliance with state medical marijuana laws.

The county demurred to the complaint on the grounds that it failed to state a valid cause of action and the claims were time barred. The trial court sustained the demurrer without leave to amend and entered judgment for defendants.

### II. DISCUSSION

The county argues the demurrer was properly sustained for two primary reasons: the claims seeking return of property cannot succeed because plaintiff was in violation of the ordinance restricting cannabis cultivation; and the claims for damages are barred by the statute of limitations for suits against a government entity. Our review of a decision sustaining a demurrer is de novo. (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031, 93 Cal.Rptr.3d 405.) We independently review the complaint, assume its factual allegations are true, and determine whether it states a cause of action under any legal theory. (*Ibid.*)

### A. CLAIMS FOR RETURN OF SEIZED PROPERTY

**\*2** Plaintiff seeks an order compelling the county to return the seized marijuana plants. As a general proposition, a government agency cannot retain an individual's property without providing due process of law. (*Ensoniq Corp. v. Superior Court* (1998) 65 Cal.App.4th 1537, 1548–1549, 77 Cal.Rptr.2d 507.) Someone whose property is wrongfully withheld by the government may bring a cause of action specifically for an order compelling return of the property. (*Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113, 121–123, 113 Cal.Rptr. 102, 520 P.2d 726.) But the right to regain property withheld by the government is not absolute. One exception applies to property lawfully seized for use as evidence in a criminal action while the action is pending. (*People v. Lamonte* (1997) 53 Cal.App.4th 544, 549, 61 Cal.Rptr.2d 810.) Another exception applies to illegal property. The state can retain property that is illegal to possess, whether it was lawfully seized or not. (*Ensoniq Corp., supra*, 65 Cal.App.4th 1537, 1548, 77 Cal.Rptr.2d 507.) It is that second exception the county relies on here. The county asserts that because plaintiff's dispensary violated a local ordinance restricting cannabis cultivation within the county, the marijuana was illegally possessed and plaintiff has no right to its return.

The illegal property exception applies only where the property in question is per se illegal to possess. (See *Minsky v. City of Los Angeles, supra*, 11 Cal.3d 113, 121, 113 Cal.Rptr. 102, 520 P.2d 726 [government is a bailee of seized property unless it is shown to be contraband]; *People v. Lamonte, supra*, 53 Cal.App.4th 544, 552, 61 Cal.Rptr.2d 810); see also *United States v. Harrell* (9th Cir. 2008) 530 F.3d 1051, 1057 ( ["An object is contraband per se if its possession, without more, constitutes a crime; or in other words, if there is no legal purpose to which the object could be put."].) We must therefore determine if the seized marijuana is contraband per se.

Marijuana, at least for medical purposes, has been legal to possess in California since 1996. The Compassionate Use Act (Health & Saf. Code, § 11362.5) made " 'possession and cultivation ... noncriminal for a qualified patient or primary caregiver.' " (*City of Garden Grove v. Superior Court* (2007) 157 Cal.App.4th 355, 373, 68 Cal.Rptr.3d 656.) For qualifying individuals, possession and cultivation of marijuana became "just as lawful as the 'possession and acquisition of any prescription drug.' " (*Id.* at p. 372, 68 Cal.Rptr.3d 656.) Protections for medical marijuana increased in 2003 with the passage of the California Medical Marijuana Program Act (Health & Saf. Code, § 11362.71, et seq.), which decriminalized medical marijuana-related activities beyond mere possession. The Legislature "exempted those qualifying patients and primary caregivers who collectively or cooperatively cultivate marijuana for medical purposes from criminal sanctions for possession for sale, transportation or furnishing marijuana, maintaining a location for unlawfully selling, giving away, or using controlled substances, managing a location for the storage, distribution of any controlled substance for sale, and the laws declaring the use of property for these purposes a nuisance." (*People v. Urziceanu* (2005) 132 Cal.App.4th 747, 785, 33 Cal.Rptr.3d 859.) [1]

1  After the events in this case, the marijuana laws changed again, with the passage of Proposition 64 in November 2016. That initiative legalized marijuana for recreational use by adults. (*City of Vallejo v. NCORP4, Inc.* (2017) 15 Cal.App.5th 1078, 1081, 223 Cal.Rptr.3d 740.) Adults over age 21 can now possess up to 28.5 grams of marijuana. (Health & Saf. Code, § 11362.1, subd. (a)(1).) No one has suggested the new law has any effect on the issues presented here.

Significantly, California laws allowing access to medical marijuana do not limit the ability of a local government to make land use decisions. A local government's inherent police power gives it broad authority to determine the appropriate uses of land within its jurisdictional boundary. (*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 738, 156 Cal.Rptr.3d 409, 300 P.3d 494 (*City of Riverside*).) As a result, a local government can by zoning ordinance determine that a medical marijuana dispensary is not an allowed land use anywhere in the jurisdiction. (See *Ibid.* [upholding Riverside's ban on medical marijuana dispensaries within city limits].) Similarly, a local legislative body can restrict or disallow entirely the cultivation of medical cannabis. (See *County of Tulare v. Nunes* (2013) 215 Cal.App.4th 1188, 1203, 155 Cal.Rptr.3d 781.) Those local land use restrictions have been held not to conflict with state laws permitting medical marijuana because of the narrow scope of the state laws, which merely created an exception to the criminal laws regulating the possession and use of marijuana. (*City of Riverside, supra*, at p. 746, 156 Cal.Rptr.3d 409, 300 P.3d 494.) An exemption from state criminal laws does not preempt local land use regulation. (*Id.* at p. 749, 156 Cal.Rptr.3d 409, 300 P.3d 494.)

**\*3** The stated purpose of the Santa Cruz County ordinance at issue is "to prohibit medical cannabis cultivation while granting limited immunity from the enforcement of its prohibition to those medical cannabis cultivation activities that do not violate [certain restrictions]." (Santa Cruz County Code, § 7.126.010.) It accomplishes that purpose by declaring all cultivation of cannabis within the county by any cannabis cultivation business to be a prohibited activity constituting a public nuisance. (*Id.*, § 7.126.030.) At the same time, the ordinance grants limited immunity from its provisions for any medical cannabis cultivation business that does not cultivate more than 99 marijuana plants and complies with certain other requirements. (*Id.*, § 7.126.040.) Taken together, these provisions essentially impose a 99-plant limit on medical cannabis cultivation within the county, which is a permissible exercise of the County's inherent authority to regulate for public health, safety and welfare.

The County insists its cannabis restriction is a health and safety ordinance and not a land use regulation, noting that the ordinance is codified in Title 7 of the County Code which is entitled "Health and Safety." But on its face the ordinance restricts the manner in which land can be used, effectively making it a zoning regulation. (See *City of Riverside, supra*, 56 Cal.4th 729, 754, 156 Cal.Rptr.3d 409, 300 P.3d 494 [ordinance prohibiting marijuana-related activities on land within the jurisdiction is a zoning regulation].) And the County is not helped by characterizing its regulation as something other than zoning. Local land use regulation is clearly allowed under the state marijuana laws, whereas other regulation of medical marijuana risks state preemption. (See *Id.* at p. 754, fn. 8, 156 Cal.Rptr.3d 409, 300 P.3d 494 [state medical marijuana laws preserved "the authority of local jurisdictions to decide whether local land may be used to operate medical marijuana facilities."].) The County's label is ultimately inconsequential. It is the effect of the ordinance that matters here.

A valid local ordinance restricting the number of marijuana plants that can be cultivated does not change the status of medical marijuana under state criminal law (nor could it, as any attempt to do so would be preempted). (*People v. Ahmed* (2018) 25 Cal.App.5th 136, 143, 235 Cal.Rptr.3d 472.) Possession of medical cannabis, by those qualified according to state law, is not a crime. That necessarily means that marijuana possessed for medical purposes in compliance with *state* standards is not contraband per se. The concept that marijuana is not contraband subject to seizure by law enforcement is relatively new; marijuana (medical or otherwise) for so long *was* contraband that we may be conditioned to think of it as such. But with medical marijuana now as legal as "any prescription drug," a local ordinance cannot make it illegal to possess, even while the locality remains free to limit or prohibit commercial dispensing or cultivation. (*City of Garden Grove v. Superior Court, supra*, 157 Cal.App.4th 355, 372, 68 Cal.Rptr.3d 656.)

Plaintiff alleges in the complaint that its cultivation and possession of marijuana were fully compliant with applicable state laws. We must assume that is true for purposes of our review, because this case comes to us on demurrer. Based on that allegation, the marijuana seized by law enforcement is not contraband, and plaintiff can assert a valid cause of action seeking its return. (See *City of Garden Grove v. Superior Court, supra*, 157 Cal.App.4th 355, 362, 68 Cal.Rptr.3d 656 [local governments are bound by state laws and "must return materials the state considers legally possessed."].) The demurrer to the causes of action for specific return of property, for mandamus relief compelling the return of the seized marijuana, and for declaratory relief therefore should have been overruled.[2] (The county's assertion that a declaratory judgment is a remedy and not an independent cause of action is incorrect: *declaratory* relief is a cause of action, one that can be maintained as long there is an existing legal controversy alleged. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80, 124 Cal.Rptr.2d 519, 52 P.3d 695.) In contrast, the operative complaint also contains a cause of action entitled "preliminary and permanent injunction"; because *injunctive* relief is a remedy rather than a standalone cause of action, the demurrer to that claim was properly sustained. (*McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1159, 69 Cal.Rptr.2d 692.))

| | |
|---|---|
| 2 | The County argues in a footnote that these causes of action are outside the scope of the leave to amend allowed by a prior order sustaining its demurrer to plaintiff's initial complaint. But the county did not demur to the first amended complaint on that ground, nor raise the argument in the trial court at any time. The argument has therefore been forfeited for appeal. |

**\*4** At this procedural stage, plaintiff has the benefit of our accepting as true that its cultivation of marijuana complied with state law. But to succeed on its claims for return of property, it will need to *prove* that fact (among others). If plaintiff was cultivating marijuana in a manner not allowed by state law, the marijuana would indeed be contraband and not subject to return. (See *Littlefield v. County of Humboldt*

(2013) 218 Cal.App.4th 243, 256, 159 Cal.Rptr.3d 731 [summary judgment for county properly granted in action for wrongful seizure of medical marijuana because grower failed to present evidence marijuana was being cultivated in compliance with state law]; see also *Chavez v. Superior Court* (2004) 123 Cal.App.4th 104, 110, 20 Cal.Rptr.3d 21 [no right to return of marijuana where its possession was not in compliance with state law].)

We also observe that limits on law enforcement's power to seize legitimate medical marijuana as contraband does not prevent a locality from enforcing a valid ordinance regulating medical marijuana cultivation. Local governments can cite violators (an enforcement mechanism specifically provided for in the ordinance here [see Santa Cruz County Code, § 7.126.070 (A) ] ), and local governments can seek an injunction to stop a prohibited use of land. (See, e.g., *City of Riverside, supra*, 56 Cal.4th 729, 738, 156 Cal.Rptr.3d 409, 300 P.3d 494; *County of Tulare v. Nunes, supra*, 215 Cal.App.4th 1188, 1194, 155 Cal.Rptr.3d 781.) But individual property rights, including the right to the return of non-contraband property from the government, are not diminished by the inherent power of local governments to regulate uses of land.

### B. APPLICATION OF THE GOVERNMENT CLAIMS ACT

In addition to the claims seeking return of property, plaintiff seeks damages for trespass, conversion, and inverse condemnation. Claims for money damages against a public entity are subject to the Government Claims Act (Gov. Code, § 900 et seq.), which limits the time for filing a lawsuit to six months from the entity's written notice of its refusal to pay a claim. (Gov. Code, § 945.6, subd. (a).)

Plaintiff commenced its lawsuit within six months of the county's rejection of the two claims for damages it submitted. But plaintiff is a corporation, and at the time it filed the lawsuit its corporate status was suspended by the Secretary of State for failure to pay taxes. A suspended corporation loses all rights and privileges under the law, including the right to prosecute a lawsuit. (*City of San Diego v. San Diegans for Open Government* (2016) 3 Cal.App.5th 568, 577, 207 Cal.Rptr.3d 703.) Plaintiff ultimately paid the taxes it owed and revived its corporate status, but not until after the six-month limitations period had expired.

Plaintiff contends its suit for damages is nonetheless timely under the rule that a revival of corporate powers retroactively validates any procedural actions taken during the period of suspension. (See *Longview International, Inc. v. Stirling* (2019) 35 Cal.App.5th 985, 990, 247 Cal.Rptr.3d 793.) But application of a statute of limitations is a substantive defense, not a procedural matter. A corporate revivor that occurs after the time to commence an action has expired does not retroactively validate a lawsuit filed during corporate suspension. (*ABA Recovery Services, Inc. v. Konold* (1988) 198 Cal.App.3d 720, 725, 244 Cal.Rptr. 27.) Plaintiff's causes of action for damages are therefore time barred under the Government Claims Act.

The county argues that the statute of limitations applicable to monetary claims against public entities bars the entire complaint, including the causes of action in equity seeking return of the marijuana plants. It bases that argument on the complaint's alternative prayer that, in the event the property is not returned, plaintiff be awarded full replacement value. We reject the county's argument because a claim seeking return of property withheld by the government is not subject to the Government Claims Act "even though some or all of the property may have been dissipated and [the defendant] may be compelled to respond in damages in lieu of property." (*Holt v. Kelly* (1978) 20 Cal.3d 560, 565, 143 Cal.Rptr. 625, 574 P.2d 441.) Were it otherwise, a government entity could convert a "wrongful dissipation of the property into an advantage by using it to support an essentially dilatory defense based on failure to comply with the claims statutes." (*Ibid.*)

**\*5** Another of plaintiff's claims that is not subject to the Government Claims Act is its cause of action for inverse condemnation, a theory of recovery rooted in the state constitution. (*Pacific Bell v. City of San Diego* (2000) 81 Cal.App.4th 596, 603, 96 Cal.Rptr.2d 897.) But that cause of action fails for a different reason: the complaint's allegations are insufficient to state a claim. An inverse condemnation action may be brought by an individual whose property was either taken or damaged by the government for a public purpose. (*Customer Co. v. City of Sacramento* (1995) 10 Cal.4th 368, 377, 41 Cal.Rptr.2d 658, 895 P.2d 900.) An essential element of the claim is that the property was taken for public use or damaged in connection with a public work of improvement. (*Ibid.*) Here, the marijuana was seized in connection with enforcing the ordinance prohibiting cultivation, violation of which is a criminal offense. (See Santa Cruz County Code §§ 7.126.070 (A); 19.01.030(A).) But inverse condemnation has never been applied "to require a public entity to compensate a property owner for property

damage resulting from the efforts of law enforcement officers to enforce the criminal laws." (*Customer Co. v City of Sacramento, supra*, at p. 377–378, 41 Cal.Rptr.2d 658, 895 P.2d 900.) The complaint contains no allegation indicating the marijuana was taken for public use or damaged in connection with a public work of improvement, so it does not state a cause of action for inverse condemnation.

The demurrer was properly sustained as to the causes of action seeking damages (trespass, conversion, and inverse condemnation).

**C. COUNTY'S REQUEST FOR JUDICIAL NOTICE AND MOTION TO DISMISS**

The county requests that we take judicial notice of a stipulated judgment it obtained against plaintiff in another action, and asserts the judgment contains certain admissions that categorically bar plaintiff's claims in this case. We deny the request for judicial notice because it was not made in the trial court, and the county's arguments based on it are being raised for the first time on appeal. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 fn. 3, 58 Cal.Rptr.2d 899, 926 P.2d 1085 ["Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' "].)

We also deny the County's motion to dismiss, filed after briefing was complete. The County asserts we should exercise our discretion to dismiss the appeal because plaintiff's corporate status has again been suspended and an assignment of rights it apparently made to a third party is ineffective to allow the litigation to continue. Resolving that issue would require significant fact finding and consideration of matters outside the record. That is inconsistent with our role as a reviewing court and something for which the trial court is much better equipped. We will deny the motion to dismiss without prejudice to the County raising the issue in the trial court on remand.

### III. DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to vacate its order sustaining the demurrer to the first amended complaint and to enter a new order sustaining the demurrer without leave to amend as to the causes of action for trespass, conversion, inverse condemnation, and injunctive relief; and overruling the demurrer as to the petition for a writ of mandate and the causes of action for specific recovery of property and for declaratory relief.

Appellant shall recover its costs on appeal.

WE CONCUR:

Elia, Acting P. J.

Danner, J.

**All Citations**

--- Cal.Rptr.3d ----, 2020 WL 4504904

---