Katherine Eskovitz
ROCHE CYRULNIK FREEDMAN LLP
1158 26th Street, No. 175
Santa Monica, CA 90403
keskovitz@rcfllp.com

Kyle Roche
Jordana Haviv
Richard R. Cipolla
ROCHE CYRULNIK FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
kyle@rcfllp.com
jdelich@rcfllp.com
rcipolla@rcfllp.com

Sean Eskovitz
ESKOVITZ LAW
1217 Wilshire Boulevard,
No. 3683
Santa Monica, CA 90402
seane@eskovitz.com

Brant W. Bishop
BRANT W. BISHOP, P.C.
2000 Pennsylvania Avenue, NW
Suite 7000
Washington, DC 20006
brant@bishop.us

*Counsel for Apothio LLC*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APOTHIO, LLC,<br><br>Plaintiff,<br><br>v.<br><br>KERN COUNTY; KERN COUNTY SHERIFF'S OFFICE; CALIFORNIA DEPARTMENT OF FISH AND WILDLIFE; DONNY YOUNGBLOOD; JOSHUA NICHOLSON; CHARLTON H. BONHAM; JOHN DOES #1 THROUGH #10, UNKNOWN AGENTS OF THE KERN COUNTY SHERIFF'S OFFICE; JOHN DOES #11 THROUGH #20, UNKNOWN AGENTS OF THE CALIFORNIA FISH AND WILDLIFE DEPARTMENT,<br><br>Defendants. | No. 1:20-CV-00522-NONE-JLT<br><br>**OPPOSITION TO MOTION TO STAY** |

1

## TABLE OF CONTENTS

2

SUMMARY OF ARGUMENT ................................................................................. 1

3

BACKGROUND .................................................................................................... 2

4

ARGUMENT ........................................................................................................ 5

5

I.   Defendants Face a "Heavy Burden" to Justify a Stay Based on the Misdemeanor Case ...... 5

6

II.   Defendants' Argument Ignores That Dr. Jones Is Not A Party in This Case ...................... 6

7

III.   Defendants Cannot Meet Any of the *Keating* Factors to Justify a Stay ............................... 7

8

    A.   Apothio would be substantially prejudiced by delay .................................... 7

9

    B.   Defendants face no burdens from proceeding with this civil litigation ........................ 9

10

        1.   The "sealed" status of the documents are now irrelevant, and other documents are not privileged ......................................................... 9

11

        2.   Speculation about whether Dr. Jones might invoke the Fifth Amendment is hypothetical and, in any event, such an invocation could not prejudice Defendants ........................................................................... 13

12

13

    C.   The efficient use of judicial resources would be to proceed with discovery, as that could lead to a quicker resolution of the case ................................... 13

14

    D.   Interest of non-parties and the public ................................................... 14

15

        1.   The public has an interest in holding the government accountable for abuses of power .......................................................... 14

16

17

        2.   Research institutions have a significant interest in discovery proceeding without delay ....................................................................... 15

18

        3.   The (at best) potentially privileged nature of some of the documents does not implicate any public interest ................................................... 15

19

        4.   California Government Code section 945.3 is irrelevant in determining the public interest ....................................................................... 16

20

        5.   Defendants' unsubstantiated concerns that Apothio could impair an ongoing investigation are meritless and, in any event, moot .............................. 17

21

22

IV.   The Pending Motion to Dismiss Does Not Justify Staying Discovery .......................... 19

23

Conclusion ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Kumagai*,
356 F. App'x 8 (9th Cir. 2009) ............................................. 22

*Allen v. Protective Life Ins. Co.*,
No. 20 Civ. 00530, 2020 WL 5074021 (E.D. Cal. Aug. 27, 2020) ......................................... 19

*Aluya v. Mgmt. & Training Corp.*,
No. 13 Civ. 01345, 2013 WL 6009943 (E.D. Cal. Nov. 13, 2013) ........................................... 6

*Blight v. City of Manteca*,
240 F. Supp. 3d 1047 (E.D. Cal. 2016) .................................................. 9, 11

*Blue Cross and Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.* ("*Blue Cross*"),
490 F.3d 718 (9th Cir. 2007) ....................................... 7

*Brady v. Maryland*,
373 U.S. 83 (1963) ..................................................... 16

*Comm'n on Peace Officer Standards and Training v. Superior Court*,
42 Cal. 4th 278 (2007) .................................................. 14

*County of Orange v. Superior Court*,
79 Cal.App.4th 759 (2000) ............................................. 18

*Degen v. U.S.*,
517 U.S. 820 (1996) ..................................................... 18

*Estate of Lopez v. Suhr*,
No. 15 Civ. 01846, 2016 WL 1639547 (N.D. Cal. Apr. 26, 2016) ........................... 5, 7, 15, 17

*Fed. Sav. & Loan Ins. Corp. v. Molinaro*,
889 F.2d 899 (9th Cir. 1989) ............................................. 13

*Gonzalez v. Cty. of Merced*,
289 F. Supp. 3d 1094 (E.D. Cal. 2017) .................................................. 14

*Granny Purps, Inc. v. Cty. of Santa Cruz*,
53 Cal. App. 5th 1 (2020) ............................................... 22

*Harding v. Galceran*,
889 F.2d 906 (9th Cir. 1989) ............................................. 17

*In Re Application of Apothio LLC to Authenticate, Release, and/or Unseal Search Warrant Materials*,
   Case No. FP004533A (June 9, 2020)............................................................................ 3

*In Re Marcos B.*,
   214 Cal. App. 4th 299 (2013) ................................................................................... 11

*Jarvis v. Regan*,
   833 F.2d 149 (9th Cir. 1987) ................................................................................... 25

*Keating v. Office of Thrift Supervision*,
   45 F.3d 322 (9th Cir. 1995) ............................................................................. 5, 6, 13

*Martinez v. Las Vegas Metro. Police Dep't*,
   No. 20 Civ. 00618, 2020 WL 3166611 (D. Nev. June 9, 2020) ............................... 21

*Mlejnecky v. Olympus Imaging Am. Inc.*,
   2011 WL 489743 (E.D. Cal. 2011)................................................................. 19, 20, 22

*Oertell v. Six Flags Entm't Corp.*,
   No. 17 Civ. 00267, 2018 WL 489154 (E.D. Cal. Jan. 19, 2018)............................... 21

*Page v. Stanley*,
   No. 11 Civ. 2255, 2012 WL 5471107 (C.D. Cal. Oct. 19, 2012), *report and recommendation adopted*, 2012 WL 5464629 (C.D. Cal. Nov. 9, 2012)............................................. 21

*Pagtalunan v. Galaza*,
   291 F.3d 639 (9th Cir. 2002) ..................................................................................... 7

*People v. Holloway*,
   33 Cal. 4th 96 (2004) .............................................................................................. 11

*Qwest Commc'ns Corp. v. Herakles, LLC*,
   No. 07 Civ. 00393, 2007 WL 2288299 (E.D. Cal. Aug. 8, 2007) ............................ 20

*Roberts v. Cty. of Riverside*,
   No. 19 Civ. 1877, 2020 WL 5046179 (C.D. Cal. May 6, 2020)....................... 7, 10, 13

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) ................................................................................... 25

*Salazar v. Honest Tea, Inc.*,
   No. 13 Civ. 02318, 2015 WL 6537813 (E.D. Cal. Oct. 28, 2015) ........................... 20

*Shepherd v. Superior Court*,
   17 Cal. 3d 107 (1976) ......................................................................................... 11, 12

*Siva Enterprises v. Ott*,
    No. 18 Civ. 06881, 2018 WL 6844714 (C.D. Cal. Nov. 5, 2018) .......................................... 22

*Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*,
    No. 18 Civ. 01505, 2019 WL 9667685 (E.D. Cal. Dec. 20, 2019) ........................................ 20

*Torres v. Superior Court*,
    80 Cal. App. 4th 867 (2000) ............................................................................................ 11

*United States v. Dynamic Med. Sys., LLC*,
    No. 17 Civ. 01757, 2020 WL 3035219 (E.D. Cal. June 5, 2020) ........................................ 10

*Waller v. Georgia*,
    467 U.S. 39 (1984) .......................................................................................................... 14

**Other Authorities**

21 U.S.C. § 881(i) .................................................................................................................. 18

31 U.S.C. § 3730(b) .............................................................................................................. 10

Cal. Evid. Code. § 1040 ......................................................................................................... 11

Cal. Gov't Code § 945.6 ......................................................................................................... 6

Cal. Penal Code § 1534 ................................................................................................... 3, 6, 7

1

## SUMMARY OF ARGUMENT

2   Defendants[1] seek a stay of all discovery for an indefinite period based on unsubstantiated

3 privilege claims and unsupported concerns of interference with a recently-filed complaint

4 involving a year-old alleged misdemeanor of marijuana possession. Defendants' arguments fall

5 far short of meeting their "heavy burden" to justify a complete stay of discovery, which would

6 only postpone the ultimate resolution of this case without cause. And their bid for stay is

7 particularly weak here, where (1) Apothio is not a party to the misdemeanor case; (2) delay of

8 this case threatens further damage to Apothio's financial viability and reputation; (3) discovery

9 in this case began over a month ago and has included Defendants' participation in written

10 discovery; (4) issues concerning "sealed" documents are moot because they have now been

11 released by the Superior Court in the misdemeanor case; (5) Defendants' motions to dismiss are

12 meritless and, in any event, do not even attempt to dismiss all of Apothio's claims; and (5) this

13 case raises important issues of great public interest, including the federal and state legislatures'

14 express intent to support the country's hemp farmers, hemp industry, and significant hemp

15 research, as well as the interest in remedying police misconduct and governmental abuses of

16 power.

17   Defendants' focus on the nascent misdemeanor case against Apothio CEO Trent Jones is a

18 red herring because Dr. Jones is not a party to this case and plaintiff Apothio LLC is not a party

19 in the misdemeanor case. Defendants do not cite a *single* case holding a discovery stay is

20 appropriate in such a situation. Moreover, the asserted impact of the misdemeanor case on

21 discovery in this case underscores the fallacy of Defendants' position. After disingenuously

22

23 [1] There are two distinct groups of Defendants. One is the "County Defendants" consisting of Kern County, Kern County Sheriff's Office (KCSO), Donny Youngblood, and Joshua Nicholson. The other are the F&W Defendants, consisting of California Department of Fish and Wildlife and Charlton Bonham.

1    distorting the parties' meet and confer about whether Dr. Jones would waive his Fifth

2    Amendment rights, Defendants claim they would be prejudiced by proceeding in this case

3    because Dr. Jones has not provided such a waiver. But not only did Apothio's counsel inform

4    Defendants that it would discuss such a waiver with Dr. Jones and his defense counsel if Dr.

5    Jones's potential invocation of his Fifth Amendment rights would obviate Defendants' stay

6    motion, but the prospect of such an invocation cannot possibly prejudice Defendants because

7    they would be entitled to seek an adverse inference in this case on the basis of any such

8    invocation. Of course, given that the Fifth Amendment has never been invoked in this case, this

9    issue—the main purported basis for Defendants' stay motion—is purely speculative.

10                                  **BACKGROUND**

11        Apothio had 500 acres of hemp growing in Kern County in October 2019. ECF. No. 1

12   "Compl.," ¶ 1. Kern County has been an early adopter of legal hemp production for years, and

13   had nearly half of all registered hemp farm acreage in California in September 2019. *Id.* ¶¶ 71–

14   73. Based on that commitment, Apothio set down roots in Kern County and consistently met

15   with officials in Kern County to follow the regulatory framework for growing hemp in

16   compliance with state and federal law.

17        Ignoring that regulatory framework completely, on October 25, 2019, Defendants

18   appeared with no notice and destroyed all 500 acres of Apothio's hemp crops, incorrectly

19   claiming it was marijuana. *Id.* ¶ 11. Then they left without arresting anyone.

20        Having received no explanation for Defendants' actions, Apothio immediately filed

21   administrative claims against Defendants, starting the clock for the statute of limitations. *Id.* ¶¶

22   30–31. Apothio also sought out the relevant probable cause affidavit. *Id.* ¶ 150. Apothio expected

23   the affidavit and supporting materials to be public records under state law, which requires

1   executed search warrant materials to be "open to the public as a judicial record" after ten days.

2   Cal. Penal Code § 1534.

3        In its attempt to obtain the probable cause affidavit, Apothio learned that Defendant KCSO

4   had failed to comply with its statutory obligation to return the search warrant materials promptly,

5   delaying their return until March. In fact, KCSO made the return only after Apothio was forced

6   to file a mandamus petition in state court seeking to compel the search warrant affidavit's return.

7   Compl. ¶ 152. In the mandamus proceeding, Kern County opposed turning over any search

8   warrant materials in part on the ground that "Apothio provides no reason as to why it has not or

9   cannot avail itself of the Federal Rules of Procedure to obtain any documents to assert its

10  constitutional and civil rights." *See In Re Application of Apothio LLC to Authenticate, Release,*

11  *and/or Unseal Search Warrant Materials*, Case No. FP004533A (June 9, 2020) (internal

12  quotation marks omitted). Dr. Jones was never a party to any of these state court proceedings.

13  **Shortly After Discovery Begins, Defendants File Misdemeanor Charges Against Trent Jones**

14       After Apothio filed suit in April 2020 and the parties fully briefed Defendants' motions to

15  dismiss, the parties held their Rule 26(f) conference on August 18, 2020. Under the Federal

16  Rules, discovery commenced upon the conclusion of that conference, but because Defendants

17  resisted providing any discovery, Apothio was forced to file a motion to set initial disclosure

18  deadlines. ECF No. 49. The Court granted that motion on October 5, 2020. ECF No. 55.

19       Soon after Apothio filed its motion to compel initial disclosures, and days before a hearing

20  in the state mandamus action regarding whether the relevant search warrant materials were

21  sealed, Kern County filed misdemeanor marijuana possession charges against "Trent Jones,"

22  although the Trent Jones charged has a different birth year than Apothio's CEO. *See* Decl. of

23  Katherine Eskovitz ("Eskovitz Decl."), ¶ 6. Dr. Jones has separate counsel in that matter.

This belated criminal process is certainly not Kern County's normal practice for handling marijuana possession charges for purported clandestine growths. Kern County and CDFW typically arrest marijuana possession suspects immediately upon searching the fields where the alleged illegality occurred.[2]

Defendants then exploited these new misdemeanor charges to continue stonewalling discovery related to the year-old crop destruction. In the state court proceedings, Kern County took the position that unsealing the search warrant materials was inappropriate in light of the now-filed misdemeanor charges. And in federal court, Defendants unsuccessfully opposed the motion to set initial disclosures on similar grounds as the instant motion.

**Meet and Confer Regarding Staying Discovery**

In October, Defendants sought a stipulation to foreclose *all* discovery in light of (1) Defendants' claim that certain materials may be sealed or privileged, (2) Defendants' speculative concern that Dr. Jones may later invoke the Fifth Amendment in civil discovery, and (3) the pending motions to dismiss. Eskovitz Decl. ¶ 9. In addition to explaining that none of these arguments warranted a stay, undersigned counsel made clear that Dr. Jones has his own counsel for the misdemeanor case and that Apothio's counsel in this case could not possibly agree to any Fifth Amendment waiver on Dr. Jones's behalf. *Id.* ¶ 11. Undersigned counsel agreed, however, to inquire whether Dr. Jones would agree to such a waiver if it would obviate Defendants' stay motion. Despite asking for Defendants' agreement on this multiple times, Defendants refused to answer whether waiving such rights would moot their stay request. *Id.* ¶ 24 & Ex. D.

---

[2] *See, e.g.*, Joseph Luiz, *Three arrested after illegal marijuana grow discovered in Lebec*, KGET TV 17 (Jun. 4, 2020) https://www.kget.com/news/crime-watch/three-arrested-after-illegal-marijuana-grow-discovered-in-lebec/; *KCSO arrests man on suspicion of illegal marijuana grow operation*, The Bakersfield Californian (Aug. 31 2020) https://www.bakersfield.com/news/breaking/kcso-arrests-man-on-suspicion-of-illegal-marijuana-grow-operation/article_139e2d5c-ebe2-11ea-b28d-1f28072ab22b.html

**"Sealed" Materials Get Released**

Finally, on Friday, November 20, 2020, almost a full year after the unlawful search and massive property destruction that precipitated this lawsuit, counsel for Dr. Jones in the misdemeanor case received various files from the Kern County Superior Court, including the purported search warrant affidavit and search warrant return. Eskovitz Decl. ¶ 14.

## ARGUMENT

### I.  Defendants Face a "Heavy Burden" to Justify a Stay Based on the Misdemeanor Case

Under the good cause standard for staying discovery, Defendants must meet a "heavy burden of making a 'strong showing'" as to why discovery should be stayed. *Estate of Lopez v. Suhr*, No. 15 Civ. 01846, 2016 WL 1639547, at *3 (N.D. Cal. Apr. 26, 2016) (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). Though Defendants effectively construe the misdemeanor case as automatically meeting this heavy burden, "[t]he Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). Instead, in the context of staying discovery due to related criminal proceedings, even when the parties are the same in both proceedings, the movant must show "substantial prejudice to the rights of the parties involved." *Id.*; *see also Estate of Lopez*, 2016 WL 1639547, at *4 (applying *Keating* to determine whether to stay discovery due to parallel criminal proceedings).

In evaluating substantial prejudice, courts "generally consider the following factors:

(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay;

(2) the burden which any particular aspect of the proceedings may impose on defendants;

(3) the convenience of the court in the management of its cases, and the efficient use of judicial resources;

(4) the interests of persons not parties to the civil litigation; and

(5) the interest of the public in the pending civil and criminal litigation."

*Keating*, 45 F.3d at 324–25. "[S]tays of an indefinite period of time, as is requested here, are disfavored." *Aluya v. Mgmt. & Training Corp.*, No. 13 Civ. 01345, 2013 WL 6009943, at *3 (E.D. Cal. Nov. 13, 2013).

## II.   Defendants' Argument Ignores That Dr. Jones Is Not A Party in This Case

Not only do Defendants fail to meet the burden imposed by the above legal standard, *see infra* at pp. 7–19, but they overlook the fundamental point that the misdemeanor case against "Trent Jones" is *not* a parallel proceeding that implicates concerns addressed in cases applying *Keating*. Dr. Jones is not a party to this case. Apothio is not a defendant in Dr. Jones's criminal case. The civil claims will survive the outcome of the misdemeanor case.

But as part of Defendants' attempt to both erase the difference between Apothio and its CEO and exaggerate its narrative of the dangers of civil discovery, Defendants consistently lump together "Jones and Apothio" (*e.g.*, ECF. No. 58-1 "Motion," at 4) and misconstrue Apothio's effort as one to "unseal the criminal investigation" (*id.* at 7). This mischaracterization rewrites history, conflates sealing and privilege issues, and is now entirely moot in light of the Superior Court's release of "sealed" materials to Dr. Jones's counsel in the misdemeanor case.

Apothio's efforts to vindicate its own rights predate the misdemeanor case against Trent Jones by nearly a year. Because Apothio faced a short statute of limitations for many of its claims, *see* Gov't Code § 945.6, it has been seeking the relevant probable cause affidavit in accordance with state law since February 2020. *See* Compl. ¶ 150; Cal. Pen. Code § 1534(a) (ten days after "the warrant has been executed, the documents and records *shall be open to the public as a judicial record*" (emphasis added)).

Defendants not only misrepresent the timing and interest of Apothio's efforts, but also the scope. There has been no concerted effort to obtain "investigative files" on behalf of Dr. Jones.

Apothio's mandamus action is solely aimed at the return and release of search warrant materials, which were finally returned upon the filing of the mandamus action and subsequently released by the Superior Court this past week. Search warrant materials, sealed or not, are "judicial records," not private investigative files. *See* Penal Code § 1534. Moreover, now that the "sealed" materials have been released by the Superior Court to counsel in the misdemeanor case, Defendants' concerns are moot.

## III.   Defendants Cannot Meet Any of the *Keating* Factors to Justify a Stay

Courts have routinely addressed, and rejected, the arguments made by Defendants in denying motions to stay under *Keating*, even when the parties in the civil and criminal case overlap. The Court should deny Defendants' request because they cannot show that any purported inconveniences they would suffer from proceeding with discovery outweigh the harms to Apothio, third parties, and the public.

A.   Apothio would be substantially prejudiced by delay

It has already been over a year since the destruction in question. Now Defendants seek a stay "until the resolution of the" misdemeanor case, which was only just filed. Even for a misdemeanor crime, that could take "years" to resolve, especially if there are appeals involved. *Roberts v. Cty. of Riverside*, No. 19 Civ. 1877, 2020 WL 5046179, at *4 (C.D. Cal. May 6, 2020). In the meantime, Apothio faces substantial harm and uncertainty.

Courts routinely acknowledge the interest plaintiffs have in expeditious litigation, recognizing that stays create a "danger of denying justice by delay." *Blue Cross and Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.* ("*Blue Cross*"), 490 F.3d 718, 724 (9th Cir. 2007). This is in part because delay "inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002); *see also Estate of Lopez*, 2016 WL 1639547, at *4 ("Nearly 14 months have passed since the

shooting of Perez Lopez, and the Court agrees with Plaintiffs that the memories of witnesses, especially those who may not be cooperating with the SFPD, may fade with time."). This is not a hypothetical risk: one KCSO commander who made extensive public statements about the search has already passed away. *See* Eskovitz Decl. ¶ 4 & Ex. A.

In addition, rather than a one-time financial shock, Defendants' destruction and subsequent press blitz threaten Apothio's continued financial viability. Because of the fear of Defendants' continued misconduct, Apothio has planted less hemp in Kern County and California on a much slower timeline than it otherwise would have, dramatically slowing down its research and ability to generate the funds needed to stay in business, particularly during the global health crisis facing the nation. Decl. of John Teague ¶¶ 6–15. And Apothio needs funds because the destroyed crops represented the overwhelming majority of Apothio's expected cashflow in 2020 and 2021. *Id.* ¶ 7. Not only did the illegal destruction deplete Apothio's operating budget, but Apothio cannot obtain loans to mitigate those losses because of Kern County's public statements about the crops being marijuana. *Id.* ¶¶ 9–10. Those statements hindered its ability to obtain banking and financing because marijuana, unlike hemp, is still a controlled substance and banks must avoid financing it. *Id.*

Perhaps most critically, the destruction and Kern County's public statements have hurt Apothio's relationship with its existing partners and made it difficult to forge relationships with new partners. *Id.* ¶ 13–14. Apothio's partners are key to its business. *Id.* ¶ 12. Apothio would have more partnerships that would be further developed if not for Defendants' actions. *Id.* ¶¶ 14–15. Resolving this dispute will restore Apothio's reputation and make it easier for it to obtain the financing and partners it needs to survive. *Id.* ¶ 16.

In sum, Apothio has a strong interest in proceeding expeditiously so that it can collect evidence while it is fresh and try to salvage its reputation and operations before it is too late.

B.  Defendants face no burdens from proceeding with this civil litigation

Defendants appear to make only two arguments about the harms and burdens they face. One is that they would be unable to produce important discovery to use at depositions because documents are privileged, sealed, or "outside their control." Mot. at 10. This argument is now entirely mooted by the Superior Court's release of files to Dr. Jones's counsel in the misdemeanor case. The other is the premature and hypothetical concern that Defendants cannot effectively depose Dr. Jones because he could invoke the Fifth Amendment. *Id.* at 9–10.

1.  *The "sealed" status of the documents are now irrelevant, and other documents are not privileged*

Defendants focus on the importance of protecting various privileges, but those arguments are based on undeveloped privilege assertions and now-moot concerns about sealed documents. Rather than produce a privilege log so that the parties and Court can engage in a meaningful discussion about the applicability of any relevant seals or privileges, Defendants ask this Court for a stay because of hypothetical privilege concerns they have never substantiated. This is procedurally improper. Defendants should have produced a privilege log and then moved for a protective order or opposed a motion to compel as necessary. Instead, Defendants demand all discovery be stayed without citing *any* case law showing a court granting a stay of discovery involving a fundamentally different misdemeanor case with a non-party defendant.

To the extent Defendants rely on the sealed status of documents to support a stay, these documents, including the search warrant affidavit, have now been released by the Superior Court to Dr. Jones's misdemeanor counsel. Eskovitz Decl. ¶ 14. This moots any concern about seals

precluding discovery.[3] This production also moots Defendants' argument that the "documents are outside of their control" because the Kern "County District Attorney has exercised its privilege." Mot. at 10.[4]

As for potential privilege issues, Defendants claim that two privileges apply: the "official information" privilege and the "informant" privilege, codified in California Evidence Code Sections 1040, 1041, and 1042. While it is premature to address specific privileges outside of the context of specific documents, it is clear that Defendants have not substantiated either privilege to justify any relief.

First, the informant privilege to protect the sources that inform the "probable cause for the search warrant," Mot. at 7, is now moot because of the Superior Court's release of that document without any redactions. Moreover, if Defendants think redaction is insufficient in the future to protect the identities of any confidential sources, the parties should address that concern on a document-by-document basis. It is notable though that Defendants never even sought a so-called *Hobbs* seal for confidential informants. *See* Compl. Ex. A at 1 (showing that Defendant Nicholson selected "N" to "Hobbs Requested").

---

[3] Even if Defendants contend any other documents are or could be sealed, that is not even grounds to withhold documents, *see Blight v. City of Manteca*, 240 F. Supp. 3d 1047, 1054 (E.D. Cal. 2016) (ordering the production of a redacted version of a state-court sealed probable cause affidavit because it contained "the entirety of defendants' showing of probable cause" upon which plaintiff's claim was based), let alone to stay discovery entirely. Moreover, Defendants' False Claims Act citation, *United States v. Dynamic Med. Sys., LLC*, No. 17 Civ. 01757, 2020 WL 3035219, at *1 (E.D. Cal. June 5, 2020), does not support any stay due to a seal. By law, False Claims Act claims *must* remain under seal and effectively stayed until the United States decides whether to intervene and litigate the case itself. *See* 31 U.S.C. § 3730(b) (*qui tam* complaints filed by private actors must remain under seal and are not even served on defendants until the Government decides whether to intervene).

[4] Of course, Defendants never explain why Kern County does not "control" its District Attorney's office. In any event, the Court can issue a subpoena for the documents if necessary. *See Roberts*, 2020 WL 5046179, at *4 (rejecting Defendants' argument that they could not defend themselves without privileged materials from County District Attorney's office).

1    Next, the official information privilege codified at Section 1040 is a *qualified* and narrow

2    privilege that specifically applies solely to information "acquired in confidence by a public

3    employee in the course of his or her duty and not open, or officially disclosed, to the public prior

4    to the time the claim of privilege is made." Cal. Evid. Code. § 1040. This test is strictly

5    construed, and Defendants must meet "precise statutory standards" to show that "disclosure is

6    against the public interest." *Shepherd v. Superior Court*, 17 Cal. 3d 107, 123 (1976), *overruled in*

7    *part on other grounds by People v. Holloway*, 33 Cal. 4th 96 (2004). The official information

8    privilege "represents the exclusive means by which a public entity may assert a claim of

9    governmental privilege based on the necessity for secrecy." *Id.* (internal quotation marks

10   omitted).

11   Under those standards, the official information privilege must be supported by specific

12   facts. *Torres v. Superior Court*, 80 Cal. App. 4th 867, 873 (2000) ("The official information

13   privilege, once asserted, shouldn't be sustained unless the court is presented with a showing that

14   the information sought to be protected is covered by the privilege."); *In Re Marcos B.*, 214 Cal.

15   App. 4th 299, 310 (2013) (finding that government did not justify the need to preserve the

16   confidentiality of a surveillance location). Courts must make these assessments on "each item of

17   material" sought to be protected by the privilege. *Shepherd*, 17 Cal. 3d at 125.

18   Even when those standards are met, because it is a qualified privilege, the official

19   information privilege can give way due to the "importance of the material sought to the fair

20   presentation of the litigant's case." *Shepherd*, 17 Cal. 3d at 126. For example, a defendant may

21   be forced to produce a sealed and privileged probable cause affidavit when a plaintiff brings a

22   judicial deception claim questioning the existence of probable cause. *See Blight*, 240 F. Supp. 3d

23

1   at 1054. Often redaction, not withholding, is appropriate to protect the information at issue and to

2   balance competing interests. *See id.*; *see also Shepherd*, 17 Cal. 3d at 125.

3        Defendants do not even try to show how any individual documents meet these standards or

4   should remain wholly exempt from disclosure in the face of Apothio's need. And for several of

5   Apothio's requests, responsive documents cannot possibly be privileged. For example, the

6   recording of Apothio CEO Trent Jones that KCSO admits it has cannot be privileged. *Shepherd*,

7   17 Cal. 3d at 171; Eskovitz Decl. Ex. B. In addition, KCSO employees Angela Monroe and Matt

8   Alvarez have spoken to the press about Apothio. Eskovitz Decl. ¶ 4. Despite this obvious waiver

9   of privilege, Defendants claim complete privilege in response to Apothio's request for

10  "communications between any Defendant and any publication or public medium" about the

11  destruction. Decl. of Kelly Smith, ECF No. 58-2, Ex. C, at 5. Apothio's request seeking

12  communications about Apothio may not be privileged if they were not "acquired in confidence."

13  Evidence Code § 1040. And even if some of these privileges could apply, Defendants' assertion

14  of privilege for many documents would give way due to the nature of Apothio's judicial

15  deception claim, just as in *Blight. See* 240 F. Supp. 3d at 1054.

16       In addition, beyond the document requests that Defendants already concede are not

17  implicated by any official information privilege, Mot. at 5, there are whole categories of other

18  important discovery requests that should not be implicated by any official information privilege,

19  including discovery from non-investigative agencies such as the Kern County Agricultural

20  Commissioner's Office and the California Department of Food and Agriculture.

21       In sum, the existence of a privilege is a fact-intensive inquiry that Defendants have not

22  satisfied and cannot rely on to justify any discovery stay.

23

### 2. *Speculation about whether Dr. Jones might invoke the Fifth Amendment is hypothetical and such an invocation could not prejudice Defendants*

Defendants' concern that Dr. Jones may invoke the Fifth Amendment also does not justify a discovery stay, and Defendants cite no case showing it should. Dr. Jones has not invoked the Fifth Amendment in this civil litigation. Critically, even if he were to do so, Defendants would be entitled to request that "the trier of fact . . . draw adverse inferences from [Dr. Jones's] invocation of the Fifth Amendment in a civil proceeding." *Keating*, 45 F.3d at 326 (denying a stay and finding that it is "permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege"). Indeed, in the *Keating* context, the party asking for the stay is typically the one that would be invoking the Fifth Amendment privilege and wishes to avoid proceeding specifically to avoid having to make that choice. *See, e.g.*, *Roberts*, 2020 WL 5046179, at *2–3. Moreover, Defendants do not explain how the possible invocation of Dr. Jones's Fifth Amendment rights justifies the stay of all discovery, when there are other witnesses and other discovery tools (such as document requests) that would be available to Defendants.

### C. The efficient use of judicial resources would be to proceed with discovery, as that could lead to a quicker resolution of the case

As is "typically" the case, this *Keating* factor "weighs against the granting of a stay," *Liang*, 2014 WL 1089264, at *6, because "the court has an interest in clearing its docket*,*" *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989). While there may be other litigation delays on matters that require Court involvement due to the pandemic, discovery does not generally require extensive Court involvement and any delay would only unnecessarily prejudice Apothio. Moreover, discovery will facilitate realistic settlement negotiations, which could moot further motion practice. And because the parties differ between the civil case and the criminal case, judicial economy would not be served by staying discovery pending resolution of

the criminal case. Regardless of the outcome in the misdemeanor case, it will not answer

Apothio's claims, including whether Defendants had the right to destroy all of Apothio's crops

or whether there were misstatements in the probable cause affidavit.

D.  Interest of non-parties and the public

Defendants focus heavily and repetitively on the purported interest of non-parties and the

public. But as above, Defendants ignore that Apothio and Dr. Jones are not the same entity.

Defendants' conclusory and hypothetical concerns about "misuse" and "abuse" are insufficient

to carry their burden to justify a discovery stay. Indeed, because Apothio is independently

pursuing its own rights in this civil litigation, there are no such valid concerns.

1.  *The public has an interest in holding the government accountable for abuses of power*

Apothio has alleged that police misled judicial officers to purposefully destroy Apothio's

valuable crops in violation of state and federal law permitting hemp regulation. Courts have

routinely recognized that the public has "a strong interest in exposing substantial allegations of

police misconduct to the salutary effects of public scrutiny." *Waller v. Georgia*, 467 U.S. 39, 46–

47 (1984); *see also Comm'n on Peace Officer Standards & Training v. Superior Court*, 42 Cal.

4th 278, 297 (2007) ("The abuse of a patrolman's office can have great potential for social

harm."). In addition, "the public does have an interest in ensuring that the victim is made whole

as rapidly as possible." *Gonzalez v. Cty. of Merced*, 289 F. Supp. 3d 1094, 1129 (E.D. Cal.

2017). That interest is even stronger here, where Apothio is an employer in the community and

actively developing partnerships with municipalities such as the City of Arvin and internships for

students. Decl. of Jill Board ("Board Decl."), ¶ 9.

2. *Research institutions have a significant interest in discovery proceeding without delay*

Apothio and other hemp cultivators have important research partners, such as those described in the Declarations of Jill Board, who was President of Cero Coso Community College when Defendants destroyed Apothio's crops. These partners face great uncertainty as to how to proceed with these partnerships in light of Defendants' actions. For example, after the destruction of these crops terminated Cerro Coso College's plans for an internship and research center for its students, it has had to stop recruiting students to participate in this valuable research program. Decl. of J. Board ¶ 9. Until Apothio's name is cleared and it can obtain funding and fully resume operations, students are deprived of learning firsthand and participating in the research, development, and commercialization of industrial hemp. *Id.* ¶¶ 4–5, 10–11. This ultimately results in "delaying the increased access to higher education through lack of funding being made available to Cerro Coso." *Id.* ¶ 13.

Unsurprisingly, "Community Colleges are the largest workforce engine in the State, however due to the action of KCSO, Boards of Trustees throughout the state are hesitant to allow their college districts, and students, to embark in contributing to important research and studies surrounding the emerging industry of Industrial Hemp." *Id.* ¶ 12. The only way to resolve these uncertainties is to allow discovery to proceed without delay.

3. *The (at best) potentially privileged nature of some of the documents does not implicate any public interest*

Defendants attempt to bootstrap potential harms by repeatedly emphasizing the supposed privileged nature of the documents and then explaining the supposed harms "[i]f the sealed documents are released to Apothio." Mot. at 8. But Defendants ignore that the role of the privilege itself is to prevent those harms. If Defendants can show that certain materials are, in

fact, privileged, then they should be withheld and identified on a privilege log, thereby protecting "the integrity of the investigation." *Lopez*, 2016 WL 1639547, at *5 ("San Francisco contends that a discovery stay is also warranted with respect to the SFPD's investigative file because it would create a substantial burden on the integrity of the investigation. While the Court appreciates San Francisco's concern in this regard, those concerns are adequately addressed by the official information privilege, to the extent that it applies."). No discovery stay is required.

Defendants themselves admit these concerns, to the extent they exist, are now moot: the "criminal investigation materials . . . may be released to Dr. Jones's criminal defense attorneys in November 2020." Mot. at 2. That has now in fact happened. Despite their professed concern that Apothio will provide information to Dr. Jones, Defendants effectively concede, as they must, that Dr. Jones is entitled to discovery in his criminal case. Like Defendants, Dr. Jones will be entitled to the criminal investigative file, and Kern County has an obligation to provide exculpatory materials under *Brady v. Maryland*, 373 U.S. 83 (1963). Defendants have not identified a single item Apothio has requested that Dr. Jones has not already received from the Superior Court or will not be entitled to receive in the criminal case.

> ### 4. California Government Code section 945.3 is irrelevant in determining the public interest

After merely asserting that nearly all the requested documents would be privileged, Defendants rely mainly on California Government Code section 945.3 to assert, without any basis, that Apothio would "misuse" civil discovery for Dr. Jones's criminal case. *See* Mot. at 7. But this provision is irrelevant to this case and the stay issue. Critically, though the statute applies only to persons who are both criminal defendants and civil plaintiffs,[5] Defendants ignore

---

[5] Section 945.3 states in part that "No person charged by indictment . . . may bring a civil action . . . against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is charged . . . ."

that Apothio is not a defendant in a state criminal case, and Dr. Jones is not a plaintiff in this case. Defendants do not explain the role of section 945.3 when the parties are different. In fact, Defendants do not even cite case law showing that section 945.3 ever supports a discovery stay. The three state court cases Defendants cite, Mot. at 7, address section 945.3 in the context of statute of limitations issues, not discovery stays.

Moreover, as Defendants concede, the Ninth Circuit has held that because of the Supremacy Clause, section 945.3 cannot "prohibit[] a party from bringing a section 1983 claim." *Harding v. Galceran*, 889 F.2d 906, 909 (9th Cir. 1989). It would be illogical to allow section 945.3 indirectly to prevent a case from proceeding when the federalism interests of section 1983 prevent that outcome outright, especially when the criminal defendant is not the civil plaintiff. Ultimately, because section 945.3 does not apply to Apothio's federal claims, it is irrelevant to the Court's handling of the misdemeanor case. Instead, courts in this district apply *Keating*, and Apothio addresses the public interest in the misdemeanor case within the context of *Keating* further below.

> 5. *Defendants' unsubstantiated concerns that Apothio could impair an ongoing investigation are meritless and moot*

Defendants repeatedly raise hypothetical concerns about "interference" with the "criminal investigation." Mot. at 8–9. As an example, Defendants claim, "[i]f the sealed documents are released to Apothio," Plaintiff can harass or even intimidate witnesses in civil depositions. *Id.* They also assert that evidence might be "spoiled" or that officers may be deposed prematurely "before the investigation is finalized." *See id.* Not only is there zero legal or factual support for such baseless contentions, but these concerns are also entirely moot as the misdemeanor charges have now been filed—after the KCSO purportedly investigated for over a year after destroying the crops, interviewed Dr. Jones, and seized all relevant evidence. And the sealed documents

have now been released by the Superior Court to defense counsel. Even in cases where law

enforcement raised concerns with tainting witnesses in a homicide investigation, courts have

denied stays in favor of a protective order and permitting civil litigation to proceed. *Lopez*, 2016

WL 1639547, at *5 (holding "the Court does not find that San Francisco's concern that witnesses

will be tainted requires a discovery stay" because there was a protective order).

This case stands in stark contrast to Defendants' main comparator, *County of Orange v.*

*Superior Court*, 79 Cal. App. 4th 759, 764 (2000). There, the prime and uncharged suspects in an

unsolved murder—which was less than a year old—sued law enforcement for defamation and

other claims and then "[t]hree days after the complaint was served," they requested the entire

investigative file, including "[a]ll documents generated by any police agency relating to the death

of [the victim], including their own statements, autopsy reports, scientific testing, descriptions of

physical evidence, and witness statements." *Id.* at 762 (internal quotation marks omitted). Not

only is Dr. Jones already charged with a marijuana misdemeanor and not accused of any felony,

let alone murder, but Apothio's document requests are not designed to uncover the details of a

criminal investigation simply for the sake of obtaining those details. Rather, Apothio seeks

reasonable discovery to pursue its bona fide civil rights claims, which will proceed even if Dr.

Jones is convicted.

*Degen v. U.S.*, 517 U.S. 820 (1996), is similarly inapplicable. There, a foreign-domiciled

party refused to appear in the United States to answer criminal charges detailing twenty-years of

distributing drugs, laundering money, and "related crimes," but filed a claim in a related

forfeiture suit. *Id.* at 821–22. After recognizing the unique difficulties this particular scenario

presented to prosecutors, the Court cited specific statutory guidance that the district court "shall

stay" discovery in forfeiture proceedings upon a motion from the United States when it interferes with a criminal prosecution. *Id.* at 826 (citing 21 U.S.C. § 881(i)).

Here, in contrast, Defendants are facing a section 1983 suit requesting the types of materials commonly requested in such cases, and no statutory provision or presumption favors a stay. To the contrary, the presumption heavily disfavors a discovery stay even when the parties are the same, which they are not here, and Defendants offer no case law or record evidence to show how it is "undoubtedly" a "misuse" to allow civil discovery to proceed here. *See* Mot. at 7. Defendants' conclusory assertions cannot carry their burden.

## IV.    The Pending Motions to Dismiss Do Not Justify Staying Discovery

Despite Defendants' arguments that discovery would be inefficient due to pending motions to dismiss, on October 2, 2020, the Court granted Plaintiff's motion to set a deadline for initial disclosures as there was no pending motion to stay discovery. Defendants waited forty-one days after this ruling and a month into discovery to raise the same arguments. But as the cases Defendants cite demonstrate, the Federal Rules do "not provide for automatic or blanket stays of discovery," even when a potentially dispositive motion is pending. *Allen v. Protective Life Ins. Co.*, No. 20 Civ. 00530, 2020 WL 5074021, at *2 (E.D. Cal. Aug. 27, 2020) (quoting *Mlejnecky v. Olympus Imaging Am. Inc.*, 2011 WL 489743, at *6 (E.D. Cal. 2011) (internal quotation marks omitted)). Indeed, "courts do not favor blanket stays of discovery because 'delaying or prolonging discovery can create unnecessary litigation expenses and case management problems." *Id.* (quoting *Salazar v. Honest Tea, Inc.*, No. 13 Civ. 02318, 2015 WL 6537813, at *1 (E.D. Cal. 2015)); *see also Mlejnecky*, 2011 WL 489743, at *6 ("Indeed, district courts look unfavorably upon such blanket stays of discovery."). A blanket stay of discovery is inappropriate here under every relevant legal factor.

1   District courts in the Ninth Circuit generally apply a two-pronged test to decide whether a

2   discovery stay may be warranted in light of a pending dispositive motion. *Allen*, 2020 WL

3   5074021, at *2. "The first prong requires that the pending motion 'be potentially dispositive of

4   the entire case, or at least dispositive on the issue at which discovery is aimed. . . . The second

5   prong requires the court to 'determine whether the pending, potentially dispositive motion can be

6   decided absent additional discovery.'" *Id*. (quoting *Mlejnecky*, 2011 WL 489743, at *6). "If

7   either prong is not met, discovery should proceed." *Id.* (quoting *Mlejnecky*, 2011 WL 489743, at

8   *6); *see Qwest Commc'ns Corp. v. Herakles, LLC*, No. 07 Civ. 00393, 2007 WL 2288299, at *2

9   (E.D. Cal. Aug. 8, 2007) (Only if the Court answers both questions in the affirmative "may" a

10   protective order issue.). Before issuing a protective order, the Court may "peek" at the merits of

11   the pending dispositive motion in order to assess the validity of the stay motion. *See Qwest*, 2007

12   WL 2288299, at *2 (quoting *Seven Springs Ltd. P'ship v. Fox Capital Mgmt. Corp.*, No. Civ. S-

13   070142LKKGGH, 2007 WL 1146607, at *2 (E.D. Cal. Apr. 18, 2007), *as amended* (Apr. 19,

14   2007)); *but see Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*, No. 18 Civ. 01505, 2019 WL

15   9667685, at *3 (E.D. Cal. Dec. 20, 2019) (motion to stay can be denied without an exhaustive

16   review of the merits).

17   Because Defendants fail to carry their burden on either prong of the relevant framework,

18   the motion to stay discovery should be denied. Any "peek" at the merits of the pending motions

19   to dismiss underscores their futility, particularly under the high standard the court must employ,[6]

20   and therefore weighs further against a discovery stay.

21

22   [6] District courts in the Ninth Circuit often require the movant to show by "clear and convincing evidence" that it will prevail on the merits of its dispositive motion or that there appears an "immediate and clear possibility" that the dispositive motion will be granted. *See Salazar v. Honest Tea, Inc.*, No. 13 Civ.

23   02318, 2015 WL 6537813, at *2 (E.D. Cal. Oct. 28, 2015) (noting both standards and finding that the defendants had not demonstrated a stay was appropriate under either standard). The Court need not resolve this open question since Defendants cannot meet either standard.

Defendants cannot satisfy the first prong of the relevant framework because Defendants' motions to dismiss, even if granted, would neither be dispositive nor change the issues or parties subject to discovery. Certain claims based on the same factual predicate as those Defendants have moved against are guaranteed to survive because Defendants did not move to dismiss them. Furthermore, the motions to dismiss will not be dispositive for the additional, independent reason that they are devoid of merit.

The County Defendants did not move to dismiss Apothio's state law tort claims. *See* ECF No. 24 (not moving against claims 8-10 under the California Tort Claims Act). Beyond noting the existence of the state law tort claims (ECF No. 21-02 at 3), the F&W Defendants similarly make only a one-sentence reference to those claims, asserting in conclusory fashion that "Apothio's failure to allege a legal right in its contraband crops defeats the federal civil rights claims as well as its state tort claims." *Id.* at 4. This unsupported statement is not only wrong, it is plainly insufficient to justify dismissal. *See Page v. Stanley*, No. 11 Civ. 2255, 2012 WL 5471107, at *8 (C.D. Cal. Oct. 19, 2012), *report and recommendation adopted,* 2012 WL 5464629 (C.D. Cal. Nov. 9, 2012) ("Defendants' conclusory assertion that Plaintiff has failed to state a claim . . . does not provide the Court with any reason to conclude that these allegations . . . are insufficient.").

At a minimum, then, Plaintiff's state law claims are guaranteed to survive the motions to dismiss. These claims are based on the same underlying facts as Apothio's other claims, such that even if any claims were not sufficiently pled to survive a motion to dismiss (they are), Defendants' discovery burden would remain unchanged because they would still face discovery on the remaining claims. *See, e.g.*, *Oertell v. Six Flags Entm't Corp.*, No. 17 Civ. 00267, 2018 WL 489154, at *3 (E.D. Cal. Jan. 19, 2018) (partial summary judgment motion did not justify a

stay because certain of plaintiff's claims would remain and therefore the motion could not

dispose of the entire case); *Martinez v. Las Vegas Metro. Police Dep't*, No. 20 Civ. 00618, 2020

WL 3166611, at *1 (D. Nev. June 9, 2020) (where a "motion to dismiss 'is not dispositive of the

entire case' . . . [s]uch a scenario generally defeats a request to stay discovery").

      The motions to dismiss also will not be dispositive because Defendants' fundamental

argument—that Apothio's crops somehow are legally and factually contraband under *federal*

*law*, and that Apothio can have no property interest in "contraband," (*see* Mot. at 3; ECF No. 24

at 2–4)—has no application to Apothio's Fourth Amendment claim. That is, Defendants'

argument will not dispose of the Complaint because Plaintiff's Fourth Amendment claim does

not require a property interest to succeed. *See Allen v. Kumagai*, 356 F. App'x 8, 9 (9th Cir.

2009) (overturning dismissal of section 1983 claim because defendants lacked probable cause

where state law authorized use of medical marijuana despite federal prohibition). Defendants'

misguided "contraband" theory is likewise inapplicable to Apothio's *state law* claims. *See*

*Granny Purps, Inc. v. Cty. of Santa Cruz*, 53 Cal. App. 5th 1, 7 (2020) ("Plaintiff alleges in the

complaint that its cultivation and possession of marijuana were fully compliant with applicable

state laws. . . . Based on that allegation, the marijuana seized by law enforcement is not

contraband, and plaintiff can assert a valid cause of action seeking its return."). Moreover,

Apothio's damages theory derives in part from Defendants' destruction of intellectual property

and is unrelated to any sale of its crop. Compl. ¶ 248. *See Siva Enterprises v. Ott*, No. 18 Civ.

06881, 2018 WL 6844714, at *5 (C.D. Cal. Nov. 5, 2018) (claim for theft of cannabis company's

intellectual property not prohibited by federal law). Thus, significant portions of the Complaint

would survive the motions to dismiss, even if granted.

1    Defendants' motions to dismiss will not be dispositive of any of Apothio's other claims

2   for the additional, independent reason that they are meritless. If the Court were to "peek" at the

3   merits of Defendants' motions, that preliminary review would demonstrate that Apothio has

4   adequately "alleged the who, what, when, where, and how of the misconduct charged." *See*

5   *Mlejnecky*, 2011 WL 489743, at *9 ("To use the language of the Ninth Circuit Court of Appeals,

6   the undersigned is not convinced that the plaintiff will be unable to state a claim for relief.

7   Accordingly, defendant has failed to meet its burden on the first prong of the two-pronged test,

8   and defendant's motion for a protective order is denied." (internal citations omitted)).

9    On this motion to stay, as in their unavailing motions to dismiss and strike, Defendants

10  repeatedly and improperly rely on alternative (and inaccurate) facts that are stated nowhere in

11  Apothio's well-pleaded Complaint. Defendants assert that the "complaint attempts to plead

12  around the contraband status of the Apothio [sic] marijuana plants by asserting legal

13  conclusions as facts."[7] *Id.* Not so. Defendants' ipse dixit seeks to avoid Apothio's allegations

14  that it cultivated legal hemp and destroyed any hemp plants exceeding 0.3% THC on a dry

15  weight basis. Compl. ¶¶ 35, 62, 82, 108. Defendants concede the factual allegations of the

16  Complaint "must be accepted as true" in ruling on motions to dismiss, but their motions depend

17  on ignoring that basic rule. *See* Mot. at 11. Thus, the cases Defendants cite about the unlawful

18  cultivation and sale of marijuana are inapposite. *See* ECF Nos. 34 & 35.

19   Moreover, Defendants cite no authority for the unavailing proposition that Apothio was

20  somehow obligated in its Complaint to cite "studies of its own showing its plants' THC levels

21  were below 0.3 percent." Mot. at 11–12. Even as a factual matter, Defendants are wrong: the

22

23

---

[7] Whether the plants were hemp or marijuana (they were hemp) is, moreover, plainly a factual question, not a legal conclusion.

Complaint repeatedly alleges that Apothio was cultivating hemp that tested below 0.3% THC. *See, e.g.*, Compl. ¶ 61 ("Consistent with its goal of researching and commercializing hemp (not illegal marijuana), Apothio routinely tests its plants for THC content. And all of its hemp varietals have been independently tested via laboratory-grade chromatographs and certified to contain below 0.3% THC when measured in the mature, dried flower of the plants."). Contrary to Defendants' contention, there is no allegation in the Complaint that law enforcement found otherwise. And, for the same reasons Defendants' misguided attempt to strike thirty-four instances of the word "hemp" lacks merit, ECF No. 19,[8] Defendants' efforts to rewrite the allegations of the Complaint fail here too. *See* ECF No. 32.

In short, Defendants focus on substituting Apothio's allegations of "growing hemp" for "growing illegal marijuana" because they cannot otherwise escape that the well-pleaded facts allege, and discovery will show, that Defendants ignored the will of federal and state legislatures that legalized hemp (rather than marijuana) research and cultivation. The harm from Defendants' destruction is compounded by their stonewalling in their continued attempt to run Apothio out of town and into bankruptcy, and avoid accountability for law enforcement's gross abuse of power. The motion to stay should be denied so these facts can be brought to light; enable Apothio to seek justice; and provide needed clarity for educational institutions, researchers, U.S. hemp farmers and the entire hemp industry, in furtherance of important and timely hemp research.

Turning to the second prong of the analysis, while the motions to dismiss can be readily denied without further discovery, Defendants' arguments on this point are not only wrong, but

---

[8] Defendants apparently want to achieve much more than striking any reference to "hemp": the motion to stay makes clear that what Defendants really want is not just to strike the word hemp from the Complaint but to replace any instance of the word hemp with "illegal marijuana." But this is not how litigation works, and Defendants cannot avoid discovery in this matter by wishing away allegations they dislike or attempting to litigate the disputed facts at the pleading stage.

1   contradict their prior assertions. Defendants argue that "[w]hether Apothio is a 'research'

2   institution which can operate without regulatory oversight, testing or limits on its THC content of

3   it plants [sic] is a **question of law**." Mot. at 12 (emphasis added). Yet Defendants advanced

4   precisely the opposite position in seeking dismissal of Apothio's Complaint: "The issue of

5   whether Plaintiff was an 'established agricultural research institute' as that is authorized under

6   California state law with any protections state law might provide is not a topic for this motion to

7   dismiss, as that is a **factual question** which will be addressed in a motion for summary

8   judgment." ECF No. 24 at 5 (emphasis added). Defendants' self-serving mischaracterizations of

9   the issues before the Court undermine their stay motion.

10          Moreover, the only cases Defendants cite to argue that the second prong of the

11   framework justifies a stay are inapposite. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d

12   729, 738 (9th Cir. 1987), did not involve a motion to stay. There, the Ninth Circuit affirmed

13   dismissal over objections that the district court should not have dismissed the claims "without

14   permitting discovery." *Id.* That is not the situation here. To the contrary, Apothio is not

15   suggesting that further discovery is needed to deny the motions to dismiss, but merely that a stay

16   is inappropriate because, for the reasons discussed above, the motions to dismiss are both

17   doomed to fail and will not dispose of many important claims. Likewise, in *Jarvis v. Regan*, 833

18   F.2d 149, 155 (9th Cir. 1987), as here, discovery was not required to address the issues raised by

19   the motions to dismiss.

20                                **CONCLUSION**

21          Defendants' motion is a transparent attempt to continue to delay these proceedings in order

22   to prevent Apothio from vindicating its rights and clearing its name. The Court should deny the

23   motion to stay discovery in its entirety.

Dated: November 24, 2020

/s/ Katherine Eskovitz
ROCHE CYRULNIK
 FREEDMAN LLP
Katherine Eskovitz
1158 26th Street, No. 175
Santa Monica, CA 90403
keskovitz@rcfllp.com
(646) 791-6883

Jordana Haviv (*pro hac vice forthcoming*)
Richard R. Cipolla (*pro hac vice*)
99 Park Avenue, 19th Floor
New York, NY 10016
kyle@rcfllp.com
jhaviv@rcfllp.com
rcipolla@rcfllp.com

/s/ Sean Eskovitz
ESKOVITZ LAW
Sean Eskovitz
1217 Wilshire Boulevard, No. 3683
Santa Monica, CA 90402
seane@eskovitz.com

*Counsel for Apothio LLC*