1  Rob Bonta, State Bar No. 202668
   Attorney General of California
2  Joshua B. Eisenberg, State Bar No. 279323
   Supervising Deputy Attorney General
3  Kelly T. Smith, State Bar No. 196821
   Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone:  (916) 210-6465
6    Fax:  (916) 322-8288
     E-mail:  Kelly.Smith@doj.ca.gov
7  *Attorneys for Defendants State of California, by and*
   *through California Department of Fish and Wildlife,*
8  *Andrew Halverson and Charlton H. Bonham*

9

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE EASTERN DISTRICT OF CALIFORNIA

12                        FRESNO DIVISION

13

| | |
|---|---|
| 14 **APOTHIO, LLC.,** | Case No. 1:20−CV−00522−JLT−BAK (EPG) |
| 15               Plaintiff and Petitioner, | |
| 16        **v.** | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| 17 **KERN COUNTY; KERN COUNTY SHERIFF'S OFFICE; CALIFORNIA DEPARTMENT OF FISH AND WILDLIFE; DONNY YOUNGBLOOD; JOSHUA NICHOLSON; ANDREW HALVERSON; CHARLTON H. BONHAM,** | [Fed. R. Civ. P. 12(b)(6), 12(f)] |

14  **APOTHIO, LLC.,**                           Case No. 1:20−CV−00522−JLT−BAK (EPG)

15                 Plaintiff and Petitioner,

16          **v.**                               **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

17  **KERN COUNTY; KERN COUNTY SHERIFF'S OFFICE; CALIFORNIA DEPARTMENT OF FISH AND WILDLIFE; DONNY YOUNGBLOOD; JOSHUA NICHOLSON; ANDREW HALVERSON; CHARLTON H. BONHAM,**

18                                               [Fed. R. Civ. P. 12(b)(6), 12(f)]

19                                               Date:        November 14, 2022
                                                 Time:        9:00 a.m.
20                                               Dept:        Courtroom 4
                                                 Judge:       Hon. Jennifer L. Thurston
21                  Defendant-Respondent.

22                                               Action Filed:  April 10, 2020

23

24

25

26

27

28

---

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................... 1

Procedural History ........................................................................................... 2

The First Amended Complaint ......................................................................... 2

      A.    Facts and Allegations ..................................................... 2

      B.    Apothio's Alleged Special Research Status ..................... 2

      C.    The First Action for "Unreasonable Search and
           Seizure/Destruction." .................................................. 4

           1.    The Halverson Warrant ...................................... 4

           2.    The Nicholson Warrant and Eradication of Suspected
                Marijuana Plants. ...................................... 5

      D.    Cause of Action for Civil Asset Forfeiture in Violation of the Fifth
           Amendment ............................................................... 6

      E.    State Constitutional, Common Law and Declaratory Relief Actions ......... 6

Applicable Marijuana and Industrial Hemp Law .............................................. 6

Argument ........................................................................................................ 8

    I.    The FAC Cannot State an Action for Search and Seizure Violation. .............. 8

      A.    Apothio Fails to State a Colorable Claim for Judicial Deception. .......... 9

      B.    The Warrant, Although Valid, Was Not Required for Eradication of
           the Contraband ......................................................... 9

      C.    Probable Cause Existed that Apothio Intended to Sell Cannabis
           with THC Content in Excess of 0.3 Percent. ..................... 10

      D.    The Testing Results Halverson Obtained Were Not Deceptive. .......... 11

           1.    State Law Does Not Require Lab Testing for Probable
                Cause. ...................................................... 11

           2.    Testing Result Variations are Natural, Not a Deception. ........... 11

      E.    Open Fields Search of "Heavily Regulated" Cannabis is
           Reasonable. .............................................................. 12

      F.    Apothio's "Research" Status is Immaterial to Probable Cause. ............ 13

    II.    Apothio Fails to Sufficiently Allege a "Takings" Third Cause of Action ........... 13

    III.    Lacking Any Protected Interest, Apothio's Due Process Claims Fail ............. 14

      A.    The Federal Hemp Research Exception Was Not Available to
           Apothio. ................................................................... 14

    IV.    Apothio Had No Property Right Entitled to Due Process................................. 16

      A.    Apothio's Criminal Due Process is the Only Process Due..................... 17

           1.    Apothio Was Provided Criminal Due Process. ........................... 17

           2.    No vesting of rights arise from alleged "map permits." .............. 18

i

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3
V.   Halverson and Bonham Have Qualified Immunity and Must be Dismissed ........ 19

4
A.   Halverson Had Probable Cause for His Sample Search............................ 19

5
B.   The FAC Lacks Any Specific Allegations Against CDFW Director
Bonham. .............................................................................................. 20

6
Conclusion............................................................................................................................ 20

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA In Support of Motion to Dismiss the First Amended Complaint (Case No. 1:20−CV−00522−JLT−BAK (EPG))

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Advanced Building & Fabrication, Inc. v. California Highway Patrol*
5
781 F.App'x 608 (9th Cir. 2019) ............................................................. 9

6

*AmeriSource Corp. v. United States*
75 Fed.Cl. 743 (Fed. Cl. 2007) ............................................................ 14

7

*Ashcroft v. Iqbal*
8
556 U.S. 662 (2009) ............................................................................. 8

9

*Bell Atlantic Corp. v. Twombly*
10
(2007) 550 U.S. 544 ............................................................................. 18

11

*Brewster v. Board of Education of Lynwood Unified School District*
(9th Cir. 1998) 149 F.3d 971 ............................................................... 16

12

*Brosseau v. Haugen*
13
543 U.S. 194 (2004) (per curiam) ........................................................ 19

14

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*
824 F.3d 1156 (9th Cir. 2016) .............................................................. 8

15

*Conejo Wellness Center, Inc. v. City of Agoura Hills*
16
214 Cal.App.4th 1534 (2013) .............................................................. 14

17

*Conservation Force v. Salazar*
18
(N.D. Cal. 2009) 677 F.Supp.2d 1203 ................................................ 16

19

*Evans v. Skolnik*
997 F.3d 1060 (9th Cir. 2021) .............................................................. 20

20

*Ewing v. City of Stockton*
21
588 F.3d 1218 (9th Cir. 2009) .............................................................. 9

22

*Galbraith v. City of Santa Clara*
23
307 F.3d 1119 (9th Cir. 2002) .............................................................. 20

24

*Guatay Christian Fellowship v. County of San Diego*
670 F.3d 957 (9th Cir. 2011) ............................................................... 14

25

*Hester v. United States*
26
265 U.S. 57 (1924) ............................................................................... 12

27

*Illinois v. Gates*
28
462 U.S. 213 (1983) ...................................................................... 9, 11

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Kaley v. United States*
571 U.S. 320 (2014)............................................................................................ 9

*Mathews v. Eldridge*
424 U.S. 319 (1976).......................................................................................... 17

*Memphis Light Gas & Water Division v. Craft*
436 U.S. 1 (1978).............................................................................................. 14

*Messerschmidt v. Millender*
565 U.S. 535 (2012)............................................................................................ 9

*Mugler v. Kansas*
123 U.S. 623 (1887).......................................................................................... 13

*New York v. Burger*
482 U.S. 691 (1987)....................................................................................12, 13

*Oliver v. United States*
466 U.S. 170 (1984).......................................................................................... 12

*Olvera v. County of Sacramento*
932 F.Supp.2d 1123 (E.D. Cal. 2013)................................................................ 9

*Pearson v. Callahan*
555 U.S. 223 (2009).......................................................................................... 19

*People v. Tolhurst*
139 Cal.App.3d 1 (1982).................................................................................. 16

*Saucier v. Katz*
533 U.S. 194 (2001).......................................................................................... 19

*Scalia v County of Kern*
308 F.Supp.3d 1064 (E.D. Cal. 2018).............................................................. 20

*Seismic Reservoir 2020, Inc. v. Paulsson*
785 F.3d 330 (9th Cir. 2015).............................................................................. 8

*Town of Castle Rock v. Gonzales*
545 U.S. 748 (2005).......................................................................................... 14

*United States v. Leon*
468 U.S. 897 (1984)............................................................................................ 9

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3   *Ziglar v. Abbasi*
        137 S. Ct. 1843 (2017) ................................................................. 19

4

5   **STATUTES**

6   7 United States Code
        § 1639q (a)(2)(B) ................................................................................... 7

7       § 5490(a) .................................................................................................. 3
        § 5940 ..................................................................................................... 15

8       § 5940(a) ............................................................................................... 15
        § 5940(a)(2) ............................................................................................. 7

9       § 5940(b) .................................................................................................. 2
        § 5940, subd. (a) .................................................................................. 15

10

11  20 United States Code
        § 1001 ...................................................................................................... 3

12      § 1002 ...................................................................................................... 3

13  21 United States Code
        § 801 ........................................................................................................ 8

14      § 801-904 .............................................................................................. 12

15      § 802(16) ................................................................................................. 6
        § 804(16) .......................................................................................... 3, 6, 7

16      § 812, Schedule 1 (c)(10) .............................................................. 3, 6, 7
        § 812, Schedule 1 (c)(17) .............................................................. 3, 6, 7

17      § 822 ................................................................................................. 3, 6, 7

18  42 United States Code

19      § 1983 .......................................................................................... *passim*

20  Bane Act .......................................................................................................... 6

21  California Bane Act ........................................................................................ 8

22  California Business and Professions Code
        § 26000-26250 ....................................................................................... 6

23      § 26000, *et seq.* ................................................................................. 12

24  California Civil Code
        § 52.1 ....................................................................................................... 6

25

26

27

28

MPA In Support of Motion to Dismiss the First Amended Complaint (Case No. 1:20−CV−00522−JLT−BAK (EPG))

1

## TABLE OF AUTHORITIES
### (continued)

2
**Page**

3

California Food & Agricultural Code
4
    § 14001, *et seq* .......................................................................................... 18
    § 81000 ....................................................................................................... 17
5
    §§ 81000 et seq. ..................................................................................... 2, 11
    § 81003 ....................................................................................................... 17
6
    § 81004.5 .................................................................................................... 17
    § 81005 ....................................................................................................... 17
7
    § 81006(d) .................................................................................................. 11
    § 81006, subd. (d)(10) ................................................................................. 3
8

9
California Health & Safety Code
    § 11000 ....................................................................................................... 12
10
    § 11018 ....................................................................................................... 12
    § 11018.5 .................................................................................................... 12
11
    § 11479 .................................................................................................. *passim*
    § 81006 .................................................................................................. 7, 11
12

13
California Penal Code
    § 1536 .......................................................................................................... 5
14

Federal Constitution Due Process Clause ........................................................ 14
15

16
United States Constitution
    Fourth Amendment ............................................................................... *passim*
    Fifth Amendment ...................................................................................... 2,6
17
    Fourteenth Amendment ......................................................................... 2, 5, 8

18
**COURT RULES**

19
Federal Rules of Civil Procedure
    Rule 12(b)(6) ................................................................................................ 1
20
    Rule 12(b)(6) ................................................................................................ 8

21
**OTHER AUTHORITIES**

22
7 Code of Federal Regulations
23
    § 990.3(a)(2)(i) ........................................................................................... 7
    § 990.3(a)(3)(i) ........................................................................................... 7
24

25
84 Federal Register
    § 58522 ........................................................................................................ 7
26
    § 58522, p. 58524 ....................................................................................... 7
    § 58524-58525 ........................................................................................... 7
27

28

MPA In Support of Motion to Dismiss the First Amended Complaint (Case No. 1:20−CV−00522−JLT−BAK (EPG))

**TABLE OF AUTHORITIES**
(continued)

Page

California Code of Regulations, Title 3
    § 6432 ..................................................................................................... 18
    § 6432 ..................................................................................................... 18

California Uniform Controlled Substances Act ........................................... 12

Controlled Substances Act ........................................................................... 12

Medicinal and Adult-Use Cannabis Regulation and Safety Act ............................................. 6, 12

Senate Bill 153
    § 10 ....................................................................................................... 3, 7

**INTRODUCTION**

Defendants California Department of Fish and Wildlife (CDFW), CDFW Director Charlton H. Bonham, and CDFW Capt. Andrew Halverson (State Defendants) move to dismiss Apothio, LLC's (Apothio) first amended complaint (FAC) because it fails to cure the fatal defects found in Apothio's original claims, and does not contain new allegations sufficient to sustain any cause of action. Fed. R. Civ. P. 12(b)(6).

As evidenced by the sworn affidavits supporting CDFW's and the Kern County Sheriff's (Sheriff) warrant applications, incorporated into the FAC as exhibits, Apothio was under contract for, and had the manifest intent to transport vast quantities of *cannabis sativa L* (cannabis) across state lines for the express purpose of selling it for profit. The eradication of the cannabis crop in the Arvin area of Kern County[1] was not the subject of civil forfeiture, but pursuant to a criminal enforcement action during the execution of a warrant issued with probable cause.

Neither Kern County nor any state agency conferred any entitlement upon Apothio authorizing cannabis cultivation, and therefore no revocation of any right or interest occurred for which any administrative appeal process exists. California Health and Safety Code section 11479 allows for the eradication of illegal cannabis plants, with or without a warrant, and without notice, as long as the owner's criminal due process is protected by evidence preservation, as was done here. Apothio's owners and officers may assert their self-proclaimed status as an Established Agricultural Research Institution (EARI) as a criminal defense, and a jury will decide whether their claim is legitimate; that is the process due.[2] For these reasons, all alleged violations of state and federal civil rights, including unconstitutional search and seizure, the taking of its property, and due process, are uniformly unfounded. Not only does Apothio fail to state facts adequate to establish any claim against the State Defendants, but these defendants are also shielded from any potential liability by qualified immunity. All causes of action against each of the State Defendants should be dismissed.

---

[1] Cultivation unrelated to any activity on the 20 acres in California City jointly leased with Kern Community College District (see Exhibit C to FAC, p. 10 of 15).

[2] The criminal prosecution of Trent Jones, the managing member of Apothio, LLC for the unlawful cultivation of cannabis is underway (*People v. Trent Jones*; Case No. BM952715A, Kern County Superior Court; See RJN Exhibit A.)

**PROCEDURAL HISTORY**

On April 10, 2020, Apothio filed a complaint against State Defendants, Kern County, the Sheriff, and numerous other defendants alleging violations of its state and federal constitutional rights as well as common law tort claims. On June 12, 2020, State Defendants and the Kern County defendants filed motions to dismiss Apothio's original complaint arguing, among other things, that probable cause supported the search for testing samples, and that Apothio's self-proclaimed EARI status under California law did not shield the contraband per se under federal law. CDFW Motion to Dismiss, June 12, 2020, ECF 19; Kern County Motions to Dismiss and Strike, June 15, 2020, ECFs 21, 24. On April 5, 2022, the court granted State Defendants' motion on the ground of vagueness, with leave to amend, without reaching the substance of its other arguments. In considering the County's arguments, the court dismissed the search and seizure related actions, finding probable cause, but denied the County's arguments to dismiss the complaint's due process claims, finding a question of fact as to whether the plants exceeded the THC limit. Order, April 26, 2022, ECF 86. Apothio filed its FAC on May 25, 2022.

**THE FIRST AMENDED COMPLAINT**

**A.    Facts and Allegations**

In February 2019, Apothio contracted with private Kern County growers to plant 500 acres of cannabis near the City of Arvin in Kern County, California. FAC ¶ 107. Apothio describes itself as an "emerging vertically-integrated player" in "every segment of the hemp-based market." FAC ¶ 65. Apothio alleges that, on October 25, 2019, the Sheriff destroyed Apothio's crops. FAC ¶¶ 251, 263 and 267. From that event flows the FAC's first three causes of action under 42 United States Code § 1983, which allege a Fourth Amendment violation for illegal search and seizure, a Fourteenth Amendment violation of due process rights, and a Fifth Amendment violation for taking of personal property. FAC ¶¶ 304, 317 and 323.

**B.    Apothio's Alleged Special Research Status**

Fundamental to its FAC claims, Apothio insists it is exempt from state and federal cannabis and hemp control as an EARI "under both federal and state law," citing "7 U.S.C. § 5940(b) and Cal. Food & Agric. Code §§ 81000 et seq." FAC ¶ 3.  However, EARI is a creation of California

2

1  state law and no such equivalent exists under federal law. The provisions of federal law that were

2  in effect at all relevant times to this case permitted only two types of entities to cultivate industrial

3  hemp for research purposes: 1) an "institution of higher education" as defined in 20 USC section

4  1001, and 2) a "State Department of Agriculture." 7 USC § 5490(a).[3] Apothio's FAC ultimately

5  concedes that it has such status only under California law. FAC ¶ 84: "Apothio's own research

6  efforts are independently sufficient to qualify it as an EARI under California law." Based upon

7  Apothio's "independently sufficient" and entirely self-designated status as an EARI, Apothio

8  alleges that not only is it permitted to grow and possess cannabis that contains more than 0.3

9  percent THC, but that it is also exempt from THC testing requirements applicable to other

10 industrial hemp growers. [4] FAC ¶¶ 49, 50. On this point, Apothio conflates California and federal

11 law. There has never been any provision in federal law that allows the cultivation of cannabis

12 with THC in excess of 0.3 percent by any industrial hemp producer, whether or not they are

13 institutions of higher education, state departments of agriculture, or otherwise engaged in

14 research. The only exception is if they are manufacturers registered with the Drug Enforcement

15 Agency, which does not apply to Apothio (see 21 U.S.C. §§ 804(16), 812, Schedule 1 (c)(10) &

16 (17), and 822). Apothio also alleges that California law allows for the cultivation of cannabis in

17 excess of 0.3 percent THC, but acknowledges that this is <u>only</u> allowed to develop strains that will

18 have a lower THC content. Former Cal. Food & Agric. Code § 81006, subd. (d)(10).[5]

19      Based solely on the alleged statement of a CDFW staff person, Apothio contends that an

20 EARI can "commercialize" its plants. FAC ¶ 51. As set forth in its prayer, Apothio seeks $1

21 billion of lost commercial profits because defendants' alleged "misconduct" prevented Apothio

22 from "commercializing the approximately 17 million plants in the approximately 500 acres that

23 Defendants destroyed." FAC ¶ 381.

24

25 [3] Repealed by stats Pub. L. 115-334, title VII, §7605(b), Dec. 20, 2018. Though repealed on December 20, 2018, the provision remained in effect until October 31, 2020. There have been four versions of this

26 statute; for the Court's reference the version which was in effect during the time period relevant to this case has been filed as Exhibit B to State Defendants' concurrently filed Request for Judicial Notice.

27 [4] No governmental entity certified, issued a permit, or in any manner conferred EARI status or designation upon Apothio, LLC at any time. Further, under applicable law, no process existed by which Apothio could have applied for or received such a designation.

28 [5] Amended by stats. SB 153 § 10 reg. sess. 2019-2020

3

**C.    The First Action for "Unreasonable Search and Seizure/Destruction."**

Apothio's original complaint alleged that warrants issued to Capt. Halverson and Kern County Sheriff's detective Nicholson (Halverson Warrant and Nicholson Warrant) were obtained through "judicial deception" because neither law enforcement officer disclosed that Apothio claimed to be an EARI. Under seal at the time of Apothio's original complaint, the Halverson and Nicholson Warrants are now incorporated in Apothio's FAC as Exhibits (Exh.) A and C. Notwithstanding that the warrants unequivocally disclose Apothio's self-designated EARI status, Apothio continues to assert its judicial deception claims. Apothio also attempts to attribute liability to CDFW Director Bonham on the ground that he "ratified" the Halverson warrant. (FAC ¶¶ 312 and 313.)

**1.    The Halverson Warrant**

According to the Halverson warrant affidavit, Apothio's out-of-state business partner notified the Sheriff that Apothio's cannabis plants contained THC in excess of 0.3 percent. FAC ¶¶ 122, 130, and 131; Exh. A, p. 6. In an effort to confirm the informant's report, Halverson obtained a first warrant to collect samples for THC testing. FAC ¶ 134, Exh. A. Halverson's warrant application represented that Apothio intended to sell cannabis to out-of-state buyers. FAC ¶ 138. Apothio contends that Halverson "intentionally, knowingly, and recklessly omitted" various details about Apothio's planned out-of-state sales of cannabis. FAC ¶¶ 137-140. First, Apothio alleges that Halverson should have stated that the information from Apothio's partners was wrong or malicious and that the information in the warrant affidavit came from "biased and unreliable informants" who were in litigation with Apothio, who provided faulty testing methods and results. FAC ¶¶ 139-142 and 147-164. Second, Apothio contends that Halverson's warrant was judicially deceptive because it omitted "exculpatory evidence" that the County Agricultural Commissioner (Ag Commissioner) was interviewed by the Federal Bureau of Investigation (FBI). FAC ¶¶ 143-146. However, Apothio acknowledges that Halverson was not present at the meeting between the Ag Commissioner and the FBI and that the meeting occurred the day before Halverson filed his warrant. FAC ¶ 144. Nonetheless, Apothio alleges that Halverson should have known of the "exculpatory" evidence that may have been relayed by the Ag Commissioner to the

4

FBI, and that the failure to disclose such information was "intentional, knowing, and reckless." FAC ¶¶ 143, 144. Finally, Apothio alleges that Halverson failed to disclose Apothio's "record of compliance" and regular meeting with County officials, such as the Ag Commissioner. FAC ¶¶ 170-173. Apothio concludes that "[w]ithout these material omissions, the Halverson Warrant and Affidavit did not establish probable cause." FAC, at p. 50:15-17.

While taking issue with Halverson's cannabis method of selecting samples for testing, Apothio acknowledges that Halverson conducted the testing to "independently corroborate" the information provided by the informants. FAC ¶ 175. Halverson's warrant affidavit noted that the search took place in an area where the "fields are open, not fenced, and seizing samples would consist of walking into the fields and cutting samples [and that there] would be no need to enter any buildings or structures to obtain the samples." FAC, Exh. A, page 7 of 8.

Notwithstanding Apothio's criticisms of Halverson's warrant affidavit, Halverson received information that Apothio was cultivating cannabis with greater than 0.3 percent THC that it intended to sell across state lines. Halverson's independent testing confirmed that Apothio was cultivating cannabis with greater than 0.3 percent THC, and the contract for sale of biomass that is incorporated by reference into the FAC confirmed Apothio's intent to sell the cannabis across state lines.

### 2. The Nicholson Warrant and Eradication of Suspected Marijuana Plants.

Sheriff's detective Nicholson obtained a second warrant to search Apothio's fields and eradicate the crop pursuant to California Penal Code section 1536. FAC ¶¶ 180-185, FAC Exh. C. Apothio alleges Nicholson's warrant application was deceptive and lacking in probable cause, on the grounds similar to those alleged against Halverson. FAC ¶¶ 180-200. Apothio alleges further deception by Nicholson based on his warrant affidavit's description of Apothio's alleged research connection with community colleges and further its discussion of a recent newspaper article. FAC ¶ 211.

Apothio brings its first and second causes of action under 42 U.S.C. § 1983 as a Fourth Amendment search-and-seizure violation, and as a Fourteenth Amendment violation of due process based on Halverson and Nicholson's alleged "judicial deception," FAC, beginning ¶¶

304 and 317. Under those causes of action, the FAC alleges that DFW Director Charlton

Bonham, in his personal and representative capacity, "ratified" the alleged constitutional

violations. FAC ¶¶ 312 and 313. Apothio fails to allege any specific facts related to its Bonham

ratification claim.

    **D.**    **Cause of Action for Civil Asset Forfeiture in Violation of the Fifth Amendment**

The third cause of action alleges that the criminal enforcement action and resulting crop

eradication, undertaken pursuant to a warrant and in accordance with California Health and

Safety Code section 11479, was a Fifth Amendment "taking" brought as a 42 U.S.C. § 1983

action. FAC ¶¶ 322-328.

    **E.**    **State Constitutional, Common Law and Declaratory Relief Actions**

Apothio repeats its search-and-seizure and due process theories as state civil rights

violations under California's "Bane Act" (Cal. Civ. Code § 52.1), in the fourth, fifth, sixth and

seventh causes of action. FAC ¶¶ 329, 343, 355, 360.  State common law causes of action are also

alleged as conversion, trespass to chattel, and negligence. FAC ¶¶ 365, 370, 375. Finally, the

eleventh cause of action seeks declaratory relief. FAC ¶ 378.

## APPLICABLE MARIJUANA AND INDUSTRIAL HEMP LAW

Under both federal and state law, a cannabis plant with a THC concentration above 0.3

percent is a controlled substance (marijuana).[6] Cannabis can be either industrial hemp or

"marihuana" as those terms are defined in applicable federal law. 21 U.S.C § 802(16). A cannabis

plant with a THC concentration of 0.3 percent or lower is "industrial hemp." Once THC content

in a cannabis plant exceeds 0.3 percent THC, it becomes "marijuana," a Schedule I controlled

substance that cannot be legally possessed, propagated, or produced under federal law except by

manufacturers registered with the Drug Enforcement Administration (DEA). 21 U.S.C. § 822. At

---

[6] The Medicinal and Adult-Use Cannabis Regulation and Safety Act changed the term marijuana to cannabis in all California statutes. Cal. Bus. & Prof. Code §§ 26000-26250. However, Federal law refers to "marihuana." 21 U.S.C. § 802(16). All references to *cannabis sativa L.* plants with greater than 0.3 percent THC in this brief will use marijuana.

1     all times relevant to this case, industrial hemp could be legally possessed or grown under federal

2     law by an institution of higher education or state department of agriculture. 7 U.S.C. § 5940(a)(2),

3     Repealed by stats Pub. L. 115-334, title VII, §7605(b), Dec. 20, 2018, remained in effect until

4     October 31, 2020.

5         California law in effect at the time of the eradication, allowed for the cultivation of

6     cannabis which exceeded 0.3 percent THC, but <u>only</u> "if that cultivation or possession

7     contribute[d] to the development of types of industrial hemp that will comply with the three-

8     tenths of 1 percent THC limit." Former Cal. Food & Agric. Code § 81006, subd. (e)(1) (amended

9     by Stats. SB 153 § 10 reg. sess. 2019-2020.) [7] Here, Apothio's plants were being cultivated to

10    sell, <u>not</u> to develop strains with lower THC concentrations. FAC Exhs. B and D, the sales

11    contracts. As noted, there has never been any provision in federal law allowing for the possession

12    or cultivation of cannabis with THC in excess of 0.3 percent except by manufacturers registered

13    with the DEA. 21 U.S.C. §§ 804(16), 812, Schedule 1 (c)(10) & (17), and 822.

14        THC content of cannabis plants steadily increases as the plants mature towards harvest. For

15    this reason, current laws and regulations require testing for THC content 15 days before harvest

16    and require the destruction of cannabis plants that exceed the 0.3 percent THC threshold.[8] Fed.

17    Reg. §58522, 58524-58525; 7 C.F.R § 990.3(a)(3)(i); see also 7 U.S.C. § 1639q (a)(2)(B) (see

18    RJN Exhibit D pg. 3).

19        Apothio admits it was growing marijuana with more than 0.3 percent THC: "During 2019,

20    Apothio provided updates on testing that included test results of plants currently above 0.3%

21    THC." FAC ¶ 114.

22    //

23

24    ――――――――――――
    [7]   Apothio mistakenly references Health and Safety Code § 81006 throughout the FAC and also cites to

25    subdivisions of § 81006 that did not exist in the version of the statute that was in effect during the time
    period relevant to this case. For this reason, State Defendants have attached the correct former version of

26    Food and Agricultural Code § 81006 as Exhibit C to the concurrently filed Request for Judicial Notice.
    [8] "[D]esignated person shall collect samples from flower material from such cannabis plants for delta-9

27    tetrahydrocannabinol concentration level testing. If producers delay harvest beyond 15 days, the plant will
    likely have a higher THC level at harvest than the sample that is being tested. This requirement will yield

28    the truest measurement of the THC level at the point of harvest." (84 Fed. Reg. § 58522, page 58524 (Oct.
    31, 2019); see also 7 C.F.R. § 990.3(a)(2)(i)) (See RJN Exhibit D).

1

**ARGUMENT**

2      Lacking a constitutionally protected right, the FAC's first, second and third causes of

3  action, which set forth alleged Fourth Amendment, Fourteenth Amendment and Fifth Amendment

4  violations, respectively, must be dismissed for failure to state a cause of action. The California

5  Bane Act claims under the fourth, fifth, sixth and seventh causes of action rely on the same

6  allegations as the first through third causes of action and suffer from the same defect due to the

7  lack of a protected right.

8      Dismissal is proper when the complaint either fails to allege a "cognizable legal theory" or

9  fails to allege sufficient facts "to support a cognizable legal theory." Fed. R. Civ. P. 12(b)(6);

10  *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016); *Seismic*

11  *Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015). The court is "not bound to

12  accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662,

13  678 (2009).

14      Based on testing and other information discussed in detail below, law enforcement had a

15  good faith reason to believe that Apothio's cannabis plants contained over 0.3 percent THC, and

16  that Apothio was cultivating vast quantities of cannabis with excessive THC content with the

17  intent to sell it. The defendants appropriately destroyed the contraband as required and authorized

18  by law. Cal. Health & Safety Code § 11479; 21 U.S.C. § 801.

19  **I.    THE FAC CANNOT STATE AN ACTION FOR SEARCH AND SEIZURE VIOLATION.**

20      Apothio cannot support its alleged Fourth Amendment violation claim, as defendants took

21  extra steps to ensure the sufficiency of probable cause. Indeed, Halverson's warrant to obtain

22  testing samples was prepared to verify statements from an informant that were alone sufficient to

23  establish probable cause. The FAC backhandedly concedes this. FAC ¶ 175. Nicholson sought

24  additional information regarding Apothio's "research" connections with a local community

25  college. All such information, including that the informants were engaged in litigation against

26  Apothio, was ultimately disclosed in the warrant affidavits.

27  //

28  //

8

### A. Apothio Fails to State a Colorable Claim for Judicial Deception.

To state a case for "judicial deception" necessary to plead a violation of its constitutional rights, Apothio must make "a substantial showing of deception" in order for the court to "determine the materiality of the allegedly false statements or omissions." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009). Apothio must also demonstrate "the magistrate would not have issued the warrant with false information redacted, or omitted information restored." *Olvera v. County of Sacramento*, 932 F.Supp.2d 1123, 1152 (E.D. Cal. 2013). Further, Apothio must also establish the mistakes were material to the warrant issued. *Advanced Bldg. & Fabrication, Inc. v. California Highway Patrol*, 781 F.App'x 608, 610 (9th Cir. 2019). Apothio's allegation of a Fourth Amendment violation falls far short of these legal standards.

### B. The Warrant, Although Valid, Was Not Required for Eradication of the Contraband

Defendants' good faith belief in the probable cause for the warrant is presumed. *United States v. Leon*, 468 U.S. 897, 920-924 (1984). A party challenging a search will lose if either: (1) the warrant issued was supported by probable cause; or (2) it was not, but the officers executing it reasonably believed that it was. *Id.* Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). To state a 42 U.S.C. § 1983 claim based on a Fourth Amendment violation for lack of probable cause, the complaint must allege that the warrant falls within the "narrow exception" that it would be "entirely unreasonable" for an officer to believe that there was probable cause. *Messerschmidt v. Millender*, 565 U.S. 535, 549 (2012).

Apothio claims that the narrow exception applies here, and therefore, must show it was entirely unreasonable for an officer to believe there was probable cause. As discussed below, reasonable probable cause existed before Halverson obtained the warrant. He then used the warrant to substantiate the probable cause through the independent testing of THC levels.

//

//

9

**C.     Probable Cause Existed that Apothio Intended to Sell Cannabis with THC Content in Excess of 0.3 Percent.**

Even if there was an avenue for Apothio to cultivate industrial hemp for research purposes through its affiliation with institutions of higher education, it is clear that Apothio was cultivating cannabis which tested above the federal limit, and was doing so for the purpose of selling it. Selling cannabis that exceeds the federal THC limit was, at all times relevant to this case, illegal. Defendants had the information of an informant and Halverson's test results verifying the plants exceeded the federal THC limit.

The FAC admits the plants had tested "hot," but alleges that defendants had no probable cause to believe that Apothio would sell the "hot" hemp. FAC ¶¶ 9, 82, 137-142, 183, 187, 191, 192. The FAC's various "exculpatory" allegations include the alleged statement by Apothio CEO Trent Jones, "Research, research, research… We're doing the research and have no intentions of selling any THC ever."  FAC, at p. 7:19-23. Jones' statement does not dispel the probable cause that hot hemp would be sold. Apothio appears to allege that it would process its entire harvest, extracting CBD, seeds and other components of value. FAC ¶ 113. Nevertheless, Exhibits B and D, incorporated by reference in the FAC, describe the intended sale of entire plants to PROCANN in Nevada and New Bridge in Oregon. Apothio's intent to extract THC or only CBD does not change the character of the cannabis plants that it was growing with the intent to sell. FAC, Exh. B, p. 2 of 6: "The Seller supplying to Receiver hemp biomass . . . in the estimated amount of Three to Eight Million Pounds."

Defendants had a reasonable belief that Apothio had near-term plans to sell its harvest, including plants that exceeded the legal THC limit. Moreover, it was entirely reasonable for law enforcement to read language in Trent Jones' settlement proposal and understand that the plants growing in Apothio's fields would be processed by New Bridge "for the purposes of extracting, refining, or processing cannabis, whether hemp or marijuana." FAC, Exh. D, at p. 5 of 6.[9]

//

---

[9] Trent Jones' proposed settlement term reads, "Apothio will not be restricted in using any form of cavitation, controlled cavitation, ultrasonic cavitation, microwave cavitation and more for the purposes of extracting, refining, or processing cannabis, whether hemp or marijuana." FAC, Exh. D, at p. 5 of 6.

10

1   Apothio's attempts to explain away that language are irrelevant. FAC ¶ 206. Halverson,

2   Nicholson, and any other reasonable law enforcement official would read such language in the

3   context of the totality of their acquired information and find that probable cause existed to believe

4   that Apothio would shortly be shipping cannabis out-of-state and that the cannabis had a THC

5   concentration in excess of 0.3 percent. *Illinois v. Gates*, 462 U.S. 213, 230 (1983), adopting

6   "totality-of-the-circumstances" approach to probable cause.

7       **D.     The Testing Results Halverson Obtained Were Not Deceptive.**

8       The FAC alleges that Halverson's warrant application was deceptive because "California

9   law requires" laboratory testing (FAC ¶ 226) and because of alleged inadequacies involved in

10  Halverson's testing (FAC ¶¶ 228-232). Even if true, which State Defendants deny, neither claim

11  overcomes the presumption of the warrant's validity. However, neither claim is true.

12      **1.     State Law Does Not Require Lab Testing for Probable Cause.**

13      The FAC does not specify the "California law" requiring lab testing of THC. However, the

14  FAC's due process action claims that lab testing is a right under California Food and Agriculture

15  Code sections 81000, et seq. FAC, at p. 85:14-15. It is not. The cited division of the California

16  Food and Agricultural Code applies to registered industrial hemp producers. Former California

17  Food and Agricultural Code section 81006(d) required registered industrial hemp producers to

18  have their crops tested before harvest by a laboratory approved by the California Department of

19  Food and Agriculture.[10] Apothio was not a registered industrial hemp producer and neither are the

20  law enforcement defendants in this case. Therefore, the testing provisions applicable to industrial

21  hemp in California Food and Agricultural Code section 81006 at the time do not apply to

22  Apothio. The FAC concedes as much. FAC, at p. 42:5-7. Nor do the testing provisions apply to

23  law enforcement officers engaged in a criminal investigation.

24      **2.     Testing Result Variations are Natural, Not a Deception.**

25      The testing results acknowledged in the FAC and its incorporated attachments amply show

26  probable cause that Apothio was growing more than six plants exceeding the legal THC limits for

27  hemp. Halverson's affidavit notes an informant reported THC exceeded legal limits at the fields,

28  ───────────────
[10] California Food and Agricultural Code § 81006, amended by stats. SB 153 2019-2020 reg. sess.

1   whereupon he contacted Apothio's business partner Farr, who reported taking two samples each

2   from three of Apothio's fields. FAC, Exh. A, p. 6, top paragraph.[11] Farr represented his results

3   showed THC as high as 2.33 percent. *Id*. Farr, who is experienced in the field of cannabis

4   cultivation, stated THC would rise with maturity, to "between 4-6% THC around time of

5   harvest*." Id*.

6         While acknowledging that Apothio had designated itself as an EARI, and citing Apothio's

7   agreements to sell the harvest out-of-state, Halverson's warrant application affidavit represented

8   that such sale of plants over the THC limit would be illegal. FAC, Exh. A, at p. 6.

9         **E.    Open Fields Search of "Heavily Regulated" Cannabis is Reasonable.**

10         A grower of cannabis who plants crops on hundreds of open acres, regardless of "hemp"

11   signage, can expect no privacy protection under the Fourth Amendment. The "government's

12   intrusion upon the open fields is not one of those 'unreasonable searches' proscribed by the text

13   of the Fourth Amendment." *Oliver v. United States*, 466 U.S. 170, 177 (1984); *Hester v. United*

14   *States*, 265 U.S. 57, 59 (1924) ("the special protection accorded by the Fourth Amendment to the

15   people in their 'persons, houses, papers and effects,' is not extended to the open fields.").

16         Pictures attached to the FAC leave no question that Apothio's cultivation site are "open

17   fields," with no buildings nearby. FAC ¶ 264. Halverson's warrant affidavit sets forth that "the

18   warrant service will be on an open field and will not require entry into any buildings or through

19   any fences." FAC, Exh. A, at p. 6.

20         Apothio's open fields also lack any privacy expectation because Apothio is part of a

21   "closely regulated" industry. *New York v. Burger (Burger)*, 482 U.S. 691, 702 (1987). Cannabis,

22   even where it may be legal, is closely regulated under the "Medicinal and Adult-Use Cannabis

23   Regulation and Safety Act" (Cal. Bus. & Prof. Code § 26000, *et seq.*), the "California Uniform

24   Controlled Substances Act" (Cal. Health & Safety Code §§ 11000, 11018, 11018.5), and the

25   Federal "Controlled Substances Act" (21 U.S.C. §§ 801-904). As acknowledged by Apothio,

26   "California has created a comprehensive regulatory regime, covering everything from registration

27   _____

[11] The FAC makes no allegation that there was a material difference in the plants grown in the
various Apothio fields. Rather, they were planted at the same time and are apparently of the same
28   strain or variety.

1   and testing to growth and enforcement, to promote the development of a new hemp industry."

2   FAC, at p. 14:13-16.

3          Because the plants are closely regulated, subject to regular reporting and inspection, and are

4   located in open fields, Apothio cannot argue there was any reasonable expectation of privacy, as

5   even "warrantless inspection of commercial premises may well be reasonable within the meaning

6   of the Fourth Amendment" to further the regulatory scheme. *Burger*, 482 U.S. at 702.

7          State defendant Halverson's law enforcement activities were limited to merely collecting

8   samples from a highly regulated open field. Accordingly, Apothio's constitutional search and

9   seizure violation allegation against Halverson is fatally flawed.

10         **F.   Apothio's "Research" Status is Immaterial to Probable Cause.**

11         Apothio's judicial deception argument in its original complaint focused on defendants'

12  alleged failure to disclose Apothio's alleged EARI status in the warrant applications. When the

13  warrant applications were disclosed, it was obvious that Apothio's EARI claim was reported to

14  the issuing court. FAC, Exhs. A and C. The FAC largely sheds that allegation of deception,

15  instead setting forth several new alleged misrepresentations to the court, addressed above.

16  Moreover, federal statutes on legitimate industrial hemp research preempt state statutes defining

17  EARIs. Therefore, Apothio's EARI status is irrelevant because no federally protected right was

18  implicated by Halverson's sample collection in Apothio's fields.

19  **II.   APOTHIO FAILS TO SUFFICIENTLY ALLEGE A "TAKINGS" THIRD CAUSE OF ACTION**

20         A covered property right is fundamental to state an unconstitutional taking of property

21  under the "takings" clause of the Fifth Amendment. U.S. Const. amend. V ("…nor shall private

22  property be taken for public use, without just compensation.") Apothio does not have a

23  compensable property interest in its cannabis plants under the Fifth Amendment, because the

24  plants' eradication was an exercise of police power. "The exercise of the police power by the

25  destruction of property which is itself a public nuisance, or the prohibition of its use in a

26  particular way, whereby its value becomes depreciated, is very different from taking property for

27  public use, or from depriving a person of his property without due process of law." *Mugler v.*

28  *Kansas*, 123 U.S. 623, 669 (1887).

Here, the plants' eradication was pursuant to police power, not to secure a benefit shared by the public and compensable to the private owner. "It is well settled that when the Government acts pursuant to its police power, independent of Fifth Amendment rights, in order to protect the general health, safety and welfare of its citizens, no compensable taking occurs." *AmeriSource Corp. v. U.S.*, 75 Fed.Cl. 743, 747 (Fed. Cl. 2007), aff'd 525 F.3d 1149 (Fed. Cir. 2008).

The claim also fails against State Defendants, in particular, because the eradication was undertaken pursuant to a warrant sought by the Kern County Sheriff and was overseen by the Kern County Sherriff.

## III.   LACKING ANY PROTECTED INTEREST, APOTHIO'S DUE PROCESS CLAIMS FAIL

Neither state nor federal law provide Apothio with any protected interest. Therefore, Apothio fails to state cognizable due process claims in its second, sixth and seventh causes of action.  "Procedural due process, as required by the United States Constitution, protects only those matters that may be construed as liberty or property interests." *Conejo Wellness Center, Inc. v. City of Agoura Hills*, 214 Cal.App.4th 1534, 1562 (2013) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976), and *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972).)

Federal law determines whether a particular entitlement or interest created by the state rises to the level of a "legitimate claim of entitlement" protected by the Due Process Clause of the Federal Constitution. *Memphis Light Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978); see also *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005).

"To obtain relief on § 1983 claims based upon procedural due process, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.' " *Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011).

### A.   The Federal Hemp Research Exception Was Not Available to Apothio.

During the time relevant to this matter, California did not have a federally approved State Plan for hemp regulation. Order, April 26, 2022, ECF 86, at p. 4:12-20. Nor was Apothio a federally registered hemp grower. *Id.* Despite Apothio having neither the required federal nor
//

14

1   state industrial hemp registration, the court eventually ruled that Apothio was cultivating

2   "industrial hemp and not marijuana," for the purposes of pleading. *Id*, at p. 21:19-20.

3       Under the now repealed statute, 7 U.S.C. § 5940(a), an "institution of higher education"

4   was permitted to "grow or cultivate industrial hemp . . . for purposes of  . . . agricultural or

5   academic research." The FAC alleges that Apothio was in contract with an institution of higher

6   education to supply Apothio's own research on the eradicated cannabis plants to the institution

7   and others. FAC ¶¶ 85-91. Pursuant to former 7 U.S.C. § 5940, an institution of higher education

8   could arguably contract with a private party for the cultivation of cannabis for research purposes,

9   but that is not what occurred here. Apothio does not allege that the eradicated crop was being

10  cultivated for Kern County Community College and it does not allege that the sale of the

11  eradicated crop would have accrued any benefit to Kern County Community College. Rather,

12  Apothio cryptically alleges that it had agreed with the college to "share any revenues generated

13  by their various research partnerships." FAC ¶ 91.

14      Apothio does not allege that the eradicated plants came from the site in California City

15  jointly leased with Kern Community College District. FAC ¶ 88; Exhibit C, p. 10 of 15. Apothio

16  also does not allege that the eradication of the crop interfered with any research being conducted

17  by Kern County Community College or any other institution of higher education. Furthermore,

18  there is no indication in the FAC that any rights of an institution of higher education were

19  affected by the Kern County Sheriff's cannabis eradication. That no rights of Kern County

20  Community College or any other research institution were implicated by the challenged action

21  can be inferred from the caption of the FAC: no institution of higher education is a party to this

22  case.

23      Apothio's relationship with the community college does not transform Apothio, LLC into

24  an institution of higher education or convert its intent to sell millions of pounds of cannabis plant

25  matter into agricultural or academic research. Former 7 U.S.C. section 5940, subd. (a), entitled

26  "Legitimacy of industrial hemp research," was intended to authorize a state department of

27  agriculture or institutions of higher education to conduct research. It was not intended to provide

28  a loophole whereby Apothio's mere association with a community college would allow it to grow

15

1  and sell vast quantities of cannabis for commercial purposes. The FAC's legal conclusion that

2  Apothio could commercially grow cannabis unfettered by the regulations is mistaken. Under the

3  applicable law at the time, only an institution of higher education could grow cannabis for

4  research purposes. Apothio has never been an institution of higher education and no institution of

5  higher education is a party to this case.

6  **IV.   APOTHIO HAD NO PROPERTY RIGHT ENTITLED TO DUE PROCESS.**

7       California Health and Safety Code section 11479 provides that "a suspected controlled

8  substance," including marijuana, "may be destroyed without a court order by the chief of the law

9  enforcement agency or a designated subordinate." Thus, "the section expressly authorizes the

10  destruction of some part of the contraband without court order when large amounts of suspected

11  controlled substances are seized." *People v. Tolhurst*, 139 Cal.App.3d 1, 6, (1982) (*Tolhurst*)

12  (emphasis in original).

13       The distinction between contraband *per se* and derivative contraband is irrelevant here; like

14  the hunting trophies in *Conservation Force v. Salazar* (N.D. Cal. 2009) 677 F.Supp.2d 1203,

15  1207, aff'd (9th Cir. 2011) 646 F.3d 1240 (*Salazar*), hemp grown without authorization by the

16  government is "transformed" into contraband for the purposes of this action. (*Id.* at p. 1207)

17  Contraband, *per se* or derivative, has no legal due process property rights. To hold otherwise here

18  would impose a novel due process exception to probable cause. Because Apothio's cannabis, like

19  the *Conservation Force* hunting trophies, became contraband the instant it breached the 0.3

20  percent THC threshold, "plaintiffs do not have a fundamental property right . . . and their

21  substantive due process claim cannot stand." *Id.* at p. 1210.

22       Health and Safety Code section 11479 expressly allowed eradication of Apothio's plants, as

23  did the warrant. The court in *Tolhurst* upheld the constitutional validity of the eradication

24  procedure under California Health and Safety Code section 11479. Any "procedural due process

25  analysis essentially boils down to an ad hoc balancing inquiry." *Brewster v. Board of Educ. of*

26  *Lynwood Unified School Dist.* (9th Cir. 1998) 149 F.3d 971, 983. And "when countervailing

27  interests require it, the State may dispense with predeprivation process." *Brewster v. Board of*

28  *Educ. of Lynwood Unified School Dist.* (9th Cir. 1998) 149 F.3d 971, 984.

16

1    Therefore, no 42 U.S.C. section 1983 or Bane Act violation can plausibly be alleged since

2    defendants destroyed suspected contraband in accordance with the law.

3        **A.    Apothio's Criminal Due Process is the Only Process Due.**

4        At all times relevant to this case, the Kern County Agricultural Commissioner had no

5    statutory authority or mandate to register any cultivator claiming to be an EARI. Neither the state

6    nor county had legal authority to vest any EARI rights. Such authority did not exist until January

7    1, 2020 when the California legislature added and amended the provisions of California Food and

8    Agricultural Code sections 81000, 81003, 81004.5 and 81005.

9        Thus, there is no regulatory due process afforded Apothio. Apothio asserts "that there was a

10   regulatory structure here with different enforcement mechanisms and processes," but the FAC

11   cannot cite to any such mechanisms or processes. FAC ¶ 143 (c). Instead, Apothio contends it

12   simply did not have to register as an industrial hemp producer because it had designated itself to

13   be an EARI. As discussed above, and previously noted by the court, the means by which to apply

14   with the United States Department of Agriculture did not even exist until October 31, 2019, when

15   the 2018 Farm Bill was implemented. (See also RJN Exhibit D.) Additionally, California's state

16   hemp plan did not take effect until January 1, 2020, so there was no means by which any

17   governmental entity could have conferred any entitlement upon Apothio to cultivate cannabis

18   without Apothio registering to be an industrial hemp producer.

19       The Supreme Court has recognized that due process is "flexible" and must be fitted to the

20   "particular situation." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Apothio's principals are

21   free to assert its self-proclaimed status as an EARI as a defense to their criminal prosecution

22   under state law. Apothio's criminal proceeding supported by the evidence preservation provisions

23   of Health and Safety Code section 11479 provides the due process to which the plaintiffs are

24   entitled.

25       **1.    Apothio Was Provided Criminal Due Process.**

26       The FAC insinuates "telling" failures of evidence preservation. "On information and belief,

27   Halverson did not retain as evidence the improper samples he took as a result of his search

28   warrant, which means, among other things, that they destroyed any evidence of the improper parts

17

of the plants used to test." FAC, at p. 51:10-13. The FAC lacks the required plausible factual

pleadings to support Apothio's information and belief. *Bell Atlantic Corp. v. Twombly* (2007) 550

U.S. 544, 545 ("Factual allegations must be enough to raise a right to relief above the speculative

level...") The FAC provides no explanation of an "improper" part of the tested plants. Such

questions, if relevant at all, are proper for the criminal proceeding against Apothio's CEO Trent

Jones. They do not implicate any constitutional due process right.

### 2. No vesting of rights arise from alleged "map permits."

Finally, Apothio claims it has "map permits" permitting cannabis cultivation. FAC ¶¶ 108,

109. Apothio alleges that it "filed registration materials with Kern County" and that "in response,

the Kern County Agricultural Commissioner issued several additional map permits." FAC ¶ 108.

Apothio represents that these "map permits" were "issued for the hemp growing." FAC ¶ 109.

That is emphatically not the case. The documents are "restricted material" permits, used for state

pesticide regulation. State Defendants' RJN Exh. E. The County Ag Commissioner, pursuant to

California Food and Agricultural Code section 14001, *et seq*, administers the restricted material

permit program for the California Department of Pesticide Regulation (DPR). These permits do

not authorize the cultivation of any crop; they simply require the Ag Commissioner to review the

use of chemicals that have been designated by the DPR as restricted materials. Issuance of the

restricted materials permits by the Ag Commissioner does not grant any entitlement relative to

any agricultural or business activity. Rather, it signifies only that the Ag Commissioner has

considered whether using the restricted materials identified in the permit, in the location provided

in the application, will have a substantial adverse environmental impact. 3 Cal. Code of

Regulations § 6432. To imply that issuance of these "map permits" conferred some property

interest to Apothio warranting due process relative to cultivation of cannabis is a

misrepresentation that should be disregarded by the Court.

There is no basis anywhere in the FAC to support the notion that the Ag Commissioner,

Kern County, or any other governmental entity conferred any right, entitlement, or privilege to

Apothio authorizing it to cultivate cannabis. For these reasons, Apothio cannot point to any

//

1  process due to it as a private, unregistered grower of cannabis, that is unable or unwilling to

2  maintain its cannabis plants below the legal limit of a controlled substance content.

3  **V.   HALVERSON AND BONHAM HAVE QUALIFIED IMMUNITY AND MUST BE DISMISSED**

4      As established above, State Defendants Halverson and Bonham are entitled to qualified

5  immunity and should be dismissed.

6      The doctrine of qualified immunity protects government officials "from liability for civil

7  damages insofar as their conduct does not violate clearly established statutory or constitutional

8  rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231

9  (2009), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A ruling on qualified immunity

10  "should be made early in the proceedings so that the costs and expenses of trial are avoided where

11  the defense is dispositive." *Saucier v. Katz (Saucier)*, 533 U.S. 194, 200 (2001).

12      Under *Sausier*'s two-step analysis of qualified immunity, the court views the facts with

13  favor to the plaintiff, to 1) determine a constitutional right violation, and then 2) whether the right

14  was "clearly established," that is, "whether it would be clear to a reasonable officer that his

15  conduct was unlawful in the situation he confronted." *Id.* at 201–202. The second question goes

16  to "whether the officer had fair notice," *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per

17  curiam), because "qualified immunity protects 'all but the plainly incompetent or those who

18  knowingly violate the law,'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (quoting *Malley v.*

19  *Briggs*, 475 U.S. 335, 341 (1986)).

20      **A.    Halverson Had Probable Cause for His Sample Search.**

21      State Defendants did not seek the warrant obtained by Nicholson for eradication of

22  Apothio's hemp. FAC, Exh. C. The warrant to eradicate Apothio's crop issued to Nicholson for

23  the Kern County's Sheriff. However, the FAC alleges that State Defendants were complicit in the

24  violation of Apothio's due process rights because Nicholson relied on the Halverson search

25  results, and because State Defendants were present for the eradication. FAC ¶ 15.

26      The FAC alleges that Halverson's role in the Apothio investigation was limited to

27  collecting and analyzing test samples from Apothio's plants. The complex, rapidly evolving

28  federal and state cannabis and hemp laws were patently not "clearly established." Therefore,

19

1  Halverson could not have "fair notice" of the contours of a well-defined law. *Evans v. Skolnik*,

2  997 F.3d 1060, 1066 (9th Cir. 2021). Rather, he reasonably believed that Apothio was growing

3  marijuana with the intent to sell it. The FAC finds fault with Halverson's search entirely on his

4  alleged "judicial deception." As shown above, the allegations are insufficient to support any

5  plausible inference that Halverson made "deliberately false statements or recklessly disregarded

6  the truth" with regard to information material to the probable cause determination. *Galbraith v.*

7  *City of Santa Clara,* 307 F.3d 1119, 1126 (9th Cir. 2002). Halverson is entitled to qualified

8  immunity and should be dismissed.

9  **B.   The FAC Lacks Any Specific Allegations Against CDFW Director Bonham.**

10  Apothio fails to identify any links between the alleged constitutional violations and any

11  specific actions of California Department of Fish and Wildlife's Director Charlton H. Bonham.

12  The specific acts of the individuals and entities named must be factually alleged. *Scalia v County*

13  *of Kern*, 308 F.Supp.3d 1064, 1072 (E.D. Cal. 2018) (The complaint must specify which

14  defendants are responsible for each constitutional violation and the factual basis.) In the FAC at

15  paragraph 258, subsection (e), Apothio states that Nicholson told Jones: "This went all the way up

16  to his chief, lawyers, my lawyers, my sheriff." Clearly, Nicholson is not an agent or employee of

17  CDFW and was not referencing Bonham, but rather the Kern County's Sheriff and other unnamed

18  individuals who cannot in any way be construed as Bonham.

19  The FAC fails to allege any specific knowledge to Bonham. Even assuming Bonham's

20  knowledge, Halverson's search did not violate "clearly established statutory or constitutional

21  rights of which a reasonable person would have known." Therefore, Bonham should be dismissed

22  under qualified immunity.

23  **CONCLUSION**

24  Abundant probable cause and no judicial deception supported the warrant for the open field

25  search by Halverson of Apothio's fields. Nor was any constitutional taking implicated under the

26  Fifth Amendment. Apothio's claims of a due process violation under its self-proclaimed research

27  exception from regulation fails; only institutions of higher education were eligible for such

28  exemption. Accordingly the balance of the FAC's claims fail.

20

1    Therefore, the State Defendants respectfully request that the Court issue an order

2 dismissing the First Amended Complaint.

3 Dated:  August 8, 2022                              Respectfully Submitted,

4                                                     ROB BONTA
                                                      Attorney General of California
5                                                     CHRISTINE E. GARSKE
                                                      JOSHUA B. EISENBERG
6                                                     Supervising Deputy Attorneys General

7

8                                                     *Kelly T. Smith*

9

10                                                    KELLY T. SMITH
                                                      ETHAN A. TURNER
                                                      Deputy Attorneys General
11                                                    *Attorneys for Defendants State of California,*
                                                      *by and through California Department of*
12                                                    *Fish and Wildlife, Andrew Halverson and*
                                                      *Charlton H. Bonham*
13    SA2020300599
      36424250.docx
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        21

# CERTIFICATE OF SERVICE

Case Name:   **Apothio, LLC. v. CDFW, et. al.**       No.   **1:20-CV-00522**

I hereby certify that on <u>August 8, 2022,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>August 8, 2022</u>, at Rocklin, California.

| | |
|---|---|
| Natalie Clark | |
| Declarant | Signature |

SD2020800079
36424238.docx