1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   APOTHIO, LLC,                          Case No. 1:20-cv-00522-JLT-CDB

12                Plaintiff,                 ORDER GRANTING PLAINTIFF'S
                                             MOTION TO COMPEL
13          v.
                                             (Docs. 174, 178)
14   DONNY YOUNGBLOOD, *et al.*,

15                Defendants.                **14-DAY DEADLINE**

16

17          Pending before the Court is the motion of Plaintiff Apothio, LLC,  filed July 3, 2025, to

18   compel Defendants Joshua Nicholson, Donny Youngblood, and Kern County Sherrif's Office

19   ("KCSO") to: (1) produce documents in response to Plaintiff's Request for Production ("RFP")

20   No. 11, and (2) provide substantive responses to (a) Plaintiff's Interrogatory No. 1 to Defendants

21   Youngblood and Nicholson, (b) Plaintiff's First Set of Requests for Admission ("RFAs") to

22   Defendants Youngblood and Nicholson, (c) Plaintiff's Second Set of RFAs to Defendant KCSO,

23   (d) Plaintiff's Second Set of Interrogatories to Defendants Youngblood and Nicholson, and (e)

24   Plaintiff's Third Set of Interrogatories to Defendant KCSO.  (Docs. 174, 178).

25          The parties initially presented the various discovery disputes to the Court via the Court's

26   informal discovery dispute procedures (*see* Docs. 163, 170, 171); however, because Defendants

27   did not agree to resolve the discovery disputes informally, the Court authorized Plaintiff to file

28   the present motion to compel.  (Docs. 164, 172).

1    **Background**

2        In its first amended complaint ("FAC") (Doc. 88, FAC), Plaintiff alleges the following

3    facts.  Plaintiff is "an emerging vertically integrated player in the development of hemp-based

4    foods, nutraceuticals, and (eventually) pharmaceuticals."  *Id*. at ¶ 65.  Plaintiff was at all relevant

5    times an established agricultural research institution ("EARI") under California law.  *Id*. at ¶ 66

6    (citing Cal. Health & Safety Code § 81000(c)).  As part of its operations as an EARI, Plaintiff

7    maintains hundreds of acres of land for hemp research.  *Id*. at ¶ 66.  In Kern County, California,

8    Plaintiff maintained approximately 500 acres of land to grow, research, and harvest hemp plants.

9    *Id*. at ¶¶ 66, 97-98, 107-09.

10        In March 2019, Plaintiff planted approximately 17 million industrial hemp seeds on the

11   approximately 500 acres located in Kern County.  *Id*. at ¶ 110.  The hemp plants were grown

12   openly in the approximately 500 acres of fields, which were bordered by several "No

13   Trespassing" signs.  *Id*. at ¶ 111.  On September 9, 2019, Plaintiff was sued by a former vendor,

14   Newbridge Global Ventures, and its related entities.  *Id*. at ¶ 129.  Plaintiff asserts Newbridge

15   attempted to gain leverage over Plaintiff by reporting it was growing "500 acres of illegal

16   Cannabis" to law enforcement.  *Id*. at ¶¶ 129-33.

17        On October 17, 2019, Defendant Halverson, a lieutenant employed by the California

18   Department of Fish and Wildlife, applied for and obtained a search warrant to collect samples

19   from Plaintiff's field for tetrahydrocannabinol ("THC") testing.  *Id*. at ¶¶ 29, 134. Halverson's

20   warrant application represented that Plaintiff intended to sell cannabis to out-of-state buyers.  *Id*.

21   at ¶ 138.  Plaintiff contends Defendant Halverson obtained the search warrant by intentionally,

22   knowingly, and recklessly misrepresenting or omitting material facts to deceive the court.  *Id*. at

23   ¶¶ 136-73.  Plaintiff asserts Defendants Halverson and Nicholson (a Sergeant with Defendant

24   KCSO) executed the search warrant at night and "took 36 unscientific and unrepresentative

25   samples from [Plaintiff's] crops" to corroborate statements made by a Newbridge employee.  *Id*.

26   at ¶¶ 28, 175.  Plaintiff alleges Halverson failed to file a return for the search warrant listing what

27   he took and retained, failed to send samples to an independent certified lab as required by law and

28   destroyed evidence.  *Id*. at ¶ 176.

On October 24, 2019, Defendant Nicholson applied for and obtained a search warrant to search and seize property used "as a means of committing a public offense." *Id*. at ¶ 180. Plaintiff alleges Defendant Halverson reviewed Nicholson's warrant and affidavit before he submitted it to the court. *Id*. at ¶ 182. Plaintiff argues Defendant Nicholson obtained the search warrant based on many of the same intentional, knowing, and reckless misrepresentations and omissions that Halverson made in his warrant and affidavit. *Id*. at ¶ 183.

On October 25, 2019, state and county law enforcement agents executed Nicholson's warrant and entered Plaintiff's hemp fields in Kern County. *Id*. at ¶ 250. Plaintiff asserts that the warrant was defective because of an incorrect description of Trent Jones (Plaintiff's principal), the acreage grown, and because it ignored Plaintiff's status as a research entity under California law. *Id*. at ¶¶ 254-57. Plaintiff alleges Defendant Nicholson acknowledged CDFW Director Bonham had ratified the destruction of Plaintiff's crops. *Id*. at ¶ 258. Soon after, Defendants destroyed all approximately 500 acres of Plaintiff's plants. *Id*. at ¶ 266.

Following the filing of its original complaint and litigation over various motions to dismiss, on May 25, 2022, Plaintiff filed the operative FAC. (Doc. 88.) After a second round of motions to dismiss, this action proceeds on Plaintiff's excessive destruction claim under the Fourth Amendment and related Bane Act claim. (Docs. 133, 160).

### **Governing Legal Standards**

Rule 26 of the Federal Rules of Civil Procedure provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible in evidence to be discoverable. *See, e.g., Ford v. Unknown*, No. 2:21-cv-00088-DMG-MAR, 2023 WL 6194282, at *1 (C.D. Cal. Aug. 24, 2023). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid.

1    401.  Although relevance is broadly defined, it does have "ultimate and necessary boundaries."

2    *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978).

3        Relevant here, in response to a party's request for production of documents, the receiving

4    party "is obliged to produce all specified relevant and nonprivileged documents or other things

5    which are in its 'possession, custody or control' on the date specified in the request." *Jadwin v.*

6    *Cnty. Of Kern*, No. 1:07-cv-0026-OWW-TAG, 2008 WL 2025093, at *1 (E.D. Cal. May 9, 2008)

7    (quoting Fed. R. Civ. P. 34(a)).

8        Additionally, a party responding to an interrogatory is obligated to respond to the fullest

9    extent possible, Fed. R. Civ. P. 33(b)(3), and any objections must be stated with specificity, Fed.

10   R. Civ. P. 33(b)(4).  "Generally, the responding party does not need to conduct extensive research

11   in answering the interrogatory, but a reasonable effort to respond must be made." *Ramirez v. Kitt*,

12   No. 1:17-cv-00947-BAM (PC), 2024 WL 247243, at *2 (E.D. Cal. Jan. 23, 2024) (citation

13   omitted).

14       Under Rule 36, a "party may serve on any other party a written request to admit, for

15   purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1)."

16   A responding party may answer in one of three manners: (1) admit the request if the party has no

17   reason to dispute its truthfulness and accuracy; (2) deny the request, in whole or in part, if it has a

18   reasonable basis to dispute the requested matter; or (3) state that it cannot admit or deny the

19   request and provide a "reasonable explanation[], in adequate detail, as to why it cannot respond."

20   *F.D.I.C. v. Halpern*, 271 F.R.D. 191, 195-96 (D. Nev. 2010).

21       "The party who resists discovery has the burden to show that discovery should not be

22   allowed, and has the burden of clarifying, explaining, and supporting its objection." *Jadwin*,

23   2008 WL 2025093, at *1 (quotation and citations omitted).

24       **Discussion**

25       In sum, the parties request the Court to resolve disputes concerning the three Defendants'

26   responses to a request for production of documents, a total of 66 RFAs, and numerous

27   interrogatories.  Although many of the RFAs overlap and are amenable to grouping in a manner

28   that facilitates the Court's efficient consideration of the core issues presented, the disputes are

1   broad in scope and number.  The Court acknowledges the parties' numerous efforts to meet and

2   confer to resolve their numerous discovery disputes.  However, after careful review and

3   consideration of the parties filings and arguments, it does not appear to the Court that Defendants

4   in particular have exhibited an acceptable level of good faith cooperation in attempting to resolve

5   the discovery disputes presented by Plaintiff.  Specifically, as set forth in more detail below,

6   notwithstanding the clear command under Rule 36 that a party responding to an RFA either

7   admit, deny, or "state in detail" why he can do neither, Defendants instead routinely assert

8   answers that are nonresponsive or fail to respond entirely.  *See Marchand v. Mercy Med. Ctr.*, 22

9   F.3d 933, 936 (9th Cir. 1994) (admonishing parties to "focus on the goal of the Rules, full and

10  efficient discovery, not evasion and word play").  Defendants separately invoke numerous,

11  verbatim, boilerplate objections that (1) lack detail or explanation as required under the appliable

12  Rules, and/or that (2) Defendants fail to advance or even assert in opposing Plaintiff's motion to

13  compel.  *See Villery v. Jones*, No. 1:15-cv-01360-DAD-HBK (PC), 2021 WL 2227363, at *3

14  (E.D. Cal. June 2, 2021) ("boilerplate objections to requests for admission are not sufficient").

15          Although Defendants raised multiple objections when initially responding to the

16  interrogatories and RFAs at issue, the Court will only address herein the ones they elected to

17  pursue when opposing Plaintiff's motion to compel.  *See Franklin v. Smalls*, No. 3:09-cv1067-

18  MMA-RBB, 2012 WL 5077630, at *6 (S.D. Cal. Oct. 18, 2012).  Even if the Court were to

19  consider Defendants' boilerplate objections not argued in the parties' joint discovery dispute brief

20  (Doc. 178), the objections on grounds of undue burden, vagueness and ambiguity would be (and

21  are) overruled because they are perfunctory and not, as required under Rules 33 and 34, based on

22  specific arguments that show why the request is vague, ambiguous, or would impose a burden

23  that is out of proportion to the needs of the case.  *See, e.g.*, Fed. R. Civ. P. 33(b)(4) & 34(b)(2)(B)

24  (requiring that objections be stated "with specificity").

25          For the reasons that follow, Defendants will be ordered to serve amended responses to

26  Plaintiff's discovery demands.  Defendants are admonished that in serving amended discovery

27  responses, any failure to comply either with the letter or spirit of the rulings set forth herein may

28  result in the imposition of sanctions, including, among others, evidentiary sanctions as provided

1   for under Rule 36(a)(3) & (6) and Rule 37.  *E.g.*, *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242,

2   1245 (9th Cir. 1981) ("an evasive denial, one that does not specifically deny the matter, or a

3   response that does not set forth in detail the reasons why the answering party cannot truthfully

4   admit or deny the matter, may be deemed an admission.").

5         **A.  RFP No. 11 to Defendant KCSO**

6         RFP No. 11 requires KCSO to produce all documents concerning the County's policies on

7   investigating, seizing, storing, testing, and destroying hemp, cannabis, and marijuana.  In their

8   amended response to RFP No. 11, Defendants assert a largely boilerplate objection on the

9   following grounds: unintelligible, vague, overly broad, lacks particularity, compound, irrelevant,

10  assumes facts, fails to include the source of the document, and privilege.  Defendants further

11  acknowledge in their response that Plaintiff seeks "written policies in effect in October 2019,"

12  and assert, "no written policies specific to hemp, cannabis or marijuana as phrased ever existed.

13  Generally, however, see KCSO policies A-0500 and J1800, produced herewith."  The version of

14  policy A-0500 produced by Defendants, titled "Search Warrants," reflects it was effective May

15  15, 2008, and revised December 18, 2019.

16        Because the policy produced was revised on December 18, 2019, and it does not purport

17  to identify the revisions made as of that date, it is not clear whether that policy was in effect in

18  October 2019.  However, notwithstanding Defendants' current position as set forth in the parties'

19  joint statement of discovery dispute that "[t]here is no dispute here. Defendant will ensure the

20  corrected policy will be produced," Plaintiff's repeated efforts over a period of approximately

21  seven weeks to gain Defendants' cooperation have been unsuccessful and Defendants have not

22  carried through with their agreement to clarify their response to RFP No. 11.

23        It appears to the Court that Defendants have acted with unreasonable intransigence in

24  relation to Plaintiff's efforts to troubleshoot a relatively narrow and straightforward discovery

25  dispute.  In particular, Plaintiff contacted Defendants on April 1, 2025, to confer about

26  Defendants' amended discovery responses.  Plaintiff and Defendants had a further conference on

27  April 4, 2025.  As relevant here, Defendants agreed to confirm the policy in effect as of October

28  2019, and they requested supporting caselaw for the proposition that responding to interrogatories

based only on responding parties' memories is insufficient. That day, Plaintiff provided caselaw. (Doc. 178-17).  Plaintiff repeatedly followed up on that email.  On May 9, 2025, Defendants agreed to "amend[] again in terms of the identification of individuals for communications to address [Plaintiff's] concerns about review of documents to refresh memories."  (Doc. 178-18). Despite numerous follow-up emails and phone calls, Defendants (as of the date of the informal discovery dispute conference, June 23, 2025, see Doc. 172) have yet to confirm the investigations policy in effect as of October 2019.  *See, e.g.*, (Doc. 178-19).

Accordingly, the Court will direct Defendants to either (1) confirm in an amended response to RFP No. 11 that the version of policy A-0500 produced was in effect in October 2019, or (2) produce the version of policy A-0500 that was in effect in October 2019.

## B. Interrogatory No. 1 to Defendants Youngblood and Nicholson

Interrogatory No. 1 directed to Defendants Youngblood and Nicholson, as narrowed during the parties' meet and confer efforts, generally requires both Defendants to identify people with whom they discussed either Apothio or Trent Jones in relation to the cultivation or destruction of hemp/marijuana crops during the search warrant execution, narrowed to the timeframe January 1, 2017, to December 31, 2020.  In their responses to Interrogatory No. 1, both Defendants assert that they do not remember each and every person with whom they communicated about the narrowed topic and argue they have no independent duty to refresh their recollection about the matter by, for instance, reviewing investigative documents.  Defendant Youngblood's response identifies no person with whom he discussed Apothio/Jones, but instead, provides he does not remember "each and every person."  Defendant Nicholson likewise states that he does not recall "each and every person" with whom he spoke but also refers to the search warrant affidavit and an investigative report and names approximately 20 individuals he asserts "it is possible" he may have spoken with about the narrowed topic.

"A party answering interrogatories has an affirmative duty to furnish any and all information available to the party."  *Franklin*, 2012 WL 5077630, at *6 (quoting 7 James Wm. Moore et al., Moore's Federal Practice § 33.102[1], at 33–72 (3rd ed. 2012)).  Thus, in general, "if a party is unable to respond to an interrogatory based solely on their recollection, they have a

1    responsibility to make a reasonable inquiry into the matter and furnish information that is

2    available to the party without significant burden or expense." *Jobe v. Harris*, No. 5:22-cv-02276-

3    SPG-MAR, 2024 WL 3914654, at *4 (C.D. Cal. July 22, 2024) (citing cases).  *See Aesa, Inc*, 669

4    F.2d at 1247 ("a response which fails to admit or deny a proper request for admission does not

5    comply with the requirements of Rule 36(a) if the answering party has not, in fact, made

6    'reasonable inquiry,' or if information 'readily obtainable' is sufficient to enable him to admit or

7    deny the matter"); *Franklin*, 2012 WL 5077630, at *6 (requiring party that responded to

8    interrogatory, "I don't recall," to serve supplemental answer describing efforts made to obtain the

9    information sought).  On the other hand, "if a party cannot recall or readily obtain information

10   that is responsive to an interrogatory, a court cannot compel a party to remember what they do not

11   recall." *Jobe*, 2024 WL 3914654, at *4 (citing cases).

12         Under this authority, Defendant Youngblood's response that he does not remember "each

13   and every person" is nonresponsive and insufficient.  Further, his argument that he has no

14   obligation to refresh his memory is meritless.  *Aesa, Inc*., 669 F.2d at 1247 (noting a responding

15   party must make a "reasonable inquiry" and access "readily obtainable'" information sufficient to

16   enable him to admit or deny the matter).  Although Defendant Nicholson identifies in his

17   response people that he possibly spoke to, his response is similarly deficient as it is nonresponsive

18   and does not reflect whether he conducted a reasonable inquiry and accessed readily obtainable

19   information.

20         Accordingly, the Court will direct Defendants to serve amended responses to

21   Interrogatory No. 1.

22         **C.  RFAs to Defendant Nicholson**

23         RFAs 1-2 and 7-8:  these RFAs direct Defendant to admit or deny that he obtained

24   "Samples" pursuant to the two search warrants at issue in the lawsuit.

25         Relevant here, in his response, Defendant objected on the grounds that "Samples" is a

26   term that incorporates the location ("Farms") where law enforcement seized full or partial plants

27   during execution of the search warrant.  Defendant argues that the term "Farms" is objectionable

28   as compound because it is defined to include six separate land parcels.  Defendant further argues

8

1  that his response ("Admit in part insofar as I assisted in the execution of the warrant", that he was

2  "not the only one" assisting, and that "not all Farms were subject to samples") is a sufficient

3  "partial answer" given his understanding that samples of plants were not seized from every

4  location included in the term "Farms" and the fact that he did not take every sample plant.

5      Plaintiff's interrogatory did not direct Defendant to admit he seized *every* plant obtained

6  from *every* location searched in the execution of the search warrant.  It merely requires Defendant

7  to admit that he took any plant from any location withing the term "Farms."  Defendant's various

8  responses that he participated (but was not the only participant) in the search warrant execution,

9  and his understanding that plants were not seized from every location subsumed in the term

10  "Farms," is nonresponsive and, in general, evasive.  None of Defendant's responses answer

11  (directly or otherwise) whether he seized any single plant from any location searched.  *See*

12  *Halpern*, 271 F.R.D. at 196 ("These responses are also evasive because they do not fairly respond

13  to the substance of the matters that Defendants request be admitted").

14      Accordingly, Defendant's objections are overruled and he will be directed to serve

15  amended responses.

16      RFAs 17-24:  these RFAs direct Defendant to admit or deny that he either "made" or "was

17  involved in" the making of the "Decision," and whether he consulted with either Defendant

18  Halverson or Youngblood in connection therewith.

19      Plaintiff defines the "Decision" as "the decision and demonstration made pursuant to the

20  Nicholson Search Warrant's requirement that '[i]n making the determination to destroy excess

21  amounts of cannabis, pursuant to this order, officers shall demonstrate it was not reasonably

22  possible to preserve the suspected controlled substance in place, or to remove the suspected

23  controlled substance to another location.'"  (Doc. 178-1 at 3-4).

24      Defendant objected to these RFAs on the grounds that the term "Decision" was vague and

25  compound, that the RFAs otherwise were unintelligible, argumentative, and "vague as to time,"

26  and that the RFAs addressing any consultations made with Defendants Halverson or Youngblood

27  "assumes facts."  (Doc. 178-7).  In opposing Plaintiff's motion to compel, Defendant merely

28  reiterates the same objections without further explanation or elaboration.

All of Defendant's objections to RFAs 17 through 24 are overruled because the RFAs are neither vague, compound, unintelligible, or argumentative.  Although decision-making processes are variable, sometimes involving a single decisionmaker and sometimes involving a committee, Plaintiff's RFAs directed towards Defendants' decision(s) to destroy excess amounts of cannabis consistent with the terms of the search warrant are sufficiently direct and discrete to facilitate responses no matter what decision-making model Defendants' employed.  *See Marti v. Baires*, No. 1:08-cv-00653-AWI-SKO PC, 2012 WL 2029720, at *5 (E.D. Cal. June 5, 2012) (disagreeing that challenged interrogatory was vague, ambiguous, and unintelligible, and noting that "Defendant could have and should have made a reasonable effort to respond.").  Separately, without offering any narrative explanation, merely objecting to an RFA because it purportedly "assumes facts" is improper.  *Taylor v. Cnty. of Calaveras*, No. 1:18-cv-00760-BAM, 2019 WL 6341131, at *4 (E.D. Cal. Nov. 27, 2019).

In short, if Defendant was the single or ultimate decisionmaker, he offers no meritorious reason or argument as to why he is unable to respond to RFAs 17 and 18.  If the decision-making process involved multiple participants, he similarly offers no meritorious reason or argument as to why he is unable to respond to RFAs 19 and 20, or at the least, why he is unable to respond to an alternate wording of the straightforward prompts presented in these RFAs.  *See U.S. ex rel. Englund v. Los Angeles Cnty.*, 235 F.R.D. 675, 684 (E.D. Cal. 2006) ("a party who is unable to agree with the exact wording of the request for admission should agree to an alternate wording or stipulation. When the purpose and significance of a request are reasonably clear, courts do not permit denials based on an overly-technical reading of the request.").  Likewise, Defendant offers no basis for refusing to confirm (or deny) that, if he was involved in the decision-making process, he consulted in connection therewith with either Defendants Halverson or Youngblood.

Accordingly, Defendant's objections are overruled and he will be directed to serve amended responses.

RFAs 30, 32, 34:  these RFAs direct Defendant to admit or deny that he destroyed, or ordered or requested the destruction of, "Crops."  The term "Crops" is defined as "Cannabis sativa L. plants" that were growing on "the Farms," a term to which Defendant objected in

10

response to other RFAs (discussed above).  In addition to his objection to the purportedly compound nature of the term "the Farms," Defendant objected that the RFAs otherwise were unintelligible, argumentative, and compound.  Apart from those objections, Defendant failed to either admit or deny any of the RFAs.  In opposing Plaintiff's motion to compel, Defendant separately argues that the RFAs are confusing because, apart from the inclusion of the Cannabis sativa L. plants in the term "Crops," "the Farms" includes other and related terms such as "Hemp" and "Industrial Hemp."

As with the objections and arguments he raised in connection with RFAs 17-24, Defendant's objections to RFAs 30, 32, and 34 are conclusory and undeveloped by the arguments he presents in opposing Plaintiff's motion to compel.  First, the mere fact that "the Farms" is defined to include more than one plot of land does not render the RFAs objectionable as supposedly compound.  Thus, for instance, if Defendant ordered or requested the destruction of Crops seized during execution of the search warrant on one, but not all, of the locations included in "the Farms," he should agree to an alternate wording of the RFA to make that clear.  *See U.S. ex rel. Englund*, 235 F.R.D. at 684; *see also Pecover v. Electronic Arts, Inc*., No. 08-cv-02820 CW (NC), 2012 WL 12921363, at *4 (N.D. Cal. May 23, 2012) ("Plaintiffs' objection that the requests are 'compound' is unpersuasive, because Rule 36 allows responding parties to 'qualify an answer or deny only a part of a matter' as long as the answer specifies the part admitted and qualifies or denies the rest … Indeed, Rule 36 requires responding parties to 'admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted.'") (citing *Marchand v. Mercy Med. Ctr*., 22 F.3d 933, 936 (9th Cir. 1994)).

Second, the RFAs are not unintelligible or argumentative – either Defendant did, or did not, destroy or order or request the destruction of seized plants.  Nor are the RFAs rendered defective as supposedly confusing merely because they refer to other types of plants (hemp, industrial hemp) in addition to directing a response based on Cannabis sativa L. plants.

Accordingly, Defendant's objections are overruled and he will be directed to serve amended responses.

RFAs 39-40: these RFAs direct Defendant to admit or deny that on or before October 25,

1  2019, he understood there was a difference between Marijuana and Hemp under Federal law.

2  Defendant objected on the grounds of "[a]ssumes facts, seeks information not maintained in the

3  ordinary course of business, overly broad as to time, calls for speculation, compound and

4  conjunctive, unintelligible, vague as to 'federal law.' The defects preclude Defendant from

5  responding."[1]

6          The only objection advanced and argued by Defendant in opposing Plaintiff's motion to

7  compel is vagueness as to the terms "difference" and "federal law" and to the time period "on or

8  before." The vagueness objections to the terms "difference" and "federal law" are meritless in

9  light of the RFA's explicit reference to marijuana and hemp and, hence, overruled. *See Bryant v.*

10  *Armstrong*, 285 F.R.D. 596, 606 (S.D. Cal. 2012) (the party objecting to discovery as vague or

11  ambiguous "should exercise common sense and attribute ordinary definitions to terms in

12  discovery requests.") (citation omitted). *See also Arroyo v. Adams*, No. 1:11–cv–01186–AWI–

13  DLB (PC), 2014 WL 109494, at *2-3 (E.D. Cal. Jan. 10, 2014) (overruling defendants' vagueness

14  objection to RFA seeking admission that defendants "were familiar with both state and federal

15  law prohibiting unreasonable searches and seizures"). Defendant's argument concerning the

16  relevance of the RFA is disregarded given that Defendant did not interpose an objection based on

17  relevance in its discovery response. *See* Fed. R. Civ. P. 36(a)(3) & (5); *Friedman v. Live Nation*

18  *Merchandise, Inc.*, 833 F.3d 1180, 1185 n.2 (9th Cir. 2016) (finding belatedly asserted objection

19  to RFA waived). Defendant's vagueness objection to the time period is sustained.

20          Accordingly, Defendant will be directed to serve an amended response narrowed to the

21  time period of October 25, 2019, immediately prior to the execution of the search warrant.

22          RFAs 41-42: these RFAs require Defendant to admit or deny that on or before October 25,

23  2019, he understood there was a difference between Cannabis and Industrial Hemp under

24  California law.

25          Despite Defendant's objection that the RFA requires speculation, the Court notes that

26

27          [1] As noted in the introduction to this order, Defendant's "assumes facts" objections and

28  answers that purported "defects" within RFAs preclude him from responding are improper under
   Rule 36.

12

Defendant attested in the search warrant affidavit that he knew that cannabis and industrial hemp were defined differently under California Law.  (Doc. 88-3 at 6-7).  Notwithstanding that this particular objection is meritless, Defendant's vagueness objection to the time period is sustained.

Accordingly, Defendant will be directed to serve an amended response narrowed to the time period of October 25, 2019, immediately prior to the execution of the search warrant.

RFAs 43-48:  Defendant advances no unique objections as to these remaining RFAs, and, thus, for the reasons set forth above, the objections are overruled and Defendant will be directed to serve an amended response.

**D.  RFAs to Defendants Youngblood and KCSO**

In large measure, the Court's consideration and resolution of the discovery disputes arising from Defendant Nicholson's responses to RFAs (set forth above) applies equally to the related disputes concerning Defendant Youngblood and Defendant KCSO's responses to the same or similar RFAs.  Thus, for example, the Court's rejection of Defendant Nicholson's refusal in his RFA responses to either admit, deny, or "state in detail" why he can do neither (as required under Rule 36(a)(4)), applies to Defendant Youngblood and Defendant KCSO's similarly noncompliant RFA responses.  Likewise, objections asserted in response to Plaintiff's RFAs tethered to complaints about the terms "Farms," "Samples," and "the Decision" are meritless for the reasons the Court articulated in addressing these issues arising from Defendant Nicholson's RFA responses.

Accordingly, the Court will direct Defendant Youngblood and Defendant KCSO to serve amended responses to the RFAs that account for the Court's rulings set forth above.

**E.  Interrogatories Seeking Facts Relied Upon For all RFAs not Unqualifiedly Admitted**

Plaintiff served a single interrogatory on each of the Defendants requiring that Defendant, for each RFA to which he/it responded with anything besides an unqualified admission, to state for each such RFA all facts on which he/it relied in responding.  Although Defendants asserted various objections in response to these interrogatories, they argue in opposition to Plaintiff's motion to compel only that each substantive response correlating to an RFA to which he/it did not

1    answer with an unqualified admission should count as a separate interrogatory against Plaintiff's

2    25-interrogatory limit under Rule 33.

3        One prevailing approach adopted by district courts in answering the question presented

4    here is, where discrete RFAs relate to the same or similar subject, an interrogatory seeking facts

5    on which the responding party relied for that group of RFAs should count as a single

6    interrogatory against the 25-interrogatory limit.  *See* (Doc. 178 at 73-77) (citing inter alia *Safeco*

7    *of Am. v. Rawstron*, 181 F.R.D. 441 (C.D. Cal. 1998).  In *Rawstron*, the court reviewed the notes

8    of the Advisory Committee to the Federal Rules of Civil Procedure, commentary by Charles A.

9    Wright, in- and out-of-Circuit caselaw, and the general purposes of civil discovery.  Defendant

10   characterizes *Rawstron* as "finding that an interrogatory seeking to explain denial of admissions is

11   improper and/or should be counted as separate requests because 'efforts to use other devices such

12   as requests for admissions to circumvent the limitation on number of interrogatories should not be

13   sustained.'"  (Doc. 178 at 71).  But that overstates the court's holding.  In *Rawstron*, the

14   propounding party sought by its interrogatories all facts supporting the responding party's denials

15   of wide-ranging allegations pled by the plaintiff.  Although the court denied the propounding

16   party's motion to compel, it acknowledged that answering the question presented here requires

17   examining whether the subparts (*i.e.*, the discrete RFAs to which the interrogatories are directed)

18   are "'logically or factually subsumed within and necessarily related to the primary question.'"  *Id.*

19   at 445 (quoting *Ginn v. Gemini Inc.*, 137 F.R.D. 320, 322 (D. Nev. 1991)).

20       Here, as set forth above in addressing the parties' disputes concerning Defendant's

21   responses to Plaintiff's RFAs, the Court agrees that the RFAs are amenable to grouping based on

22   the similarity of the topics presented therein.  Further, the Court agrees with the RFA grouping

23   Plaintiff proposes in support of its motion to compel for purposes of counting interrogatories.  *See*

24   (Doc. 178-16).  Under Plaintiff's proposal, for instance, Defendant Nicholson's response to

25   Interrogatory No. 2 prompted by his denial or partial denial of any of RFAs 1-6 would count as a

26   single interrogatory.  Likewise, Defendant KCSO's response to Interrogatory No. 9 prompted by

27   its denial or partial denial of any of RFAs 18-23 would count as a single interrogatory.

28       Because all Defendants will be directed to serve amended responses to Plaintiff's RFAs, it

remains unclear how and the extent to which the respective interrogatories seeking information concerning any Defendant's outright or partial denial of any RFA will operate. To the extent Defendants' amended responses contain any that are not an unqualified admission, they Defendants shall respond to the respective interrogatory seeking facts relied upon for the denial or partial denial.

**Conclusion and Order**

For the reasons set forth above, within 14 days of entry of this order:

1. Defendant KCSO shall either (1) confirm in an amended response to Plaintiff's Request for Production No. 11 that the version of policy A-0500 already produced was in effect in October 2019, or (2) produce the version of policy A-0500 that was in effect in October 2019.

2. Defendants Nicholson and Youngblood shall serve amended responses to Plaintiff's Interrogatory No. 1, as directed above.

3. Defendants Nicholson, Youngblood, and KCSO shall serve amended responses to Plaintiff's RFAs, as directed above.

4. Defendants Nicholson, Youngblood, and KCSO shall serve amended responses to Plaintiff's interrogatories seeking the principal or material facts relied upon in denying or partially denying Plaintiff's RFAs, to count against the 25-interrogatory limit consistent with Plaintiff's proposed RFA/Interrogatory matrix (Doc. 178-16), as directed above.

IT IS SO ORDERED.

Dated:  **August 1, 2025**     _____

UNITED STATES MAGISTRATE JUDGE