Marc M. Seltzer (54534)
Bryan Caforio (261265)
Oleg Elkhunovich (269238)
Jesse-Justin Cuevas (307611)
Julian Schneider (347246)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
mseltzer@susmangodfrey.com
bcaforio@susmangodfrey.com
oelkunovich@susmangodfrey.com
jcuevas@susmangodfrey.com
jschneider@susmangodfrey.com
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiff Apothio, LLC*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APOTHIO, LLC,<br><br>             Plaintiff,<br><br>vs.<br><br>KERN COUNTY; KERN COUNTY SHERIFF'S OFFICE; CALIFORNIA DEPARTMENT OF FISH AND WILDLIFE; DONNY YOUNGBLOOD; JOSHUA NICHOLSON; ANDREW HALVERSON, and CHARLTON H. BONHAM,<br><br>             Defendants. | Case No. 1:20-cv-00522-JLT-CDB<br><br>*Assigned to the Hon. Jennifer L. Thurston*<br><br>**PLAINTIFF APOTHIO, LLC'S MOTION FOR RECONSIDERATION AND LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Date:    November 7, 2025<br>Time:   9:00 a.m.<br>Place:   Courtroom 4, 7th floor<br>             Robert E. Coyle U.S. Courthouse<br>             2500 Tulare Street<br>             Fresno, CA  93721<br><br>Complaint Filed April 10, 2020<br>1st Amd Complaint Filed: May 25, 2022<br>Trial Date: September 9, 2026<br><br>Jury Trial Demanded<br>Oral Argument Requested |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, before U.S. District Judge Jennifer L. Thurston on November 7, 2025, at 9:00 a.m. at Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, CA 93721, Plaintiff Apothio, LLC ("Plaintiff" or "Apothio") will move the Court, pursuant to Federal Rules of Civil Procedure 15, 16, and 54, Civil Local Rules 137(c), 220, and 230, and the Court's Orders, *see* Scheduling Order (Oct. 16, 2024), ECF 147; Order Granting Parties' Stipulated Request to Amend Case Management Dates (June 2, 2025), ECF 166; Order Granting Parties' Second Stipulated Request to Amend Case Management Dates (July 9, 2025), ECF 179, for an order reconsidering the Court's Order denying leave to amend regarding Plaintiff's judicial deception and *Monell* failure to train and custom or policy claims, *see* Order Granting in Part and Denying in Part Motions to Dismiss, ECF 133 at 65–66, and granting Plaintiff leave to file its proposed Second Amended Complaint, *see* Ex. A (Proposed Second Amended Complaint), Ex. B (Redline Against First Amended Complaint). Plaintiff futher requests oral argument as to this motion.

On September 17, 2025, counsel for Plaintiff contacted counsel for Defendants Kern County (the "County"), Kern County Sheriff's Office ("KCSO"), Donny Youngblood, and Joshua Nicholson (collectively, "County Defendants") and counsel for Defendants California Department of Fish and Wildlife ("CDFW") and Andrew Halverson (collectively, "State Defendants," and together with County Defendants, "Defendants") to inform them of Plaintiff's intention to seek leave to file a Second Amended Complaint to add a judicial deception claim, a *Monell* policy or custom claim, and a *Monell* failure to train claim based on newly discovered evidence from the depositions of Defendants Nicholson and Halverson. Counsel for Plaintiff requested meet and confer on either September 18 or September 19, 2025. However, counsel for State Defendants represented that they were unavailable, and counsel for County Defendants requested a copy of the proposed amendment before any conference. Plaintiff then requested that the parties meet and confer on September 25, 2025, and provided a copy of the proposed amended pleading to all defense counsel on September 24, 2025, in advance of that proposed conference. On September 25, 2025, Defendants represented that they were not prepared to meet and confer and

1  would not be prepared to meet and confer until the week of September 29, 2025. Plaintiff requested
2  Defendants' earliest availability for a conference, and Defendants stated their earliest availability
3  was October 2, 2025.

4        The parties finally met and conferred on October 2, 2025—one day before Plaintiff filed
5  this motion. During that conference, counsel for both parties stated that they would oppose any
6  amendment. The parties declared an impasse as to this dispute.

7

8  Dated: October 3, 2025           SUSMAN GODFREY L.L.P.

9

10

11  By _____
    Marc M. Seltzer
12      Bryan Caforio
    Oleg Elkhunovich
13      Jesse-Justin Cuevas
    Julian Schneider
14      SUSMAN GODFREY L.L.P.
    1900 Avenue of the Stars, Suite 1400
15      Los Angeles, CA 90067
    mseltzer@susmangodfrey.com
16      bcaforio@susmangodfrey.com
    oelkunovich@susmangodfrey.com
17      jcuevas@susmangodfrey.com
    jschneider@susmangodfrey.com
18      Telephone: (310) 789-3100
    Facsimile: (310) 789-3150

19      *Attorneys for Plaintiff Apothio, LLC*

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

**I.    INTRODUCTION**.................................................................................................. 1

3

**II.    RELEVANT PROCEDURAL HISTORY**.......................................................... 5

4

**III.    STATEMENT OF FACTS**................................................................................. 7

5

A.    Federal and California Law Distinguish Marijuana from Hemp. ........................ 7

6

B.    Defendants Report False and Misleading Information to the Court to Obtain a Warrant and Destroy Plaintiff's Hemp Crops. ......................................................................... 8

7

8

C.    County Defendants' Unconstitutional Conduct Is Attributable in Part to KCSO's Standard Operating Procedures. ......................................................................................... 9

9

D.    County Defendants' Unconstitutional Conduct Is Attributable in Part to KCSO's Failure to Train Its Officers. ...................................................................................... 10

10

11

E.    Defendants Continued Advancing Misleading Factual Arguments to This Court to Justify Dismissal of Plaintiff's Original Claims. ....................................................... 10

12

**IV.    NEW EVIDENCE JUSTIFIES RECONSIDERATION OF PRIOR DISMISSAL WITHOUT LEAVE TO AMEND.** ....................................................................... 12

13

14

A.    Courts Regularly Reconsider Interlocutory Orders in Light of Newly Discovered Evidence. ....................................................................................... 12

15

B.    Plaintiff Diligently Pursued Test Results and Deposition Testimony on Which this Motion Is Based. ....................................................................................... 13

16

17

C.    The Previously Withheld Test Results and Deposition Testimony Justify a Different Outcome for Plaintiff's Claims. .................................................................... 15

18

    1.    Judicial Deception ......................................................................... 15

19

    2.    Monell Custom or Policy ............................................................ 17

20

    3.    Monell Claim – Failure to Train ................................................... 17

21

**V.    PLAINTIFF'S AMENDMENT IS WARRANTED UNDER RULE 16**.................... 18

22

A.    Rule 16 Permits Amendment for Good Cause. .................................................. 18

23

B.    Good Cause Exists to Amend the Scheduling Order. ........................................ 19

24

C.    No Prejudice Will Result from Amendment. .................................................... 21

25

**VI.    PLAINTIFF'S AMENDMENT IS WARRANTED UNDER RULE 15**.................... 22

26

A.    Rule 15 Embodies a Liberal Policy of Amendment. ......................................... 22

27

B.    All Factors Favor Granting Plaintiff Leave to File the Amended Complaint................... 23

28

    1.    Plaintiff Did Not Act in Bad Faith. ............................................... 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2.    Delay, Prejudice, and Futility Weigh in Favor of Amendment. **...................................** 23

3.    Plaintiff Has Amended Its Complaint Only Once Before.**...............................** 25

**VII.    CONCLUSION** ........................................................................................... **25**

Plaintiff's Motion for Reconsideration and Leave to File Second Amended Complaint
Case No. 1:20-cv-00522-JLT-CDB

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agro Dynamics, LLC v. United States* ........................................................................... 20

*AK Futures LLC v. Boyd St. Distro, LLC,*
    35 F.4th 682 (9th Cir. 2022)................................................................................. 8, 18

*Benavidez v. County of San Diego,*
    993 F.3d 1134 (9th Cir. 2021).................................................................................. 17

*Benchmark Young Adult Sch., Inc. v. Launchworks Life Servs., LLC,*
    2014 WL 3014720 (S.D. Cal. July 3, 2014) ..................................... 21, 24, 27, 28

*Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.,*
    833 F.2d 208 (9th Cir. 1987).................................................................................. 17

*David v. Kaulukukui,*
    38 F.4th 792 (9th Cir. 2022)................................................................................... 17

*Davis v. Mut. of Omaha Ins. Co.,*
    2023 WL 5095050 (E.D. Cal. Aug. 9, 2023) ...................................................... 25

*DCD Programs, Ltd. v. Leighton,*
    833 F.2d 183 (9th Cir. 1987)....................................................................... 25, 26, 27

*DeMaria v. Yolo County Sheriff's Off.,*
    2024 WL 3821876 (E.D. Cal. Aug. 14, 2024) ............................................... 17, 18

*Eminence Cap., LLC v. Aspeon, Inc.,*
    316 F.3d 1048 (9th Cir. 2003)................................................................................ 26

*Entangled Media, LLC v. Dropbox Inc.,*
    348 F.R.D. 649 (N.D. Cal. 2025)................................................................... 23, 28

*Feature Realty, Inc. v. City of Spokane,*
    331 F.3d 1082 (9th Cir. 2003)................................................................................ 14

*Foman v. Davis,*
    371 U.S. 178 (1962)................................................................................................ 28

*Free Spirit Organics, NAC v. San Joaquin Cnty. Bd. of Supervisors,*
    2022 WL 902834 (E.D. Cal. Mar. 25, 2022) ........................................................ 8

*Genentech, Inc v. Abbott Laboratories,*
    127 F.R.D. 529 (N.D. Cal. 1989)........................................................................... 25

Plaintiff's Motion for Reconsideration and Leave to File Second Amended Complaint
Case No. 1:20-cv-00522-JLT-CDB

*Herrera v. County of San Benito*,
  2025 WL 2323350 (N.D. Cal. Aug. 11, 2025).............................................................*passim*

*Hinton v. Pac. Enters.*,
  5 F.3d 391 (9th Cir. 1993).......................................................................................... 13

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2014 WL 2581581 (N.D. Cal. June 9, 2014) ................................................................ 13

*In re Silver Wheaton Corp. Sec. Litig.*,
  2018 WL 1517130 (C.D. Cal. Mar. 26, 2018) ...................................................*passim*

*In re W. States Wholesale Nat'l Gas Antitrust Litig.*,
  715 F.3d 716 (9th Cir. 2013)...................................................................................... 25

*Jackson v. Bank of Haw.*,
  902 F.2d 1385 (9th Cir. 1990)..................................................................................... 26

*Jackson v. Laureate, Inc.*,
  186 F.R.D. 605 (E.D. Cal. 1999) ................................................................................ 21

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992)................................................................................ 21, 25

*Morongo Band of Mission Indians v. Rose*,
  893 F.2d 1074 (9th Cir. 1990)..................................................................................... 25

*Pizana v. SanMedica Int'l LLC*,
  345 F.R.D. 469 (E.D. Cal. 2022) ....................................................... 23, 26, 27, 28

*SAES Getters S.p.A. v. Aeronex, Inc.*,
  219 F. Supp. 2d 1081 (S.D. Cal. 2002) ...................................................................... 27

*Scanlon v. County of Los Angeles*,
  92 F.4th 781 (9th Cir. 2024)................................................................................. 17, 19

*Schmitz v. A. Asman*,
  2021 WL 3362811 (E.D. Cal. Aug. 3, 2021) ...................................................... 13, 14, 17

*Thompson v. George DeLallo Co., Inc.*,
  2013 WL 211204 (E.D. Cal. Jan. 16, 2013)...................................................... 23, 25

*Vanegas v. City of Pasadena*,
  46 F.4th 1159 (9th Cir. 2022)..................................................................................... 20

*Wallis v. J.R. Simplot Co.*,
  26 F.3d 885 (9th Cir. 1994)....................................................................................... 14

*Whitney v. Wurtz*,
  2006 WL 1310462 (N.D. Cal. May 12, 2006) ......................................................... 14

*Willis v. Mullins,*
    809 F. Supp. 2d 1227 (E.D. Cal. 2011)..................................................................... 13

**Statutes**

7 U.S.C. § 1639*o* ..................................................................................................................... 8

Cal. Health & Safety Code § 11018.5 ....................................................................................... 8

Farm Act, Pub. L. No. 115-334, 132 Stat. 4490 ....................................................................... 8

**Rules**

Fed. R. Civ. P. 15 ............................................................................................................... *passim*

Fed. R. Civ. P. 16 ............................................................................................................... *passim*

Fed. R. Civ. P. 30 ..................................................................................................................... 6

Fed. R. Civ. P. 54 ...................................................................................................... ii, 13, 28

Fed. R. Civ. P. 59 ................................................................................................................... 13

Fed. R. Civ. P. 60 ................................................................................................................... 14

L.R. 137(c) .............................................................................................................................. ii

L.R. 220 ................................................................................................................................... ii

L.R. 230 .............................................................................................................................. ii, 14

**Regulations**

3 C.C.R. § 4890 ....................................................................................................................... 4

Plaintiff's Motion for Reconsideration and Leave to File Second Amended Complaint
Case No. 1:20-cv-00522-JLT-CDB

**MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION AND LEAVE TO FILE SECOND AMENDED COMPLAINT**

## I.    INTRODUCTION

Federal and California law draw a bright line distinction between hemp and marijuana at 0.3% delta-9 tetrahydrocannabinol ("delta-9 THC"): anything over 0.3% is marijuana, while anything under 0.3% is hemp. ECF 133 (Order Granting in Part and Denying in Part Mots. Dismiss, Aug. 21, 2024) at 3–4. For the past five and a half years, Plaintiff and this Court have accepted— and had no reason to doubt—an essential argument presented as a fact by Defendants in this lawsuit: "that of the 35 samples tested by law enforcement, only six yielded THC results that were below .3% [and that t]he average THC level of the samples taken from every field was greater than .3%." *Id.* at 11. This claimed fact was central to Defendants' motions to dismiss Plaintiff's First Amended Complaint, *see, e.g.*, ECF 94-1 (State Defs' Mot. Dismiss) at 8; ECF 95 (County Defs' Mot. Dismiss) at 8, and this Court relied on Defendants' representations when it dismissed Plaintiff's judicial deception claim, ECF 133 at 19–45. But on September 10, 2025, Plaintiff discovered that Defendants' repeated representations about the test results were ***utterly false***. In fact, Defendants' own testing unequivocally confirmed the legality of Apothio's industrial hemp operation.

In total, Defendant Halverson conducted ***48*** different tests of Apothio's samples:

- 31 of those tests had ***no detectable*** delta-9 THC whatsoever;
- 13 tests were within the testing margin for being below the 0.3% legal limit;
- 1 test was accompanied by an error message; and
- ***only 3***, or about 6%, of the ostensibly valid tests were outside the margin of error.

For years, Defendants represented to Plaintiff and this Court that the test results were different than they were, and forced Plaintiff to file a motion to compel to depose the person most knowledgeable about the actual test results once they were finally produced. This newly discovered, undisputed evidence has caused a seismic change for this lawsuit, and justice requires permitting Apothio to amend its complaint to conform its claims and allegations to the actual evidence finally produced by Defendants in the final weeks of fact discovery. Reconsideration of the Court's interlocutory dismissal order and leave to file the proposed amended complaint are thus appropriate.

In the last 16 days of fact discovery, Plaintiff obtained additional evidence from Defendants that further materially alters this action. First, Plaintiff and this Court were led to believe that the events underlying this lawsuit were at most an isolated instance of unconstitutional destruction. Plaintiff alleged that Defendants needlessly destroyed Plaintiff's hemp crops and did not follow the search warrant's plain terms. The Court denied Defendants' motions to dismiss this excessive destruction claim, ECF 133 at 47–48, but it granted County Defendants' motion to dismiss the related *Monell* custom or policy claim because the Court found no plausible allegations that excessive destruction was routine, *id.* at 62. However, during depositions on and between September 10 and September 18, 2025, Defendants admitted for the first time that the conduct at issue is KCSO's "***standard operating procedure***." KCSO conceded that as a matter of course it routinely destroys Cannabis sativa L. fields after obtaining a warrant without conducting any testing or engaging in further inquiry. In fact, Defendant Nicholson confirmed that over the course of his entire career in all situations but one he has "carried out the eradication of the full field after getting a warrant." Ex. C (Nicholson Dep.) at 256:15–16. When asked how many times he eradicated a full field without testing, he replied: "I couldn't even venture a guess. It's hundreds, thousands. Whole lot." *Id.* at 256:21–22.

Second, because Plaintiff and this Court were led to believe that the events underlying this lawsuit were only a "single incident," the Court dismissed Plaintiff's *Monell* failure to train claim. ECF 133 at 59. However, during the September depositions, Plaintiff discovered that KCSO ***did not*** in fact train its officers in how to distinguish industrial hemp from cannabis as of October 2019.

The course of conduct at issue in this lawsuit is well known to the Court. This suit involves Defendants' wholesale destruction of 512 acres of Plaintiff's industrial hemp crops in October 2019. This destruction was predicated on a probable cause affidavit presented by KCSO's then-Sergeant Joshua Nicholson where he claimed to describe 36 test results. Those test results— stemming from an earlier search warrant obtained by CDFW's then-Lieutenant Andrew Halverson—purportedly found that 29 of the 36 samples contained more than 0.3% delta-9 THC, *i.e.*, more than 80% of the samples exceeded this threshold. As noted above, a sharp line between hemp and marijuana is drawn at 0.3% delta-9 THC. This line makes sense because delta-9 THC is

the primary psychoactive component of the plant. As Nicholson testified in his deposition, "delta-9 THC" and "THC" are synonyms because they refer to the part of the Cannabis sativa L. plant "that gets you high." Ex. C (Nicholson Dep.) at 21:7–23:9.

Plaintiff's Complaint advanced several theories of liability. But Plaintiff did not allege, because it did not know, that Defendants falsely reported test results to the magistrate when Defendants sought and obtained a search warrant. Similarly, Plaintiff did not know that County Defendants' standard operating procedure was to eradicate entire fields of hemp without further testing or inquiry, thereby ignoring the plain text of the applicable warrants. Nor could Plaintiff allege specific facts demonstrating that KCSO failed to train its officers in how to distinguish hemp from marijuana because discovery had not yet commenced.

But during very recent depositions, Plaintiff discovered new, undisputed evidence supporting all three theories of liability for claims that were dismissed by the Court. *See* ECF 133 at 19–45 (dismissing judicial deception claim), 61–62 (dismissing *Monell* custom or policy theory), 58–60 (dismissing *Monell* failure to train theory). In the September 10 deposition of Defendant Nicholson, Plaintiff learned that after conferring together, Defendants Halverson and Nicholson agreed to falsely and misleadingly report 35 "test results" to the Court in Nicholson's affidavit of probable cause. Despite Nicholson's knowledge that applicable law distinguished hemp from marijuana based on the concentration of delta-9 THC, Ex. C (Nicholson Dep.) at 21:7–24:22, and despite Nicholson's possession of the 48 test results for the delta-9 THC concentration of Apothio's crop samples, Ex. D (Nicholson Dep. Ex. 3), Nicholson ***did not*** report those results to the Court, Ex. C (Nicholson Dep.) at 214:5–219:20, 222:19–237:14. Instead, without informing the magistrate, he reported the samples' "Potential THC"—a metric that includes tetrahydrocannabinol-acid ("THCA"), a ***nonpsychoactive*** substance that was neither prohibited by law nor included in the statutory distinction between hemp and marijuana in October 2019. *Id.*

In fact, ***the majority*** of the test results detected ***no delta-9 THC whatsoever***, *id.* at 149:5–150:4, and, as a result, demonstrated that the samples were hemp and thus that there was no probable cause for Nicholson's claim that Apothio intended to sell marijuana. Furthermore, Plaintiff discovered that Nicholson has obtained ***hundreds or thousands*** of search warrants to seize

Cannabis sativa L. fields, **and every time but one** he has destroyed all plants without testing or further inquiry pursuant to KCSO's "standard operating procedure." *Id.* at 93:13–97:2; 255:12–22. Plaintiff also learned that, as of October 2019, KCSO failed to train its officers in how to distinguish hemp from marijuana, *see id.* at 30:16–33:12, 38:19–39:14, 40:17–23, 49:5–49:18, which was confirmed during the September 18 depositions of Detective Juarez and Sergeant Maokosy, *see* Ex. E (Juarez Dep.) at 19:6–22:13, 26:1–31:8 Ex. F (Maokosy Dep.) at 14:24–22:3, 24:7–20, 28:23–32:13.

The September 16 deposition of Defendant Halverson compounded the evidence of wrongdoing elicited during Nicholson's deposition. In a patently baseless attempt to explain away the false nature of the test results described in Nicholson's probable cause affidavit, Halverson testified that THCA must be "factor[ed]" in to distinguish hemp from marijuana, but Halverson could identify **no law** in effect in 2019 that included THCA in the definitions for hemp or marijuana. Ex. G (Halverson Dep.) at 38:10–44:15. In attempting to do so, Halverson testified that in October **2019** he relied on a California regulation that was first enacted in **2022**. *Id.*; *see generally* 3 C.C.R. § 4890. Further, Defendants have repeatedly taken the position that California's regulatory framework did not apply to Plaintiff's fields because Plaintiff was an established agricultural research institution ("EARI")—a position with which the Court agreed, *see, e.g.*, ECF 133 at 31, 41–42. Halverson also referenced a manual issued by the company that manufactured CDFW's testing devices. Ex. G (Halverson Dep.) at 38:10–44:15. This manual describes how to use the testing machine; it does not purport to describe the applicable law in California or elsewhere. Ex. H (LightLab Manual) at 8–10. In contrast, the law is unambiguous: the difference between marijuana and hemp is the plant's delta-9 THC content. ECF 133 at 3–4. Yet Defendants concealed material information when they agreed to provide false and misleading test results to the magistrate to obtain a search warrant, and Defendants hid these facts from Plaintiff and this Court for the last five years in order to obtain dismissal of Plaintiff's original claims.

This newly discovered, undisputed evidence strongly supports a judicial deception claim against all remaining defendants and a *Monell* claim based on policy or custom and failure to train theories against County Defendants. Plaintiff thus respectfully requests that the Court reconsider

1    its interlocutory order denying leave to amend and grant Plaintiff's motion for leave to file a Second

2    Amended Complaint to conform the allegations and claims to this newly discovered evidence.

3    **II.    RELEVANT PROCEDURAL HISTORY**

4        On April 10, 2020, Plaintiff brought this lawsuit for the destruction of its crops. ECF 1. On

5    November 12, 2020, over Plaintiff's objection, ECF 61, Defendants moved to stay all discovery,

6    ECF 58, which the Court granted, ECF 72. On April 25, 2022, the Court dismissed some of

7    Plaintiff's claims, including as relevant here Plaintiff's judicial deception claim. ECF 86.

8    Importantly, the Court based dismissal in part on the lack of allegations that "contemporaneous

9    testing information made its way" to Nicholson; "that Nicholson lied about the results of the tests

10    he <u>did</u> disclose in his probable cause affidavit"; or "that Nicholson had knowledge of contradictory

11    information." *Id.* at 28 (emphasis in original). The Court further based its ruling on its finding that

12    Plaintiff had not alleged "that Nicholson made 'deliberately false statements or recklessly

13    disregarded the truth' with regard to the THC content of the plants." *Id.*

14        On May 25, 2022, Plaintiff filed its First Amended Complaint. ECF 88. Defendants again

15    moved to stay all discovery, ECF 116, over Plaintiff's objection, ECF 117, which the Court granted,

16    ECF 122. On August 21, 2024, the Court granted in part and denied in part Defendants' motions to

17    dismiss Plaintiff's First Amended Complaint. ECF 133. As relevant here, the Court dismissed

18    Plaintiff's judicial deception claim based on Defendants' claimed test results purportedly

19    demonstrating "half of Apothio's fields contained high-THC, female plants," *id.* at 37, and

20    Plaintiff's *Monell* failure to train and custom or policy theories based on insufficient factual

21    allegations, *id.* at 58–62. On October 16, 2024, the Court held a scheduling conference and issued

22    the schedule the same day. ECF 147 (Scheduling Order). Thereafter, Plaintiff changed counsel with

23    the permission of the Court on November 26, 2024. ECF 154 (Order Granting Substitution).

24        On December 12, 2024, Plaintiff served requests for production and interrogatories. *See*

25    Ex. I (Requests for Production ("RFPs") to KCSO); Ex. J (RFPs to CDFW); Ex. K (RFPs to the

26    County); Ex. L (Interrogatories ("Rogs") to KCSO); Ex. M (Rogs to CDFW). These requests

27    sought Defendants' test results for samples seized from Plaintiff's hemp fields and Defendants'

28    policies on investigating, seizing, storing, testing, and destroying hemp and marijuana. But

Defendants refused to produce the requested documents or answer the interrogatories. CDFW failed to provide *any* timely responses to Plaintiff's interrogatories and, when CDFW eventually served late responses (on Plaintiff's demand), CDFW erroneously claimed that testing "information" was already in Plaintiff's possession, even though the ***actual results*** were not. Ex. N (CDFW Rogs Resps) at 3–4. State Defendants then claimed that a transcript from a ***different action*** about ***different testing*** remedied the issue. Only after numerous meet and confers, and Plaintiff's stated intention to elevate the issue to the Court, did State Defendants agree to provide the actual results. They attached hard-to-read PDFs to amended interrogatory responses on February 12, 2025, but CDFW neither verified the responses nor the documents' accuracy. The native results were not provided until March 13, 2025. County Defendants outright refused to produce ***any*** documents or information. They falsely claimed that test results were available from the ***warrants***. Ex. O (KCSO Rogs Resps) at 3. Only after the Court authorized Plaintiff to file a motion to compel did County Defendants produce their testing spreadsheet on March 31, 2025. ECF 164 (Order, Mar. 18, 2025). As for policies, Defendants stated they had no relevant policies, save for a single general County search warrant policy that Plaintiff obtained only after obtaining a Court order requiring County Defendants to produce it. ECF 181 (Order Granting Pl's Mot. Compel, Aug. 1, 2025).

On March 28, 2025, Plaintiff served notices of deposition ("NODs") under Rule 30(b)(6) to the entity defendants, which set their depositions for May 19, 21, and 23, 2025. Ex. P (NOD to KCSO); Ex. Q (NOD to the County); Ex. R (NOD to CDFW). The NODs sought testimony on Defendants' testing of Apothio's crops and the procedures employed for the investigation of, application for, and execution of search warrants for, and destruction of potentially unlawful marijuana or hemp cultivation. *See, e.g.*, Ex. P at Topics 6, 13–15. On April 4, 2025, counsel for County Defendants disclosed for the first time that he had an upcoming 5-week trial that would render him unavailable and "hinder the progress of discovery." ECF 165-1 (Decl. of Julian Schneider ISO Jt. Stip.) ¶ 16. Counsel for County Defendants was thus unavailable for more than a month, and the Court extended the non-expert discovery deadline. ECF 166 (Order Granting Parties' Req. to Am. Deadlines, June 2, 2025). After numerous discovery disputes in which County Defendants refused to comply with their basic discovery obligations, *see, e.g.*, ECF 163 (Jt. Ltr.

Br.), ECF 170 (Jt. Ltr. Br.), 174 (Mot. Compel), 178 (Jt. Stmt.), and in light of purported conflicts with *defense* counsels' and *defense* witnesses' vacation schedules, the Court extended non-expert discovery again on July 9, 2025, ECF 179 (Order Granting Parties' Req. to Am. Deadlines).

Nonetheless, Defendants ***still*** refused to engage forthrightly in discovery. They ignored Plaintiff's numerous emails requesting dates to schedule depositions. Ex. S (June–July 2025 Email Corr.). County Defendants outright refused to produce witnesses in response to Plaintiff's March NODs. Ultimately, Plaintiff successfully moved for an order compelling County Defendants to produce 30(b)(6) witnesses for deposition. ECF 183 (Jt. Ltr. Br.), 185 (Mot. Compel); *see* ECF 189 at 5 (Order Granting Pl's Mot. Compel, Aug. 29, 2025) (finding "Defendants have engaged in sanctionable conduct by refusing to appear for deposition without moving the Court for a protective order" and concluding that this "misconduct [was] aggravated given that their asserted grounds for refusing to appear for deposition are meritless"). After overcoming Defendants' stonewalling of discovery, Plaintiff's ***very first party deposition*** in this case took place on September 10, 2025, during which Plaintiff obtained the evidence it had sought in discovery requests served on December 12, 2024, and March 28, 2025. Plaintiff obtained further evidence during depositions on September 16 and 18. This newly discovered evidence forms the basis for this motion.

## III.    STATEMENT OF FACTS

### A.    Federal and California Law Distinguish Marijuana from Hemp.

This Court is familiar with the law on cannabis and hemp in effect when Defendants destroyed Plaintiff's hemp crops in October 2019. ECF 133 at 1–5 (detailing federal and state law). In December 2018, Congress amended the Farm Act, Pub. L. No. 115-334, 132 Stat. 4490 to "legalize[] the possession and cultivation of hemp." ECF 133 at 2. Congress drew a line between marijuana and hemp based on whether the plant Cannabis sativa L. had "a delta-9 [THC] concentration of not more than 0.3 percent on a dry weight basis." *Id.* at 3 (quoting 7 U.S.C. § 1639*o*(1)). As the Ninth Circuit has explained, federal law "yields a definition of hemp applicable to all products that are sourced from the cannabis plant [and] contain ***no more than 0.3 percent delta-9 THC.***" *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 690 (9th Cir. 2022) (emphasis added). "Importantly, the ***only*** statutory metric for distinguishing controlled marijuana

from legal hemp is ***the delta-9 THC concentration level***." *Id.* (emphasis added). For this reason, the Ninth Circuit held that the presence or absence of any cannabinoid other than delta-9 THC does not remove the plant or product from the legal hemp category. *Id.* at 691.

"California and federal law 'define 'industrial hemp' in a consistent manner.'" ECF 133 at 3–4 (quoting *Free Spirit Organics, NAC v. San Joaquin Cnty. Bd. of Supervisors*, 2022 WL 902834, at *1 (E.D. Cal. Mar. 25, 2022)). Under the California Health and Safety Code, "'industrial hemp' is presently defined as 'an agricultural product, whether growing or not, that is limited to types of the plant Cannabis sativa L. and any part of that plant . . . with ***a delta-9 [THC] concentration*** of no more than 0.3 percent on a dry weight basis.'" ECF 133 at 3 (quoting Cal. Health & Safety Code § 11018.5(a)). As a result, in October 2019, the litmus test for whether Plaintiff's crops were hemp was whether the delta-9 THC concentration in the crops on a dry weight basis was under 0.3%.

> **B.** **Defendants Report False and Misleading Information to the Court to Obtain a Warrant and Destroy Plaintiff's Hemp Crops.**

New evidence uncovered by Plaintiff beginning on September 10, 2025, demonstrates that Defendants knowingly and recklessly made materially false and misleading statements to obtain a search warrant for Apothio's hemp fields. Nicholson testified that "delta-9 tetrahydrocannabinol" was the substance prohibited in amounts over 0.3 percent in October 2019; he further testified that the concentration of "delta-9 tetrahydrocannabinol" is what distinguished marijuana from hemp in October 2019. Ex. C (Nicholson Dep.) at 21:7–24:2. But Nicholson ***did not*** report the delta-9 THC results in his possession to the court. Instead, Nicholson represented to the court that "D9THC is the THC inside of cannabis which is an intoxicant and gets you 'high' and will be referred to in this warrant as THC," ECF 88-3 at 8, but then falsely provided the "Potential THC" numbers" to the court, *id.* at 214:5–219:20, 222:19–237:14, even though he admittedly never knew what "Potential THC" was, *id.* at 33:3–14. When confronted with his false statements about the test results he provided, Nicholson claimed he simply reported the numbers Halverson told him to report because Nicholson purportedly did not understand what any of the results meant. *Id.* at 59:15–60:4, 106:7–107:17, 129:3–13, 154:11–17, 157:4–158:13, 237:25–239:17. ***Both*** Nicholson and Halverson had in their possession the full test results from the samples, which demonstrated that the vast majority of the tests did not detect ***any*** delta-9 THC. Ex. D (results produced by KCSO); Ex. T (Nicholson

1  Dep. Ex. 4) (results produced by CDFW). Indeed, for one farm, where Defendants ultimately

2  eradicated 892,975 completely legal hemp plants, ***every single test result*** detected no delta-9 THC

3  whatsoever. Ex. T (Nicholson Dep. Ex. 4) at 3 (Vandborg 71H).

4        Nicholson's search warrant affidavit stated that "D9THC . . . will be referred to in this

5  warrant as THC," but he reported an average "THC" level for each field that was ***not*** the average

6  delta-9 THC level for any field. ECF 88-3 at 8. Nicholson further falsely averred that "[a]fter

7  looking over the results of the samples we took, I noticed of the 36 samples taken, six samples were

8  within the 0.3% THC content for hemp, one was unable to be tested likely do to pesticides or other

9  contaminations, and the remainder of the samples tested between 0.67% to 7.3% ***thus making the***

10  ***majority of the samples taken cannabis***." *Id.* at 10 (emphasis added). In reality, the test results in

11  Nicholson's possession demonstrated that 31 of 48 tests found ***no*** detectable delta-9 THC, 13 tests

12  were within the margin of error for qualifying as legal hemp, 1 test (Stenderup 21029 #4) had a

13  "marginal result confidence" that the manual Halverson relied on stated "should not be trusted,"

14  Ex. H (LightLab Manual) at 131, and ***only 3*** out of 48 tests, or 6%, could have potentially qualified

15  as marijuana or cannabis.

16        **C.**    **County Defendants' Unconstitutional Conduct Is Attributable in Part to**
              **KCSO's Standard Operating Procedures.**

17        Newly produced evidence demonstrates that Nicholson's misconduct is attributable in part

18  to a KCSO custom or policy. Specifically, Nicholson testified that KCSO's "standard operating

19  procedure" was to eradicate Cannabis sativa L. fields without any testing or making further inquiry

20  after obtaining any warrant to seize the fields, Ex. C (Nicholson Dep.) at 93:13–94:9, 96:8–97:2,

21  256:6–9, which Nicholson did "hundreds, thousands" of times, *id.* at 256:22. Nicholson explained

22  that there is no situation in which he would send plant samples to the County's crime lab to test it

23  for delta-9 THC, *id.* at 54:5–10, because KCSO's standard operating procedure is to ***not test*** the

24  plants before eradication, *id.* at 94:3–9. Nicholson admittedly eradicated Plaintiff's crops pursuant

25  to KCSO's standard operating procedure. *Id.* at 309:12–20. Moreover, after destroying Plaintiff's

26  crops in October 2019, Nicholson wrote ***the*** narcotics manual for KCSO, cementing in place

27  KCSO's unconstitutional policy for the eradication of Cannabis sativa L. fields without testing. *Id.*

28  at 311:7–314:25.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D.    County Defendants' Unconstitutional Conduct Is Attributable in Part to KCSO's Failure to Train Its Officers.**

New evidence also establishes that Defendants' misconduct was consistent with KCSO's failure to train its officers in what classifies a Cannabis sativa L. plant as either hemp or marijuana. Nicholson testified that KCSO's training on hemp and marijuana was "just geared towards THC in general," and that KCSO did not train him on THCA or Potential THC. Ex. C (Nicholson Dep.) at 31:8–9; *see id.* at 30:16–33:14. Juarez testified that in October 2019, his narcotics assignment covered "[e]verything that did involve narcotics investigations," yet he could not recall any training on the differences between hemp and marijuana because he just "identified marijuana as 'marijuana'." Ex. E (Juarez Dep.) at 25:13–14, 27:2. He further testified that in October 2019 he did not know the legal definition of industrial hemp, understanding only that it was used to "mak[e] clothing, stuff like that," and he erroneously understood THCA to be "a higher concentration of THC." *Id.* at 20:8–9, 22:12–13; *see id.* at 18:10–19:15. Maokosy likewise had no understanding in October 2019 about the definitions of "industrial hemp" or "hemp" or how they were different from "marijuana" or "cannabis." Ex. F (Maokosy Dep.) at 20:2–22:3, 24:7–20. He was not trained regarding many aspects of identifying potentially illegal cannabis cultivations—only to identify "illegal cannabis fields" as "anything more than six plants." *Id.* at 30:13–31:12.

**E.    Defendants Continued Advancing Misleading Factual Arguments to This Court to Justify Dismissal of Plaintiff's Original Claims.**

Not only did Defendants submit false test results in Nicholson's probable cause affidavit to the court to obtain the warrant they used to eradicate Apothio's crops, they repeatedly advanced now discredited factual arguments to this Court to justify dismissing Apothio's original claims:

| **Misleading Arguments Advanced by Defendants in Their Motions to Dismiss** | **Newly Discovered Evidence** |
|---|---|
| • "[L]aw enforcement had a good faith reason to believe, based on testing and other information, that Apothio's *cannabis sativa L.* plants were marijuana because they contained over 0.3 percent THC." ECF 21-2 (State Defs' First Mot. Dismiss) at 5.<br><br>• "Halverson's independent testing confirmed that Apothio was cultivating cannabis with greater than 0.3 percent THC." ECF 94-1 | Q.   Okay. And that is the substance, the 'delta-9 psychotropic' you referred to it as, the delta-9 tetrahydrocannabinol that, in October 2019, California law prohibited at levels above 0.3 percent; is that right?<br>A.   Zer - .3, yes.<br>Q.   Yeah. 0.3 percent.<br>A.   Yeah.<br>Q.   Okay. It's that -- that the 'psychotropic' |

(State Defs' Second Mot. Dismiss) at 5.

- "Defendants had the information of an informant *and Halverson's test results verifying the plants exceeded the federal THC limit*." *Id.* at 10 (emphasis added).

- "Prior to the execution of the warrant, these plants tested above the legal limit to be characterized as 'hemp,' and therefore were properly classified as marijuana." ECF 24 (County Defs' First Mot. Dismiss) at 1.

- "Andrew Halverson obtained a warrant to test samples of the crop to corroborate this information; 3) these samples tested well above 0.3% THC, thus making them cannabis; [and] 4) Nicholson then authored a warrant affidavit *with the test results*." *Id.* at 2 (emphasis added).

- "Despite being clouded by the many new allegations in the FAC, probable cause for both Halverson's and Nicholson's warrants was established by 1) the affiants' testing of samples of Apothio's crops, [and] 2) *test results well above 0.3% THC*." ECF 95 (County Defs' Second Mot. Dismiss) at 3 (emphasis added).

- "[M]aterial facts in the affidavit supporting probable cause were that Halverson and Nicholson tested samples of Apothio's crops which indicated it was marijuana and that Apothio intended to sell it." *Id.* at 5.

- "Nicholson's affidavit details the testing done of Apothio's crops pursuant to Halverson's warrant, testing which shows that the majority of the samples were cannabis." *Id.* at 5.

- "Without any allegations that Nicholson had knowledge of contradictory information, . . . the FAC fails to plausibly allege that [he] made 'deliberately false statements or recklessly disregarded the truth' about the THC content of the plants." *Id.* at 8.

- "Plaintiff alleges that KCSO has a broad history of violating constitutional rights (FAC ¶ 292-298), however these are the same

-- Is that what you called it?
A.  The part that gets you high.
Q.  Yeah, that's the that's what the limit was on?
A.  Correct.

Ex. C (Nicholson Dep.) at 22:11–24.

Q.   Okay. Yes. So if -- if a plant had the D9THC content of 0.3 percent of lower, that's industrial hemp?
A.  Yes.

*Id.* at 24:19–22.

Q.  For 'Stenderup 20049 #4', Deposition Exhibit 3 indicates there was 'No detected D9THC'; correct?
A.  Yes.
Q.  And what did you report to the Court in your Statement of Probable Cause regarding 'Stenderup 20049 #4'?
A.  The 'Potential delta-9 of 4.3'

*Id.* at 230:3–12.

Q.   'Stenderup 21149 #4', Deposition Exhibit 3, indicates there was 'No detected delta-9 THC'; correct?
A.  Yes.
Q.  And what did you report in your Statement of Probable Cause for 'Stenderup 21149 #4'?
A.  'Potential delta-9 of 1.8'

*Id.* at 235:5–10.

Q.  You just counted 31 different test results that had no detected delta-9 tetrahydrocannabinol; right?
A.  Correct.

*Id.* 149:5–8.

A.  Yeah, we -- we typically don't get testing of a marijuana field prior to the execution of the Search Warrant.

| | |
|---|---|
| allegations made in the original complaint, which this court found did not adequately plead *Monell* liability, because these allegations do not relate to testing hemp or marijuana for THC content." ECF 95 (County Defs' Second Mot. Dismiss) at 14. | Q.   Okay. Is that the -- your understanding of the policy of the Kern County Sheriff's Office, not to get that testing in advance of effecting the warrant? |
| | …. |
| | A.    It wouldn't be a policy. It's standard operating procedure. |
| • "These allegations fail to plead a *Monell* claim based on custom or unofficial policy. ***There is no allegation of repeated constitutional violations*** prior to Nicholson's allegedly unconstitutional acts that caused Nicholson's acts." *Id.* at 14 (emphasis added). | Ex. C (Nicholson Dep.) at 93:25–94:9. |
| | Q.   Every time other than that one situation you just discussed, you have carried out the eradication of the full field after getting a warrant; is that correct? |
| | A.   Correct. |
| | Q.   Okay. And about how many times is that, would you say, over the course of your career? |
| | A.    I couldn't even venture a guess. It's hundreds, thousands. Whole lot. |
| | *Id.* at 256:14–22. |

## IV.   NEW EVIDENCE JUSTIFIES RECONSIDERATION OF PRIOR DISMISSAL WITHOUT LEAVE TO AMEND.

### A.   Courts Regularly Reconsider Interlocutory Orders in Light of Newly Discovered Evidence.

"[A]ny order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). When a court dismisses claims without leave to amend, plaintiffs seek reconsideration under Rule 54 before seeking leave to re-state those claims.[1] *See, e.g.*, *Schmitz v. A. Asman*, 2021 WL 3362811, at *6–7 (E.D. Cal. Aug. 3, 2021). As this Court has explained, Rule 54(b) does not articulate a standard, and so "courts look to the standards under Rule 59(e) and 60(b) for guidance." ECF 160 at 3 (quoting *Willis v. Mullins*, 809 F. Supp. 2d 1227, 1233 (E.D. Cal. 2011)). "Where the motion rests on newly discovered evidence, the moving party must show that (1) 'the evidence relied on in fact constitutes 'newly discovered evidence' within the meaning of Rule 60(b),' (2) it 'exercised due diligence to discover this

---

[1] Courts sometimes analyze these motions under Rule 15 only. *See, e.g.*, *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993) (treating reconsideration motion under Rule 15 because it sought amendment); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 2581581, at *2 (N.D. Cal. June 9, 2014) (granting leave under Rule 15 to add claim previously dismissed with prejudice). As detailed in this motion, Plaintiff's motion should be granted, whether analyzed under Rules 15, 16, and/or 54.

1    evidence,' and (3) the newly discovered evidence is 'of such magnitude that production of it earlier

2    would have been likely to change the disposition of the case.'" *Schmitz*, 2021 WL 3362811, at \*6

3    (quoting *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003)).

4        **B.**     **Plaintiff Diligently Pursued Test Results and Deposition Testimony on Which this Motion Is Based.**

5        Whether evidence qualifies as "newly discovered" turns on "if it was in the party's

6    possession at the time of [the prior motion] or could have been discovered with reasonable

7    diligence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 892 n.6 (9th Cir. 1994). Courts thus look to the

8    moving party's access to the evidence at the time of the prior motion. *See, e.g.*, *Whitney v. Wurtz*,

9    2006 WL 1310462, at \*3 n.2 (N.D. Cal. May 12, 2006) (stating deposition testimony subsequent

10   to motion qualified as newly discovered). Under Local Rule 230, a moving party must identify

11   "what new or different facts or circumstances are claimed to exist which did not exist" and "why

12   the facts or circumstances were not shown at the time of the prior motion." L.R. 230(j).

13        Here, there is no reasonable dispute that the newly discovered evidence was not in

14   Plaintiff's possession when it filed its original Complaint on April 10, 2020, or its First Amended

15   Complaint on May 25, 2022, or when it briefed Defendants' June 2020 or August 2022 motions to

16   dismiss. Plaintiff seeks leave to assert judicial deception and *Monell* claims based on:

17
18    •    Defendants' test results of Apothio's crops, which were requested on December 12, 2024, but not fully produced until March 31, 2025.

19
20
21
22    •    Nicholson's testimony, requested on March 28, 2025, and obtained on September 10, 2025, that he understood delta-9 THC was the legally and scientifically relevant metric to distinguish hemp from marijuana; he knew he did not report delta-9 THC results to the magistrate; Halverson helped choose the numbers to report to the magistrate; eradication of all Apothio's crops was pursuant to KCSO's standard operating procedure; and Nicholson has eradicated suspected cannabis per this procedure at least hundreds of times;

23
24    •    Halverson's testimony that Nicholson helped decide which results to report to the court, which was requested on June 4, 2025, and obtained on September 16, 2025;

25    •    Maokosy's testimony that he was not trained on how to distinguish hemp from marijuana, which was obtained on September 18, 2025; and

26
27    •    Juarez's testimony that he was not trained on how to distinguish hemp from marijuana, which was obtained on September 18, 2025.

28   Plaintiff could not have obtained this evidence in 2022 or earlier because (a) discovery was stayed

at *Defendants'* request over Plaintiff's objection; (b) Defendants had sole possession of the evidence, and (c) Defendants used every lever at their disposal to resist discovery of these foundational facts.

In contrast, Plaintiff diligently pursued this discovery. Plaintiff promptly served discovery requests after the Court issued a Scheduling Order. *Defendants* refused to turn over any responsive documents and information. After Plaintiff requested the test results on December 12, 2024, State Defendants failed to respond *at all* to Plaintiff's requests. *Supra* at 6. State Defendants then erroneously claimed that Plaintiff had the requested testing "information" already in its possession. Plaintiff repeatedly met and conferred with Defendants, seeking the requested discovery. State Defendants ultimately produced native test results on March 13, 2025, while County Defendants refused to produce *any* documents or information until after the Court authorized Plaintiff to move to compel. ECF 164 (Min. Order, Mar. 18, 2025).

Shortly after receiving the test results, Plaintiff served NODs to the County, KCSO, and CDFW on March 28, 2025, in part to determine how Nicholson and Halverson decided that 29 of 36 samples were over 0.3% THC based on the test results. Plaintiff noticed the depositions for May, but *Defendants'* schedules were used as excuses to further delay discovery. First, counsel for County Defendants reported that he was unavailable in April and May due to a lengthy trial. ECF 165-1 (Decl. of Julian Schneider ISO Jt. Stip.) ¶ 16. The case then suffered another month-long delay in June and July due to *defense* counsel's and *defense* witnesses' purported vacation schedules. *Supra* at 6–7. Thereafter, County Defendants refused to produce witnesses for deposition, forcing Plaintiff to obtain a Court order. ECF 189 (issued August 29, 2025). On September 10, 2025, Plaintiff took Nicholson's deposition. Plaintiff promptly took the deposition of Halverson on September 16, and the depositions of Juarez and Maokosy on September 18.

Plaintiff's late discovery of game-changing new evidence was not Plaintiff's fault as Plaintiff simply could not have discovered the at-issue evidence earlier. Notably, Plaintiff encountered numerous delays in obtaining discovery not only due to defense counsel's claimed work and vacation schedules, but because of County Defendants' "intransigence" throughout discovery. ECF 181. Defendants' dilatory discovery tactics forced Plaintiff repeatedly to seek the

14

Court's assistance to obtain basic, relevant discovery, *supra* at 6–7, and twice Plaintiff successfully moved the Court to compel production, ECF 181 (granting Pl's motion), 189 (same).

### C. The Previously Withheld Test Results and Deposition Testimony Justify a Different Outcome for Plaintiff's Claims.

Once the movant identifies newly discovered evidence, reconsideration turns on whether the evidence is "of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987). When "reconsideration is raised within the context of a motion to amend," the court's inquiry is "whether the Proposed [Complaint's] allegations—bolstered by the new evidence—sufficiently state [each] claim." *Schmitz*, 2021 WL 3362811, at *7. Plaintiff seeks to re-plead three previously dismissed claims: judicial deception, *Monell* failure to train, and *Monell* policy or custom. If Plaintiff had possessed the new evidence in question when drafting its complaints, Plaintiff could and would have stated claims that satisfied the pleading standards.

### 1. Judicial Deception

"To successfully allege a violation of the constitutional right to be free from judicial deception, [Apothio] must make out a claim that includes (1) a misrepresentation or omission, (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." ECF 133 at 19 (quoting *Benavidez v. County of San Diego*, 993 F.3d 1134, 1147 (9th Cir. 2021)). "A statement can be misleading if, although technically true, it has been so wrenched from its context that the judicial officer will not comprehend how it fits into the larger puzzle." *Scanlon v. County of Los Angeles*, 92 F.4th 781, 799 (9th Cir. 2024). "A misrepresentation or omission is 'material' if a court 'would have declined to issue the order had [the defendant] been truthful.'" *David v. Kaulukukui*, 38 F.4th 792, 801 (9th Cir. 2022). In other words, a claim for deception is complete when the court would not have issued the order if the defendant had been truthful. *DeMaria v. Yolo County Sheriff's Off.*, 2024 WL 3821876, at *7 (E.D. Cal. Aug. 14, 2024) (finding it "plausible" that warrant would not have been issued if the affidavit disclosed the truth).

Here, Plaintiff's proposed amended complaint lays out a clear claim of judicial deception. In October 2019, Defendants (1) knew that hemp and marijuana were distinguished by the concentration of delta-9 THC, Ex. A ¶ 192; (2) knew that Cannabis sativa L. plants with a delta-9

15

THC content over 0.3% were marijuana, while those plants with a delta-9 THC content under 0.3% were hemp, *id.*; and (3) had the test results confirming that more than 90% of Plaintiff's crops were not marijuana, *id.* ¶¶ 180–81. Knowing no court would find probable cause to issue a warrant and permit the seizure and potential destruction of all Plaintiff's crops given those indisputable facts, Defendants together agreed to misleadingly report the "Potential D9THC" instead, which includes a nonpsychoactive substance ("THCA") that was neither prohibited by law nor included in the statutory distinction between hemp and marijuana in October 2019. *Id.* ¶¶ 186–88, 91, 195–202; *AK Futures LLC*, 35 F.4th at 690 ("[T]he only statutory metric for distinguishing controlled marijuana from legal hemp is the delta-9 THC concentration level.").

Importantly, Defendants falsely told the court that 29 of 36 samples tested over 0.3% ***and*** that every field had an average delta-9 THC level above 0.3%, "***thus making the majority of the samples taken cannabis***." ECF 88-3 at 10. Those reported results were essential to Nicholson's affidavit because, without them, probable cause to believe Apothio was about to sell marijuana would not have existed. But those figures were ***false***. Of the 48 tests run, 31 had ***no*** detectable delta-9 THC. And "the samples collected from the Vandborg farm demonstrate that ***no*** D9THC was detected in ***any*** of the crops that CDFW tested and on which the Nicholson Warrant was based." Ex. A ¶ 194. Indeed, Nicholson's affidavit "does not list ***any*** D9THC values—the ***only*** component of the crops Defendants knew carried legal and psychoactive significance." *Id.* ¶ 199.

Compounding the deception, Defendants did not disclose that they were providing a different metric to the judge. Instead, Nicholson misleadingly represented that the affidavit reported the delta-9 THC numbers as "THC," when in fact those numbers reflected the legally immaterial ***Potential*** THC. *Id.* ¶¶ 201–03. Had the magistrate judge known that these values were ***not*** the delta-9 THC content of the samples, or had the judge known that Defendants' testing confirmed that at least 90% of Apothio's samples had a delta-9 THC content at or below the legal limit, the court would not have issued the warrant. *Id.* ¶ 191. In turn, had Plaintiff possessed this evidence in 2022, Plaintiff could and would have plausibly stated this claim.

## 2. *Monell* Custom or Policy

KCSO's customs and practices may be actionable when they are "'the moving force behind the constitutional violation' underlying the *Monell* violation." ECF 133 at 60 (quoting *Scanlon*, 92 F.4th at 811). Because "Plaintiff has successfully alleged . . . constitutional violations under the Fourth . . . Amendment[] (e.g., excessive destruction)," "the custom or policy must directly tie to these violations." *Id*. at 60–61. Plaintiff's excessive destruction claim is predicated on Defendants' wholesale destruction of Plaintiff's hemp crops, which Defendants destroyed (1) without following the plain terms of the warrant and (2) without further testing or inquiry despite Defendants' actual knowledge that the majority of Plaintiff's crops were, in fact, hemp. As recently discovered and alleged in the proposed amended complaint, this wholesale destruction was pursuant to KCSO's "standard operating procedure," which was to eradicate *any* suspected cannabis field without further testing or inquiry, including without assessing whether the suspected cannabis could be preserved in place or removed to another location as the underlying warrant instructs. Ex. A ¶¶ 272–80. Plaintiff's proposed amendment therefore plausibly alleges an unlawful custom or policy.

## 3. *Monell* Claim – Failure to Train

Plaintiff can also state a *Monell* claim based on a failure to train because discovery has revealed facts supporting "a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." ECF 133 at 59 (quoting *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1167 (9th Cir. 2022)). In *Agro Dynamics, LLC v. United States*, the court found sufficient allegations of a "failure to train law enforcement in distinguishing hemp from marijuana." 692 F. Supp. 3d 1003, 1015 (S.D. Cal. 2023). There, as here, cultivating hemp was legal under California and federal law; the County knew about and approved plaintiff's cultivation of hemp; law enforcement obtained a warrant to seize marijuana, *not* hemp; yet officers seized and destroyed *hemp* because there was no training on how to distinguish hemp from marijuana. *Id.* Accordingly, the court found plausible allegations that "the County's failure to train its law enforcement officers on the difference between marijuana and hemp reflected a deliberate indifference to the rights of hemp owners." *Id.*

Here, just as in *Agro Dynamics*, Defendant Kern County knew about and approved Plaintiff's cultivation of hemp on the approximately 500 acres. Ex. A ¶¶ 96–103, 107–120. And, just as in *Agro Dynamics*, the warrant that Defendants obtained authorized only the destruction of "marijuana" under limited specified circumstances, *id.* ¶ 260, but the County and KCSO utterly failed to train their officers on how to distinguish marijuana from hemp, so the officers destroyed millions of Plaintiff's legal hemp crops, *id.* ¶¶ 284–86. Had KCSO officers been properly trained, they would not have destroyed more than 500 acres of Cannabis sativa L. plants that, according to Defendants' own testing, was at least 90% legal hemp. Instead, the County and KCSO trained its officers to eradicate fields of Cannabis sativa L. plants immediately upon receiving a search warrant. The County and KCSO thus destroyed Plaintiff's legal hemp crops in violation of Plaintiff's constitutional rights. If Plaintiff had the newly discovered evidence in 2022, Plaintiff could and would have plausibly stated this claim. Accordingly, the Court should reconsider its interlocutory order denying Plaintiff leave to amend this claim.

**V.    PLAINTIFF'S AMENDMENT IS WARRANTED UNDER RULE 16.**

Because new evidence justifies revision to the Court's order denying leave to amend, Plaintiff's motion to file the Second Amended Complaint is further governed by Rules 15 and 16. Together, these rules provide the rubric for leave to amend after the deadline to amend has passed.

**A.    Rule 16 Permits Amendment for Good Cause.**

After the Court issues a scheduling order, a plaintiff's "ability to amend [the] complaint [is] governed by Rule 16(b)." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). Under Rule 16(b), courts apply a "'good cause' standard [that] primarily considers the diligence of the party seeking the amendment." *Id.* at 609. In this district, courts consider three factors in assessing diligence: (1) plaintiff's diligence in "creating a workable Rule 16 order;" (2) whether plaintiff's noncompliance with the prior deadline occurred due to unforeseen, unanticipated developments and despite plaintiff's diligence; and (3) if plaintiff diligently sought amendment of the Rule 16 order. *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999). Although courts will consider potential prejudice to any opposing party, "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609.

1

**B.      Good Cause Exists to Amend the Scheduling Order.**

2      Plaintiff readily satisfies Rule 16's good cause standard because all three factors tip sharply

3      in Plaintiff's favor. First, Plaintiff diligently assisted the Court in creating a workable scheduling

4      order. *See Benchmark Young Adult Sch., Inc. v. Launchworks Life Servs., LLC*, 2014 WL 3014720,

5      at *3 (S.D. Cal. July 3, 2014) ("Plaintiff was diligent in assisting the Court in creating a workable

6      Scheduling Order, including seeking to modify the Scheduling Order through a joint motion when

7      the parties experienced delays in producing documents, complied with the Scheduling Order in all

8      other respects, and was diligent in seeking to amend the Complaint shortly after it discovered the

9      new facts at issue."); *In re Silver Wheaton Corp. Sec. Litig.*, 2018 WL 1517130, at *3 (C.D. Cal.

10     Mar. 26, 2018) (considering plaintiffs' diligence prior to scheduling conference and finding no

11     reason plaintiffs would have anticipated amendment then).

12     As the parties informed the court, ECF 165 at 2, they timely filed a Joint Scheduling Report

13     that jointly proposed pretrial deadlines, *see* ECF 143, pursuant to the Court's prior orders, *see* ECF

14     2 (Apr. 14, 2020, Order Setting Initial Sched. Conf.), 135 (Sept. 4, 2024, Min. Order Setting Sched.

15     Conf.). As detailed above, *see supra* at 5, discovery was stayed prior to the Scheduling Conference,

16     preventing Plaintiff from discovering the evidence at issue here before the Conference. *See In re*

17     *Silver Wheaton Crop. Sec. Litig.*, 2018 WL 1517130, at *3. Furthermore, after the Scheduling Order

18     was issued, and once discovery commenced, Plaintiff continued to diligently keep the Court

19     apprised of developments that might impact the Rule 16 schedule. When Plaintiff learned that

20     counsel for County Defendants would be unavailable for more than a month, and therefore that the

21     Court's scheduling order would not be feasible, *see supra* at 6, Plaintiff reached out to opposing

22     counsel to reach an agreement on proposed amended dates. Plaintiff prepared a joint stipulation

23     and proposed order, ECF 165, and submitted a declaration exhaustively detailing the discovery

24     completed to date, ECF 165-1. Plaintiff has timely filed joint discovery reports to keep the Court

25     apprised of discovery. *See, e.g.*, ECF 167 (June 9, 2025, Jt. Status Report), 176 (July 2, 2025, Jt.

26     Status Report). Plaintiff even joined ***Defendants'*** request to amend the scheduling order when

27     ***defense counsel*** and ***defense witnesses*** claimed they were unavailable for most of June and the

28     beginning of July due to their vacation schedules. ECF 169.

Second, Plaintiff could not foresee the discovery of new evidence that contradicted law enforcement's representations to obtain the warrant and Defendants' repeated representations to this Court to obtain dismissal of Plaintiff's original claims. Nor could Plaintiff have foreseen that law enforcement acted pursuant to a standard operating procedure that runs afoul of the warrant's plain terms or that KCSO failed to train its officers on distinguishing hemp from cannabis. Indeed, discovery was stayed **upon Defendants' requests** for nearly the entirety of this lawsuit before the Scheduling Order was issued. *See supra* at 5. Plaintiff thus had no opportunity to discover this evidence before the Scheduling Conference. *See Herrera v. County of San Benito*, 2025 WL 2323350, at *2 (N.D. Cal. Aug. 11, 2025) (finding diligence when plaintiff pursued discovery after the Scheduling Conference and discovered new evidence in the last weeks of non-expert discovery).

Courts also sometimes consider whether plaintiff was diligent in discovering the basis for amendment, which does not fit neatly into this District's three-part test. *Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649, 654–55 (N.D. Cal. 2025). Plaintiff satisfies this standard, too. Plaintiff served extensive written discovery after the issuance of the Scheduling Order and until depositions commenced in September, *see, e.g.*, ECF 165-1, 167, 176, 188, and these "robust" discovery efforts are not undermined by the parties' decision "to conduct [their] depositions after the completion of most written discovery," *Entangled Media*, 348 F.R.D. at 654.

Third, Plaintiff diligently sought amendment once it discovered the new evidence. Plaintiff first discovered the pertinent facts on September 10, 2025, with just over two weeks left in non-expert discovery, during a deposition Plaintiff originally sought on March 28, 2025, but required a motion to compel to obtain. This easily satisfies the diligence requirement that governs in this District. *See Thompson v. George DeLallo Co., Inc.*, 2013 WL 211204, at *7 (E.D. Cal. Jan. 16, 2013) (finding diligence and good cause when plaintiff discovered new facts in July, requested stipulation to amend in September that was refused in October, and filed motion in November); *In re Silver Wheaton Corp. Sec. Litig.*, 2018 WL 1517130, at *3–4 (finding plaintiff diligent in seeking discovery and amendment because plaintiff filed three motions to compel, one of which was resolved in their favor, and otherwise conducted extensive discovery); *Herrera*, 2025 WL 2323350, at *2 (finding diligence and good cause when Plaintiff discovered new facts during final weeks of

fact discovery, provided opposing counsel a copy of proposed amendment within a month, and filed motion within three weeks thereafter).

Furthermore, courts have found that it is "not dilatory or unreasonable for plaintiff to wait to seek leave for such an amendment until after completing [applicable] depositions," so that plaintiff can situate new evidence within other pertinent information. *Pizana v. SanMedica Int'l LLC*, 345 F.R.D. 469, 480–81 (E.D. Cal. 2022) (collecting cases); *Entangled Media*, 348 F.R.D. at 655 ("[Party] was entitled to explore its claims through discovery prior to amending its pleadings to assert them. . . . Indeed, waiting to amend a complaint or answer until a strong evidentiary basis for the amended claims has been developed is preferable to prematurely asserting those claims on the basis of a limited record that may or may not support them." (collecting cases)). Plaintiff first obtained the native test results in March 2025 and then discovered through depositions (1) that Nicholson and Halverson both chose to report Potential THC numbers to the magistrate; (2) what they understood about how to distinguish hemp from marijuana; and (3) why they chose to report false test results. After Halverson's deposition, Plaintiff requested to meet and confer regarding this motion ***the very next day***, and Plaintiff filed the instant motion on October 3, 2025, following a conference ***the day before***, on October 2, Defendants' earliest availability. Plaintiff is aware of ***no case*** in which a court has found similar circumstances failed to qualify as diligent under Rule 16.

## C.    No Prejudice Will Result from Amendment.

Courts often analyze prejudice under Rule 15 only. *See, e.g.*, *Herrera*, 2025 WL 2323350, at *2, 4–5 (noting prejudice as part of Rule 16 standard but analyzing prejudice under Rule 15 only); *Benchmark Young Adult Sch.*, 2014 WL 3014720, at *2, 4–5 (same). But when defendants argue that prejudice will result from amendment of the complaint and modification of the Scheduling Order, courts sometimes consider prejudice under Rule 16 as well. *In re Silver Wheaton Corp. Sec. Litig.*, 2018 WL 1517130, at *4–5. For example, "prejudice may arise where new claims require defendants to undertake an entirely new course of defense late in the litigation." *Id.*

Here, Defendants will not be prejudiced for at least two reasons. <u>First</u>, Plaintiff seeks only to reallege claims—a judicial deception claim and *Monell* claims based on policy or custom and failure to train theories—that involve the same underlying events that the parties have litigated for

the entirety of this action. Plaintiff's amended claims involve Defendants' wholesale destruction of Plaintiff's 512 acres of crops. Defendants have known about the contours of this dispute for almost six years. In fact, Plaintiff's First Amended Complaint pleaded ***both*** a judicial deception claim and a *Monell* claim based on policy or custom and failure to train theories, so the requested amendment seeks only to re-state claims (based on new facts that have been in Defendants' possession since before Plaintiff first initiated this case) that have been litigated previously. Plaintiff seeks to add ***no*** additional defendants. And the only reason that Plaintiff was unable to adequately state these claims sooner was because Defendants concealed and misrepresented the relevant evidence at every turn.

<u>Second</u>, Plaintiff seeks ***no additional fact discovery***. The parties thus may proceed with minimal modification to the Scheduling Order and without changing the trial date. In the event that Defendants demand additional fact discovery to prepare their defense, which should be unnecessary considering that all facts are and always have been solely within Defendants' possession, Plaintiff will not object to Defendants' ability to seek any legitimate additional discovery they need. Given the multi-year delays caused by ***Defendants***, including several months of delays over the past year due to Defendants' conduct and requests to further delay discovery, *see supra* at 5–7, and taking into account Plaintiff's diligence throughout this litigation, any slight amendment to the schedule does not merit denial of Plaintiff's instant Motion, *see Johnson*, 975 F.2d at 609.

## VI.    PLAINTIFF'S AMENDMENT IS WARRANTED UNDER RULE 15.

### A.    Rule 15 Embodies a Liberal Policy of Amendment.

If the moving party satisfies Rule 16's good cause standard, then courts ask only if Rule 15 provides "any reason why leave to amend should not be granted." *Thompson*, 2013 WL 211204, at *7. Courts "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a), and this rule must "be applied with extreme liberality," *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "The Ninth Circuit has considered five factors in determining whether leave to amend should be granted: '(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether [the] plaintiff has previously amended his complaint.'" *Davis v. Mut. of Omaha Ins. Co.*, 2023 WL 5095050, at *2 (E.D. Cal. Aug. 9, 2023) (quoting *In re W. States Wholesale Nat'l Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013)).

1    "The party opposing amendment bears the burden of showing prejudice." *DCD Programs,*

2    *Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *see Genentech, Inc v. Abbott Laboratories*, 127

3    F.R.D. 529, 530–31 (N.D. Cal. 1989) ("[S]ince Rule 15 favors a liberal policy towards amendment,

4    the nonmoving party bears the burden of demonstrating why leave to amend should not be

5    granted."). "Absent prejudice, or a strong showing of any of the remaining [applicable] factors,

6    there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Cap.,*

7    *LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original).

8        **B.**    **All Factors Favor Granting Plaintiff Leave to File the Amended Complaint.**

9        Because (1) Plaintiff did not act in bad faith and (2) did not unduly delay filing this motion;

10   (3) this amendment would not impose undue prejudice on Defendants; (4) the proposed amendment

11   is not futile; and (5) Plaintiff has amended its complaint only once before, the Court should grant

12   Plaintiff's motion for leave to file the Second Amended Complaint.

13       **1.**    **Plaintiff Did Not Act in Bad Faith.**

14       There is no "evidence in the record which would indicate a wrongful motive" by [P]laintiff

15   in seeking the proposed amendment." *Pizana*, 345 F.R.D. at 482 (quoting *DCD Programs*, 833

16   F.2d at 187). "[C]ourts consider evidence of bad faith including whether the motion was brought

17   'to gain a strategic advantage' or avoid dismissal." *Herrera*, 2025 WL 2323350, at *3 (citation

18   omitted). Here, no such evidence exists. To the contrary, Plaintiff has diligently pursued discovery.

19   *See supra* at 13–15, 20. Plaintiff has acted in good faith to move this case forward. *See supra* at 5–

20   7. Upon discovering the new evidence supporting additional theories of liability, Plaintiff informed

21   Defendants the very next day that Plaintiff intended to file this motion.

22       **2.**    **Delay, Prejudice, and Futility Weigh in Favor of Amendment.**

23       For the reasons discussed above, the delay, prejudice, and delay factors strongly favor

24   Plaintiff. "In assessing undue delay, courts evaluate 'whether the moving party knew or should

25   have known the facts and theories raised by the amendment in the original pleading.'" *Herrera*,

26   2025 WL 2323350, at *2 (quoting *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990)).

27   "[T]he correct inquiry for undue delay under Rule 15 is not whether Plaintiff could have conducted

28   depositions sooner in discovery, but rather 'how quickly the motion for leave to amend was filed

after the moving party knew of the necessary facts and theories to support the proposed amendment.'" *Id.* at *3 (citation omitted). As a result, when plaintiffs pursue discovery diligently, unearthing information late in discovery is not a basis for denying a motion for leave to amend. *See id.* (finding no undue delay when proposed amended complaint was provided to defendants within two weeks of discovery and filed with the court within a month); *Pizana*, 345 F.R.D. at 482 (finding no undue delay when plaintiff sought leave a month after completing depositions revealing new evidence). Here, Plaintiff notified Defendants of its intention to seek leave to amend the day after Halverson's deposition, and the parties met and conferred the first day defense counsel was available. Plaintiff filed this motion ***the very next day***. Courts regularly find that ***longer*** timeframes do not constitute undue delay. *Herrera*, 2025 WL 2323350, at *3 (filed one month after discovery); *Pizana*, 345 F.R.D. at 482 (same); *Benchmark Young Adult Sch.*, 2014 WL 3014720 (filed two months after discovery).

Defendants cannot carry their burden to demonstrate undue prejudice. *Benchmark Young Adult Sch.*, 2014 WL 3014720, at *4 (citing *DCD Programs*, 833 F.2d at 187). "'Undue prejudice' means substantial prejudice or substantial negative effect.' The Ninth Circuit has found such substantial prejudice where the claims sought to be added 'would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense.'" *Pizana*, 345 F.R.D. at 483 (quoting *SAES Getters S.pA. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002)); *see also Herrera*, 2025 WL 232330, at *5 (stating courts consider "practical effect of amendment on the nonmoving party" and "the nonmoving party's role in any late discovery of facts"). As explained above with respect to Rule 16, *see supra* at 21–22, Plaintiff does not seek to add brand new claims or defendants that would change the very nature of this lawsuit, nor does it seek any further fact discovery. Therefore, no prejudice will result from amendment. *Herrera*, 2025 WL 2323350, at *5 (stating no undue prejudice because "discovery taken to date is relevant to the added claims, as evidenced in part by Plaintiff bringing this motion after learning new facts during and after discovery" (collecting cases)). Further, because ***Defendants*** are primarily responsible for the late discovery of new evidence, have always had possession and control over the withheld evidence, and have advanced misleading arguments to

this Court for years to justify dismissal of Plaintiff's original claims, "it is difficult to argue any resulting prejudice [could be] undue." *Id.*

"A proposed amended claim is futile if it would be immediately subject to dismissal. Courts rarely deny a motion for leave to amend for reason of futility." *Entangled Media*, 348 F.R.D. at 656 (citations and marks omitted). "The merits or facts of a controversy are not properly decided in a motion for leave to amend and should instead be attacked by a motion to dismiss for failure to state a claim or for summary judgment." *Herrera*, 2025 WL 2323350, at *5 (citation omitted); *see In re Silver Wheaton Corp. Sec. Litig.*, 2018 WL 1517130, at *5. Accordingly, "[i]n determining futility, '[a] proposed amendment is futile only if no set of facts can be proved under the amendment that would constitute a valid claim.'" *Pizana*, 345 F.R.D. at 484. Plaintiff's amendment is a far cry from futile. Plaintiff has uncovered substantial evidence to support its judicial deception claim and its *Monell* custom or policy and failure to train claim. *See supra* at 15–18.

### 3.    Plaintiff Has Amended Its Complaint Only Once Before.

"[C]ourts consider any 'repeated failure to cure deficiencies by amendments previously allowed.'" *Herrera*, 2025 WL 2323350, at *4 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). If "there has been no history of repeated failures to cure pleading deficiencies," then the fact of prior amendment "does not weigh against granting leave to amend." *Pizana*, 345 F.R.D. at 483. This factor weighs the least in the calculus, and "many courts do not even consider it." *Herrera*, 2025 WL 2323350, at *4 (collecting cases); *see also Benchmark Young Adult Sch.*, 2014 WL 3014720, at *4–7 (weighing prejudice, undue delay, bad faith, and futility and granting leave); *In re Silver Wheaton Corp. Sec. Litig.*, 2018 WL 1517130, at *5 (same). Here, Plaintiff has amended its complaint only once before, and never with possession of the newly discovered evidence.

## VII.    CONCLUSION

Over the last few weeks Plaintiff discovered new, undisputed evidence that completely contradicts Defendants' repeated representations made to Plaintiff and the Court over the last six years. Plaintiff has acted diligently throughout this action, including in bringing this request for amendment to the Court's attention. Plaintiff's request for amendment complies with Rules 15, 16, and 54, and Plaintiff therefore respectfully submits that justice requires this Court grant this motion.

1    Dated: October 3, 2025                    SUSMAN GODFREY L.L.P.

2                                              By: _____

3                                                 Marc M. Seltzer
                                                  Bryan Caforio
4                                                 Oleg Elkhunovich
                                                  Jesse-Justin Cuevas
5                                                 Julian Schneider
                                                  SUSMAN GODFREY L.L.P.
6                                                 1900 Avenue of the Stars, Suite 1400
                                                  Los Angeles, CA 90067
7                                                 mseltzer@susmangodfrey.com
                                                  bcaforio@susmangodfrey.com
8                                                 oelkunovich@susmangodfrey.com
                                                  jcuevas@susmangodfrey.com
9                                                 jschneider@susmangodfrey.com
                                                  Telephone: (310) 789-3100
10                                                Facsimile: (310) 789-3150

11                                             *Attorneys for Plaintiff Apothio, LLC*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>CERTIFICATE OF SERVICE</u>**

2

    I certify that on October 3, 2025, a true and correct copy of the foregoing document was

3

served upon all counsel of record via the Court's ECF system.

4

5

                                _____

                                  Julian Schneider

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Motion for Reconsideration and Leave to File Second Amended Complaint
Case No. 1:20-cv-00522-JLT-CDB