UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APOTHIO, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>DONNY YOUNGBLOOD, *et al.*,<br><br>        Defendants. | Case No. 1:20-cv-00522-JLT-CDB<br><br>ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION TO FILE REPLY BRIEF<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL<br><br>ORDER IMPOSING SANCTIONS UPON COUNSEL FOR DEFENDANTS<br><br>(Docs. 212, 219) |

    Pending before the Court is the motion to compel of Plaintiff Apothio, LLC ("Plaintiff") seeking discovery-related relief pursuant to Rule 37, Federal Rules of Civil Procedure, from Defendants County of Kern, Kern County Sherriff's Office ("KCSO"), Donny Youngblood, and Joshua Nicholson ("Defendants").[1] The Court and the parties are familiar with the factual and procedural background of the case, which the Court has summarized in its orders granting Plaintiff's two earlier motions to compel. *See* (Docs. 181, 189). Because the Court does not approach Defendants' most recent, alleged discovery abuses in a vacuum, but rather, with the

---

[1] Plaintiff's unopposed request to file a reply in further support of its motion to compel (Doc. 219) is granted. *See Nationwide Agribusiness Ins. Co. v. Penn-Star Ins. Co.*, No. 1:23-cv-01528-JLT-CDB, 2025 WL 2244424, at *1-3 (E.D. Cal. Aug. 6, 2025).

benefit of the context of Defendants' earlier discovery misconduct, the Court summarizes that background below.

## I. The Court's Earlier Orders on Plaintiff's Motions to Compel

In its first motion to compel, Plaintiff sought an order of the Court directing Defendants to provide adequate responses to 66 of Plaintiff's requests for admissions and numerous interrogatories and to direct Defendants to amend their response and produce documents responsive to one of Plaintiff's requests for production of documents ("RFP"). Following its detailed review of the parties' voluminous submissions (Docs. 170, 171, 174, 178) and the record, the Court determined that Defendants had not "exhibited an acceptable level of good faith cooperation in attempting to resolve the discovery disputes" and had refused at Plaintiff's repeated requests to amend plainly nonresponsive discovery answers and meritless and improper objections. (Doc. 181 at 5; *id*. at 8-13). The Court found that Defendants had "acted with unreasonable intransigence" and stonewalled Plaintiff in failing to engage in good faith meet and confer efforts with Plaintiffs to resolve the disputes despite Plaintiff's repeated attempts for more than one month to gain Defendants' collaboration. *Id.* at 6. In granting Plaintiff's motion, the Court admonished Defendants "that in serving amended discovery responses, any failure to comply either with the letter or spirit of the rulings set forth herein may result in the imposition of sanctions." *Id*.

In its second motion to compel, Plaintiff again sought an order of the Court directing Defendants to produce documents in response to Plaintiff's RFPs and a witness competent to testify to numerous topics noticed in Plaintiff's Rule 30(b)(6) deposition notice. Following its detailed review of the parties' voluminous submissions (Docs. 183, 185, 187), on August 29, 2025, the Court granted Plaintiff's motion in part (the "August 29 Order").

Concerning the Rule 30(b)(6) deposition, the Court found Defendants had "engaged in sanctionable conduct by refusing to appear for deposition without moving the Court for a protective order, as required, thereby shifting the burden to Plaintiff to seek relief." (Doc. 189 at 5) (citations omitted). The Court further found that "Defendants' misconduct [was] aggravated given that their asserted grounds for refusing to appear for deposition are meritless." *Id*. at 5-9. The Court detailed numerous reasons for this finding, including that Defendants had failed over the course of

1  approximately two months to reasonably engage with Plaintiff in its meet/confer solicitations to
2  address Defendants' objections to the deposition topics.  The Court noted that Defendants' conduct
3  was "the antithesis of good faith," particularly given the Court's admonishments in its earlier order
4  finding Defendants had not demonstrated good faith in connection with Plaintiff's efforts to resolve
5  other discovery disputes. *Id*. at 5 (citing Docs. 181, 184).  The Court expressly rejected Defendants'
6  contention that permitting Plaintiff to examine a Rule 30(b)(6) witness on Defendants' conduct of
7  discovery – including steps Defendants took to locate and produce materials responsive to
8  Plaintiff's RFPs, the identity of persons searched and those who conducted the searches, and search
9  terms used – was improper and premature (*id*. at 7-8).  In granting Plaintiff's motion, the Court
10 "caution[ed] the County of Kern (and KCSO) that its failure to make a competent Rule 30(b)(6)
11 witness available for deposition in violation of this Order may be grounds for sanctions." *Id*. at 8.

12       Concerning Plaintiff's motion to compel Defendants to amend responses and supplement
13 their production of documents responsive to RFPs, the Court again observed that Defendants had
14 been unreasonably unwilling to engage in good faith meet/confer efforts with Plaintiff to seek
15 compromise, evidenced by "counsel for Defendants' email communications with counsel for
16 Plaintiff exhibiting unexplained delays, backtracking, and nonresponsiveness." *Id*. at 9.  While the
17 Court ultimately sustained some of Defendants' objections in part, it again found several of
18 Defendants' objections plainly lacking in merit and/or nonsensical. *Id*. at 10.  As with its earlier
19 order granting Plaintiff's motion to compel, the Court admonished Defendants that "any failure to
20 comply either with the letter or spirit of the rulings set forth herein may result in the imposition of
21 sanctions." *Id*. at 15; *see id*. at 16 ("Any failure by Defendants to timely comply with this order
22 may result in the imposition of sanctions") (emphasis in original).

23 **II.    Plaintiff's Pending, Third Motion to Compel**
24       **A.  The Parties' Arguments**

25       Plaintiff asserts that Defendants failed to timely comply with the Court's August 29 Order
26 and only belatedly served amended written discovery responses consistent with that order after
27 Plaintiff informed them it would seek relief of Court unless they complied.  In their amended
28 responses, Defendants claimed to have no documents responsive to Plaintiff's RFPs. (Doc. 212 at

3

5).² Plaintiff points out that, in response to its RFPs, KCSO produced no internal emails and that no documents have been produced suggesting that the files and documents of other county agencies involved in the underlying events (besides the county's Department of Agriculture), including agencies specifically identified in several of Plaintiff's RFPs, were searched. Relatedly, Plaintiff asserts that neither Defendants Nicholson nor Youngblood produced any documents "whatsoever." (Doc. 212 at 7).

Separately, Plaintiff argues that, notwithstanding the Court's direction to Defendants in its August 29 Order to produce a Rule 30(b)(6) witness for numerous topics identified in Plaintiff's notice of deposition, including topics addressing Defendants efforts to search for and produce documents responsive to Plaintiff's RFPs, Defendants produced "wholly unprepared witnesses" who confirmed Defendants' document search and production efforts were deficient. *Id*. 5-6.

For Defendants' failure to comply with the August 29 Order, Plaintiff requests the Court order Defendants to conduct additional investigations and searches for and produce all documents responsive to Plaintiff's RFPs, including by using a four-page list of search terms proposed by Plaintiff (*see* Doc. 212-1) across approximately 28 identified custodians, and to provide a hit report summarizing those searches (*see* Doc. 212 at 11). Plaintiff also requests the Court direct Defendants to meet and confer about additional efforts Defendants will undertake to comply with the August 29 Order. In the alternative, Plaintiff requests that Defendants be compelled to produce another Rule 30(b)(6) witness to testify about Defendants discovery efforts responsive to Plaintiff's RFPs.

In their opposition, Defendants argue Plaintiff's motion should be denied on procedural grounds for Plaintiff's failure to properly meet and confer in advance of filing the motion, including by failing to collaborate on a Local Rule 251 joint statement of the discovery dispute. As to the merits of Plaintiff's motion, Defendants argue the motion is moot in light of Defendants' service upon Plaintiff of amended RFP responses and a supplemental production of documents totaling over 3,900 pages after Plaintiff filed its motion. (Doc. 218 at 2-4). Defendants further argue that Plaintiff's reliance on certain emails previously produced in discovery by State Defendants to

---

² References herein to the parties' filings identify the page number assigned in the document's CM/ECF header.

support Plaintiff's assertion that Defendants' production of documents is deficient is erroneous as those emails are not "responsive" to Plaintiff's discovery requests because they do not directly mention the relevant search warrant, its execution, or destruction of the Plaintiff's crops, and, relatedly, do not evidence "real deficiencies" in Defendants' document production. *Id.* at 4. Defendants separately argue Plaintiff's request to re-depose a Rule 30(b)(6) witness is moot and would be redundant in light of Defendants' service upon Plaintiff of documents identifying search terms used by Defendants (after their motion to compel was filed).

In its reply to Defendants' opposition (Doc. 219), Plaintiff argues, in short, that Defendants' belated supplemental discovery responses and production of documents and an ESI metadata log does not moot its request for relief and only further highlights the deficiencies in Defendants' conduct of discovery and failure to timely comply with the August 29 Order.

**B. Discussion**

First, the Court acknowledges and summarily rejects Defendants' complaints about Plaintiff's supposed failure to adequately meet and confer in advance of filing its motion to compel and failure to include with their motion a joint statement of the dispute consistent with Local Rule 251 (Doc. 218 at 2-3). Prior to being authorized by the Court to file a motion to compel, Plaintiff cataloged in the parties' joint informal discovery dispute letter brief its extensive attempts to informally gain an audience with Defendants to discuss their latest round of discovery disputes (Doc. 204 at 2; Docs. 204-29 through 204-32). Defendants do not challenge or even acknowledge Plaintiff's characterization of Defendants' stonewalling in either their portion of the joint letter brief or their opposition to Plaintiff's motion to compel. In light of the unrefuted fact that Defendants have either failed to engage in meet/confer efforts on the numerous discovery disputes in this case or only grudgingly and belatedly participated in such efforts, Defendants' argument now that Plaintiff defaulted procedurally by not engaging in an additional round of meet/confer efforts to facilitate the drafting of a Local Rule 251 joint statement in advance of filing its motion is disingenuous.

Second, throughout the lengthy course of discovery up to the briefing of Plaintiff's pending motion to compel, the Court finds Defendants have failed to comply with their obligation to

5

diligently search for and produce discoverable materials. This is borne out by Plaintiff's unrefuted assertions that, prior to the filing of its motion to compel, KCSO produced no internal emails, that no documents were produced suggesting that the files and documents of other county agencies involved in the underlying events (besides the county's Department of Agriculture), including agencies specifically identified in several of Plaintiff's RPDs, were searched, and that neither Defendants Nicholson nor Youngblood produced any documents at all.

When questioned by the Court at the discovery dispute conference on October 10, 2025 (*see* Docs. 206, 209) whether the files of county agencies besides KCSO and the Department of Agriculture had been searched, counsel for Defendants, Mr. John R. Whitefleet, offered only that his "understanding" was that files had been searched and produced prior to his involvement in the case. But Mr. Whitefleet noticed his appearance in this action in August 2024, long before Plaintiff served the operative discovery demands at issue here. Thus, Mr. Whitefleet was (and is) required to "engage in discovery in a responsible manner and to conduct a 'reasonable inquiry' to determine whether discovery responses were sufficient and proper." *Optrics Inc. v. Barracuda Networks, Inc*., No. 17-cv-04977-RS (TSH), 2021 WL 411349, at *11 (N.D. Cal. Feb. 4, 2021) (quoting Fed. R. Civ. P. 26(g) and citing cases). Mr. Whitefleet's further representation at the discovery dispute conference about his understanding (though he conceded being unclear about the details) that a network-wide search of the county's ESI would have revealed discoverable materials in the possession and custody of other county agencies falls short of an attorney's duty under Rule 26 to engage in discovery reasonably and responsibly.

When questioned by the Court at the discovery dispute conference whether the emails of Defendants Nicholson and Youngblood had been searched, Mr. Whitefleet responded, "several times." When questioned why no emails had been produced, Mr. Whitefleet responded that none were responsive. This representation seemed incredible, particularly given that at least some of Nicholson's emails were produced by State Defendants, but not by Defendants themselves. *See* (Docs. 204-35 through 204-37). When confronted about this at the discovery dispute conference, counsel for Defendants did not offer an explanation but, instead, expressed his confusion why he should be required to produce emails that already had been produced in discovery (here, by different

6

1  parties, the State Defendants).

2  Astoundingly, in opposing Defendants' motion to compel, Mr. Whitefleet now seeks to excuse Defendants' nonproduction by arguing that none of the emails is "responsive" to Plaintiff's discovery requests because they do not directly mention the search warrant, its execution, or destruction of the Plaintiff's crops, and, relatedly, do not evidence "real deficiencies" in Defendants' document production. (Doc. 218 4/5).

Mr. Whitefleet's strained argument concerning the lack of relevance of Nicholson's emails – each of which squarely relates to the investigation of Plaintiff's crops – is meritless and, alarmingly, demonstrates a fundamental misunderstanding of an attorney's obligations to diligently arrange for the search and production of discoverable materials, including materials discoverable either under Rule 26(a) or in response to a propounding party's written discovery requests. Thus, one of Nicholson's emails reflects his receipt on October 21, 2019 (just days after Defendant Halverson obtained a search warrant to seize samples of Plaintiff's crops and days before Defendant Nicholson obtained a search warrant to seize and destroy Plaintiff's crops, *see* Doc. 88 ¶¶ 134, 180) of an email from Lieutenant Levig in which he cites media reports about Apothio's agreement with the Kern Community College District permitting Apothio to research and grow industrial hemp, and Levig's comment that he was attempting to obtain a copy of the agreement. (Doc. 204-35). A second email shows Nicholson's knowledge of and forwarding to Defendant Halverson of a media inquiry about the investigation, which Nicholson characterized as a "leak" and that they might be able to delay any associated news release. (Doc. 204-36). The third email appears to reflect KCSO's receipt of a citizen complaint concerning Apothio's purported illegal marijuana crops and communications among Defendants and other KCSO deputies concerning investigatory strategy.

Given the close proximity of these email exchanges to the investigation and search warrant executions at issue in this case, the documents undeniably are relevant and responsive to numerous of Plaintiff's RFPs and should have been produced by Defendants long ago. But these few emails are not the only affirmative evidence before the Court of Defendants' long-running deficient discovery performance. Even before Plaintiff filed the instant motion to compel, it brought to the Court's attention another example of State Defendant's producing an unquestionably relevant and

discoverable document (a HIDTA operations plan for one of the search warrant executions at issue in this case, signed by Defendant Nicholson, *see* Doc. 204-34) that Defendants did not produce. When questioned by the Court during the informal discovery dispute conference, Mr. Whitefleet's only explanation for Defendants' failure to produce the document was his "understanding" that Defendants do not routinely maintain (i.e., preserve) such documents – not that Defendants considered the document privileged, irrelevant or otherwise not responsive to Plaintiff's RFPs. The Court refuses to accept Mr. Whitefleet's suggestion that KCSO maintains a policy or practice of failing to preserve or of destroying evidence that must be preserved for production in a criminal proceeding (such as a search warrant operations plan), particular one signed by a defendant here that necessarily would need to be preserved for likely production under Fed. R. Crim. P. 16(a)(1)(E) and/or 18 U.S.C. § 3500. *Cf.* (Doc. 204-39 at 3) (Nicholson's testimony that a "DOJ stipulated agreement" required KCSO to save and preserve "all of our information," including communications/emails).

Further highlighting Defendants' deficient discovery practices, notwithstanding the August 29 Order compelling Defendants to produce documents responsive to Plaintiff's RFPs, it was not until almost two weeks after Plaintiff filed the instant motion to compel that Defendants produced some previously unproduced and responsive documents – without explanation why those documents were not previously produced. Second, Defendants recently served upon Plaintiff an email metadata log reflecting thousands of emails that appear, based on the search terms used, to be responsive to Plaintiff's RFPs. *See* (Doc. 219-1). Once again, Defendants offer no explanation why these documents were not previously searched for and produced.

In granting Plaintiff's earlier motion to compel, the Court ordered Defendants "to produce a witness prepared to testify about Plaintiff's noticed discovery topics (Topic No. 18 as to KCSO, Topic No. 19 as to County of Kern), including concerning ESI search methodology." (Doc. 189 at 8, 16). However, Plaintiff asserts that Defendants' Rule 30(b)(6) witness was unable to answer elementary questions about Defendants' document collection and production efforts and their searches of ESI. Plaintiff argues and cites deposition transcript excerpts reflecting that the witness could not identify search terms used, who chose the search terms, what custodians were searched,

which equipment was searched, who conducted searches, or whether any hard copy documents were collected from KCSO, and no information about the details of County departments' document investigations. *See* (Doc. 212-3). At the discovery dispute conference, when questioned by the Court why the witness was unprepared to provide testimony on these topics, Mr. Whitefleet simply responded, "she was." In opposition to Plaintiff's motion to compel, Defendants merely assert it is "impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything" (Doc. 218 at 4-5, citing cases). But Defendants' argument is meritless because Plaintiff does not challenge the witness's inability to testify competently about peripheral matters; it challenges the witness's abject failure to offer substantive testimony about core issues relating to the noticed deposition topics.

### C. Conclusion

For the reasons set forth above, the Court finds that Defendants violated the Court's August 29 Order requiring them to provide documents responsive to Plaintiff's RFPs and to produce Rule 30(b)(6) witness(es) to testify fully and completely concerning all of Plaintiff's noticed deposition topics. Defendants' recent production of documents – coming only after Plaintiff filed two motions to compel and long after the close of nonexpert discovery – along with evidence that other responsive documents still have yet to be produced confirms this Court's conclusion that Defendants repeatedly have failed to proceed in good faith.

## III. <u>Sanctions</u>

### A. Rule 37, Federal Rules of Civil Procedure

The Federal Rules of Civil Procedure provide that the underlying purpose of the rules is to secure the just, speedy and inexpensive determination" of an action. Fed. R. Civ. P. 1. To effectuate this purpose, the rules provide for sanctions against parties that fail to comply with court orders or that unnecessarily multiply the proceedings. *See, e.g.*, Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 37(b).

A court may impose sanctions pursuant to Rule 37(b)(2) against a party who "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Rule 37(b) "gives a district judge discretion to make such orders ... as are just in regard to a party's failure to obey a discovery order." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998) (quotation

marks and citation omitted).  In addition to authorizing the issuance of "just orders" and granting other specified relief for a party's violation of a discovery order, Rule 37(b) provides, "[i]nstead of or in addition to [those sanctions], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(A), (C).  "The fact that [a party] eventually responded to the discovery requests does not preclude imposition of monetary sanctions." *Lanier v. San Joaquin Valley Officials Ass'n*, No. 1:14-cv-01938-EPG, 2016 WL 4764669, at *7 (E.D. Cal. Sept. 12, 2016)) (citing *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986)).

"Rule 37(b) sanctions may serve either remedial and compensatory purposes or punitive and deterrent purposes." *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 783 (9th Cir. 1983). *Cf. Wanderer v. Johnson*, 910 F.2d 652, 655 (9th Cir. 1990) ("Rule 37 sanctions were intended to 'punish[ ] evasion of pretrial discovery.'") (quoting Rosenberg, Sanctions to Effectuate Pretrial Discovery, 58 Colum. L. Rev. 480, 482 (1958)).

**B. The Court's Inherent Authority**

The Court also possesses inherent authority to impose sanctions to manage its own affairs so as to achieve the orderly and expeditious disposition of cases. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  The Court's inherent power is that which is necessary to the exercise of all others, including to protect the due and orderly administration of justice and maintain the authority and dignity of the Court. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980).  The Court also may impose sanctions for civil contempt "to coerce obedience to a court order." *Gen. Sig. Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986); *see Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005) (discussing court's authority to impose civil sanctions "intended to be remedial by coercing the defendant to do what he had refused to do."); e.*g., Gen. Sig. Corp. v. Donallco, Inc.*, 933 F.2d 1013 (9th Cir. 1991) (affirming district court's award of $100,000 sanction that "was coercive and not compensatory" as "an amount required to prevent future violations") (unpublished); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1480 (9th Cir. 1992) (affirming district court's imposition of sanctions to coerce compliance with court order).

10

Similarly, the Local Rules of the Eastern District of California provide that "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court." E.D. Cal. L.R. 110. Further, "[i]n the event any attorney subject to these Rules engages in conduct that may warrant discipline or other sanctions, any Judge or Magistrate Judge may initiate proceedings for contempt under 18 U.S.C. § 401 or Fed. R. Crim. P. 42, or may, after reasonable notice and opportunity to show cause to the contrary, take any other appropriate disciplinary action against the attorney." E.D. Cal. L.R. 184(a). "In addition to or in lieu of the foregoing, the Judge or Magistrate Judge may refer the matter to the disciplinary body of any Court before which the attorney has been admitted to practice." *Id*.

**C. Discussion**

First, the Court finds that Defendants' discovery misconduct cited above in violation of the Court's Augst 29 Order evidences Defendants' lack of regard for and indifference to court orders and has prevented the Court from efficiently managing its docket in this action. As recounted above, Defendants' most recent discovery abuses have occurred in the context of an overall pattern and practice by Defendants of shirking their duty to genuinely confer with Plaintiff to resolve discovery disputes informally and failing to heed the Court's directions to correct their discovery misconduct. In its earlier orders granting Plaintiff's motions to compel, the Court admonished Defendants that failure to comply with the Court's orders may result in the imposition of sanctions. But the risk of sanctions appears to have had little to no effect on Defendants and has failed to gain their compliance. And despite numerous opportunities to refute Plaintiff's characterization of Defendants' unprofessional meet/confer behavior and discovery abuses in the parties' informal discovery dispute letter briefs, motion to compel papers, and during discovery dispute conferences, Defendants have failed adequately to defend their actions or otherwise persuade the Court that their behavior demonstrates good faith. Accordingly, the Court finds that monetary sanctions are appropriate to compel Defendants to comply with this Court's orders. Therefore, to gain Defendants' compliance and to ensure their adherence to future orders governing discovery and all other matters in this case, the Court will impose a sanction in the amount of $3,000, with the sum

1  to be paid personally by counsel for Defendants, Mr. Whitefleet, and not to be transmitted to his
2  clients by way of a charge of attorney's fees and/or costs. *E.g., In re USA Commercial Mortg. Co.*,
3  462 Fed. Appx. 677, 680 (9th Cir. 2011) (affirming imposition of monetary sanctions for party's
4  discovery abuses and finding no evidentiary hearing required where party had notice that continued
5  discovery violations could be sanctioned and had opportunity to address its misconduct through
6  responsive brief and hearing) (citing cases).

7  Second, for the reasons summarized above, the Court finds that sanctions against
8  Defendants pursuant to Rule 37(b)(2) are warranted given their failure to obey the Court's August
9  29 Order to provide discovery was neither substantially justified nor harmless. *See* Fed. R. Civ. P.
10 37(b)(2)(A). Specifically, the Court will order Defendants to pay Plaintiff's reasonable expenses,
11 including attorney's fees, caused by Defendants' failure. *See* Fed. R. Civ. P. 37(b)(2)(A) & (C).
12 Moreover, given Defendants' extraordinary delay in making discovery available and to ensure no
13 further delays in the litigation of this action are incurred, the Court will direct Defendants to
14 promptly make available to Plaintiff any and all documents it requests that are identified in
15 Defendants' recently produced email metadata logs and to pay to Plaintiff attorney's fees it incurs
16 in connection with reviewing any document ultimately deemed to be nonresponsive to its RFPs. It
17 is regrettable that the Court is compelled to direct Defendants to produce information that on its
18 face appears potentially responsive to Plaintiff's RFPs and require Plaintiff to undertake the labor
19 to confirm as much. However, Defendants have left the Court with no other viable options in light
20 of the history set forth above – the Court is unwilling any further to permit Defendants to
21 unreasonably consume both Plaintiff's and the Court's time, energy, and limited resources by
22 abdicating their duties to engage in discovery practice reasonably and responsibly.

23 In its forthcoming submission in support of recovery of attorney's fees, counsel for Plaintiff
24 shall allocate and identify time spent reviewing emails produced by Defendants pursuant to this
25 order that Plaintiff ultimately deems nonresponsive to Plaintiff's RFPs.

26 Finally, to further inform the Court of the nature and scope of Defendants' discovery abuses,
27 Plaintiff shall attach to its forthcoming submission in support of recovery of attorney's fees a
28 sampling of at least ten (10) of the most relevant emails produced by Defendants responsive to

Plaintiff's RFPs.

**IV.     Conclusion and Order**

For the reasons set forth above, it is HEREBY ORDERED

1. No later than November 20, 2025, Defendants shall produce to Plaintiff all documents/communications identified and requested in the email of counsel for Plaintiff to counsel for Defendants dated October 23, 2025 (Doc. 219-1);

2. No later than November 20, 2025, Plaintiff shall transmit to Defendants a complete inventory of any other documents/communications identified in the metadata logs served by Defendants upon Plaintiff on October 22, 2025, for which Plaintiff seeks production;

3. No later than seven (7) days after Defendants' receipt of Plaintiff's discovery request described above, Defendants shall produce all requested documents/communications;

4. No later than November 26, 2025, counsel for Defendants John R. Whitefleet shall pay to the Clerk of the Court sanctions in the amount of $3,000, with the sum to be paid personally by Mr. Whitefleet and not to be transmitted to his clients by way of a charge of attorney's fees and/or costs.

It is FURTHER ORDERED that Defendants shall pay to Plaintiff its attorney's fees and costs incurred in connection with litigating this motion to compel and in connection with their review of any documents/communications identified in the email metadata logs and requested by Plaintiff and ultimately determined by Plaintiff to be nonresponsive to its RFPs. *See* Fed. R. Civ. P. 37.

Plaintiff shall file relevant declarations and billing records in support of its award of attorney's fees and costs no later than December 15, 2025.

Defendants may file an opposition to Plaintiff's submissions in support of an award of attorney's fees and costs no later than December 23, 2025.

///

///

And it is FURTHER ORDERED that Plaintiff shall include with its submissions in support of an award of attorney's fees and costs a sampling of no less than ten emails produced by Defendants pursuant to this order that Plaintiff contends are responsive to Plaintiff's RFPs.

IT IS SO ORDERED.

Dated:   **November 12, 2025**

UNITED STATES MAGISTRATE JUDGE