Marc M. Seltzer (54534)
Bryan Caforio (261265)
Oleg Elkhunovich (269238)
Jesse-Justin Cuevas (307611)
Julian Schneider (347246)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
mseltzer@susmangodfrey.com
bcaforio@susmangodfrey.com
oelkhunovich@susmangodfrey.com
jcuevas@susmangodfrey.com
jschneider@susmangodfrey.com
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiff Apothio, LLC*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| APOTHIO, LLC,<br><br>   Plaintiff,<br><br>vs.<br><br>KERN COUNTY; KERN COUNTY SHERIFF'S OFFICE; CALIFORNIA DEPARTMENT OF FISH AND WILDLIFE; DONNY YOUNGBLOOD; JOSHUA NICHOLSON; ANDREW HALVERSON, and CHARLTON H. BONHAM,<br><br>   Defendants. | Case No. 1:20-cv-00522-JLT-CDB<br><br>*Assigned to the Hon. Jennifer L. Thurston*<br><br>**PLAINTIFF APOTHIO, LLC'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>***[Filed Concurrently with Declaration of Julian Schneider, Separate Statement and Joint Statement]***<br><br>Date: May 29, 2026<br>Time: 9:30 a.m.<br>Place: Courtroom 4, 7th Floor<br>    Robert E. Coyle U.S. Courthouse<br>    2500 Tulare Street<br>    Fresno, CA 93721<br><br>Complaint Filed April 10, 2020<br>1st Amd Complaint Filed: May 25, 2022<br>Trial Date: September 9, 2026<br>Jury Trial Demanded |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, before U.S. District Judge Jennifer L. Thurston on May 29, 2026, at 9:30 a.m. in Courtroom 4, 7th Floor, Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, California 93721, Plaintiff Apothio, LLC ("Plaintiff" or "Apothio"), will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 56, Civil Local Rules 230 and 260, and the Court's Orders, *see* Scheduling Order (Oct. 16, 2024), ECF 147; Order Granting Parties' Second Stipulated Request to Amend Case Management Dates (July 9, 2025), ECF 179; Order on Motion Continuing Dispositive Motion Deadlines (Jan. 26, 2026), ECF 236, for an order granting partial summary judgment in favor of Plaintiff on the following issues of liability: (1) Plaintiff's 42 U.S.C. § 1983 claim for violation of the Fourth Amendment of the U.S. Constitution by Defendants Joshua Nicholson and Andrew Halverson for the unlawful destruction of nine fields of Apothio's crops; (2) Plaintiff's Bane Act claims under California Civil Code § 52.1 for violation of the Fourth Amendment of the U.S. Constitution and violation of the California Constitution Article I, § 13 by Defendants Joshua Nicholson and Andrew Halverson for the unlawful destruction of nine fields of Apothio's crops and for which Defendants California Department of Fish and Wildlife ("CDFW"), Kern County (also known as the County of Kern or the "County"), and Kern County Sheriff's Office ("KCSO") are liable under California Government Code § 815.2(a); (3) Plaintiff's conversion claim, or in the alternative trespass to chattels claim, against Defendants Joshua Nicholson and Andrew Halverson for the unlawful destruction of nine fields of Apothio's crops and for which Defendants CDFW, Kern County, and KCSO are liable under California Government Code § 815.2(a); (4) Plaintiff's negligence claim against Defendants Joshua Nicholson and Andrew Halverson for the unlawful destruction of nine fields of Apothio's crops and for which Defendants CDFW, Kern County, and KCSO are liable under California Government Code § 815.2(a); (5) all affirmative defenses asserted by Defendants CDFW and Halverson (collectively, "State Defendants") in their joint answer, ECF 136; and (6) all affirmative defenses asserted by Defendants Kern County, KCSO, and Nicholson (collectively, "County Defendants") and Defendant Donny Youngblood in their joint answer, ECF 134.

1    Plaintiff's motion is based on the authorities and arguments set forth herein, the

2    accompanying exhibits, any subsequent filings, other pleadings in this matter, oral argument to be

3    presented to the Court, and such other matters as the Court may consider. Plaintiff complied with

4    the meet-and-confer requirements set forth in the Court's Scheduling Order, including

5    (1) transmitting a proposed statement of undisputed facts to defense counsel on January 2, 2026,

6    and conferring with defense counsel via videoconference on January 9, 2026, about the proposed

7    statement and this motion, and via subsequent email correspondence about the proposed statement,

8    whether Defendants would be amenable to dismissing any affirmative defenses, and this motion;

9    and (2) after the continuation of the deadline for dispositive motions, transmitting a proposed

10   statement of undisputed facts to defense counsel on February 13, 2026, including facts based on

11   the parties' exchange of expert reports that occurred subsequent to the January conference, and

12   conferring with defense counsel via videoconference on February 19, 2026, about the proposed

13   statement and this motion, and via subsequent email correspondence on March 9, 10, and 11, 2026,

14   about Plaintiff's proposed joint statement of stipulated facts.

15

16   Dated: March 12, 2026                SUSMAN GODFREY L.L.P.

17

18                                        By/s/   *Julian Schneider*
                                              Marc M. Seltzer
19                                            Bryan Caforio
                                              Oleg Elkhunovich
20                                            Jesse-Justin Cuevas
                                              Julian Schneider
21                                            SUSMAN GODFREY L.L.P.
                                              1900 Avenue of the Stars, Suite 1400
22                                            Los Angeles, CA 90067
                                              mseltzer@susmangodfrey.com
23                                            bcaforio@susmangodfrey.com
                                              oelkhunovich@susmangodfrey.com
24                                            jcuevas@susmangodfrey.com
                                              jschneider@susmangodfrey.com
25                                            Telephone: (310) 789-3100
                                              Facsimile: (310) 789-3150
26

27                                        *Attorneys for Plaintiff Apothio, LLC*

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.    Introduction ........................................................................................................................ 1

II.   Factual Background ........................................................................................................... 2

      A.   In October 2019, Only Delta-9 THC Distinguished Marijuana from Hemp. ................... 2

      B.   Apothio Cultivated Nine Fields of Hemp. ...................................................................... 3

      C.   Defendants' Testing Confirmed Apothio's Crops Were Hemp. ....................................... 3

      D.   Defendants Obtained a Warrant Authorizing the Destruction of *Marijuana* .................. 4

      E.   Defendants Destroyed All of Apothio's *Hemp.* .............................................................. 4

III.  Legal Standard .................................................................................................................. 5

IV.   Undisputed Evidence Establishes Defendants' Liability on All Claims. ............................ 6

      A.   There Is No Genuine Dispute as to Defendants' Liability Under Section 1983 .............. 6

      B.   There Is No Genuine Dispute as to Defendants' Liability Under the Bane Act. ........... 13

      C.   There Is No Genuine Dispute as to Defendants' Liability in Tort. ................................ 16

           1.    Defendants Are Liable for Conversion of Apothio's Crops. ............................ 16

           2.    Defendants Are Liable for Trespass to Chattels of Apothio's Crops ................ 17

      D.   There Is No Genuine Dispute as to Defendants' Liability for Negligence. ................... 18

V.    There Is No Genuine Dispute as to Defendants' Affirmative Defenses. ............................ 19

      A.   Defendants Are Not Entitled to Qualified Immunity. .................................................... 20

      B.   Apothio Complied with the Government Claims Act and Timely Filed Suit. ................ 21

      C.   No Statutory Immunities Bar Defendants' Liability. ..................................................... 21

      D.   Eleventh Amendment Immunity Does Not Bar Judgment. ............................................ 23

           1.    County Defendants Cannot Invoke Eleventh Amendment Immunity. .............. 23

           2.    CDFW Waived Any Eleventh Amendment Immunity. ..................................... 24

      E.   No Evidence Supports Defendants' Other Affirmative Defenses. .................................. 25

VI.   Conclusion ...................................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agro Dynamics, LLC v. United States,*
   692 F. Supp. 3d 1003 (S.D. Cal. Sept. 19, 2023)............................................................*passim*

*AK Futures LLC v. Boyd St. Distro, LLC,*
   35 F.4th 682 (9th Cir. 2022) ....................................................................................... 2

*Ashley v. City & County of San Francisco,*
   2014 WL 4627736 (N.D. Cal. Feb. 4, 2014) ...................................................... 18, 19

*Atkinson v. County of Tulare,*
   790 F. Supp. 2d 1188 (E.D. Cal. 2011).................................................................. 19

*Bajwa v. U.S. Life. Ins. Co.,*
   2024 WL 1344675 (E.D. Cal. Mar. 29, 2024) ........................................................ 5

*Bd. of Trustees of Univ. of Ala. v. Garrett,*
   531 U.S. 356 (2001)................................................................................................. 24

*Bonivert v. City of Clarkson,*
   883 F.3d 865 (9th Cir. 2018)................................................................................... 12

*Boyd v. Benton County,*
   374 F.3d 773 (9th Cir. 2004).................................................................................... 12

*Brewster v. Shasta County,*
   275 F.3d 803 (9th Cir. 2001).................................................................................... 24

*Briones v. City of Ontario,*
   2018 WL 6017037 (C.D. Cal. May 21, 2018) ....................................................... 20

*Bristow v. Ester,*
   2023 WL 4409856 (E.D. Cal. July 7, 2023) .................................................... 10, 11

*Cal. Corr. Peace Officers Ass'n v. Virga,*
   181 Cal. App. 4th 30 (2010) .................................................................................. 22

*Calaceto v. Richardson Bay Reg'l Agency,*
   2025 WL 1684884 (N.D. Cal. June 16, 2025) ...................................................... 17

*Caldwell v. Montoya,*
   10 Cal. 4th 972 (1995) ........................................................................................... 22

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986).............................................................................................. 5, 6

ii

*Collins v. City of Colton, Cal.*,
    2015 WL 13908097 (C.D. Cal. Oct. 19, 2015) ................................................................... 22

*Cornell v. City & County of San Francisco*,
    17 Cal. App. 5th 766 (2017) ........................................................................................ 14

*Cox v. Shepherd*,
    199 F. Supp. 140 (S.D. Cal. 1961) ............................................................................... 6

*D'Braunstein v. Cal. Highway Patrol*,
    131 F.4th 764 (9th Cir. 2025) ...................................................................................... 20

*Dahlin v. Frieborn*,
    2022 WL 10146777 (E.D. Cal. Oct. 17, 2022) ........................................................ 16, 17

*Dahlin v. Frieborn*
    859 F. App'x 69 (9th Cir. 2021) .................................................................................. 21

*Desrosiers v. Flight Int'l of Fla. Inc.*,
    156 F.3d 952 (9th Cir. 1998) ...................................................................................... 19

*Drewry v. County of Riverside*,
    2023 WL 2627740 (C.D. Cal. Jan. 23, 2023) ......................................................... 17, 19

*Ellertson v. City of Mesa*,
    2016 WL 97538 (D. Ariz. Jan. 8, 2016) ...................................................................... 21

*Est. of Sanchez v. County of Stanislaus*,
    2023 WL 7612399 (E.D. Cal. Nov. 14, 2023) ............................................................. 16

*Free Spirit Organics, NAC v. San Joaquin Cnty. Bd. of Supervisors*,
    2022 WL 902834 (E.D. Cal. Mar. 25, 2022) ............................................................... 11

*Garlick v. County of Kern*,
    167 F. Supp. 3d 1117 (E.D. Cal. 2016) ....................................................................... 12

*Green v. Bd. of Regents of the Univ. of Cal.*,
    2021 WL 6751903 (C.D. Cal. Oct. 22, 2021) .............................................................. 19

*Green v. County of Yuba*,
    2019 WL 827638 (E.D. Cal. Feb. 21, 2019) ............................................................... 22

*Harris v. Smith*,
    157 Cal. App. 3d 100 (1984) ....................................................................................... 18

*Hayes v. County of San Diego*,
    57 Cal. 4th 622 (2013) ................................................................................................ 18

*Hernandez v. County of Marin*,
    2013 WL 6055224 (N.D. Cal. Nov. 14, 2013) ....................................................... 17, 18

1
2

*Hill v. Blind Indus. & Servs. of Md.*,
    179 F.3d 754 (9th Cir. 1999) ............................................................................. 24

3

*Horton v. California*,
    496 U.S. 128 (1990) ......................................................................................... 7

4
5

*Huemer v. Santa Cruz Cnty. Animal Shelter Found.*,
    2024 WL 3317380 (N.D. Cal. June 13, 2024) ..................................................... 17

6
7

*In re Bliemeister*,
    296 F.3d 858 (9th Cir. 2002).......................................................................... 24, 25

8

*Intel Corp. v. Hamidi*,
    30 Cal. 4th 1342 (2003) .................................................................................. 18

9
10

*Jackson v. Barnes*,
    749 F.3d 755 (9th Cir. 2014)............................................................................ 24

11
12

*Jones v. City of Vallejo*,
    2024 WL 2153646 (E.D. Cal. May 14, 2024) ...................................................... 11

13

*Kong Meng Xiong v. City of Merced*,
    2015 WL 4598861 (E.D. Cal. July 29, 2015 ...................................................... 18

14
15

*KRL v. Moore*,
    384 F.3d 1105 (9th Cir. 2004)........................................................................ 21

16
17

*Lennox v. City of Sacramento*,
    2024 WL 3845378 (E.D. Cal. Aug. 16, 2024) .................................................... 15

18

*Leon v. County of Riverside*,
    14 Cal. 5th 910 (2023) .................................................................................... 23

19
20

*Marron v. United States*,
    275 U.S. 192 (1927)................................................................................... 14, 20

21
22

*Marsh v. County of San Diego*,
    680 F.3d 1148 (9th Cir. 2012 ........................................................................... 6

23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)......................................................................................... 5

24
25

*Mendez v. County of Los Angeles*,
    897 F.3d 1067 (9th Cir. 2018)........................................................................... 22

26

*Morse v. County of Merced*,
    2017 WL 2958733 (E.D. Cal. July 11, 2017) .................................................... 15

27
28

*Nelson v. County of Sacramento*,
    926 F. Supp. 2d 1159 (E.D. Cal. 2013)............................................................. 24

iv

*Neylon v. County of Inyo,*
  2017 WL 3670925 (E.D. Cal. Aug. 25, 2017) ................................................................... 22

*Nicholson v. City of Los Angeles,*
  935 F.3d 685 (9th Cir. 2019) ............................................................................................ 13

*Peck v. Montoya,*
  51 F.4th 877 (9th Cir. 2022) ............................................................................................. 12

*Pena v. Gardner,*
  976 F.2d 469 (9th Cir. 1992) ............................................................................................ 24

*People v. Robinson,*
  47 Cal. 4th 1104 (2010) .................................................................................................... 13

*People v. Superior Court (Meyers),*
  25 Cal. 3d 67 (1979) ......................................................................................................... 14

*Pike v. Hester,*
  205 F. Supp. 3d 1190 (D. Nev. 2016) ................................................................................. 5

*Pistor v. Garcia,*
  791 F.3d 1104 (9th Cir. 2015) ..................................................................................... 24, 25

*Q.M. v. County of Los Angeles,*
  2025 WL 1148283 (C.D. Cal. Mar. 18, 2025) .................................................................. 18

*Ramirez v. County of Los Angeles,*
  397 F. Supp. 2d 1208 (C.D. Cal. 2005) .............................................................................. 5

*Reese v. County of Sacramento,*
  888 F.3d 1030 (9th Cir. 2018) ..................................................................................... 14, 20

*Regino v. Staley,*
  133 F.4th 951 (9th Cir. 2025) ............................................................................................. 6

*Richter v. City of Renton,*
  2012 WL 5194088 (W.D. Wash. Oct. 19, 2012) .............................................................. 20

*San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose,*
  402 F.3d 962 (9th Cir. 2005) ............................................................................... 7, 8, 14, 20

*Sharp v. County of Orange,*
  871 F.3d 901 (9th Cir. 2017) ............................................................................................ 22

*Triton Energy Corp v. Square D Co.,*
  68 F.3d 1216 (9th Cir. 1995) .............................................................................................. 5

*United States v. Ayala,*
  646 F. Supp. 3d 1191 (N.D. Cal. 2022) ............................................................................ 11

v

*United States v. Sterling Centrecorp Inc.*,
   208 F. Supp. 3d 1126 (E.D. Cal. 2016) ................................................................. 5

*United States v. Williams*,
   2015 WL 5138517 (N.D. Cal. Sept. 1, 2015) ...................................................... 12

*Voris v. Lampert*,
   7 Cal. 5th 1141 (2019) ........................................................................................ 16

*Warkentine v. Soria*,
   152 F. Supp. 3d 1269 (E.D. Cal. 2016 ................................................................. 11

*Youker v. Hillhouse*,
   2023 WL 2642925 (9th Cir. Mar. 27, 2023) ...................................................... 11

*Young v. County of Los Angeles*,
   655 F.3d 1156 (9th Cir. 2011) ............................................................................ 19

**Statutes**

42 U.S.C. § 1983 ............................................................................................ *passim*

Cal. Civ. Code § 52 ........................................................................................ *passim*

Cal. Gov't Code § 815 .................................................................................... *passim*

Cal. Gov't Code § 820 ........................................................................ 16, 21, 22, 23

Cal. Gov't Code § 821 ............................................................................ 21, 22, 23

Cal. Gov't Code § 911 ............................................................................................ 21

Cal. Gov't Code § 945 ............................................................................................ 21

**Rules**

Fed. R. Civ. P. 45 ................................................................................................. 24

Fed. R. Civ. P. 56 ............................................................................................. 5, 7

Plaintiff's Notice of Motion and Motion for Partial Summary Judgment
Case No. 1:20-cv-00522-JLT-CDB

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    Introduction

Apothio seeks partial summary judgment as to liability against Defendants Kern County, KCSO, and Sergeant Joshua Nicholson (together, "County Defendants"), and CDFW and Lieutenant Andrew Halverson (together, "State Defendants") for destroying nine fields of Apothio's hemp crops in plain violation of the Nicholson Warrant's terms. ***It is undisputed*** that Nicholson and Halverson executed a search warrant (the Nicholson Warrant) that authorized only the destruction of "marijuana." ***It is undisputed*** that test results of 36 samples of Apothio's crops demonstrated that ***all*** crops on six fields and ***all or nearly all*** crops on three fields were hemp and ***not*** marijuana. ***It is undisputed*** that Nicholson and Halverson had actual knowledge that nearly all of Apothio's crops qualified as hemp under then-governing law. ***It is undisputed*** that even before obtaining a warrant Nicholson and Halverson implemented a plan to totally eradicate Apothio's hemp crops. And ***it is undisputed*** that despite the Nicholson Warrant's authorization to seize and potentially destroy only ***marijuana***, Nicholson and Halverson destroyed all of Apothio's ***hemp***.

These indisputable violations of the Warrant's terms entitle Apothio to partial summary judgment on several claims. First, Apothio is entitled to judgment on liability for its section 1983 claim for violation of the Fourth Amendment's particularity requirement. This requirement confines an officer to search and seize ***only*** what is described in a warrant, which Nicholson and Halverson violated when they destroyed Apothio's hemp. Second, Apothio is entitled to judgment on liability for its Bane Act claims for violations of the Fourth Amendment and the California Constitution. Nicholson and Halverson recklessly disregarded Apothio's constitutional rights and are thus liable, and Kern County, KCSO, and CDFW are vicariously liable under Government Code section 815.2(a). Third, Apothio is entitled to judgment on liability for its California common law tort claims (conversion, trespass to chattels, and negligence) against Nicholson and Halverson for their wrongful, intentional, and negligent destruction of Apothio's property. And, again, Kern County, KCSO, and CDFW are vicariously liable under section 815.2(a). Finally, Apothio is entitled to summary judgment on Defendants' baseless affirmative defenses.

There is no genuine factual dispute that Defendants exceeded the Nicholson Warrant's scope and destroyed Apothio's hemp crops, for which no defense bars liability. Thus, Apothio respectfully requests the Court grant this motion on Defendants' liability and proceed with conducting a limited trial to quantify the amount of damages Defendants caused.

## II.    Factual Background

### A.    In October 2019, Only Delta-9 THC Distinguished Marijuana from Hemp.

The Court is familiar with the law on marijuana/cannabis and hemp/industrial hemp in effect when Defendants destroyed Apothio's hemp crops in October 2019. ECF 133 (Order Granting & Denying Mots. Dismiss) at 1–5 (detailing federal and state law).[1] The 2018 Farm Bill legalized the commercial cultivation of hemp, which the Bill defined as the Cannabis sativa L. plant with a delta-9 tetrahydrocannabinol ("delta-9 THC") concentration of less than 0.3 percent on a dry weight basis. SSMUF 1–2;[2] ECF 133 at 2–3.

As the Ninth Circuit has explained, federal law "yields a definition of hemp applicable to all products that are sourced from the cannabis plant [and] contain ***no more than 0.3 percent delta-9 THC***." *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 690 (9th Cir. 2022).[3] "Importantly, the ***only*** statutory metric for distinguishing controlled marijuana from legal hemp is the ***delta-9 THC level***." *Id.* For this reason, the Ninth Circuit has held that the presence or absence of any cannabinoid other than delta-9 THC does not remove the plant from the legal hemp category. *Id.* at 691. For example, in October 2019, the nonpsychoactive component tetrahydrocannabinolic acid ("THCA") was irrelevant under federal law to distinguish marijuana from hemp. SSMUF 1–2, 8-9, 11. In October 2019, California law defined "industrial hemp" (hemp) and "cannabis" (marijuana) the same way as federal law. ECF 133 at 3–4; SSMUF 3–4, 8.

Nicholson and Halverson knew the applicable law in October 2019. They understood the terms "delta-9 tetrahydrocannabinol," "tetrahydrocannabinol," "delta-9 THC," and "THC" were

---

[1] "Marijuana" and "cannabis," on the one hand, and "hemp" and "industrial hemp," on the other, often are used interchangeably. Throughout this brief, Plaintiff uses "marijuana" to refer to marijuana/cannabis and "hemp" to refer to hemp/industrial hemp unless otherwise indicated.

[2] SSMUF refers to Plaintiff's Separate Statement of Material Undisputed Facts. JSUF refers to the parties' Joint Statement of Undisputed Facts. Both are filed contemporaneously with this motion.

[3] Emphasis added unless otherwise stated.

1   used interchangeably, and they understood that federal and California law distinguished marijuana

2   from hemp based solely on whether the delta-9 THC content was over 0.3 percent (marijuana) or

3   under 0.3 percent (hemp). SSMUF 1–5, 23–32. Indeed, Nicholson and Halverson admitted in sworn

4   responses in this litigation that as of October 2019, "The only distinction between a cannabis plant

5   and a hemp plant is the concentration of delta-9 THC in excess of 0.3 percent." Ex. 5 at 5

6   (Halverson Resp.)[4]; *see also* Ex. 95 at 4 (Nicholson Resp.) ("I understood the federal and state law

7   defined industrial hemp as containing less than 0.3% THC [defined without objection as "delta-9-

8   tetrahydrocannabinol" in the corresponding Set of Requests for Admission (RFAs), *see* Exs. 80 (1st

9   Set RFAs), 97 (Am. Resp. to 1st Set RFAs)] content.").

10      **B.    Apothio Cultivated Nine Fields of Hemp.**

11          In 2019, Apothio lawfully cultivated hemp in Kern County. SSMUF 33–48. Specifically

12   and as relevant here, in February 2019, Apothio contracted with four farmers—Mike Cauzza Farms,

13   Vandborg Farms, Stenderup Ag Partners, and Lehr Brothers—to cultivate hemp on a per-acre basis.

14   *Id.* 39–42. In March 2019, Apothio planted more than 15,000,000 hemp seeds across those farmers'

15   nine fields, amounting to nearly 450 acres of crops. *Id.* 43–47, 50. Apothio's hemp crops flourished,

16   reaching at least 13 to 14 feet tall. *Id.* 48.

17      **C.    Defendants' Testing Confirmed Apothio's Crops Were Hemp.**

18          In October 2019, Halverson applied for and obtained a warrant to seize four plant samples

19   from each of the nine fields to conduct tests to confirm that Apothio's crops were hemp "with a

20   THC content of less than 0.3%." JSUF 9–10. On October 17, 2019, law enforcement executed the

21   warrant and obtained plant samples from the fields, which they named as follows: 74 H, Cauzza 3A,

22   Lehr KH1, Stenderup 20049, Stenderup 21029, Stenderup 21119, Stenderup 21149,

23   Stenderup 33049, and Vandborg 71H. SSMUF 49–50; JSUF 12.

24          Halverson personally tested the 36 samples using a LightLab machine by taking a portion

25   of the flower from each sample, drying it in a microwave, and attempting to follow the LightLab

26   manual's instructions. SSMUF 51–57; JSUF 13. Those instructions flagged key limitations,

27   including that test results with a "marginal result confidence" message "should not be trusted for

28   _____

[4] All exhibits are lodged with the Declaration of Julian Schneider.

critical applications" like destroying crops. SSMUF 58–59, 62, 65–66. Halverson also knew that the LightLab machine had a +/- 2% absolute margin of error. *Id.* 85. This margin of error means that any test result at or under 2.3% delta-9 THC could represent a sample with no more than 0.3% delta-9 THC (0.3% test result + 2% margin of error); as a result, a test result at or under 2.3% delta-9 THC qualifies the sample as hemp. *Id.* 67–70, 85–88.

Halverson's test results demonstrate **all** of Apothio's plants on six fields and **all or nearly all** of Apothio's plants on three fields were hemp. *Id.* 59–66, 71–83, 89–94. More specifically, 19 of the 36 samples tested returned results stating that delta-9 THC was "***Not Detected***" **at all**; 13 of 36 samples tested under 2.3% delta-9 THC and therefore were presumptively hemp; and 3 of the 4 remaining samples that tested above 2.3% delta-9 THC should have been disregarded when determining whether Apothio's plants were hemp or marijuana—meaning **only one** of the 36 samples tested even possibly qualified as marijuana. *Id.* By at least October 21, Halverson and Nicholson both had the raw test results and knew, in light of the LightLab's margin of error and governing California (and federal) law, that nearly every sample was hemp. *Id.* 84–86; JSUF 14.

**D.    Defendants Obtained a Warrant Authorizing the Destruction of *Marijuana.***

Despite test results demonstrating Apothio's compliance, Nicholson and Halverson planned to eradicate **all** of Apothio's crops. SSMUF 96–97, 146–47. On October 24, 2019, Nicholson applied for and obtained a second search warrant (the "Nicholson Warrant") by including falsely inflated delta-9 THC numbers in the application. JSUF 15; SSMUF 98–141. The inflated levels included the samples' THCA content, which Nicholson and Halverson knew was legally irrelevant in 2019. SSMUF 8, 11–13, 23–32, 63–64, 132–41. The Nicholson Warrant authorized the destruction of the "amount of ***marijuana*** in excess of" specified amounts, under specific circumstances. *Id.* 142. The Warrant did **not** authorize the destruction of hemp under any circumstances. *Id.* 143–44.

**E.    Defendants Destroyed All of Apothio's *Hemp.***

The next day, on October 25, 2019, Nicholson and Halverson executed the Nicholson Warrant and seized Apothio's nine fields of crops. *Id.* 148–155; JSUF 17. During the warrant execution, Nicholson and Halverson told Apothio's farmers that either law enforcement would

4

1 destroy the crops, which would damage the farmers' land, or the farmers could destroy Apothio's

2 crops using their own equipment under law enforcement's supervision. SSMUF 157–58, 161–62.

3 Under law enforcement's supervision, the farmers eradicated Apothio's crops on the nine fields,

4 destroying nearly 10 million plants in total. *Id.* 159–60, 163–64, 171–89; JSUF 19.

## III.    Legal Standard

6      Apothio is entitled to judgment on each claim "or the part of each claim" for which "there

7 is no genuine dispute as to any material fact" and based on those facts Apothio "is entitled to

8 judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56 also allows a court to grant summary

9 judgment on part of a claim," *United States v. Sterling Centrecorp Inc.*, 208 F. Supp. 3d 1126, 1132

10 (E.D. Cal. 2016), including on each "discrete element[]," *Ramirez v. County of Los Angeles*, 397

11 F. Supp. 2d 1208, 1220 (C.D. Cal. 2005).

12      "A fact is material when . . . it could affect the outcome of the case." *Bajwa v. U.S. Life.*

13 *Ins. Co.*, 2024 WL 1344675, at *3 (E.D. Cal. Mar. 29, 2024). There is no genuine dispute for trial

14 when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving

15 party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

16      Courts use "a burden-shifting scheme. . . . 'When the party moving for summary judgment

17 would bear the burden of proof at trial, it must come forward with evidence which would entitle it

18 to a directed verdict if the evidence went uncontroverted at trial.'" *Pike v. Hester*, 205 F. Supp. 3d

19 1190, 1196 (D. Nev. 2016) (quoting *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d

20 474, 480 (9th Cir. 2000)). Once the movant satisfies its burden, the burden of proof shifts to the

21 non-movants, who must provide more than "[t]he mere existence of a scintilla of evidence in

22 support of [their] position." *Triton Energy Corp v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.

23 1995). Rather, they must cite "particular parts of materials in the record, including depositions,

24 documents, . . . interrogatory answers, or other materials," Fed. R. Civ. P. 56(c)(1)(A), "to make

25 the [required] showing," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

26      "If the evidence offered in support of the motion establishes every essential element of the

27 moving party's claim . . . there is no need to offer evidence to negate or disprove matters on which

28 the opposing party has the burden of proof at trial." *Bajwa*, 2024 WL 1344675, at *3. For

Defendants' affirmative defenses on which they bear the burden of proof at trial, Apothio's burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

**IV.    Undisputed Evidence Establishes Defendants' Liability on All Claims.**

Apothio seeks partial summary judgment on Defendants' liability for their wholesale destruction of Apothio's crops based on violations of 42 U.S.C. § 1983, the Bane Act, and state common law. For each claim, there is no genuine dispute that Defendants obtained a warrant authorizing only the destruction of marijuana, yet knowingly destroyed Apothio's hemp. By destroying Apothio's hemp, Defendants exceeded the scope of the Warrant in violation of the Fourth Amendment, the California Constitution, and state common law. Apothio is thus entitled to judgment as a matter of law on Defendants' liability. The only triable issue of fact remaining for these claims is the amount of damages Defendants caused, which is not the subject of this motion.

**A.    There Is No Genuine Dispute as to Defendants' Liability Under Section 1983.**

"To prevail under 42 U.S.C. § 1983, a plaintiff must prove that he was 'deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'" *Regino v. Staley*, 133 F.4th 951, 959 (9th Cir. 2025) (quoting *Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012)). Because the challenged conduct occurred while Nicholson and Halverson executed a search warrant, any constitutional violation stemming from the conduct occurred under color of state law. See *Cox v. Shepherd*, 199 F. Supp. 140, 142 (S.D. Cal. 1961) (stating it is "settled that an unreasonable search and seizure made by state police officers, acting under color of their authority as such, is actionable under 42 U.S.C. § 1983"). As this Court has held, Plaintiff's excessive destruction claim is based on the Fourth Amendment's "well-established" particularity requirement, which "confines an officer executing a search warrant strictly within the bounds set by the warrant." ECF 160 (Order Granting & Denying Recon. Mot.) at 5 (citation omitted). "To act beyond the scope of an initial warrant, law enforcement must seek a second warrant." *Id.*

This Court also explained:

[T]he particularity requirement of the Fourth Amendment limits an officer's power

> to search or seize, and leaves nothing to the discretion of the officer executing the warrant absent some grave emergency. Thus, a search or seizure pursuant to an otherwise valid warrant is unreasonable under the Fourth Amendment to the extent it exceeds the scope of that warrant. The Court must therefore compare the terms of the warrant to the search or seizure actually conducted.

*Id.* (cleaned up).

Accordingly, although other Fourth Amendment violations often require a factfinder to weigh evidence, violations of the particularity requirement can be ripe for resolution under Rule 56. After all, "[i]f the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990). This bright-line rule helps "assure [] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search" because the officer "does not have the power to seize anything not specified in the warrant." *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 973, 974 (9th Cir. 2005) (quoting *Groh v. Ramirez*, 540 U.S. 551, 561 (2004)).

Apothio is entitled to judgment on liability for its section 1983 claim based on Nicholson's and Halverson's violation of the Fourth Amendment when they destroyed Apothio's hemp crops during the execution of the Nicholson Warrant. As this Court already recognized, the Nicholson Warrant permitted "Defendants' destruction of Plaintiff's marijuana plants." ECF 160 at 6. The Warrant specified that for "growing or harvested cannabis" (marijuana), officers could destroy the "amount of ***marijuana*** in excess" of specified amounts that needed to be "seized/retained." SSMUF 142. The Warrant authorized only the destruction of marijuana:



Marijuana Destruction Search Warrant Release / PC 1536

1) In the case of growing or harvested cannabis, the officers serving this warrant are hereby authorized, without necessity of any further order, to destroy that amount of marijuana in excess of the following amounts. Subsequent to the seizure, and prior to destruction of any such controlled substance(s), the following criteria will be satisfied and documented on the search warrant return:

    a. At least five random and representative cannabis plant samples shall be seized/retained for evidentiary purposes.
    b. A two-pound sample shall be seized/retained for evidentiary purposes.
    c. Photographs and videos shall be taken that reasonably and accurately demonstrate the total amount of the suspected controlled substance to be destroyed.
    d. An estimated total plant count.

In making the determination to destroy excess amounts of cannabis, pursuant to this order, officers shall demonstrate it was not reasonably possible to preserve the suspected controlled substance in place, or to remove the suspected controlled substance to another location. In making this determination, the difficulty of transporting and storing the cannabis to another site and the storage facilities shall be taken into consideration. Consideration shall also be given to the availability, or unavailability, of helicopters in the removing or transportation process. Such consideration will be articulated in the search warrant return.

1    Ex. 102 at KCSO000198; *see* SSMUF 142–45. The Nicholson Warrant did not authorize

2    the destruction of hemp, in any amount, *id.* 144–45, and Nicholson and Halverson could not

3    lawfully read terms into the Warrant that did not exist. *See Hells Angels*, 402 F.3d at 973, 974.

4            ***It is undisputed*** that Nicholson and Halverson both: (1) possessed and reviewed the test

5    results for Apothio's crop samples, SSMUF 71–86; JSUF 14; (2) knew that federal and California

6    law consistently distinguished marijuana from hemp based on the plant's delta-9 THC content: any

7    Cannabis sativa L. plant with a delta-9 THC content over 0.3 percent was marijuana, and any at or

8    below that limit was hemp, SSMUF 23–32; and (3) knew that any LightLab test result with a delta-9

9    THC concentration of 2.3% or less demonstrated the sample was hemp in light of the machine's

10   margin of error, *id.* 67–70, 85–88. Therefore, ***it is also undisputed*** that Nicholson and Halverson

11   knew that ***every field*** contained hemp and, in fact, ***six fields contained no marijuana at all***.

12           Specifically, Nicholson and Halverson knew, for the field known as Vandborg 71H, ***every***

13   ***single test*** detected ***no delta-9 THC whatsoever***, demonstrating that all plants on the field were

14   hemp and not marijuana. *Id.* 73, 89. For the four fields known as Cauzza 3A, Lehr KH1, Stenderup

15   21119, and Stenderup 33049, ***every single test*** returned a result under 2.3% delta-9 THC,

16   confirming that all plants across the nearly 241 acres were hemp and not marijuana. *Id.* 76–79, 90.

17   For the field known as Stenderup 21029, ***every valid test*** found no detectible delta-9 THC,

18   confirming that all plants across the 39-acre field were hemp and not marijuana. *Id.* 74–75, 91. The

19   only test result that detected any delta-9 THC returned the message "Marginal result confidence,"

20   which Halverson knew or should have known meant that the result "should not be trusted." Ex. 125

21   ("DATA0004.csv" Native Versions Att. A Halverson Resp. Interrogatory No. 6) at cell X32;

22   SSMUF 55–56, 65–66, 74–75. Nicholson and Halverson thus knew that ***every*** valid test for the six

23   fields called Vandborg 71H, Cauzza 3A, Lehr KH1, Stenderup 21119, Stenderup 33049, and

24   Stenderup 21029 confirmed that ***all*** of Apothio's crops were hemp and not marijuana.

25           Halverson's test results for three other fields also confirmed that all or nearly all of the crops

26   were hemp and not marijuana. For the Stenderup 20049 and Stenderup 21149 fields, three of four

27   samples (75%) tested under 2.3% delta-9 THC, demonstrating those samples—and the vast

28   majority of the crops on those fields—were hemp, not marijuana. SSMUF 80, 82. For one sample

8

on each field, the test revealed a delta-9 THC content above 2.3% delta-9 THC and no detectable THCA, indicating the samples' THCA was converted to delta-9 THC when dried in the microwave. *Id.* 55–61, 80–83, 92–93. Those two results thus overstated the samples' actual delta-9 THC contents and should not have been relied on for distinguishing hemp from marijuana. *Id.* 92–93. Lastly, for the 74 H field, three of four samples (75%) tested under 2.3% delta-9 THC, again establishing the vast majority of the samples—and the crops on that field—were hemp. *Id.* 72, 94.

It is therefore ***undisputed*** that, for each of the nine fields of Apothio's crops, Nicholson and Halverson knew that all or almost all of the plants on each field were hemp and not marijuana:

| Field | Acreage | Test Results Summary | Presumption |
|---|---|---|---|
| Vandborg 71H | 41 | No delta-9 THC detected at any level | 100% Hemp |
| Stenderup 21029 | 38.79 | No valid test detected delta-9 THC | 100% Hemp |
| Cauzza 3A | 29.56 | No delta-9 THC detected above 2.3% | 100% Hemp |
| Lehr KH1 | 75.11 | | 100% Hemp |
| Stenderup 21119 | 18.48 | | 100% Hemp |
| Stenderup 33049 | 79.09 | | 100% Hemp |
| Stenderup 20049 | 33.9 | - 3 of 4 samples: No delta-9 THC above 2.3% | 100% Hemp |
| Stenderup 21149 | 54.23 | - 1 of 4 samples: Delta-9 THC above 2.3% but unreliable result due to THCA concentration | |
| 74 H | 39.16 | - 3 of 4 samples: No delta-9 THC above 2.3% <br> - 1 of 4 samples: Delta-9 THC above 2.3% | 75% Hemp 25% Marijuana |

Despite Nicholson's and Halverson's actual knowledge that nearly all of Apothio's crops were hemp, and the Nicholson Warrant's authorization to destroy only marijuana, Nicholson and Halverson completely destroyed all nine fields of Apothio's crops—***almost all of which were hemp***—when executing the Warrant. SSMUF 84–87, 142–45, 148, 157–64, 180–89.

It is further undisputed that Nicholson and Halverson worked together to ensure the total eradication of Apothio's hemp crops. Even before applying for the Nicholson Warrant, Nicholson and Halverson ***both*** planned and prepared to eradicate all of Apothio's hemp crops. *Id.* 96–97. Nicholson and Halverson ***both*** were involved in the decision to destroy Apothio's hemp crops. *Id.* 154–55. Nicholson and Halverson ***both*** were listed as "co-case agents" on the "Operations Plan"

that detailed the planned destruction of Apothio's hemp crops. *Id.* 146–47, 149–50. Nicholson and Halverson **both** executed the Nicholson Warrant on October 25, 2019, to destroy Apothio's hemp crops. *Id.* 146–50. Nicholson and Halverson **both** wrote reports covering the operation to eradicate Apothio's hemp crops, and they intended for their reports to be comprehensive when read together. *Id.* 151–52. Nicholson and Halverson **both** were present when Nicholson instructed the farmers to eradicate all of Apothio's crops. *Id.* 157–58, 161–62. Pursuant to Nicholson's orders, the farmers immediately commenced the wholesale destruction of Apothio's hemp crops under law enforcement's supervision. *Id.* 158–60, 163–64.

This Court already held, "Defendants exceeded the scope of the warrant" to the extent that they "exceed[ed] the bounds of the warrant's requirements, and immediately destroy[ed] Plaintiff's crops." ECF 160 at 6. The undisputed evidence confirms that (1) the Nicholson Warrant authorized only the destruction of marijuana; (2) Nicholson and Halverson both knew that all or nearly all of the crops on each of the nine fields were hemp; (3) Nicholson and Halverson jointly decided to destroy all of Apothio's hemp crops; and (4) Nicholson and Halverson directed and supervised the total destruction of Apothio's hemp crops when executing the Nicholson Warrant. Apothio is thus entitled to judgment on Nicholson's and Halverson's liability for violating the Fourth Amendment. *See Agro Dynamics, LLC v. United States*, 692 F. Supp. 3d 1003, 1017–18 (S.D. Cal. Sept. 19, 2023) ("Here, the alleged facts show that County Officers exceeded the scope of the search warrant (limited to marijuana) when they seized and destroyed Plaintiff's hemp plants. . . . Based on the alleged facts as recounted above, a reasonable officer would not have seized and destroyed Plaintiff's hemp plants.").

Courts in this District draw a bright line for liability based on whether the warrant execution conformed to the warrant's express terms. For example, in *Bristow v. Ester*, the Court denied the county sheriff officer's summary judgment motion and held that "[t]he Fourth Amendment's particularity requirement was not met for the search of plaintiffs' separate dwelling." 2023 WL 4409856, at *6 (E.D. Cal. July 7, 2023). The warrant in *Bristow* authorized a search of the "PREMISES" located at a specified address and further described a house to be searched as "a white single story house" with a "black security door." *Id.* at *5. But the *Bristow* Plaintiffs'

residence was not the white single-story house but rather a separate house on the property. *Id.* Because "the Search Warrant described a single residence which was clearly not the plaintiffs' residence," the subsequent search of the plaintiff's residence violated the particularity requirement. *Id.* at *6. Similarly, in *Warkentine v. Soria*, the Court denied the government's summary judgment motion because evidence indicated "the actual items taken" did not match the "specific items" identified in the warrant. 152 F. Supp. 3d 1269, 1286 (E.D. Cal. 2016). Further, courts in this District routinely find viable claims based on facts demonstrating a warrant execution that exceeds the warrant's terms. *See, e.g.*, *Jones v. City of Vallejo*, 2024 WL 2153646, at *2 (E.D. Cal. May 14, 2024) ("The type of property to be seized, currency, is not enumerated in the warrant. Plaintiff has therefore plainly stated a claim under the Fourth Amendment on the theory that the seizure exceeded the scope of the warrant."); *see also Free Spirit Organics, NAC v. San Joaquin Cnty. Bd. of Supervisors*, 2022 WL 902834, at *9 (E.D. Cal. Mar. 25, 2022) (denying motion to dismiss Fourth Amendment claim to the extent law enforcement executed a warrant at night when the magistrate "clearly checked 'No' in response to 'Night Search Approved'").

Sister district courts are in accord. For example, in *United States v. Ayala*, the Court found a Fourth Amendment violation when law enforcement officers exceeded the warrant's scope. 646 F. Supp. 3d 1191 (N.D. Cal. 2022). There, the government obtained a warrant to search defendant Ayala's residence at "21360 Santa Clara Avenue, described as ***a*** red and green structure." *Id.* at 1195 (emphasis in original). When law enforcement searched "a totally separate yellow building down the hill from the red and green structure," which was Mr. Ayala's residence, "the search of Mr. Ayala's residence violated the Fourth Amendment" because "the warrant did not authorize a search of the separate yellow building." *Id.* This was so even though the yellow building was also located at 21360 Santa Clara Avenue, the address identified in the warrant. *Id.* at 1196. The *Ayala* Court rejected the government's argument because "such an interpretation wholly ignores the particular description of the place to be searched as a 'red and green structure.'" *Id.* Ninth Circuit courts thus treat warrant terms strictly and find Fourth Amendment violations anytime officers do not comply to the letter. *See, e.g.*, *Youker v. Hillhouse*, 2023 WL 2642925, at *1 (9th Cir. Mar. 27, 2023) (reversing grant of summary judgment to the government on Fourth Amendment claim

11

1    because "[t]he warrant listed certain items subject to seizure, but the list of items seized . . . includes

2    other property"); *United States v. Williams*, 2015 WL 5138517, at *4 (N.D. Cal. Sept. 1, 2015)

3    (finding seizure of photographs not within warrant's scope and suppressing evidence).

4        There is no genuine dispute that Nicholson and Halverson violated the plain terms of the

5    Nicholson Warrant. The Warrant authorized the destruction of one category of property

6    (marijuana), but they destroyed a different category of property (hemp) while executing the

7    Warrant. They therefore violated Apothio's Fourth Amendment rights.

8        Throughout this litigation, State Defendants have claimed that Halverson was not

9    responsible for the total eradication of Apothio's hemp crops. The undisputed evidentiary record

10    demonstrates otherwise. So does binding Ninth Circuit law. Under the integral-participant theory,

11    Halverson is liable under section 1983 if he *either* (1) "knew about and acquiesced in the

12    constitutionally defective conduct as part of a common plan with those whose conduct constituted

13    the violation," *or* (2) "set in motion a series of acts by others which the defendant knew or

14    reasonably should have known would cause others to inflict the constitutional injury." *Peck v.

15    Montoya*, 51 F.4th 877, 891 (9th Cir. 2022). Halverson's conduct satisfies both.

16        *First*, the Ninth Circuit deems officers integral participants in a warrant execution under the

17    acquiescence theory when they (1) "stood armed behind" the officer who performed the

18    unconstitutional act, (2) the unconstitutional act "was part of the search operation in which every

19    officer participated in some meaningful way," and (3) "every officer was aware of the decision to

20    use the [unlawful act], did not object to it, and participated in the search operation knowing the

21    [unlawful act] was to be deployed." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004); *see

22    Bonivert v. City of Clarkson*, 883 F.3d 865, 879 (9th Cir. 2018) (holding deputies were integral

23    participants when they "developed a plan of entry" with other defendants and "provided armed

24    backup" during entry, and denying qualified immunity); *Garlick v. County of Kern*, 167 F. Supp.

25    3d 1117, 1161 (E.D. Cal. 2016) (denying state police officers' summary judgment motion based on

26    integral-participant theory where officers helped restrain a suspect who was then subject to

27    arguably excessive force). Halverson's conduct falls squarely within this Ninth Circuit authority:

28    (1) Halverson was present when Nicholson ordered the destruction of Apothio's hemp crops,

12

1  SSMUF 157–162; (2) Halverson helped plan and was the co-case agent for the Nicholson Warrant's

2  execution, *id.* 96–97, 146–54; and (3) Halverson knew of the plan to destroy Apothio's hemp crops

3  and chose to participate in the eradication operation, SSMUF 96–97, 146–55, 157–64.

4  *Second*, the Ninth Circuit finds liability under the set-in-motion theory where the defendant

5  "was the initial officer who set these events into motion, ***and*** either instructed the officers to [take

6  unconstitutional acts] or consulted with them in that decision." *Nicholson v. City of Los Angeles*,

7  935 F.3d 685, 692 (9th Cir. 2019) (emphasis in original). Halverson readily satisfies both criteria.

8  First, Halverson was the initial officer who set the events in motion. He applied for and obtained

9  the warrant to seize Apothio's crop samples, and he tested the samples himself. SSMUF 49–85.

10  Nicholson obtained the second warrant by reporting inaccurate delta-9 THC values, which

11  Halverson consulted with Nicholson to report. *Id.* 97–138. Further, Halverson prepared the initial

12  plans to destroy Apothio's hemp crops. *Id.* 96–97. Second, Nicholson and KCSO consulted with

13  Halverson on the decision to destroy Apothio's hemp crops. *Id.* 154. Pursuant to both theories,

14  Halverson is liable under section 1983 for destroying Apothio's hemp crops.

15  **B.    There Is No Genuine Dispute as to Defendants' Liability Under the Bane Act.**

16  Undisputed evidence requires partial judgment in Apothio's favor on Defendants' liability

17  under the Bane Act for Nicholson's and Halverson's destruction of Apothio's hemp crops. This

18  destruction violated Apothio's Fourth Amendment rights and its rights under Article I, section 13

19  of the California Constitution. In turn, Kern County, KCSO, and CDFW, are liable for Nicholson's

20  and Halverson's respective misconduct under Government Code section 815.2(a).

21  There is no difference between the Fourth Amendment's and the California Constitution's

22  particularity requirements. Article I, section 13 of the California Constitution "parallels the Fourth

23  Amendment inquiry." *Agro Dynamics*, 692 F. Supp. 3d at 1019 (quoting *Sanchez v. L.A. Dep't of

24  Transp.*, 39 F.4th 548, 553 (9th Cir. 2022)) (evaluating liability under the Bane Act); *see People v.

25  Robinson*, 47 Cal. 4th 1104, 1132 (2010) ("The relevant language of article 1, section 13 of the

26  California Constitution parallels the relevant language of the Fourth Amendment, and 'the issue of

27  particularity resolves itself identically under both federal and California standards.'" (citation

28  omitted)). "The Bane Act civilly protects individuals from conduct aimed at interfering with rights

13

that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'" *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (quoting Cal. Civ. Code § 52.1). Bane Act claims "may be brought against public officials . . . and qualified immunity is not available for those claims." *Id.* at 1040–41. Although a Bane Act violation may be stated "upon the same facts as [a] Fourth Amendment" claim brought under section 1983, the Bane Act requires an additional showing: the defendant must have had "a specific intent to violate" the plaintiff's right. *Id.* at 1041, 1043.

Proving specific intent has just two requirements: (1) the "right at issue [must be] clearly delineated and plainly applicable under the circumstances of the case;" and (2) "the defendant commit[ted] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by" that right. *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 803 (2017). "If both requirements are met" the defendant is liable "even if the defendant did not in fact recognize the [unlawfulness] of his act." *Id.* "[I]t is not necessary for the defendants to have been thinking in constitutional *or legal terms* at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese*, 888 F.3d at 1045 (emphasis in original) (cleaned up).

Apothio satisfies both requirements. *First*, it is long-settled black-letter law that the particularity requirement "prevents the seizure of one thing under a warrant describing another," such that "[a]s to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927); *see Hells Angels*, 402 F.3d at 974 n.11 ("*Marron* stands for the proposition that an officer has no discretion to seize items *not* listed on a warrant meeting the Fourth Amendment's particularity requirement." (emphasis in original)); *People v. Superior Court (Meyers)*, 25 Cal. 3d 67, 72 (1979) (stating under article I, section 13 of the California Constitution, "the police may search . . . and may seize only the property described in the warrant"). The particularity requirement applies here because Nicholson and Halverson obtained a warrant authorizing only the destruction of marijuana; yet knowingly destroyed Apothio's hemp. *Supra* at 7–10.

*Second*, the undisputed evidence demonstrates Nicholson's and Halverson's reckless

14

1    disregard for Apothio's constitutional rights. Nicholson and Halverson knew: (1) the Nicholson

2    Warrant authorized the destruction of marijuana; (2) at the time, marijuana and hemp were

3    distinguished only by the delta-9 THC content; and (3) the test results demonstrated that all or

4    nearly all of Apothio's crops were hemp and not marijuana. For example, Nicholson and Halverson

5    knew that *every test* for the Vandborg 71H samples found *no detectable delta-9 THC at all*,

6    demonstrating that all of the crops on that field were hemp and not marijuana. SSMUF 62, 73, 84.

7    Yet, Nicholson and Halverson destroyed all of the hemp crops on that 41-acre field, as well as all

8    hemp crops on every other field, pursuant to a warrant authorizing only the destruction of

9    marijuana. *Id.* 142–45, 164, 179, 184. This blatant disregard for the Nicholson Warrant's

10   straightforward limitation proves Nicholson's and Halverson's reckless disregard for Apothio's

11   constitutional rights. *See, e.g.*, *Agro Dynamics*, 692 F. Supp. 3d at 1019 (finding reckless disregard

12   pled where officers destroyed hemp pursuant to a warrant authorizing destruction of marijuana).

13       Nicholson's and Halverson's conduct *before* obtaining the Warrant further confirms their

14   reckless disregard for Apothio's rights. Nicholson and Halverson prepared to destroy Apothio's

15   hemp crops before even applying for the Warrant. SSMUF 96–97. After Nicholson and Halverson

16   obtained the test results, they each reviewed the results and together chose to report to the magistrate

17   wrong, inflated delta-9 THC values for nearly all of the crop samples to obtain a warrant to destroy

18   Apothio's hemp crops. *Id.* 98–141. In fact, Nicholson and Halverson knew (1) the actual delta-9

19   THC levels were the only legally relevant criteria for distinguishing hemp from marijuana, and

20   (2) the actual delta-9 THC levels for the samples, which were almost all under the legal limit.

21   SSMUF 23–32, 84. Their decision to falsely report higher delta-9 THC concentrations to the

22   magistrate to obtain a warrant underscores their wanton disregard for Apothio's rights.

23       Courts in this District routinely hold that a clear constitutional violation demonstrates

24   reckless disregard for the plaintiff's rights. *See, e.g.*, *Lennox v. City of Sacramento*, 2024 WL

25   3845378, at *31–32 (E.D. Cal. Aug. 16, 2024) (denying the government's summary judgment

26   motion and collecting cases finding Fourth Amendment violations sufficient for reckless

27   disregard); *Morse v. County of Merced*, 2017 WL 2958733, at *19 (E.D. Cal. July 11, 2017)

28   (denying the government's summary judgment motion for Bane Act claims by reference to § 1983

15

Fourth Amendment analysis); *see also Dahlin v. Frieborn*, 2022 WL 10146777, at *5 & n.6 (E.D. Cal. Oct. 17, 2022) (finding Bane Act claim stated by reference to Fourth Amendment claim for seizure of items outside warrant's scope). Here, the combination of a clear constitutional violation with Nicholson's and Halverson's knowledge of the applicable law and actual delta-9 THC values of Apothio's crops confirms Nicholson's and Halverson's reckless disregard.

Because Nicholson and Halverson are liable under the Bane Act, so are Kern County and KCSO (for Nicholson) and CDFW (for Halverson). Under Government Code section 815.2(a), public entities are "liable for injury proximately caused by an act or omission of an employee . . . within the scope of his employment." Cal. Gov't Code § 815.2(a). This establishes the entities' vicarious liability here for Nicholson's and Halverson's Bane Act violations. *See, e.g.*, *Est. of Sanchez v. County of Stanislaus*, 2023 WL 7612399, at *32 (E.D. Cal. Nov. 14, 2023) (holding county entities can be liable for employee's violation of Bane Act). It is undisputed that Nicholson and Halverson are, and were in October 2019, employees of Kern County/KCSO and CDFW, respectively, and were acting within the scope of their employment when they eradicated Apothio's hemp crops and violated the Bane Act. JSUF 2–7; SSMUF 18–19, 22.

### C.    There Is No Genuine Dispute as to Defendants' Liability in Tort.

Because Nicholson and Halverson wrongfully destroyed Apothio's hemp crops, the undisputed record evidence establishes Defendants' liability for the common law tort claims.

### 1.    Defendants Are Liable for Conversion of Apothio's Crops.

"[A] public employee is liable for injury caused by his act or omission to the same extent as a private person." Cal. Gov't Code § 820(a). Liability for conversion attaches when a plaintiff proves three elements: (1) "plaintiff's ownership or right to possession of personal property," (2) "defendant's disposition of property in a manner inconsistent with plaintiff's property rights," and (3) "resulting damages." *Voris v. Lampert*, 7 Cal. 5th 1141, 1150 (2019). "Notably absent from this formula is any element of wrongful intent or motive; in California, conversion is a 'strict liability tort.'" *Id.* (quoting *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 144 (1990)). Law enforcement officers are liable when they wrongfully damage or destroy private property. *See, e.g.*, *Drewry v. County of Riverside*, 2023 WL 2627740, at *10 (C.D. Cal. Jan. 23, 2023) (denying the

government's summary judgment motion on conversion claim for unlawful seizure and destruction of hemp plants); *Huemer v. Santa Cruz Cnty. Animal Shelter Found.*, 2024 WL 3317380, at *9–10 (N.D. Cal. June 13, 2024) (denying county agency's summary judgment motion on conversion claim for failure to return plaintiff's property seized during warrant execution); *Dahlin*, 2022 WL 10146777, at *5 (denying officers' motion to dismiss conversion claim for allegedly "seiz[ing] items beyond the scope of the search warrant").

Undisputed evidence proves each element of Apothio's conversion claim. *First*, Apothio owned the hemp plants growing on the nine fields. Apothio entered into written agreements with each of the farms to cultivate hemp on a contract per acre basis, and planted its hemp seeds on those farms, which grew into the over-13-foot plants that Defendants destroyed. SSMUF 39–44, 47–48. *Second*, Defendants destroyed all of Apothio's hemp crops on the nine fields in violation of Apothio's property rights. *Id.* 163–189; *supra* at 7–10, 15; *see, e.g.*, *Drewry*, 2023 WL 2627740, at *10; Jud. Council of Cal. Civ. Jury Instruction 2100 (Oct. 2025) ("destroying the [***insert item of personal property***]" suffices for second element (emphasis in original)). *Third*, because of Nicholson and Halverson's misconduct, Apothio could not harvest nearly 10 million hemp plants or realize the financial benefits of its grow. *See* SSMUF 165–70, 190; *see also Calaceto v. Richardson Bay Reg'l Agency*, 2025 WL 1684884, at *9 (N.D. Cal. June 16, 2025) ("Plaintiff alleges that Defendants are the ones who seized her boat, thereby completing the conversion, and that they did so without legal authority and without following procedures required by state law. This is enough.").

Kern County, KCSO, and CDFW are likewise liable for conversion under section 815.2 because of Nicholson's and Halverson's wrongdoing. *See* Cal. Gov't Code § 815.2(a); *Hernandez v. County of Marin*, 2013 WL 6055224, at *13 (N.D. Cal. Nov. 14, 2013) ("[T]he County can be held liable under Section 815.2 for any claim for which [County Officer] can be held liable.").

### 2. Defendants Are Liable for Trespass to Chattels of Apothio's Crops.

In the alternative to conversion, Defendants are liable for trespass to chattels for the wrongful dispossession of Apothio's hemp. "In cases of interference with possession of personal property not amounting to conversion, 'the owner has a cause of action for trespass.'" *Intel Corp.*

17

1  *v. Hamidi*, 30 Cal. 4th 1342, 1351 (2003) (quoting *Zaslow v. Kroenert*, 29 Cal. 2d 541, 551 (1946)).

2  To prove liability for trespass to chattels, Apothio need demonstrate only "an intentional

3  interference with the possession of personal property [that] *has proximately caused injury*." *Id.* at

4  1350–51 (emphasis in original) (citation omitted). Here, the undisputed evidence proves Apothio's

5  trespass claim: (1) Apothio owned its hemp crops; (2) Nicholson and Halverson wrongfully

6  dispossessed Apothio of its hemp crops; (3) Nicholson and Halverson intentionally executed the

7  Warrant to destroy Apothio's hemp crops; and (4) Apothio was injured as a result. *Supra* at 7–10,

8  15, 17. Kern County, KCSO, and CDFW are again liable for Nicholson's and Halverson's

9  misconduct. *See* Cal. Gov't Code § 815.2(a); *Hernandez*, 2013 WL 6055224, at *13.

10    **D.    There Is No Genuine Dispute as to Defendants' Liability for Negligence.**

11    By wrongfully destroying Apothio's hemp crops during the warrant execution, Nicholson

12  and Halverson—and Kern County, KCSO, and CDFW under section 815.2(a)—are liable for their

13  negligent conduct. "To prevail on a common law claim of negligence against a police officer,

14  [Apothio] must show that (1) the officer owed [Apothio] a duty of care; (2) the officer breached the

15  duty by failing 'to use such skill, prudence, and diligence as other members of [the] profession

16  commonly possess and exercise;' (3) there was a 'proximate casual connection between the

17  [officer's] negligent conduct and the resulting injury' to [Apothio]; and (4) the officer's negligence

18  resulted in 'actual loss or damage' to [Apothio]." *Kong Meng Xiong v. City of Merced*, 2015 WL

19  4598861, at *37 (E.D. Cal. July 29, 2015) (quoting *Harris v. Smith*, 157 Cal. App. 3d 100, 104

20  (1984)). The undisputed evidence proves all four elements.

21    First, "[p]olice officers have a duty of care to act reasonably" in the performance of their

22  duties that "largely mirrors" their obligations under the Fourth Amendment. *Q.M. v. County of Los*

23  *Angeles*, 2025 WL 1148283, at *11 (C.D. Cal. Mar. 18, 2025) (citing *Hayes v. County of San Diego*,

24  57 Cal. 4th 622, 629 (2013)). Nicholson and Halverson owed Apothio a duty of care to act

25  reasonably when executing the Nicholson Warrant, including abiding by the Warrant's terms.

26    Second, "[a] police officer breaches a duty of care when he fails to use such skill, prudence,

27  and diligence as other members of [the] profession commonly possess and exercise." *Ashley v. City*

28  *& County of San Francisco*, 2014 WL 4627736, at *14 (N.D. Cal. Feb. 4, 2014) (quoting *Harris*,

18

157 Cal. App. 3d at 104). Nicholson and Halverson breached their duty of care by destroying Apothio's hemp in violation of the Warrant's limit to destroy only marijuana. See *Drewry*, 2023 WL 2627740, at *11 (denying the government's summary judgment motion for seizure of hemp pursuant to invalid warrant and holding Fourth Amendment violation established negligence); *Young v. County of Los Angeles*, 655 F.3d 1156, 1170 (9th Cir. 2011) ("Because the Fourth Amendment violation alleged by Young also suffices to establish the breach of a duty of care under California law, we reverse the district court's dismissal of Young's state law negligence claim."); *Atkinson v. County of Tulare*, 790 F. Supp. 2d 1188, 1211 (E.D. Cal. 2011) ("Plaintiffs' claim for negligence . . . [is] measured by the same reasonableness standard of the Fourth Amendment." (collecting cases)); *Green v. Bd. of Regents of the Univ. of Cal.*, 2021 WL 6751903, at *6 (C.D. Cal. Oct. 22, 2021) ("Under California law, a well-pleaded constitutional violation serves to establish the breach of a defendant's duty of care for negligence purposes.").

Third, causation is met when the challenged conduct "is a substantial factor in bringing about the injury . . . [which] may be determined as a matter of law when reasonable persons could not dispute the absence of causation." *Ashley*, 2014 WL 4627736, at *14 (*quoting Desrosiers v. Flight Int'l of Fla. Inc.*, 156 F.3d 952, 956 (9th Cir. 1998)). Here, there is no reasonable dispute about causation: Nicholson's and Halverson's destruction of Apothio's hemp crops was the direct and proximate cause of Apothio's injury (loss of its crops and lost revenue). The farmers testified that they would not have destroyed the hemp crops if not ordered to do so by law enforcement. SSMUF 158–60. Apothio was in the process of harvesting its hemp crops on the day Defendants executed the Nicholson Warrant. *Id*. 165–70. Apothio would not have been harmed if Nicholson and Halverson had not exceeded the Nicholson Warrant's scope.

Finally, Apothio suffered harm as discussed above. *Id*. 190; see also Jud. Council of Cal. Civ. Jury Instruction 400 (Oct. 2025) (stating "harm" element is "all-purpose" and includes "loss," "injury," or "damage"). Apothio will establish the amount of harm at the damages trial.

## V.    There Is No Genuine Dispute as to Defendants' Affirmative Defenses.

County Defendants pled 10 affirmative defenses in their joint answer. ECF 134 at 14–15. State Defendants pled 18 affirmative defenses in theirs. ECF 136 at 9–11. No record evidence

19

creates a genuine dispute of fact for any affirmative defense, and Apothio is entitled to judgment as a matter of law on each one.

### A.    Defendants Are Not Entitled to Qualified Immunity.

"[Q]ualified immunity is not available for [Bane Act] claims," *Reese*, 888 F.3d at 1040–41, nor does it "protect the Officers from common law state torts," *Briones v. City of Ontario*, 2018 WL 6017037, at *12 (C.D. Cal. May 21, 2018) (citing *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013)). Accordingly, qualified immunity only even possibly applies to Apothio's § 1983 claim, but Nicholson and Halverson are not entitled to qualified immunity.

"In determining whether an officer is entitled to qualified immunity, [courts] consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Agro Dynamics*, 692 F. Supp. 3d at 1015 (quoting *Longoria v. Pinal County*, 873 F.3d 699, 704 (9th Cir. 2017)) (alteration in original). "A right is 'clearly established' when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right," such that "existing precedent . . . placed the statutory or constitutional question beyond debate." *D'Braunstein v. Cal. Highway Patrol*, 131 F.4th 764, 771 (9th Cir. 2025) (cleaned up).

Apothio satisfies both elements. *First*, for the reasons discussed, Nicholson and Halverson violated Apothio's Fourth Amendment rights when they exceeded the Warrant's scope. *Second*, it has been clearly established for nearly a century that the Fourth Amendment's particularity requirement "prevents the seizure of one thing under a warrant describing another," such that "[a]s to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927); *see Hells Angels*, 402 F.3d at 974 n.11 ("*Marron* stands for the proposition that an officer has no discretion to seize items ***not*** listed on a warrant meeting the Fourth Amendment's particularity requirement. As the search warrant delineates the officer's power to search, the officer has no 'discretion' to exceed that power." (emphasis in original)); *Richter v. City of Renton*, 2012 WL 5194088, at *6 (W.D. Wash. Oct. 19, 2012) ("The Supreme Court's *Marron* decision clearly established that a search that goes beyond the scope of a warrant is unreasonable and violates the Fourth Amendment."); *Ellertson v. City of Mesa*, 2016 WL 97538,

20

1    at \*4 (D. Ariz. Jan. 8, 2016) ("The scope of the right to search and seize property was defined by

2    the warrant and exceeding that scope violates the clearly established rights of the Plaintiffs. This

3    principle has been long established." (collecting cases)); *see also Dahlin v. Frieborn*, 859 F. App'x

4    69, 71 (9th Cir. 2021) (reversing dismissal of § 1983 claim for seizing "items outside the scope of

5    the warrant" and holding "law is clearly established that a search may not exceed the scope of"

6    warrant (quoting *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004))).

7            When Nicholson and Halverson destroyed Apothio's hemp pursuant to a warrant permitting

8    only the potential destruction of marijuana, they violated a clearly established constitutional right

9    and therefore are not entitled to qualified immunity for liability stemming from that violation. *See*

10   *Agro Dynamics*, 692 F. Supp. 3d at 1017 ("'[T]he law is clearly established that a search may not

11   exceed the scope of the search warrant.' Here, the alleged facts show that County Officers exceeded

12   the scope of the search warrant (limited to marijuana) when they seized and destroyed Plaintiff's

13   hemp plants." (quoting *KRL*, 384 F.3d at 1117)) (holding no qualified immunity for destruction of

14   hemp plants in September 2019).

15          **B.      Apothio Complied with the Government Claims Act and Timely Filed Suit.**

16          Apothio timely filed a claim pursuant to the Government Claims Act to each of Kern County

17   and the State of California. SSMUF 191–92, 194. Both entities rejected Apothio's claims.

18   SSMUF 193, 195. The claim submitted to the State of California was also deemed rejected 45 days

19   after it was submitted on December 18, 2019. SSMUF 194–95; Cal. Gov't Code § 911.6(c).

20   Apothio timely filed suit on April 10, 2020, within the window the Government Claims Act

21   prescribes. SSMUF 196; Cal. Gov't Code § 945.6.

22          Apothio also filed suit within six months of Defendants' wrongful conduct, SSMUF 196,

23   well within any applicable limitations period. No evidence supports Defendants' baseless claim

24   that Apothio did not fully comply with the Government Claims Act or was untimely in filing suit.

25          **C.      No Statutory Immunities Bar Defendants' Liability.**

26          County Defendants apparently intend to seek refuge under Government Code sections

27   820.2, 820.4, and 821.6. ECF 134 at 14. State Defendants attempt to invoke immunities under

28   sections 815, 815.2, 815.4, and 820.8. ECF 136 at 9–10. The Government Code cannot bar liability

1  imposed by federal statute, *see Cal. Corr. Peace Officers Ass'n v. Virga*, 181 Cal. App. 4th 30, 38

2  (2010), and the undisputed record evidence confirms the Government Code does not shelter any

3  Defendants from liability.

4       *First*, section 820.2 immunizes a public employee "for an injury resulting from his act or

5  omission where the act or omission was the result of the exercise of the discretion vested in him."

6  Cal. Gov't Code § 820.2. "[T]he California Supreme Court has held that this immunity applies ***only***

7  to policy decisions, ***not*** to operational decisions like the decision to enter" a residence in violation

8  of the Fourth Amendment. *Mendez v. County of Los Angeles*, 897 F.3d 1067, 1084 (9th Cir. 2018);

9  *see Caldwell v. Montoya*, 10 Cal. 4th 972, 981, 982 (1995) (explaining that "immunity applies only

10  to ***deliberate and considered*** policy decisions," not to decisions that implement policy, such as an

11  officer's "negligent conduct of a traffic investigation once undertaken" (emphasis in original)).

12  Nicholson's decision to destroy Apothio's hemp was an "operational decision[] by the police

13  purporting to apply the law," not a policy decision by a "coordinate branch of government." *Sharp*

14  *v. County of Orange*, 871 F.3d 901, 920 (9th Cir. 2017) (citation omitted); *see Collins v. City of*

15  *Colton, Cal.*, 2015 WL 13908097, at *6 (C.D. Cal. Oct. 19, 2015) (finding "decision to seize

16  [property] does not constitute a 'basic policy decision' within the scope of section 820.2").

17       *Second*, section 820.4 immunizes an "act or omission, exercising due care, in the execution

18  or enforcement of any law." Cal. Gov't Code § 820.4. "[T]he exercise of due care required by this

19  provision presupposes the employee was not negligent or acting in an intentionally injurious

20  manner." *Green v. County of Yuba*, 2019 WL 827638, at *5 (E.D. Cal. Feb. 21, 2019); *see Neylon*

21  *v. County of Inyo*, 2017 WL 3670925, at *11 (E.D. Cal. Aug. 25, 2017) ("[W]hen a claim of

22  negligence is alleged against a government employee, § 820.4 merely amounts to a denial that due

23  care was not exercised and thus, is redundant."). As demonstrated above, the undisputed record

24  evidence establishes that Nicholson acted negligently and with reckless disregard for Apothio's

25  rights. Section 820.4 therefore does not apply.

26       *Third*, section 821.6 protects public employees from liability when they "institut[e] or

27  prosecut[e] any judicial or administrative proceeding within the scope of [their] employment." Cal.

28  Gov't Code § 821.6. "[T]he Ninth Circuit has interpreted the Supreme Court of California's

22

1 caselaw to expressly limit Section 821.6's reach to malicious prosecution claims." *Agro Dynamics*,

2 692 F. Supp. 3d at 1018 (citing *Garmon v. County of Los Angeles*, 828 F.3d 837, 847 (9th Cir.

3 2016)). The California Supreme Court subsequently held that section 821.6 immunizes only "the

4 institution or prosecution of an official proceeding," and ***not*** any law enforcement investigations

5 because "investigations need not, and often do not, lead to the institution or prosecution of any

6 proceedings." *Leon v. County of Riverside*, 14 Cal. 5th 910, 922, 923 (2023). Apothio's claims stem

7 from the execution of a warrant, not "the initiation or prosecution of proceedings;" thus, "section

8 821.6 immunity does not apply." *Agro Dynamics*, 692 F. Supp. 3d at 1018 (citation omitted).

9 Indeed, Nicholson did not even arrest Apothio's CEO during the warrant execution. SSMUF 156.

10    *Fourth*, section 815 bars liability "[e]xcept as otherwise provided by statute," but State

11 Defendants' liability ***is*** provided by statute. *See, e.g.*, 42 U.S.C. § 1983; Civ. Code § 52.1; Gov't

12 Code §§ 815.2(a), 820(a). *Fifth*, section 815.2 bars public entity liability ***only*** when employees are

13 immune from suit. Halverson is not entitled to any immunity, and State Defendants point to none.

14 *Sixth*, section 815.4 restricts a public entity's liability for an independent contractor, but Halverson

15 was a Lieutenant of CDFW in October 2019, JSUF 6–7, and no evidence exists to suggest he acted

16 as an independent contractor when performing as a full-time CDFW employee.

17    *Finally*, section 820.8 limits a public employee's liability for injuries caused by other

18 persons. Apothio's claims hold Halverson responsible for his own unconstitutional, wrongful

19 conduct under federal and state law, not the conduct of others. *See* Cal. Gov't Code § 820.8

20 ("Nothing in this section exonerates a public employee from liability for injury proximately caused

21 by his own negligent or wrongful act or omission.").

   **D.**  **Eleventh Amendment Immunity Does Not Bar Judgment.**

23    County sheriff's officers (Nicholson and Youngblood) and CDFW each assert Eleventh

24 Amendment immunity. ECF 134 at 14; ECF 136 at 10. Both positions fail.

    **1.**  **County Defendants Cannot Invoke Eleventh Amendment Immunity.**

26    County Defendants expressly invoke immunity only as to Nicholson and Youngblood, ECF

27 134 at 14, but the Eleventh Amendment ***never*** imposes a "bar [to] claims against state officials in

28 their ***personal*** capacities," *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992) (emphasis in

1  original). Moreover, neither Nicholson nor Youngblood are state officials and thus cannot claim

2  Eleventh Amendment immunity. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 369, 368

3  (2001) ("[T]he Eleventh Amendment does not extend its immunity to units of local government,"

4  like "cities and counties."). The Ninth Circuit and courts in this District have thus held California

5  sheriff's officers are not state actors. *See Brewster v. Shasta County*, 275 F.3d 803, 807 (9th Cir.

6  2001) (holding "Shasta County Sheriff acts for the County, not the state, when investigating crime

7  in the county"); *Jackson v. Barnes*, 749 F.3d 755, 766 (9th Cir. 2014) (reaffirming *Brewster*'s

8  holding); *Nelson v. County of Sacramento*, 926 F. Supp. 2d 1159, 1168 (E.D. Cal. 2013) (collecting

9  cases in this district "finding a sheriff is a local actor when investigating crime"). The same is true

10  for Nicholson and Youngblood. JSUF 2–4 (re Nicholson); SSMUF 20–21 (re Youngblood).

## 2.    CDFW Waived Any Eleventh Amendment Immunity.

12        The State waived its Eleventh Amendment immunity because "[it]s conduct during the

13  litigation clearly manifests acceptance of the federal court's jurisdiction or is otherwise

14  incompatible with an assertion of Eleventh Amendment immunity." *Hill v. Blind Indus. & Servs.*

15  *of Md.*, 179 F.3d 754, 759 (9th Cir. 1999) (collecting cases). For example, the Ninth Circuit

16  affirmed waiver when a state invoked immunity too late in the proceedings because a contrary

17  holding would "let[] states have unfair tactical advantages by invoking federal jurisdiction and then

18  subsequently challenging that jurisdiction." *In re Bliemeister*, 296 F.3d 858, 862 (9th Cir. 2002).

19  Accordingly, where a state "ma[kes] a tactical decision to argue the merits of the case," it waives

20  immunity. *Id.*; *see Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (stating "tak[ing] actions

21  indicating consent to the litigation" waives immunity).

22        CDFW has actively and intentionally litigated this case on the merits for more than five

23  years without seeking dismissal pursuant to the Eleventh Amendment. SSMUF 197–231. In the

24  past year alone, CDFW served Rule 45 subpoenas to obtain depositions of four non-party witnesses

25  and documents from three other non-parties, *id.* 201–02, 206–11; deposed Apothio's principal

26  officers, *id.* 212–13; participated in over 10 party depositions, *id.* 212–15, 217–25; repeatedly

27  sought extensions of discovery deadlines so it would have ***more*** time to engage in discovery,

28  *id.* 227–30; and designated three expert witnesses whose testimony CDFW intends to present at

trial, *id.* 231. CDFW also engaged in extensive written discovery, including after the close of fact discovery. *Id.* 200, 205, 230. Indeed, on March 12, 2026, CDFW even filed a motion for summary judgment seeking an adjudication from this Court on the merits of Apothio's claims. SSMUF 232. Because CDFW intentionally and knowingly litigated this case on the merits for more than five years, thereby "indicating consent to the litigation," *Pistor*, 791 F.3d at 1111, and demonstrating CDFW's "tactical decision to argue the merits of the case" in this Court, *In re Bliemeister*, 296 F.3d at 862, this Court should reject CDFW's attempt to shield itself from liability using the Eleventh Amendment.

####       E.       No Evidence Supports Defendants' Other Affirmative Defenses.

County and State Defendants pled a litany of other baseless defenses: unripe; failure to allege sufficient facts; failure to mitigate damages; damages caused by Plaintiff or others; lack of standing; acted in good faith to comply with all state laws and properly exercised duties without malice; estoppel; assumption of risk; unclean hands; waiver; collateral estoppel; issue preclusion; res judicata; witness immunity; and laches. County and State Defendants have failed to identify ***any*** evidence in the record that creates a genuine dispute of material fact as to any of these meritless defenses. Apothio therefore is entitled to summary judgment on them all.

#### VI.    Conclusion

Defendants knew that Apothio operated a massive legal hemp operation and yet recklessly disregarded Apothio's constitutional rights by choosing to ignore the Nicholson Warrant's limits and instead to destroy all of Apothio's legal property. No material facts remain in dispute to establish liability and Apothio therefore respectfully requests the Court: (1) enter judgment on liability against Nicholson and Halverson for its section 1983 claim, (2) enter judgment against Nicholson, Halverson, Kern County, KCSO, and CDFW for its Bane Act, conversion or trespass, and negligence claims, and (3) advance the action to trial on damages. Apothio further respectfully requests the entry of judgment in its favor on all of Defendants' affirmative defenses.

1     Dated: March 12, 2026                    SUSMAN GODFREY L.L.P.

2

3                                              By/s/   *Julian Schneider*
                                                 Marc M. Seltzer
4                                                Bryan Caforio
                                                 Oleg Elkhunovich
5                                                Jesse-Justin Cuevas
                                                 Julian Schneider
6                                                SUSMAN GODFREY L.L.P.
                                                 1900 Avenue of the Stars, Suite 1400
7                                                Los Angeles, CA 90067
                                                 mseltzer@susmangodfrey.com
8                                                bcaforio@susmangodfrey.com
                                                 oelkhunovich@susmangodfrey.com
9                                                jcuevas@susmangodfrey.com
                                                 jschneider@susmangodfrey.com
10                                               Telephone: (310) 789-3100
                                                 Facsimile: (310) 789-3150
11
                                                 *Attorneys for Plaintiff Apothio, LLC*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Notice of Motion and Motion for Partial Summary Judgment
Case No. 1:20-cv-00522-JLT-CDB

## CERTIFICATE OF SERVICE

I certify that on March 12, 2026, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's ECF system.

/s/     *Julian Schneider*
Julian Schneider

Plaintiff's Notice of Motion and Motion for Partial Summary Judgment
Case No. 1:20-cv-00522-JLT-CDB