# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| APOTHIO, LLC, | Case No. 1:20-cv-00522-JLT-CDB |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR RECONSIDERATION OF THE MAGISTRATE JUDGE'S ORDER[1] |
| v. | |
| KERN COUNTY; KERN COUNTY SHERIFF'S OFFICE; CALIFORNIA DEPARTMENT OF FISH AND WILDLIFE; DONNY YOUNGBLOOD; JOSHUA NICHOLSON; ANDREW HALVERSON, and CHARLTON H. BONHAM | (Docs. 221, 222) |
| Defendants. | |

The motion before the Court represents the columniation of a yearlong discovery dispute between Plaintiff Apothio, LLC ("Plaintiff") and Defendants Kern County (the "County"), Kern County Sherriff's Office ("KCSO"), Sheriff Donny Youngblood, and Sergeant Joshua Nicholson

---

[1] Plaintiff notes that County Defendants failed to comply with Local Rule 303, which specifies that this type of request shall be captioned "Request for Reconsideration by the District Court of Magistrate Judge's Ruling." E.D. Local Rule 303(c). Because it is nonetheless clear that County Defendants seek review authorized by 28 U.S.C. § 636(b)(1)(a) and Rule 72(a) of the Federal Rules of Civil Procedure, the motions at Docs. 221 and 222 are construed as being brought pursuant to Local Rule 303(c) and will be addressed by the Court as such.

1

(collectively, "County Defendants").[2] Pursuant to Rule 72 of the Federal Rules of Civil Procedure, County Defendants seek review of the magistrate judge's order granting Plaintiff's motion to compel discovery and imposing sanctions. (Doc. 221.) For the reasons set forth below, County Defendants' motion for reconsideration is **GRANTED IN PART** and **DENIED IN PART**.

## I.      Background

As the parties are aware, this case concerns Plaintiff's allegations that County Defendants unlawfully destroyed approximately 500 acres of Plaintiff's industrial hemp plants. (*See generally* FAC, Doc. 88.) For over a year, the parties have been entangled in a scorched-earth discovery dispute, resulting in Plaintiff filing three motions to compel (*See* Docs. 174, 185, 212)[3] and the magistrate judge issuing several orders directing County Defendants to comply with basic discovery obligations. (*See* Docs. 181, 189, 221.) While the minutiae of this discovery dispute have been rehashed over several previous orders, the Court elects to do so again here and mirror the approach of the magistrate judge, who did "not approach [County] Defendants' most recent, alleged discovery abuses in a vacuum, but rather, with the benefit of the context of [County] Defendants' earlier discovery misconduct." (Doc. 221 at 2.)  *See Adriana Int'l Corp.*, 913 F.2d at 1144-12 ("In evaluating the propriety of sanctions, we look at all incidents of party's misconduct.")

### A.  Plaintiff's Requests for Production

The genesis of this dispute can be traced to Plaintiff's service of its first set of Requests for Production ("RFPs") to KCSO and the County on December 12, 2024. (Doc. 204-2; Doc. 204-

---

[2] Defendants Kern County, Kern County Sheriff's Office, Sheriff Donny Youngblood, and Sergeant Joshua Nicolson are all represented by attorney John Whitefleet from the law firm Porter Scott.

[3] An additional motion to compel was filed while this motion was under submission. (Doc. 228.)

3.)[4] On January 13, 2025, KCSO and the County served objections, which the magistrate judge described as consisting of vague, conclusory, boilerplate, and otherwise meritless. (Docs. 181 at 5, 11-23; 204-4; 204-5; Doc. 189 at 7.)

On January 22, 2025, at Plaintiff's request, the parties met and conferred by video teleconference, resulting in County Defendants allegedly agreeing to reconsider their positions on several of Plaintiff's RFPs, produce documents in response to others, and conduct additional searches. (Doc. 163 at 2-3, 7; Doc. 163-13 at 3.) Plaintiff also agreed to refine the timeframe and scope of several of its RFPs. (*Id.*) Over the course of the following seven weeks, Plaintiff claimed County Defendants "refused to comply with their basic civil discovery obligations" and "instead altogether ignored Plaintiff Apothio's repeated overtures to negotiate a compromise." (Doc. 163 at 2.) The record shows that on January 23, January 31, February 5, and February 12, Plaintiff followed up with County Defendants to continue discussions on the RFPs but did not receive a response (Doc. 163-13 at 1-5).[5] Counsel for County Defendants countered that "there [was] no 'refusal' to meet and confer," and instead attributed the failure to respond to Plaintiff's email inquiries as "just inattentiveness." (Doc. 163 at 8.)

By the time the parties filed a "Joint Informal Discovery Letter Brief Regarding Pending Discovery Dispute" (Doc. 163) on March 14, 2025, Plaintiff claimed County Defendants had produced a total of 164 pages of documents since discovery began, had not produced any documents in response to Plaintiff's December 12 RFPs, and made blanket and non-specific

---

[4] Plaintiff served 24 RFPs to both KSCO and Kern County, respectively. (Doc. 204-2; Doc. 204-3.) Plaintiff also served interrogatories ("ROGs") to County Defendants on December 12, 2024. (Doc. 163-7 at 2-9.) Although there was an ensuing dispute regarding the ROGs (*See generally* Doc. 170), the Court declines to address the ROGs in further detail as they are not at issue in the instant motion.

[5] Plaintiff's counsel alleges that, during the period in which County Defendants failed to respond to Plaintiff's correspondence about its discovery requests, County Defendants negotiated and drafted a proposed protective order. (Doc. 163 at 3.)

objections to Plaintiff's RFPs. (Doc. 163 at 1-2, 5.)[6] In response, County Defendants proffered that (1) a motion to compel was premature, given County Defendants' willingness to provide amended responses based on prior meet and confer efforts, and (2) Plaintiff's RFP's at issue were "redundant to, or subsumed in prior requests." (*Id*. at 7.)

On March 18, 2025, the magistrate judge authorized Plaintiff to file a motion to compel "pursuant to Fed. R. Civ. P. 37 to request the relief identified in the parties' joint letter brief." (Doc. 164.) On March 31, 2025, County Defendants served amended responses, asserted no objections to Plaintiff's RFPs (Doc. 204-6; 204-7), and produced to Plaintiff "a single unitized document of 567 pages consisting solely of police reports and exhibits with no internal emails or other documents." (Doc. 212 at 5.)

### B. Plaintiff's Notices of Deposition

On March 28, 2025, Plaintiff served notices of depositions ("NOD") on County Defendants. (*See generally* Doc. 183-1; Doc. 183-2.) On April 29, 2025, County Defendants served written objections. (Doc. 183-3.) Plaintiff alleges that during a meet and confer via video teleconference on May 16, 2025, Plaintiff again agreed to narrow and clarify several of the NOD topics. (Doc. 183-4.) Following the meet-and-confer, Plaintiff attempted to contact County Defendants twice, first on May 20, 2025 and then again on June 13, 2025 (Doc. 183-4), but did not receive a response. The parties again conferred on June 25, 2025 and discussed Plaintiff's amended responses to County Defendants' first set of RFPs, the production of privilege logs, Plaintiff's 30(b)(6) Topics, and Plaintiff's upcoming filing of a motion to compel. (Doc. 183-6.) In particular, County Defendants "agreed to identify any outstanding issues with the [30(b)(6)] Topics other than the "discovery into discovery" Topics by Monday [June 29, 2025]." (Doc. 183-6.)

### C. Plaintiff's First Motion to Compel

---

[6] Plaintiff's counsel specifically stated in the "Joint Informal Discovery Letter Brief Regarding Pending Discovery Dispute" that they were not seeking sanctions for County Defendants' refusal to meet and confer. (Doc. 163 at 3.)

In its first motion to compel filed on June 25, 2025, Plaintiff sought, *inter alia,* an order from the Court directing County Defendants to amend their responses and produce documents responsive to one of Plaintiff's RFPs. (*See generally,* Doc. 174.) County Defendants did not file an opposition. In granting Plaintiff's first motion to compel, the magistrate judge determined that County Defendants had not "exhibited an acceptable level of good faith cooperation in attempting to resolve the discovery disputes" and "had refused Plaintiff's repeated requests to amended plainly non-responsive discovery answers and meritless and improper objections." (Doc. 181 at 5, 8-13; Doc. 221 at 2.) The magistrate judge also found that County Defendants had "acted with unreasonable intransigence" and stonewalled Plaintiff in failing to engage in good faith meet and confer efforts to resolve the dispute despite Plaintiff's repeated attempts for more than a month. (*Id*.) Present in the magistrate judge's order was the first volley of warnings to County Defendants: "that in serving amended discovery responses, any failure to comply either with the letter or spirt of the rulings set forth herein may result in the imposition of sanctions." (Doc. 181 at 6)

### D. Plaintiff's Second Motion to Compel

On May 7, 2025, Plaintiff served additional RFPs to KCSO and the County, and a first set of RFPs to Defendants Youngblood and Nicholson (Docs. 204-8; 204-9; 204-10, 204-11), to which County Defendants served initial responses on June 6, 2025 and amended responses on July 25, 2025. (Doc. 204 at 3; Doc. 225 at 6). Plaintiff alleges County Defendants initially refused to produce any documents but then backtracked and claimed the only search term used was "Apothio, which did not identify any additional documents. (*Id*.; Doc. 204 at 5.)

On August 14, 2025, Plaintiff filed its second motion to compel seeking the following: (1) for County Defendants to produce a competent witness for deposition pursuant to Plaintiff's notices served pursuant to Fed.R.Civ.P. 30(b)(6), and (2) for County Defendants, Donny Youngblood, and Joshua Nicholson to produce documents in response to Plaintiff's RFPs (*See generally,* Docs. 183, 185.) Prior to the filing of the second motion to compel, the parties presented the various discovery disputes to the Court via the Court's informal discovery dispute procedures. (Doc. 183.) However, the Court vacated a discovery dispute conference scheduled for

August 13, 2025, because County Defendants did not agree to resolve the discovery disputes informally and authorized Plaintiff to file a motion to compel. (Doc. 184.)[7]

On August 29, 2025, the magistrate judge granted Plaintiff's second motion to compel in part, directing County Defendants to (1) produce within 21 days of the order a witness or witnesses for a deposition and make a good faith effort to prepare and equip their designees to answer questions regarding the noticed Rule 30(b)(6) deposition subjects, including ESI search methodology, (2) serve amended responses to Plaintiff's RFPs, including as applicable, a statement for each RFP response whether any responsive documents are withheld and the basis for withholding, a privilege log, and (3) produce documents responsive to Plaintiff's RFPs. (Doc. 189 at 16.) Citing County Defendants failure to reasonably engage with Plaintiff over the course of two months in its meet and confer solicitations regarding the depositions, the magistrate judge found County Defendants to have "engaged in sanctionable conduct by refusing to appear for deposition without moving the Court for a protective order, as required, thereby shifting the burden on Plaintiff to seek relief." (Doc. 189 at 5.) Furthermore, the magistrate judge found that "Defendants' misconduct [was] aggravated given that their asserted grounds for refusing to appear for deposition are meritless, (Doc. 189 at 5-9)[8] and cautioned County Defendants on three separate instances that failure to make a competent Rule 30(b)(6) witness available for deposition or serve amended discovery responses and documents in violation of the August 29 Order "may

[7] In the parties' "Joint Informal Letter Brief Regarding Pending Discovery Dispute" (Doc. 183), County Defendants "beg[ged] the court for authorization to move to compel" Plaintiff's full and complete amended responses to numerous RPDs. (*Id*. at 10.) In the August 12, 2025 Minute Order authorizing Plaintiff to file a motion to compel (Doc. 184), the magistrate judge denied without prejudice County Defendants' request for authorization to file a motion to compel, citing County Defendants failure to engage in good faith efforts to meet and confer with Plaintiff regarding their separate discovery disputes. (Doc. 183. at 7.)

[8] The County refused and objected to producing a Rule 30(b)(6) witness because (1) all the of information sought could have been obtained from deposing KCSO's Rule 30(b)(6) witness, (2) there were no claims against the County that warrant a deposition insofar as the operative *Monell* claim was based on Youngblood as a policy maker for KCSO and not the County, (3) Plaintiff's noticed deposition topics were akin to a "fishing expedition" and not sufficiently particular or proportional to the needs of the case, and (4) permitting the request deposition testimony about discovery related conduct would be "improper and/or premature." (Doc. 189 at 5.) In the August 29 Order, the magistrate judge admonished County Defendants for raising these arguments for the first time in their opposition to Plaintiff's second motion to compel and never during the extensive meet and confer efforts over the course of two months. (*Id*.) (describing County Defendants' conduct as "the antithesis of good faith").

6

be grounds for sanctions, including evidentiary sanctions." (Doc. 189 at 8, 15, 16.)

**E. Plaintiff's Third Motion to Compel and Rule 30(b)(6) Deposition**

On September 2, 2025, twenty-four days before the close of fact discovery, Plaintiff noticed the Rule 30(b)(6) depositions for September 11, 2025. (Docs. 204-26; 204-27.) The parties initially agreed that Defendant Nicholson would testify regarding several 30(b)(6) topics on September 10, with the balance to be covered by witness(es) on September 11. On September 10—the day of the Nicolson deposition—County Defendants for the first time stated their refusal to produce any witnesses for the remaining topics, despite their earlier agreement. (Doc. 204-28 at 5.). On September 15, 2025, Plaintiff contacted the Court for further relief, and the Court authorized Plaintiff to file a motion to compel. (Doc. 195.) On September 17, 2025, "before Plaintiff could file its third motion to compel," County Defendants served amended responses in which they represented there were no responsive documents to Plaintiff's requests. (Docs. 204-20; 2024-21; 204-22; 204-23.)

According to deposition transcript excerpts cited by the Plaintiff, the two witnesses who testified on September 19, 2025, were unprepared to testify as to County Defendants' ESI search methodology; they could not identify which search terms used, who selected the search terms, what custodians were searched, which equipment was searched, or whether any hard copy documents. (Doc. 212 at 3.) Following the seemingly deficient Rule 30(b)(6) depositions, the record shows that on September 19 (Doc. 204-29), September 22 (Doc. 204-30 at 2), September 23 (Doc. 204-31 at 2), and September 29, 2025 (Doc. 204-32 at 2), Plaintiff attempted to resolve the disputes with County Defendants via email, but ultimately requested a discovery conference with the Court when they did not receive any response from County Defendants. (Doc. 204-1 at 3.)

On October 8, 2025, the parties filed a 529-page "Joint Informal Letter Brief Regarding Pending Discovery Dispute" concerning the latest discovery roadblocks, including "County Defendants' refusal to (1) comply with their discovery obligations under the Court's ESI Order, ECF 199; (2)  respond to Plaintiff's inquiries about severely deficient document production, as confirmed during depositions on and between September 10 and 26, 2025; and (3) confirm

7

whether they have withheld responsive information based on privilege." (Doc. 204 at 2.) County Defendants claim that in this informal brief, Plaintiff "made generalized statements about [County Defendants'] response to written discovery, misstating where amended responses had been provided and documents were indeed produced" and "made a brief conclusion that the 30(b)(6) witness 'was unable to explain' the searches." (Doc. 218 at 2l; 204 at 6; 222 at 3.)

Following an Informal Discovery Conference on October 10, 2025, the magistrate judge authorized Plaintiff to file a third motion to compel for issues related to County Defendants deficient document investigation by October 16, 2025 and ordered County Defendants to file any response by October 22, 2025. (Doc. 206.) Plaintiff timely filed its motion (Doc. 212) and County Defendants filed an opposition on October 22, 2025. (Doc. 218.)

Plaintiff's third motion to compel concerned "County Defendants' outright failure to conduct the diligent document investigation necessary to capture and produce responsive materials." (Doc. 221 at 4.) Plaintiff also argued that County Defendants produced "wholly unprepared" Rule 30(b)(6) witnesses who could not answer basic questions about County Defendants' document collection, ESI searches, and production efforts. (Doc. 212 at 12.)

Plaintiff requested the Court to order County Defendants to (1) conduct additional investigations and searches for and produce all documents responsive to Plaintiff's RFPs dated December 12, 2024, and May 7, 2025, including by using a four-page list of search terms proposed by Plaintiff across approximately 28 identified custodians, and to (2) provide a hit report summarizing the results of those searches. (Doc. 212 at 11.) In the alternative, Plaintiff requested that the Court order County Defendants to produce another 30(b)(6) witness to testify about County Defendants' discovery efforts undertaken in response to Plaintiff's RFPs. (*Id*.) Lastly, Plaintiff sought an order compelling disclosure of any enterprise message tools in effect in October 2019 pursuant to the Court's ESI Order. (*Id*.)

On October 20, 2025, more than a month after fact discovery had closed and two days before filing their opposition brief to Plaintiff's third motion to compel (Doc. 218), County Defendants amended their respective responses and produced over 3900 pages of additional documents. (Doc. 218 at 2-4). County Defendants claimed this production contained the

"apparently missed OpsPlan" (which had apparently not been named with any association with the case), as well as numerous emails, including from Defendant Nicolson. (Doc. 218 at 2). Then on October 22, 2025, two and a half hours prior to filing their opposition, County Defendants produced metadata logs for more than 10,000 unproduced emails. (Doc. 219 at 2.)[9]

In their opposition to Plaintiff's third motion to compel, County Defendants claimed that the belated production of amended RFPs and additional documents mooted Plaintiff's motion to compel. (Doc. 218 at 4.) County Defendants separately argued that Plaintiff's request to re-depose a Rule 30(b)(6) witness was moot in light of County Defendants' production of documents identifying search terms used during document collection. (*Id.*) As to the unprepared Rule 30(b)(6) witnesses, County Defendants claimed it was "impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." (*Id.*)

Plaintiff then moved to file a reply brief[10] addressing County Defendants unforeseen October 20 and 22 document productions. (Doc. 219). Plaintiff characterized County Defendants' production as consisting of "3900 pages of additional documents" as a single, unitized document consisting of four "entirely irrelevant" 812-page spreadsheets listing tens of thousands of permits issued by Kern County in 2019 to the growers of various agricultural products (Doc. 219 at 4) and internal Kern County Department of Agricultural and Measurement Standards emails that County Defendants previously produced during discovery. (Doc. 219 at 5.)

Plaintiff argued that County Defendants' "production of some previously unproduced and

[9] In its Request for Leave to File Reply Breif, Plaintiff claims that the meta data logs produced contained numerous responsive and unproduced emails and provided examples of two emails. (Doc. 219 at 6.) According to Plaintiff, the meta data logs were not in compliance with the court's ESI order, which mandated disclosure of "search terms and custodians used to identify responsive materials, as well as a corresponding hit report that shows how many documents, exclusive and inclusive of families, contain each search term or string." (Doc. 199 at 2.) The parties had an informal discovery conference regarding County Defendants' refusal to provide the required information, and the court ordered County Defendants to provide hit reports disclosing this information. (Doc. 208 at 3.) Plaintiff alerted County Defendants to these deficiencies via email on October 23, 2025, the day after County Defendants produced the 10,000-entry metadata log. (Doc. 219-1.)

[10] The Court's October 10, 2025 order did not expressly provide an opportunity for Plaintiff to file a reply brief. (Doc. 206.) In their Request for Leave to File a Reply Brief (Doc. 219), Plaintiff explained that "County Defendants base[d] a substantial portion of their opposition on new developments since Plaintiff filed its motion to compel and that Plaintiff could not have anticipated before its motion was filed.

responsive documents," without any corresponding information about custodians, search terms, explanations for the late reply, or how many additional responsive documents have yet to be produced did not moot Plaintiff's third motion to compel, but instead further demonstrated the "deficiency in County Defendants' document production" and for the Court to require County Defendants to produce additional "wrongfully" withheld materials. (Doc. 219 at 5.)

The magistrate judge granted the motion to compel, finding that County Defendants had violated the court's August 29, 2025 Order. (Doc. 221.) Pursuant to Rule 37 and the court's inherent authority, the magistrate judge also sanctioned counsel for the County Defendants in the amount of $3,000 and required County Defendants to pay attorney's fees, in an amount to be determined. (Doc. 221 at 12.) First, the magistrate judge noted that County Defendants' discovery misconduct in violation of the court's August 29 Order "evidences Defendants' lack of regard for and indifference to court orders and has prevented the Court from efficiently managing its docket in this action." (Doc. 221 at 11.) Second, the magistrate judge found that sanctions against County Defendants pursuant to Rule 37(b)(2) were warranted "given their failure to obey the Court's August 29 Order to provide discover was neither substantially justified nor harmless." (Doc. 221 at 12.)

County Defendants now seek reconsideration of the magistrate judge's order granting Plaintiff's third motion to compel and issuing sanctions on the grounds that the findings were clearly erroneous or contrary to law. (*See generally* Doc. 222.)[11]

**II.    Legal Standard**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure,[12] non-dispositive pretrial

---

[11] County Defendants made other arguments in their motion to reconsider that were later withdrawn or mooted by subsequent productions of documents and agreements between the parties. Specifically, County Defendants challenged the magistrate judge's issuance of "contempt sanctions" and determinations as to the relevancy of documents. (Doc. 229 at 4.) Furthermore, County Defendants cite various procedural defects in the magistrate judge's order, which the Court declines to address since because the Court grants the motion to reconsider based on a lack of notice of sanctions.

[12] In their motion for reconsideration, County Defendants cite factors related to moving a court to reconsider a grant of summary judgement pursuant F.R.C.P. Rule 59(e) (motion to alter to amend judgement). *See Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an

matters may be referred to and decided by a magistrate judge, subject to review by the assigned district judge. Fed. R. Civ. P. 72(a). "Matters concerning discovery are generally considered 'nondispositive' of the litigation." *Thomas E. Hoar v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). When filing a motion for reconsideration, Local Rule 230(j) requires a party to show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion." Furthermore, the district judge "may not simply substitute its judgment for that of the deciding court." *United States v. BNS, Inc.*, 858 F.2d 456, 464 (9th Cir. 1988). When a party objects to a magistrate judge's ruling, "the district court will review or reconsider the ruling under the 'clearly erroneous or contrary to law' standard." *Perez v. City of Fresno*, 519 F. Supp. 3d 718, 722 (E.D. Cal. 2021); *see also* 28 U.S.C. § 626(b)(1)(A).

The "clearly erroneous" standard applies to factual findings and is "significantly deferential." *Security Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1014 (9th Cir. 1997); *Avalos v. Foster Poultry Farms*, 798 F.Supp.2d 1156, 1160 (E.D. Cal. 2011). This requires the district judge to be "left with the definite and firm conviction" that the magistrate judge made a mistake. *Avalos*, 798 F.Supp.2d at 1160; *see also Burdick v. Comm'r*, 979 F.2d 1369, 1370 (9th Cir. 1992) (holding the same).

When a challenged order "turns on a pure question of law, [the district judge's] review is plenary under the 'contrary to law' branch of the Rule 72(a) standard." *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Calderon v. Experian Info. Solutions, Inc.*, 290 F.R.D. 508, 511 (D. Idaho 2013). Consequently, challenged factual conclusions are reviewed for clear errors, while challenged legal conclusions are reviewed to determine whether they are contrary to law.

intervening change in controlling law.") (citing *All Hawaii Tours, Corp. v. Polynesian Cultural Center*, 116 F.R.D. 645, 648 (D. Hawaii 1987), rev'd on other grounds, 855 F.2d 860 (9th Cir.1988). However, Rule 72(a), not Rule 59(e), is the correct standard governing requests to reconsider a magistrate judge's order. *See Infra Sec. II.* Consequently, the Court will construe County Defendants' arguments under Rule 72(a) 's clearly erroneous or contrary to law" standard, rather than Rule 59(e)'s "clear error" or "manifestly unjust" standard referenced by County Defendants.

11

A magistrate judge's rulings on relevance in the discovery context, however, are reviewed under the "clearly implicit standard of abuse of discretion." *Geophysical Systems Corp. v. Raytheon Co., Inc.*, 117 F.R.D. 646, 647 (C.D. Cal. 1987)). An abuse of discretion is found where a judge bases a decision on an "erroneous conclusion of law" or "where the record contains no evidence on which he rationally could have based that decision." *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 224, 229 (9th Cir. 1975).

**III.    Discussion and Analysis**

**A.    Notice of and Factual Basis for Sanctions**

County Defendants argue that Plaintiff's motion to compel and the magistrate judge's imposition of sanctions on counsel for County Defendants failed to provide proper notice or any factual basis for sanctions in violation of due process.[13] (Doc. 222 at 4.)

A court proposing to impose sanctions must notify the party charged of the particular alleged misconduct and the particular disciplinary authority under which the court is planning to proceed.[14] *See In re DeVille*, 361 F.3d 539, 548-549 (9th Cir. 2004) (holding that before sanctions may be imposed upon a party there must be "sufficient, advance notice of exactly which conduct was alleged to be sanctionable.") (external citations omitted); *see also Foster v. Wilson,* 504 F.3d 1046 (9th Cir. 2007).

---

[13] County Defendants also argue that (1) the magistrate judge's order authorizing the motion to compel was silent on whether sanctions were being contemplated for violation of any specific order, and that (2) the magistrate judge clearly erred by construing Plaintiff's third motion to compel as a request to find that County Defendants had violated the Court's August 29 order. (Doc. 222 at 5.) In making these arguments, however, County Defendants cite the incorrect order. On October 10, 2025, the magistrate judge issued a minute order following the informal discovery conference which clearly authorized Plaintiff to file a motion to compel, including relevant declarations and billing records "in support of any such motion to compel for which expenses or sanctions are sought." (Doc. 206.) Because the order authorizing the motion to compel was not silent on whether sanctions were being contemplated for violation of any order and because the Court finds on separate grounds that the magistrate judge's order issuing sanctions was clearly erroneous and contrary to law, it is not necessary to address County Defendants' additional arguments at this time.

[14] The magistrate judge properly invoked Rule 37 and the court's inherent authority as the disciplinary authority under which the Court planned to sanction County Defendants. (Doc. 221 at 9-10.) *C.f. Lee v. Gates*, No. CV 03-03126-GAF, 2005 WL 67087 (C.D. Cal. Jan. 10, 2005) (granting motion to reconsider sanctions order on the basis that the magistrate judge did not specify a legal basis upon which the sanctions were to be imposed). The text of Rule 37(b)(2) also give notice that dismissal is a possible sanction for failure to obey pretrial discovery orders.

As here, where sanctions were issued by the Court *sua sponte*, the persons against whom the sanctions were imposed must be given the same notice and opportunity to respond that are required for sanctions generally. *See Navellier v. Sletten*, 262 F.3d 923, 943 (9th Cir.2001) ("When a court imposes sanctions *sua sponte*, the general rule is that it must first issue an order to show cause why sanctions should not be imposed to give the lawyer or party an opportunity to explain his or her conduct."). That did not occur here.[15] Though Plaintiff cites, and County Defendants do not dispute, at least ten instances, spanning several orders, where the magistrate judge warned County Defendants that noncompliance with discovery obligations and the court's orders could result in sanctions (Doc. 181 at 5; 6-7, 8; Doc. 189 at 5; Doc. 193), such warnings did not relieve the Court of its duty to provide County Defendants an opportunity to explain their conduct. Therefore, the magistrate judge's failure to provide County Defendants with proper notice and an opportunity to be heard prior to issuing sanctions is clearly erroneous and contrary to law.[16]

Furthermore, the Court finds the magistrate judge's invocation and subsequent analysis of the court's inherent authority to impose sanctions to be contrary to law. A district court may, in its informed discretion, rely on inherent power rather than on Federal Rules or federal statute to sanction parties or their attorneys issued when the party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). Before awarding such sanctions, however "the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Id*. (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). Mere recklessness, without more, does not justify sanctions under court's inherent power. *Id.; see also Leon v. IDX Sys. Corp.,* 464 F.3d 951, 961 (9th Cir.

---

[15] The Court notes that the magistrate judge issued an Order to Show Cause why sanctions should not be imposed on September 15, 2025. (Doc. 193.) However, this OSC related to County Defendants' failure to produce "either a jointly proposed agreement/protocol governing the production of ESI or their respective proposed agreement/protocol and/or a statement setting forth why such agreement/protocol is unwarranted." (*Id*.) This issue was not specifically mentioned in the magistrate judge's order, and therefore the related OSC cannot stand-in for the lack of notice of issuing sanctions for other discovery-related misconduct.

[16] The Court's reversal of the sanctions, however, does not preclude the magistrate judge from conducting further proceedings on the sanctions issue if such action is deemed appropriate.

13

2006) ("A party demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order.")

Here, the magistrate judge failed to cite the appropriate legal standard regarding a specific finding of bad faith as a prerequisite to awarding monetary sanctions under the court's inherent authority and consequently did not make a specific finding of bad faith on the part of County Defendants. *See, e.g., Leon,* 464 F.3d 951 at 961 (holding that the district court was not clearly erroneous when it found that the intentional deletion of files and subsequent cover up amounted to willful spoliation when there is duty to preserve all data). Furthermore, the magistrate judge failed to show that County Defendants' conduct was anything worse than negligent. Consequently, the award of sanctions in the exercise of the Court's inherent power was clearly erroneous and contrary to law given that the magistrate judge failed to apply appropriate case law and make a specific finding of bad faith. *See Calderon,* 290 F.R.D. 508 at 511 ("An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.")

Given the above-mentioned defects in the magistrate judge's sanctions order that render it clearly erroneous and contrary to law, the Court **GRANTS** County Defendants' motion to reconsider as to the issuance of sanctions.

**B.    Motion to Compel**

1.    <u>Mootness</u>

County Defendants next argue that magistrate judge erred by "ignor[ing] that [County] Defendants provided amended responses on and produced 3900+ pages" and not ultimately finding Plaintiff's motion to compel moot given the County Defendants' belated compliance. (Doc. 222 at 6.) The magistrate judge did address County Defendants' October 20 and October 22 productions in the context of a larger discussion of County Defendants' counsel's failure to meet basic discovery obligations, characterizing the production as "affirmative evidence before the Court of Defendants' long-running deficient discovery performance." (Doc. 221 at 7.) The magistrate judge also cited County Defendants lack of "explanation [as to] why those documents were not previously produced," even though the email metadata log reflected thousands of emails,

14

based on the search terms used, that were responsive to Plaintiff's RFPs. (*Id*. at 8.) In their opposition, Plaintiff alleges that County Defendants' eleventh-hour production consisted primarily of four 812-page, "entirely irrelevant spreadsheets," totaling 3,248 pages and internal County of Kern Department of Agriculture emails that were previously produced during discovery. (Doc. 225 at 13.)[17] Notably, County Defendants make no effort in their reply brief to dispute Plaintiff's or the magistrate judge's characterizations of these productions.

Additionally, both the magistrate judge in his order and the Plaintiff in their opposition cite a mounting list of discovery deficiencies that were not remedied by County Defendants' belated compliance. (Doc. 225 at 14.) For example, County Defendants had yet to produce any internal emails from KCSO or any documents from Defendants Nicholson and Youngblood. (*Id*.) This fact is deeply concerning, given that at least some of Defendant Nicholson's emails were produced by State Defendants as responsive to Plaintiff's discovery requests, but not by County Defendants themselves. (Doc. 221 at 6; Docs. 204-35 through 204-37.)[18] Accordingly, it was not clearly erroneous or contrary to law for the magistrate judge to find Plaintiff's motion to compel was not moot in light of County Defendants' recent productions.

### 2.    Joint Statement Per Local Rule 251

Next, County Defendants argue that it was a "manifest abuse of discretion" for the magistrate judge to ignore Local Rule 251(a) when he ordered Plaintiff's to file a separate motion to compel rather than the joint statement provided by Local Rule 251. (Doc. 222 at 8.) Pursuant to Local Rule 251, motions related to discovery shall consist of a brief notice of motion and motion "scheduling the hearing date[.]" Local Rule 251(a). "No other documents need be filed at this time." (*Id*.) However, the motion "shall not be heard unless [ ] the parties have conferred and attempted to resolve their differences[.]" Local Rule 251(b). In this regard, "[c]ounsel for all interested parties shall confer in advance of the filing of the motion or in advance of the hearing of the motion in a good faith effort to resolve the differences that are the subject of the motion."

---

[17] These productions were not made available for the Court to review as part of the instant motion.

[18] In its reply, County Defendants continue to argue that such documents were not responsive despite the fact that County Defendants' proffer that such documents have already been produced to Plaintiffs. (Doc. 229 at 4.)

(*Id.*) If, after meeting and conferring, the moving party remains dissatisfied, that party shall draft and file a "Joint Statement re Discovery Disagreement" at least fourteen days before the scheduled hearing date. Local Rule 251(a)-(c). The failure to file a Joint Statement may result in the hearing being dropped from calendar. Local Rule 251(a).

However, the motion "shall not be heard unless [ ] the parties have conferred and attempted to resolve their differences[.]" Local Rule 251(b). In this regard, "[c]ounsel for all interested parties shall confer in advance of the filing of the motion or in advance of the hearing of the motion in a good faith effort to resolve the differences that are the subject of the motion." (Id.) The failure to file a Joint Statement may result in the hearing being dropped from calendar. Local Rule 251(a). There are exceptions to the Joint Statement requirement where: (1) there has been a complete and total failure to respond to discovery; or (2) the discovery motion only seeks the imposition of sanctions. Local Rule 251(e).

Here, the magistrate judge discussed his reasoning for not ordering the parties to file a Joint Statement or meet and confer, finding County Defendants' argument to be "disingenuous" in light of "the unrefuted fact that [County] Defendants have either failed to engage in meet and confer efforts…or only grudgingly or belated participat[ing] in such efforts (Doc. 221 at 5.) In their motion for reconsideration, County Defendants make no effort to explain or justify their own repeated flouting of the Local Rules despite numerous warnings under the threat of sanctions. (*See* Doc. 221 at 11) ("Defendants' most recent discovery abuses have occurred in the context of an overall pattern and practice by Defendants of shirking their duty to genuinely confer with Plaintiff to resolve discovery disputes informally and failing to heed the Court's directions to correct their discovery misconduct."). Consequently, the Court does not find it clearly erroneous or contrary to law for the magistrate judge to have bypassed Local Rule 251 as an attempt to offset County Defendants' repeated reluctance to meet and confer.

### 3. Privilege and Scope of Order

Lastly, County Defendants argue that the magistrate judge abused his discretion by ordering production "blindly without allowing Defendants to attempt to cross reference what has been produced, or determine if the documents are responsive or not, or privileged or not. (Doc.

16

222 at 7-8.) County Defendants argue that ordering County Defendants to produce documents based on "hit" reports discussed in Plaintiff's reply "went well beyond what was sought in the motion: and that County Defendants were not afforded an opportunity to respond." (Doc. 229 at 2.)

In addition to citing no legal authority for this argument, County Defendants do not explain their failure to log any privileged materials at any point during the discovery process. Plaintiff notes that on August 29, 2025, the magistrate judge ordered County Defendants to serve a privilege log in addition to producing documents responsive to Plaintiff's May 7, 2025, RFPs. (Doc. 189 at 16.) There is nothing in the record that County Defendants complied with that order until October 20, 2025. (Doc. 225-2 at 2.) Accordingly, the Court finds that it was not clearly erroneous or contrary to law for the magistrate judge to order production of documents without giving County Defendants an opportunity to assess materials for relevance and privilege.

## IV.  Conclusion

For the reasons set forth above, the Court **ORDERS**[19]:

1.  County Defendants' request for reconsideration of the magistrate judge's order awarding sanctions is **GRANTED**;

2.  County Defendants' requests related to reconsideration of the magistrate judge's order granting Plaintiff's Motion to Compel are **DENIED**;

3.  Defense Counsel **SHALL** provide a copy of this order to Kern County Counsel Kendra Roberts and Litigation Chief Scott Fontes within three court days and **SHALL** file a certification that counsel has done so within that same period.

IT IS SO ORDERED.

Dated:    **March 29, 2026**

UNITED STATES DISTRICT JUDGE

---

[19] **In issuing this order, the Court reminds defense counsel that when representing the government, whether as a direct employee or as contract counsel, they have a duty to seek justice. Having held that role for many years, this Court is keenly aware of this responsibility and is disappointed by the need to remind counsel of this duty.  The Court is wildly disappointed in the County Defendants' approach to discovery in this case and expects much more than the discovery abuses discussed here.**